## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. SAAD ALJABRI,

     Plaintiff,

     v.

MOHAMMED BIN SALMAN BIN
ABDULAZIZ AL SAUD, *et al*.

     Defendants.

**Civil Action No. 1:20-cv-02146-TJK**

## MOTION FOR LEAVE TO FILE
## MOTION FOR ALTERNATIVE SERVICE UNDER SEAL

Pursuant to Local Civil Rule 5.1(h) and Standing Order § 11.d., Dkt. 5, Plaintiff Dr. Saad Aljabri ("Dr. Saad" or "Plaintiff") files this Motion requesting leave to file under seal Plaintiff's Motion for Alternative Service (the "Alternative Service Motion"), the Memorandum of Law in Support of Plaintiff's Motion for Alternative Service, Appendix A to the Alternative Service Motion, the Proposed Sealed Order Granting Leave to Serve Certain Defendants by Alternative Means, and the Declaration of Dr. Abdullah Alaoudh (collectively, the "Alternative Service Documents"). *See* Exhibits A-E. Dr. Saad is requesting this temporary relief to preserve his ability to serve the Alternative Service Defendants (as defined in the Alternative Service Motion) in the manner proposed, and to prevent the Alternative Service Defendants from thwarting service.

## BACKGROUND

On August 6, 2020, Dr. Saad filed a Complaint in this Court against the Alternative Service Defendants and other individuals to seek redress for an attempted extrajudicial killing. Dkt. 1 ("Compl."). On the same day, Dr. Saad was described by the United States Government as "a

valued partner to the U.S. Government" who has worked closely with the U.S. Government "to ensure the safety of Americans and Saudis."[1]

The Complaint describes an intensive effort to extrajudicially kill Dr. Saad.  As described in detail in the Complaint, Defendant bin Salman, acting through Defendant MiSK Foundation and Defendant Alasaker, recruited and deployed a network of covert agents in the United States who participated in an effort to hunt down Dr. Saad and his family in the United States so that Dr. Saad could be trapped and killed.  Compl. ¶¶ 162-74.

On August 7, 2020, the Clerk of Court issued Summonses for each of the Alternative Service Defendants.  Dkt. 4.  The Alternative Service Defendants currently reside or maintain residences in the Kingdom of Saudi Arabia.  On August 21, 2020, Dr. Saad filed a Motion for Leave to File Affidavits Requesting Foreign Mailing Under Seal (the "August 21, 2020 Motion"), requesting temporary relief to prevent the Alternative Service Defendants from thwarting his attempt to serve them pursuant to Federal Rule of Civil Procedure ("Rule") 4(f)(2)(C)(ii) and 4(h)(2).[2]

In parallel with these service efforts, Dr. Saad seeks authorization from this Court to serve the Alternative Service Defendants through alternative means pursuant to Rule 4(f)(3) and Rule 4(h)(2).[3]  Rule 4(f)(3) allows an individual in a foreign country to be served by "other means not

---

[1] Letter from Ryan M. Kaldahl, Acting Assistant Secretary, Bureau of Legislative Affairs, U.S. Dep't of State, to Sen. Patrick Leahy, U.S. Senate 1 (Aug. 6, 2020), https://twitter.com/hsu_spencer/status/1291766667639496706/photo/1.

[2] The eleven defendants that comprise the Alternative Service Defendants are the same defendants that comprise the Foreign Mailing Defendants as defined in the August 21, 2020 Motion.

[3] A plaintiff need not "first exhaust the methods of service contemplated by Rule 4(f)(1) and (2) before petitioning the Court for permission to use alternative means under Rule 4(f)(3)." *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013); *see also*

prohibited by international agreement, as the court orders." The precise method of service is left to the discretion of the district court, provided it is consistent with constitutional notions of due process and minimizes offense to foreign law. *Bazarian Int'l Fin. Assocs.*, 168 F. Supp. 3d at 13. Rule 4(h)(2) allows a corporation, partnership, or association to be served outside of the United States in any manner prescribed under Rule 4(f).

Specifically, Dr. Saad seeks to serve the Alternative Service Defendants by sending the summons and Complaint directly to each defendant via the WhatsApp messaging platform and, in addition, by mail to each defendant's place of employment. As described in the Alternative Service Documents, these are the best means to directly deliver actual notice of the pleadings to these defendants and minimize offense to foreign law. If the Court wishes to supplement these means, Dr. Saad has also identified additional means through which Plaintiff can supplement service on the Alternative Service Defendants, including ███████████████████████████ ████████████.

Temporarily sealing the Alternative Service Documents is essential to ensuring that the Alternative Service Defendants are not able to frustrate Plaintiff's ability to effectuate service through the reliable and personalized means proposed in the Alternative Service Motion.

## ANALYSIS

Temporary sealing of the Alternative Service Documents is necessary in this case to preserve Dr. Saad's ability to effect service of process under Rule 4(f)(3) and Rule 4(h)(2). Temporary sealing is justified under the factors set forth in *United States v. Hubbard,* 650 F.2d

---

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 16 (D.D.C. 2016) (noting that "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)").

293 (D.C. Cir. 1980):  "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *EEOC v. Nat'l Children's Ctr. Inc.,* 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard,* 650 F.2d at 317-22).

