# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. SAAD ALJABRI, | |
| Plaintiff, | |
| v. | **Civil Action No. 1:20-cv-02146-TJK** |
| MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al*. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**

Plaintiff Dr. Saad Aljabri ("Dr. Saad" or "Plaintiff") respectfully requests that the Court authorize Plaintiff to serve eleven defendants, all current residents of the Kingdom of Saudi Arabia (the "Alternative Service Defendants"), through alternative means under Federal Rule of Civil Procedure ("Rule") 4(f)(3) and 4(h)(2).[1]

**<u>INTRODUCTION</u>**

On August 6, 2020, Dr. Saad brought this action to hold the defendants accountable for attempting to reach across international borders, including into the United States, to extrajudicially kill him.  Dkt. 1 ("Compl.").  Defendants' conduct was aimed at, occurred in, and violated the laws

---

[1] This motion requests leave to serve Defendants Mohammed bin Salman Bin Abdulaziz Al Saud ("Defendant bin Salman"), Prince Mohammed Bin Salman Abdulaziz Foundation d/b/a MiSK Foundation ("Defendant MiSK Foundation"), Bader Alasaker ("Defendant Alasaker"), Saud Alqahtani ("Defendant Alqahtani"), Ahmed Alassiri ("Defendant Alassiri"), Khalid Ibrahim Abdulaziz Algasem ("Defendant Algasem"), Mishal Fahad Alsayed ("Defendant Alsayed"), Bandar Saeed Alhaqbani ("Defendant Alhaqbani"), Ibrahim Hamad Abdulrahman Alhomid ("Defendant Alhomid"), Saud Abdulaziz Alsaleh ("Defendant Alsaleh"), Mohammed Alhamed ("Defendant Alhamed").

1

of the United States.  Given the current Saudi Arabian residency of the Alternative Service Defendants, Dr. Saad hereby moves for leave to serve the defendants through alternative means pursuant to  Rule 4(f)(3) and Rule 4(h)(2).[2]

Alternative service is necessary in this case.[3]  Saudi Arabia has refused to accede to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  As a result, litigants in the United States have no choice but to seek alternative means of service for defendants in Saudi Arabia, and courts routinely authorize alternative service on Saudi-resident defendants under Rule 4(f)(3).[4]

---

[2] Because counsel for the Alternative Service Defendants have not yet appeared in this action, Dr. Saad has been unable to ascertain their position with respect to this motion.  *See* D.C. District Court Local Rule 7(m); Standing Order ¶ 11(a), ECF No. 5.

[3] Dr. Saad intends to attempt service using other means, but in light of challenges associated with those means and the Court's instruction that plaintiffs effect service "promptly," Standing Order ¶ 3, Dr. Saad is seeking permission to serve process by alternative means under Rule 4(f)(3) and Rule 4(h)(2) in parallel with these other efforts.  *See infra* Section I.

[4] *See Juniper Networks, Inc. v. Bahattab*, No. CIV.A. 07-1771 (PLF), 2008 WL 250584, at *1, *2 (D.D.C. Jan. 30, 2008) (permitting service of process by email on resident of Saudi Arabia); *de Leon v. Abudawood*, No. 8:18-CV-01030, 2018 WL 6321632, at *4–*5 (C.D. Cal. Oct. 23, 2018) (authorizing service by email and FedEx to defendants in Saudi Arabia); *DE Gazelle Grp., Inc. v. Tamaz Trading Establishment*, No. 6:13-CV-1430, 2014 WL 12639865, at *1, *2 (M.D. Fla. Mar. 19, 2014) (permitting alternative service on defendant in Saudi Arabia via FedEx); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 CIV. 9641 (RCC), 2005 WL 696769, at *4 (S.D.N.Y. Mar. 23, 2005) (granting plaintiff leave to effect service of process on defendant in Saudi Arabia by mail to defendant's post-office box in Saudi Arabia and mail or FedEx on the defendant's U.S. and U.K. attorneys); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 490 (S.D.N.Y. 2010), (approving motion to serve defendants in Saudi Arabia by publication); Order Authorizing Service of Summons by Mail Pursuant to FRCP 4(f)(3) at 1, *Sharif v. Int'l Dev. Grp.*, No. 1:02-cv-05430 (N.D. Ill. Dec. 6, 2002), ECF No. 11 (granting plaintiff's request for alternative service by mail because "personal service on the defendants, all of whom are located in Saudi Arabia, is not practical or reliable and could prove dangerous"); *cf. Hollow v. Hollow*, 747 N.Y.S.2d 704, 708 (N.Y. Sup. Ct. 2002) (authorizing, under analogous New York law, alternative service of process on resident of Saudi Arabia by email, international registered air mail, and international mail standard).

Moreover, given the nature of the allegations in this Complaint, personal service poses a risk of grave harm to the server.  This lawsuit received significant attention in the global press, including in Saudi Arabia.[5]  Since it was filed, Defendant bin Salman and those working on his behalf have retaliated against Dr. Saad by disappearing other members of his family and arresting his former staff.  Distressingly, Dr. Saad's son-in-law—whose torture at the hands of Defendant bin Salman's agents was described in detail in paragraphs 152 through 154 of the Complaint—has been disappeared,[6] and Dr. Saad's brother-in-law was recently arrested at his place of work. Personal service is not only infeasible but could place other innocent lives in peril.

Accordingly, Dr. Saad seeks leave to serve the Alternative Service Defendants by sending the summons and Complaint directly to each defendant's personal mobile device through WhatsApp and, in addition, by mail to each defendant's address.  These methods will put the Alternative Service Defendants on notice of this suit—to the extent they are not already—and are fully consistent with methods of service in Saudi Arabia.