Public access to the Alternative Service Documents, which have not previously been publicly accessible, will not be hindered because Dr. Saad seeks only temporary sealing until he is able to serve the Alternative Service Defendants.  *See Pub. Citizen Health Research Grp. v. Food & Drug Admin*., 953 F. Supp. 400, 405 (D.D.C. 1996) (finding "the public's access to these proceedings is not hampered" by temporary sealing of information).   Moreover, there is no need for public access to procedural documents such as the Alternative Service Documents, which are not related to the merits of the litigation.  *See Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 n.2 (D.D.C. 2011).

As a party to this action, Dr. Saad's request to seal the Alternative Service Documents weighs in favor of sealing.  *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 149 (D.D.C. 2010) ("Under the third *Hubbard* factor, the fact that a party moves to seal the record weighs in favor of the party's motion.").

Critically, sealing the Alternative Service Documents is necessary to prevent the Alternative Service Defendants from thwarting Dr. Saad's attempts to effectuate service through the direct and specific means proposed in the Alternative Service Motion.  This litigation has attracted significant international media attention, particularly in the Middle East and Saudi

Arabia.[4]  The Alternative Service Defendants, based on their statements and actions since the filing of this Complaint, almost certainly have actual notice of this lawsuit.  Dr. Saad's son-in-law—whose torture at the hands of Defendant bin Salman's agents was described in paragraphs 152 through 154 of the Complaint—has been disappeared since Plaintiff filed the Complaint, and two of Dr. Saad's former staff members were arrested.[5]  Defendant Abuljadayel removed any reference to her location on her Twitter account days after her location was cited in the Complaint.[6]  If the Alternative Service Defendants have advance public notice of the proposed methods of alternative service, they will certainly take steps to thwart it by deactivating their WhatsApp accounts, changing their personal mobile phone numbers, or refusing to accept mail packages.  They will also be able to thwart the supplemental means of alternative service available to the Court by ████████████████████████████████████████████████  Such actions would interfere with the function of the Court and Dr. Saad's ability to vindicate his rights in this litigation.  This factor therefore counsels in favor of temporary sealing.  *See Luxottica Group S.p.A. et al v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 1:18-cv-02188 (N.D. Ill. Apr. 11, 2018), ECF Nos. 27, 30 (granting leave to file motion for alternative service of process by electronic means under seal); *Louis Vuitton Malletier S.A.S. v. Forever Trading Corp.*, No. 1:18-cv-02810-TJK (D.D.C. Dec, 17, 2018), ECF No. 13 (granting motion to

---

[4] *See, e.g.*, *Saudi Hit Squad Allegations: US Says al-Jabri a 'Valued Partner'*, Al Jazeera, Aug, 8, 2020, https://www.aljazeera.com/news/2020/08/saudi-hit-squad-allegations-al-jabri-valued-partner-200808130718235.html.

[5] *Saudi Arabia detains another relative of former intelligence official, family in Canada says*, The Globe and Mail, Aug. 26, 2020, https://www.theglobeandmail.com/politics/article-saudi-arabia-detains-another-relative-of-former-intelligence-official/.

[6] Layla Abuljadayel (@drlaylaaj), Twitter, https://twitter.com/drlaylaaj (last visited Sept. 9, 2020) (removed "Jeddah-Boston-Vancouver" from her Twitter profile).

temporarily seal documents to prevent defendants from "undermining Plaintiff's efforts at stopping trafficking of counterfeit . . . goods"); *Hamen v. Islamic Republic of Iran*, 318 F. Supp. 3d 194, 198 (D.D.C. 2018) (allowing witness to testify under seal when denying motion to seal would have resulted in witness not testifying at all).

The Alternative Service Defendants will not suffer any prejudice as a result of temporary sealing.  Dr. Saad merely seeks to serve them with process in a manner that ensures actual and verifiable notice consistent with due process, as explained in the Alternative Service Motion.  If anything, temporary sealing offers greater privacy to the Alternative Service Defendants with respect to their personal information referenced in the Motion.

And as to the final *Hubbard* factor, disclosure is "less of a pressing concern," because the Alternative Service Documents are procedural documents that are not relevant to the central claims of the litigation.  *Gilliard v. McWilliams*, No. CV 16-2007 (RC), 2019 WL 3304707, at *2 (D.D.C. July 23, 2019).

In sum, the six *Hubbard* factors weigh in favor of temporarily sealing the Alternative Service Documents until Dr. Saad effectuates service under Rule 4(f)(3) and Rule 4(h)(2).

\* \* \*

In addition, redactions are impracticable and will not accomplish the objective of sealing in this case—namely, to protect the integrity of Dr. Saad's attempt to serve process under Rule 4(f)(3) and Rule 4(h)(2).  Indeed, the Alternative Service Defendants' mere knowledge of the Alternative Service Documents would seriously undermine Dr. Saad's ability to effectuate service.

## CONCLUSION

For the foregoing reasons, Dr. Saad requests leave to file the Alternative Service Documents under seal.  Once he has successfully effectuated service on the Alternative Service Defendants under Rule 4(f)(3) and Rule 4(h)(2), Dr. Saad will move to unseal these documents.

Dated: September 11, 2020

Respectfully submitted,

JENNER & BLOCK LLP

/s/ David Pressman

David Pressman (admitted *pro hac vice*)
D.C. Bar No. 1013431
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com

/s/ Lindsay Harrison

Lindsay Harrison
D.C. Bar No. 977407
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Telephone:  (202) 639-6865
Fax:  (202) 639-6066
lharrison@jenner.com

*Counsel for Plaintiff*