## FACTUAL BACKGROUND

This defendants in this case attempted to extrajudicially kill Dr. Saad Aljabri.  The Alternative Service Defendants, who participated in this heinous act, include:  (1) an individual who at all relevant times lived and operated in the United States and is believed to have moved to Saudi Arabia, frustrating service here; (2) residents of Saudi Arabia who routinely operated in the

---

[5] A respected international news agency, citing "a senior Saudi official," reported on August 14, 2020 that a response was already being prepared to the Complaint.  Anuj Chopra, *Ex-Saudi Spy Boss's Lawsuit Threatens to Tell All*, Agence France-Press, Aug. 14, 2020, https://asiatimes.com/2020/08/ex-saudi-spy-bosss-lawsuit-threatens-to-tell-all/.

[6] Janice Dickson, *Saudi Arabia Detains Another Relative of Former Intelligence Official, Family in Canada Says*, Globe & Mail, Aug. 26, 2020, https://www.theglobeandmail.com/politics/article-saudi-arabia-detains-another-relative-of-former-intelligence-official/.

United States through frequent travel to the United States and otherwise; and (3) a Saudi Arabia-based foundation that operated within the United States to cultivate a network of covert agents here.

As described in the Complaint, the Alternative Service Defendants—along with other defendants[7] who, at all relevant times, were residing in the United States and are not subject to this motion—orchestrated a scheme to lure, hunt, and ultimately kill Dr. Saad to cut off the U.S. government's access to a key partner with unique knowledge of the Saudi Royal Court and Defendant bin Salman, knowledge and access that were perceived to jeopardize Defendant bin Salman's efforts to consolidate support in the United States.   As the U.S. government acknowledged after Dr. Saad filed this Complaint, Dr. Saad has been "a valued partner to the U.S. Government, working closely with [the United States] to ensure the safety of Americans and Saudis."[8]

Shortly after filing this Complaint, the Canadian government publicly announced that it was "aware of incidents in which foreign actors have attempted to monitor, intimidate or threaten Canadians and those living in Canada."[9]   Although officers from the Canada Border Services Agency thwarted a killing of Dr. Saad in October 2018, the attempted extrajudicial killing has since continued.

---

[7] Defendant Yousef Alrajhi, who is not subject to this motion, was personally served in Fairfax, Virginia pursuant to Rule 4(e) on August 11, 2020.  Dkt. 13.

[8] Letter from Ryan M. Kaldahl, Acting Assistant Secretary, Bureau of Legislative Affairs, U.S. Dep't of State, to Sen. Patrick Leahy, U.S. Senate 1 (Aug. 6, 2020), https://twitter.com/hsu_spencer/status/1291766667639496706/photo/1.

[9] *Saudi Crown Prince Accused of Sending Hit Squad to Canada*, BBC News, Aug. 6, 2020, https://www.bbc.com/news/world-middle-east-53677869.

Defendants are clearly already aware of this litigation, as is evident from their statements and actions after the Complaint was filed.  Shortly after filing this Complaint—which includes allegations about ongoing efforts to kill Dr. Saad through the United States, Compl. ¶¶ 234–37—security agencies learned of a new direct threat on Dr. Saad's life.[10]  Dr. Saad's family members have also been targeted.  After filing this Complaint, at Defendant bin Salman's direction, Dr. Saad's son-in-law was disappeared in Saudi Arabia and his brother-in-law was arrested and taken from the hospital in Saudi Arabia where he worked.  And on August 7, 2020—the day after the filing of the Complaint—Defendant Alhamed joined the social media campaign attempting to cast Dr. Saad, a close partner of the U.S. Government, as a "traitor" to Saudi Arabia, tweeting "The homeland is a blessing, traitors cannot appreciate its value.  May God protect our leadership and perpetuate the strength of our country."[11]  Replies to Defendant Alhamed's tweet posted multiple images from the instant Complaint.[12]  Other defendants have made overt efforts to hide their physical location.  For example, days after the filing of the instant Complaint, Defendant Abuljadayel edited her Twitter profile to remove any reference to her location.[13]  Plaintiff attempted to serve Defendants Alhamed and Abuljadayel at their last-known addresses in

---

[10] Robert Fife & Steven Chase, *Former Saudi Intelligence Chief Faces New Death Threat*, Globe & Mail, Aug. 7, 2020, https://www.theglobeandmail.com/politics/article-former-saudi-intelligence-chief-faces-new-death-threat/.

[11] Mohammed AlHamed (@M7Alhamed), Twitter (Aug. 7, 2020, 4:26 PM), https://twitter.com/M7Alhamed/status/1291833115074273280 (professionally translated from the original Arabic language).

[12] *See* نفود الدوحة (@nfuodq), Twitter (Aug. 7, 2020, 4:34 PM), https://twitter.com/nfuodq/status/1291835089861705728 (posting images from the Complaint).

[13] Layla Abuljadayel (@drlaylaaj), Twitter, https://twitter.com/drlaylaaj (last visited Sept. 3, 2020) (removed "Jeddah-Boston-Vancouver" from her Twitter bio).

Massachusetts, but both defendants appear to have departed the United States.[14]  All of the foregoing make alternative service necessary and appropriate in this case.

## LEGAL STANDARD

Rule 4(f)(3) allows service on foreign individuals by "other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  The precise method of service is left to the discretion of the district court, provided it is consistent with constitutional notions of due process and minimizes offense to foreign law.  *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 13 (D.D.C. 2016).  Similarly, Rule 4(h)(2), which governs service upon a foreign corporation, partnership, or other unincorporated association, provides that a party may be served outside of the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under [Rule 4](f)(2)(C)(i)."  Fed. R. Civ. P. 4(h)(2).

Service under Rule 4(f)(3) is neither "extraordinary relief," nor a "last resort," and is equally appropriate as service under Rule 4(f)(1) and (2).  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *accord Bazarian Int'l*, 168 F. Supp. 3d at 16 (noting that "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)").  Nor must a plaintiff "first exhaust the methods of service contemplated by Rule 4(f)(1) and (2) before petitioning the Court for permission to use alternative means under Rule 4(f)(3)."  *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013).

---

[14] Based on recent social media posts, Defendant Abuljadayel appears to have left Boston and is attempting to obfuscate her location.  Plaintiff is not currently seeking leave to serve her by alternative means.  In addition, Plaintiff's efforts to locate and serve Defendant Bijad Alharbi, who traveled to Boston, Massachusetts as part of the hunt for Dr. Saad, are ongoing.

The purpose of Rule 4 "is to provide the mechanisms for bringing *notice of the commencement of an action* to defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." *Hagmeyer v. U.S. Dep't of Treasury*, 647 F. Supp. 1300, 1303 (D.D.C. 1986) (emphasis in original) (citation omitted).  The D.C. Circuit applies a "liberal treatment of service requirements under Rule 4." *Miller v. Holzmann*, No. CIV.A. 95-1231 (RCL), 2007 WL 710134, at *9 (D.D.C. Mar. 6, 2007); *accord FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312 n.61 (D.C. Cir. 1980) ("[T]he provisions of Rule 4 should be liberally construed in the interest of doing substantial justice.").  Courts apply a flexible standard when determining the appropriate method for alternative service, and the "decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *See Bazarian Int'l*, 168 F. Supp. 3d at 13.  Provided the method of service is consistent with due process and not contrary to international agreements, courts are empowered to fashion a manner of service that fits the facts and circumstances of the particular case. *See Lagayan v. Odeh*, 318 F.R.D. 208, 209–10 (D.D.C. 2016).  A method of service comports with constitutional notions of due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1240 (Fed. Cir. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Courts have approved a "wide range of alternative methods of service." *Compagnie*, 636 F.2d at 1312.  For example, courts have approved service by email, mail, WhatsApp, social media, and through counsel. *See, e.g.*, *Juniper Networks, Inc. v. Bahattab*, No. CIV.A. 07-1771 (PLF), 2008 WL 250584, at *1, *2 (D.D.C. Jan. 30, 2008) (permitting service by email on defendant in

Saudi Arabia); *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) (permitting service by publication where defendants' address was not known or easily ascertainable); *Rio Props.*, 284 F.3d at 1017 (approving service by email); *L.J. Star Inc. v. Steel & O'Brien Mfg., Inc.*, No. 2:19-CV-4527, 2020 WL 1957155, at *4–6 (S.D. Ohio Apr. 23, 2020) (approving service by WhatsApp and LinkedIn).[15]

## ARGUMENT

Alternative service is necessary and appropriate in this case.  Below, Plaintiff explains (I) why alternative service is warranted; (II) why the methods proposed are appropriate and authorized under the Federal Rules; and (III) which methods are available as to each of the Alternative Service Defendants.  Appendix A lists those methods in detail.

### I.      Alternative Service Is Warranted Under the Circumstances of this Case.

Alternative service is warranted and is the best means to directly serve the Alternative Service Defendants.  Other methods of service under Rule 4(f) are unavailable or impracticable.

The Kingdom of Saudi Arabia has refused to accede to the Hague Convention, or any other applicable international treaty that would govern service in this or related litigation, and therefore

---

[15] *See also Fabian v. LeMahieu*, No. 4:19-CV-00054-YGR, 2020 WL 3402800, at *3 (N.D. Cal. June 19, 2020) (authorizing service by email and social media, and collecting cases that have permitted service by social media); Order at 17, *Hassen v. Nahyan*, No. 2:09-CV-01106 (C.D. Cal. July 10, 2012), ECF No. 96 (authorizing service by mail, email, or facsimile on Sheikh Mohamed bin Zayed, the Crown Prince of Abu Dhabi); *Swarna v. Al-Awadi*, No. 06 CIV. 4880(PKC), 2007 WL 2815605, at *2 (S.D.N.Y. Sept. 20, 2007) (authorizing service on diplomat by courier and U.S. mail); Order at 1, *Rasheed v. Hussein*, No. 1:04-CV-01862 (D.D.C. Sept. 14, 2006), ECF No. 5 (authorizing service of Saddam Hussein through his counsel); Order Granting Mot. to Serve Def. WikiLeaks by Twitter and Mail at 1, *Democratic Nat'l Comm. v. Russian Federation*, No. 18-cv-3501-JGK (S.D.N.Y. Aug. 6, 2018), ECF No. 156 (authorizing service by Twitter).

service under Rule 4(f)(1)—which allows for service by letters rogatory, the state's Central Authority, or by mail unless the state has objected to that method—is unavailable.[16]

Service is also likely unavailable under Rule 4(f)(2)(C)(ii), which allows for service through a mailing sent by the clerk with a signed receipt.  On August 21, 2020, Dr. Saad initiated the process of attempting service under Rule 4(f)(2)(C)(ii) by filing a motion seeking leave to file Affidavits Requesting Foreign Mailing under seal.  Dkt. 9.  That motion is currently pending. Although Dr. Saad intends to attempt service under Rule 4(f)(2)(C)(ii), such attempt is unlikely to be successful because it requires a signed receipt, which the Alternative Service Defendants could easily evade.  Dr. Saad may also attempt service pursuant to Rule 4(f)(2)(A), which authorizes service on foreign individuals "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction."  Although the methods proposed here are fully consistent with the methods prescribed by Saudi law, *see generally* Declaration of Dr. Abdullah Alaoudh, those laws could easily be distorted in an absolute monarchy where the Alternative Service Defendants include an influential member of the royal family and many of the laws are unwritten.[17]   In light of these realities and the Court's instruction that plaintiffs effect service "promptly," Standing Order ¶ 3, Dr. Saad is seeking permission to serve process by alternative methods under Rule 4(f)(3) in parallel with other attempts to ensure prompt service of all defendants.

---

[16] U.S. Dep't of State, *Saudi Arabia Judicial Assistance Information, Hague/Inter-American*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/SaudiArabia.html; *see also Ehrenfeld*, 2005 WL 696769, at *2, *4 (granting motion for alternative service of defendant in Saudi Arabia in part because the country is not a signatory to Hague Convention).

[17] Muamar Hasan Salameh and Jaida Aboul Fotouh, *The Development of Legal Education in the Kingdom of Saudi Arabia*, 11 Fiat Justisia 289, 290 (July-Sept. 2017), https://jurnal.fh.unila.ac.id/index.php/fiat/article/view/973/975 ("The law in Saudi Arabia can primarily be described as consolidation of both written and unwritten laws.").

Finally, personal service under Rule 4(f)(2)(C)(i) would be both futile and dangerous. The Alternative Service Defendants have used covert and deceptive means to carry out an attempted extrajudicial killing of Dr. Saad. *See* Compl. ¶¶ 234–37. Effecting personal service in Saudi Arabia could pose unique and significant dangers to personnel involved. This risk is more than mere conjecture. In another high-profile case involving service of process in Saudi Arabia, "the process server hired to serve some of the defendants was apparently murdered during his attempts to complete service of process for one of the instant lawsuits." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 490 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013).[18]

Under similar circumstances, courts have readily approved alternative service for defendants residing in Saudi Arabia because "personal service is not practical or reliable and could prove dangerous." Order Authorizing Service of Summons by Mail Pursuant to FRCP 4(f)(3) at 1, *Sharif v. Int'l Dev. Grp.*, No. 1:02-cv-05430 (N.D. Ill. Dec. 6, 2002), ECF No. 11; *see also In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d at 490.

## II.    The Proposed Methods of Alternative Service are Consistent with Due Process and Reasonably Calculated to Provide Notice to Defendants.

While the methods proposed in this motion may be considered "alternative" means of service under the Federal Rules, they are ordinary means of service in Saudi Arabia, and they are the best means to provide actual and direct notice to each of the Alternative Service Defendants.

---

[18] The murder of the process server occurred while he was attempting to carry out service of process in Saudi Arabia. *See* Aff. of Nelson Tucker, Ex. B to Pls.' Mot. For Extension of Time for Service of Process and for Leave to Serve Certain Listed Defs. by Publication Pursuant to Federal Rule 4(f) ¶ 8, *Burnett v. Al Baraka Inv. & Dev'l Corp.*, No. 1:02-cv-01616 (D.D.C. Mar. 24, 2003), *consolidated into In Re Terrorist Attack on September 11, 2001*, 03-MDL01570 (S.D.N.Y.), ECF No. 95.

## A.      Service Through the Messaging Application WhatsApp.

WhatsApp, a messaging application that allows users to communicate by text and multi-media message, is routinely used for official government business in Saudi Arabia, including by the Alternative Service Defendants.  It is also widely used as a primary means of mobile text communications amongst Saudi citizens generally.[19]  WhatsApp allows users to send documents on its platform and includes a built-in function that verifies when a message has successfully been sent, when the message was successfully delivered to the recipient's phone, and, in some cases, when the recipient has read the message (known as "read receipts.").[20]  It is the digital equivalent of a "form of mail . . . that requires a signed receipt."  Fed. R. Civ. P. 4(f)(2)(C)(ii).

Given the Alternative Service Defendants' documented and habitual use of WhatsApp, service through WhatsApp will provide actual notice, and forensically confirmable service, to the Alternative Service Defendants.  Using WhatsApp's built-in tools,[21]  Plaintiff's counsel confirmed that all of the individual Alternative Service Defendants have accessed their WhatsApp accounts within the 24-30 hours prior to filing this motion and routinely use the WhatsApp application

---

[19] *Facebook and Twitter Top in Number of Users, Over 18 Million Users of Social Media Programs And Applications In Saudi Arabia*, Ministry of Comm'ns & Info. Tech. (Mar. 17, 2016), https://www.mcit.gov.sa/en/media-center/news/89698#:~:text=Saudi%20Arabia%20ranked%20first%20among,%2C%20and%2021%25%20for%20Facebook. ("Saudi Arabia ranked first among Arab countries and second worldwide in the use of Snapchat. WhatsApp and Facebook had the top rates of social networking platforms use, with 22% for WhatsApp, and 21% for Facebook.").

[20] *See How to Check Read Receipts*, WhatsApp, https://faq.whatsapp.com/android/security-and-privacy/how-to-check-read-receipts/ (Android); *How to Check Read Receipts*, WhatsApp, https://faq.whatsapp.com/iphone/security-and-privacy/how-to-check-read-receipts (iPhone).

[21] WhatsApp allows users to see when other WhatsApp users are currently or were last "Online" (*i.e.* had the application open).  *See About Last Seen and Online*, WhatsApp, https://faq.whatsapp.com/general/chats/about-last-seen-and-online/?lang=en.

throughout the course of their day.[22]  Service by WhatsApp will allow Plaintiff to forensically document:   (1) successful delivery of the summons and complaint to each of the Alternative Service Defendants; (2) that each Alternative Service Defendant logged into his account after service; and (3) unless the "read receipt" feature has been disabled, actual receipt and review of the summons and Complaint by each Alternative Service Defendant.

Dr. Saad has personal knowledge of the phone numbers associated with the WhatsApp accounts of Defendants bin Salman, Alasaker, Alqahtani, and Alassiri.[23]  Each has used that platform to contact, communicate with, and at times threaten Dr. Saad.  For example, Dr. Saad engaged in multiple lengthy exchanges with Defendants bin Salman and Alasaker using WhatsApp.  *See, e.g.*, Compl. ¶¶ 128, 130, 132–33, 135–36 (WhatsApp messages between Defendant bin Salman and Dr. Saad); Compl. ¶¶ 135 (WhatsApp messages between Defendant Alasaker and Dr. Saad).  Dr. Saad has also personally communicated using WhatsApp with Defendants Alqahtani and Alassiri.

---

[22] Defendant bin Salman (last utilized WhatsApp on Sept. 11, 2020 at 6:50 PM AST, and has used WhatsApp at least ten of the last eleven days); Defendant Alasaker (last utilized WhatsApp on Sept. 11, 2020 at 6:53 PM AST, and has used WhatsApp every day since Sept. 2, 2020); Defendant Alqahtani (last utilized WhatsApp on Sept. 11, 2020 at 2:37 AM AST); Defendant Alassiri (last utilized WhatsApp on Sept. 11, 2020 at 7:16 PM AST, and has used WhatsApp every day since Sept. 1, 2020); Defendant Alhamed (last utilized WhatsApp on Sept. 11, 2020 at 7:13 PM AST, and has used WhatsApp every day since Sept. 2, 2020); Defendant Algasem (last utilized WhatsApp on Sept. 10, 2020 at 12:20 PM AST, and has used WhatsApp at least seven of the last nine days); Defendant Alsayed (last utilized WhatsApp on Sept. 11, 2020 at 6:08 PM AST, and has used WhatsApp at least seven of the last eight days); Defendant Alhaqbani (last utilized WhatsApp on Sept. 11, 2020 at 6:05 PM AST, and has used WhatsApp every day since Sept. 1, 2020); Defendant Alhomid (last utilized WhatsApp on Sept. 11, 2020 at 7:01 PM AST, and has used WhatsApp every day since Sept. 1, 2020); Defendant Alsaleh (last utilized WhatsApp on Sept. 11, 2020 at 7:15 PM AST, and has used WhatsApp every day since Sept. 1, 2020).

[23] Dr. Saad also proposes to serve Defendants Alasaker, Alqahtani, Alhomid, Alsaleh, and Alhamed through Signal in addition to WhatsApp.  Signal is also an encrypted messaging application, and these defendants have Signal accounts tied to identical mobile phone numbers as their WhatsApp accounts.

Plaintiff's counsel has also located publicly available information that documents the accuracy of the Alternative Service Defendants' WhatsApp mobile phone numbers.  For example, Defendant Alhomid's WhatsApp account is linked to ████████████████████████████ ██████  Defendant Alhamed posted his name and a photograph of himself on his WhatsApp profile.  And the WhatsApp phone numbers for Defendants Algasem, Alsayed, Alhaqbani, and Alsaleh are linked to their names in publicly available sources.

Service by WhatsApp minimizes offense to Saudi law.  The use of a direct messaging application is an ordinary means of service of process in Saudi Arabia.  A Royal Decree issued by the King of Saudi Arabia in 2017 authorized service of process through electronic means, including through WhatsApp messages to an individual's mobile phone number.[24]  Declaration of Dr. Abdullah Alaoudh ("Alaoudh Decl.") ¶ 5.  Text messages, WhatsApp messages, and email to verified mobile phone numbers and email addresses are "valid and effective" means of service in Saudi Arabia, just like "other means traditionally recognized by the law," and are widely used.  *Id.* ¶ 6.

Accordingly, service by WhatsApp is appropriate under Rule 4(f)(3) and Rule 4(h)(2).  *See L.J. Star Inc.*, 2020 WL 1957155, at *4–6 (granting motion to serve via WhatsApp); *cf.* Short Form Order at 2, *Alzaabi v. Jaskon*, No. 713360/2018 (NY Sup. Ct. Queens Cty. Nov. 19, 2018), Dkt. 7 (granting motion to serve via WhatsApp where "the parties were able to communicate successfully via WhatsApp").

---

[24] Royal Decrees are a primary source of law in Saudi Arabia.  In fact, "no statutory laws or regulations, treaties, international agreements or concessions may be enacted, concluded or amended unless they are approved by Royal Decrees after having been studied, usually by both the Council of Ministers and the Shura Council."  Alaoudh Decl. ¶ 5 n.3 (quoting Abdullah F. Ansary, *An Overview of the Saudi Arabian Legal System*, GlobaLex §§ 4.2 & 4.3.11 (July/Aug. 2020), https://www.nyulawglobal.org/globalex/Saudi_Arabia1.html)).

### B.  Service by Mail to Business Addresses.

Plaintiff also proposes to serve each of the Alternative Service Defendants through trackable mail.  Given the lack of a systemic residential address system in Saudi Arabia, mail to individuals in Saudi Arabia is routinely routed through a recipient's place of employment.[25]  The Alternative Service Defendants' places of employment are publicly available, and serving process at those addresses is reasonably calculated to provide notice.  *See, e.g.*, *In re Coudert Bros. LLP*, No. 16-CV-8248 (KMK), 2020 WL 373838, at *2 (S.D.N.Y. Jan. 23, 2020) (granting alternative service by FedEx to defendant's email and work address "given that [defendant] is listed publicly at the e-mail address and workplace that Plaintiff seeks to use for service").  Further, service at Alternative Service Defendants' place of employment minimizes offense to Saudi law because Saudi law permits service of process at an individual's place of employment, and this method of service is common in Saudi Arabia.  Alaoudh Decl. ¶ 8–10.[26]

### C.  While Service Through WhatsApp and Mail to Business Addresses is Sufficient, The Court Could Also Order Supplemental Service Using Additional Available Methods.

Service through direct WhatsApp messages and mail to business addresses is sufficient to satisfy due process and provide actual notice.  However, if the Court wishes to supplement Plaintiff's proposed means of alternative service, additional methods are available.

---

[25] Dr. Saad proposes to serve Defendant bin Salman at Al Auja Palace, where he resides and holds official meetings, as well as at the Royal Court.  Dr. Saad has personally met with Defendant bin Salman at these locations on multiple occasions.  *See infra* Section III.A.i.

[26] Service upon an individual's place of employment is common in Saudi Arabia because the country does not have a well-developed system for residential addresses.  Alaoudh Decl. ¶ 10.  As a result, residential addresses tend to be identified using more descriptive addresses, such as key markers and signposts.  *Id.*  Because of the difficulty with locating addresses, delivery services tend to rely on the individual's place of employment and mobile phone number when making deliveries.  *Id.*







### III.     The Proposed Alternative Service Methods Are Reasonably Calculated to Provide Notice to Each Alternative Service Defendant.

To facilitate the Court's review of this Motion, in this section Dr. Saad outlines the available service methods as to each Alternative Service Defendant.[36]

#### A.     Defendant bin Salman.

Defendant bin Salman resides in Riyadh, Saudi Arabia at Al Auja Palace, from which he has orchestrated and directed the attempted extrajudicial killing of Dr. Saad.

#### i.     Methods of Proposed Service

Dr. Saad proposes serving Defendant bin Salman:  (1) by WhatsApp message to his personal WhatsApp account; and (2) by mail at his full-time place of residence at Al Auja Palace, along with his business address at the Royal Court.



[36] Plaintiff will send both English and Arabic language versions of the summons, complaint, and other required documents to each Alternative Service Defendant.

17

Defendant bin Salman communicates extensively through WhatsApp, and has engaged in multiple lengthy—and threatening—exchanges with Dr. Saad using the platform. *See, e.g.,* Compl. ¶ 133 (demanding Dr. Saad return to Saudi Arabia within "24 hours!"); *id.* ¶ 136 (threatening Dr. Saad that he would use "all available means" and personally "take legal measures, as well as other measures that would be harmful to you"); *id.* (insisting that "we shall certainly reach you"). It is publicly reported that Defendant bin Salman, like many Saudi officials, routinely relies upon WhatsApp to conduct official business.[37] Further, Plaintiff's counsel has confirmed Defendant bin Salman's use of WhatsApp in the last 24 hours.

Dr. Saad also proposes serving Defendant bin Salman by mail to Al Auja Palace and the Royal Court. Defendant bin Salman resides at Al Auja Palace when he is in Riyadh, Saudi Arabia, and regularly holds meetings there, including meetings described in the Complaint with Dr. Saad.[38] *See, e.g.,* Compl. ¶ 42. Defendant bin Salman also holds weekly meetings at the Royal Court, also located in Riyadh, Saudi Arabia.

These methods of service are consistent with methods of service approved in comparable circumstances. *See* Order at 17, *Hassen v. Nahyan*, No. 2:09-CV-01106 (C.D. Cal. July 10, 2012), ECF No. 96 (authorizing alternative service by mail, email, or facsimile on Sheikh Mohamed bin

---

[37]  For example, Defendant bin Salman has communicated with White House officials and the U.K. Prime Minister using WhatsApp. *See, e.g.*, Brett Samuels, *Kushner and Saudi Crown Prince Communicated Informally on WhatsApp: Report*, Hill, Oct. 17, 2018, https://thehill.com/homenews/administration/411971-kushner-and-saudi-prince-communicated-informally-on-whatsapp-report; Ben Riley-Smith & Christopher Hope, *Boris Johnson Communicated with Saudi Crown Prince on WhatsApp, Ex-UK Officials Say*, Telegraph, Jan. 22, 2020, https://www.telegraph.co.uk/news/2020/01/22/boris-johnson-communicated-saudi-crown-prince-whatsapp-ex-uk/.

[38]  سمو ولي ولي العهد يجتمع بنائب قائد الأركان البريطاني ويبحثان الجهود في مواجهة الإرهاب [Deputy Crown *See also* Prince Meets with Vice-Chief of British Defense Staff and They Discuss Efforts to Combat Terrorism], Jan. 24, 2016, https://www.my.gov.sa/wps/portal/snp/pages/news/newsDetails/CONT-news-224012016/ (reporting on meeting held by Defendant bin Salman at Al Auja Palace).

Zayed, the Crown Prince of Abu Dhabi, noting that if he could not be contacted at a personal residence, there are other means to contact the "places where [Mohamed bin Zayed] conducts civic and commercial activities").

### ii.      Supplemental Service Methods



### B.      Defendant MiSK Foundation.

Defendant MiSK Foundation holds itself out as a non-profit foundation, incorporated in Saudi Arabia, founded by Defendant bin Salman in his personal capacity. Compl. ¶ 55. Defendant Alasaker is the Secretary-General (or Executive Director) of the MiSK Foundation. *Id.* MiSK has served and continues to serve as a front for Defendant bin Salman and Defendant Alasaker's



initiatives to cultivate a network of agents willing to carry out sensitive operations, including the hunting of Dr. Saad in the United States.  *Id*. ¶ 56.

### i.      Methods of Proposed Service

Dr. Saad proposes serving Defendant MiSK Foundation:  (1) by WhatsApp message to the personal WhatsApp account of Defendant bin Salman, the founder of Defendant MiSK Foundation; (2) by WhatsApp message to the personal WhatsApp account of Defendant Alasaker, the Secretary-General of the MiSK Foundation; and (3) by mail to the MiSK Foundation's address in Saudi Arabia.

### ii.      Supplemental Service Methods



### C.      Defendant Alasaker.

Defendant Alasaker is a Saudi national who serves as the head of Defendant bin Salman's private office and the Secretary-General (or Executive Director) of the MiSK Foundation.  Compl. ¶ 38.  Through those dual roles Defendant Alasaker has cultivated a network of covert agents whom he has deployed to target individuals who undermine Defendant bin Salman in the United States, including Dr. Saad.  *Id*.

### i.      Methods of Proposed Service

Dr. Saad proposes serving Defendant Alasaker:  (1) by WhatsApp message to his personal WhatsApp account; (2) by Signal message to his personal Signal account; and (3) by mail to the addresses of the MiSK Foundation and the Executive Office of Defendant bin Salman's Personal Office, which Defendant Alasaker lists as his employers on his verified Twitter account.  Plaintiff's counsel has confirmed Defendant Alasaker's use of WhatsApp in the last 24 hours.  Counsel for Dr. Saad also confirmed that Defendant Alasaker has a Signal account associated with his number.

### ii.      Supplemental Service Methods



### D.      Defendant Alqahtani.

Defendant Alqahtani is a Saudi national who served as a top aide to Defendant bin Salman. Compl. ¶ 44.  Defendant Alqahtani played a supervisory role in the attempted extrajudicial killing of Dr. Saad and was involved in overseeing the members of the Tiger Squad who were dispatched to kill Dr. Saad.  *Id*. ¶ 45.

### i.      Methods of Proposed Service

Dr. Saad proposes serving Defendant Alqahtani:  (1) by WhatsApp message to his personal WhatsApp account; (2) by Signal message to his personal Signal account; (3) by mail to his last-known work address, at the Saudi Royal Court; and (4)

Service through Defendant Alqahtani's last known place of employment at the Saudi Royal Court is reasonably calculated to provide notice to Defendant Alqahtani because he covertly continues to be employed by the Royal Court despite losing his formal position after the killing of

Jamal Khashoggi, in which he played a leadership role.[41]  After mounting pressure following the international backlash surrounding Khashoggi's killing, Defendant Alqahtani was purportedly removed from his official position in October 2018, despite Defendant bin Salman's reported reluctance.[42]  But Defendant Alqahtani continues to function in effectively the same role today.[43]



ii.      **Supplemental Service Methods**

---

[41] *See* Martin Chulov, *Saud al-Qahtani: Who is Fixer Cleared by Saudis over Khashoggi Murder?*, The Guardian, Dec. 23, 2019, https://www.theguardian.com/world/2019/dec/23/saud-al-qahtani-saudi-fixer-khashoggi; *Who Are Asiri, al-Qahtani Dismissed over Khashoggi's Case*, Egypt Today, Oct, 20, 2018, https://www.egypttoday.com/Article/1/59255/Who-are-Asiri-al-Qahtani-dismissed-over-Khashoggi%E2%80%99s-case.

[42] Chulov, *Saud al-Qahtani*, *supra* note 41.

[43] *Id.*  Defendant Alqahtani also continues to maintain an official email account at the Royal Court.



███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

### E.    Defendant Alassiri.

Defendant Alassiri is a close personal confidant and advisor to Defendant bin Salman. Compl. ¶ 45.  Defendant Alassiri played a supervisory role in the attempted extrajudicial killing of Dr. Saad and was involved in overseeing the members of the Tiger Squad who traveled to kill Dr. Saad.  *Id*. ¶ 52.

### i.    Methods of Proposed Service

Dr. Saad proposes serving Defendant Alassiri:  (1) by WhatsApp message to his personal WhatsApp account; and (2) by mail to his last-known work address.

Dr. Saad has directly communicated with Defendant Alassiri via WhatsApp.  As is customary amongst Saudi government officials, and based on Dr. Saad's personal experience, Defendant Alassiri uses WhatsApp to coordinate official meetings and to communicate about substantive matters.  Plaintiff's counsel has confirmed Defendant Alassiri's use of WhatsApp in the last 24 hours.

Service on Defendant Alassiri at his last place of employment, the General Intelligence Presidency, through mail is reasonably calculated to provide Defendant Alassiri with notice because he remains connected to the agency.  Like Defendant Alqahtani, Defendant Alassiri was publicly accused of involvement in the killing of Jamal Khashoggi.  After international condemnation surrounding Khashoggi's killing, Defendant Alassiri was purportedly terminated from his government position and put on trial in Saudi Arabia, but he was acquitted in

2019.[46]  Defendant Alassiri continues to work for Defendant bin Salman through the General

Intelligence Presidency, albeit less visibly.[47]

**ii.     Supplemental Service Methods**

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████

**F.     Defendant Alhamed.**

Defendant Alhamed is a Saudi national and founder and president of Saudi Elite Group

("Saudi Elite"), a Saudi Arabia-based organization focused on promoting Defendant bin Salman's

plan for economic and social reform.  Compl. ¶ 63.  At the direction of Defendants bin Salman and

Alasaker, Defendant Alhamed actively participated in the hunt inside the United States to locate

Dr. Saad.  *Id*. ¶ 64.

Defendant Alhamed's last known residential address is in the United States, and Plaintiff

attempted to serve him there pursuant to Rule 4(e) on August 11, 2020.  It appears Defendant

Alhamed has now departed the United States and resides in or around Riyadh, Saudi Arabia.[48]

---

[46] Marwa Rashad & Mark Hosenball, *Saudi Arabia Sentences Five to Death over Khashoggi Murder, U.N. Official Decries 'Mockery'*, Reuters, Dec. 23, 2019, https://www.reuters.com/article/us-saudi-khashoggi/saudi-arabia-sentences-five-to-death-over-khashoggi-murder-u-n-official-decries-mockery-idUSKBN1YR0SY.

[47] *See IntelBrief: Rewarding Bad Behavior? Saudi Arabia and the G-20 Summit in Riyadh*, Soufan Ctr. (July 9, 2020), https://thesoufancenter.org/intelbrief-rewarding-bad-behavior-saudi-arabia-and-the-g-20-summit-in-riyadh/.

[48]  *See* Mohammed AlHamed (@M7Alhamed), Twitter (Feb. 15, 2020, 3:49 AM), https://twitter.com/M7Alhamed/status/1228602202232541185 (tweeting photos of an event in Saudi Arabia); Mohammed AlHamed (@M7Alhamed), Twitter (June 14, 2020, 10:35 AM), https://twitter.com/M7Alhamed/status/1272175911543230466/photo/1 (tweeting a photo of a street in Riyadh, Saudi Arabia).

25

According to his Twitter profile, Defendant Alhamed is based in Washington, D.C. and Riyadh, Saudi Arabia.  *Id.*

### i.     Methods of Proposed Service

Dr. Saad proposes serving Defendant Alhamed:  (1) by WhatsApp message to his personal WhatsApp account; (2) by Signal message to Defendant Alhamed's personal Signal account, linked to the same mobile phone number; and (3) by mail to the address of his organization Saudi Elite in Riyadh, Saudi Arabia.  Defendant Alhamed has a WhatsApp account that identifies his name and photograph in its profile, and Plaintiff's counsel has confirmed Defendant Alhamed's use of WhatsApp in the last 24 hours.  Defendant Alhamed is publicly identified as the President and Founder of Saudi Elite, whose address in Saudi Arabia is publicly available.[49]

### ii.     Supplemental Service Methods



---

[49]  *See*  Mohammed  AlHamed,  LinkedIn,  https://www.linkedin.com/in/mohammed-alhamed-930279140; *About*, Saudi Elite Group, LinkedIn, https://www.linkedin.com/company/saudi-elite-organization/about/.

███████████████████████████████████████████

███████

### G.   Tiger Squad Defendants.

The "Tiger Squad" is a private death squad made up of approximately 50 intelligence, military, and forensic operatives recruited from different branches of the Saudi government with one unifying mission:  loyalty to the personal whims of Defendant bin Salman.  Compl. ¶ 72.  The five members of the Tiger Squad named in the Complaint—Defendants Alsaleh, Algasem, Alhomid, Alsayed, and Alhaqbani (collectively, the "Tiger Squad Defendants")—were assembled to kill Dr. Saad and obtained tourist visas in May 2018 for the purpose of killing Dr. Saad, and some of the Tiger Squad Defendants traveled on a mission in October 2018 to carry out that killing. *Id.* ¶ 75.

### i.   Methods of Proposed Service

Dr. Saad proposes serving the Tiger Squad Defendants:  (1) by WhatsApp messages to each defendant's personal WhatsApp account; and (2) by mail to their places of employment.  Dr. Saad further proposes serving Defendants Alhomid and Alsaleh by Signal messages to their personal Signal accounts, linked to the same mobile phone numbers as their WhatsApp accounts.

Contact and employment information for the Tiger Squad Defendants was obtained in connection with their applications for travel to Canada, which was planned and carried out for the purpose of killing Dr. Saad.  This information was submitted by the Tiger Squad Defendants in official government documents with an accompanying declaration that each question was answered "fully and truthfully."[52]  Plaintiff's counsel has also confirmed that each of the Tiger

---

[52] Application for Visitor Visa (Temporary Resident Visa) at 5, Gov't of Canada, https://www.canada.ca/content/dam/ircc/migration/ircc/english/pdf/kits/forms/imm5257e.pdf.

Squad Defendants have accessed their WhatsApp accounts within the last 24-30 hours of filing this motion.[53]

## **CONCLUSION**

Dr. Saad respectfully requests that the Court grant his motion for alternative service.

Dated: September 11, 2020

Respectfully submitted,

JENNER & BLOCK LLP

/s/ David Pressman

David Pressman (admitted *pro hac vice*)
D.C. Bar No. 1013431
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com

Lindsay Harrison
D.C. Bar No. 977407
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Telephone:  (202) 639-6865
Fax:  (202) 639-6066
lharrison@jenner.com

*Counsel for Plaintiff*