**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DR. SAAD ALJABRI,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-02146-TJK |
| | ) | |
| **MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD,** *et al.*, | ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION OF MESSRS. ALQAHTANI, ALASSIRI, ALSALEH,**
**ALSAYED, ALGASEM, ALHAQBANI, AND ALHOMID**
**TO DISMISS THE COMPLAINT**

Saud Alqahtani, Ahmed Alassiri, Mishal Fahad Alsayed, Khalid Ibrahim Abdulaziz Algasem, Saud Abdulaziz Alsaleh, Bandar Saeed Alhaqbani, and Ibrahim Hamad Abdulrahman Alhomid, (for purposes of this Motion, the "Defendants,") by and through undersigned counsel, hereby move this Court for an Order dismissing the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(7) for failure to join an essential party, and under Rule 12(b)(6) for failure to state a claim. The grounds for this Motion are set forth in the accompanying Memorandum in Support of the Defendants' Motion to Dismiss.

Respectfully Submitted,


_____/s/_____
Barry J. Pollack (DC Bar #434513)
Law Offices of Barry J. Pollack, LLC
1629 K Street, N.W., Suite 300
Washington, DC 20006
202-230-9647
barryjpollack@gmail.com


_____/s/_____
Jessica N. Carmichael (DC Bar #998952)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

*Attorneys for the Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DR. SAAD ALJABRI,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 1:20-cv-02146-TJK** |
| | ) | |
| **MOHAMMED BIN SALMAN BIN** | ) | |
| **ABDULAZIZ AL SAUD,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF
MESSRS. ALQAHTANI, ALASSIRI, ALSALEH,
ALSAYED, ALGASEM,  ALHAQBANI, AND ALHOMID
<u>TO DISMISS THE COMPLAINT</u>**

# TABLE OF CONTENTS

**Page(s)**

BACKGROUND .................................................................................................................... 1

ARGUMENT ........................................................................................................................ 6

I.  This Court lacks personal jurisdiction over Messrs. Alqahtani, Alassiri, Alsayed, Algasam, Alsaleh, Alhaqbani, and Alhomid ("the Defendants"). ................................. 6

    A.  The Complaint fails adequately to allege general jurisdiction over the Defendants. ...................................................................................................... 8

    B.  The Complaint fails adequately to allege specific personal jurisdiction over the Defendants. ................................................................................................. 8

        1.  The Court lacks personal jurisdiction over Messrs. Alqahtani and Alassiri ......................................................................................... 8

        2.  The Court lacks personal jurisdiction over Messrs. Alsayed, Algasam, Alhaqbani, and Alhomid. ................................................... 14

        3.  The Court lacks personal jurisdiction over Mr. Alsaleh .................... 14

    C.  Asserting jurisdiction over the Defendants would offend notions of fair play and substantial justice. ................................................................................ 15

II.  The Court lacks subject matter jurisdiction because the Defendants are immune from suit. ................................................................................................................... 16

    A.  The Defendants are entitled to conduct-based immunity under the State Department's  established policy because they are each an official of a foreign state allegedly performing acts  in his official capacity. ................................ 17

    B.  Exercising jurisdiction would have the effect of enforcing a rule of law against the foreign state and therefore the Defendants are entitled to immunity under the Restatement (Second). ............................................................................ 23

III.  The Act of State Doctrine precludes the Court from inquiring into the validity of public acts taken by a recognized foreign sovereign within its own territory. .......... 24

# TABLE OF CONTENTS —CONT'D

IV.    Saudi Arabia is a necessary and indispensable party that is immune from suit. ......................25

V.    If the Court were to find it has personal and subject matter jurisdiction, the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim.................................25

    A.    The claims are not pled with sufficient specificity plausibly to state a claim..............25

        1.    The allegations against Messrs. Alassiri, Alqahtani, and Alsaleh are purely conclusory and therefore fail to state a claim. ........................................27

            i.    Messrs. Alassiri and Alqahtani.................................................27

            ii.    Mr. Alsaleh.................................................................................28

        2.    The allegations against Messrs. Alsayed, Alhomid, Alhaqbani, and Algasem are purely conclusory and therefore fail to state a claim..................29

    B.    The Torture Victim Protection Act claim (the first cause of action) fails to state a claim as   a matter of law.................................................................................................31

    C.    The Alien Tort Statute claim (the second cause of action) fails to state a claim as a matter of law. .............................................................................................31

    D.    The first and second cases of action also fail to state a claim because secondary liability for an attempted tort is not a viable claim as a matter of law. ........................31

        1.    The first and second causes of action fail to state claims against Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid by alleging an entirely inchoate, abandoned attempt to commit murder.................................................32

        2.    The first and second causes of action fail to state a claim for the secondary liability of Messrs. Alqahtani, Alassiri, and Alsaleh based on their alleged aiding and abetting or conspiring with Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid in their alleged attempt...............................33

    E.    The claims under the ATS and TVPA should be dismissed because secondary lability is    not cognizable under those statutes..............................................................35

    F.    The claim for intentional infliction of emotional distress (the third cause of action) fails to state a claim.................................................................................35

CONCLUSION ....................................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta Orellana v. CropLife Int'l,*
711 F. Supp. 2d 81 (D.D.C. 2010) ................................................................... 44

*Agee v. Sebelius,*
668 F. Supp. 2d 1 (D.D.C. 2009) .................................................................... 17

*Ali v. Mid-Atl. Settlement Servs., Inc.,*
640 F. Supp. 2d 1 (D.D.C. 2009) .................................................................... 44

*ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.,*
293 F.3d 707 (4th Cir. 2002) .......................................................................... 18

*American Justice Center et al. v. Modi,*
2015 U.S. Dist. LEXIS 177427 (S.D.N.Y. Jan. 14, 2015) .............................. 27

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.,*
480 U.S. 102 (1987) ......................................................................................... 25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... 19

*Atlantigas Corp. v. Nisource, Inc.,*
290 F. Supp. 2d 34 (D.D.C. 2003) ............................................................. 17, 20

*Baker Botts LLP v. ASARCO LLC,*
576 U.S. 121 (2015) ......................................................................................... 34

*Bashe Abdi Yousuf v. Mohamed Ali Samantar,*
699 F.3d 763 (4th Cir. 2012) .......................................................................... 30

*Beanal v. Freeport-McMoran, In*c.,
197 F.3d 161 (5th Cir. 1999) .......................................................................... 36

*Belhas v. Ya'alon,*
515 F.3d 1279 (D.C. Cir. 2008) ...................................................................... 28

*Boim v. Holy Land Found. for Relief & Dev.,*
549 F.3d 685 (7th Cir. 2008) .......................................................................... 42

*Boniface v. Viliena,*
338 F. Supp. 3d 50 (D. Mass. 2018) ............................................................... 45

## TABLE OF AUTHORITIES — CONT'D

*Br. for the United States of America as Amicus Curiae in Support of Affirmance at 4, Mahar v. Dichter*,
   No. 07-2579-cv (2d Cir. Dec. 19, 2007), 2007 WL 6931924 ............................................................ 28

*Broidy Capital Mgmt. LLC v. Muzin*,
   2020 WL 1536350 (D.D.C. Mar. 31, 2020) ........................................................................ 27

*Burma Task Force v. Sein*,
   2016 U.S. Dist. LEXIS 42326 (S.D.N.Y. Mar. 30, 2016) .................................................. 27

*Burnett v. Al Baraka Inv. and Dev. Corp.*,
   274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................................... 44, 45

*Cabello v. Fernandez-Larios*,
   402 F.3d 1148 (11th Cir. 2005) ............................................................................. 36

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
   334 F.3d 390 (4th Cir. 2003) ............................................................................... 18

*Carswell v. Air Line Pilots Ass'n Int'l*,
   540 F.Supp.2d 107 (D.D.C.2008) ...................................................................... 21, 37

*Cenco, Inc. v. Seidman & Seidman*,
   686 F.2d 449 (7th Cir. 1982) ................................................................................ 42

*Cockrum v. Donald J. Trump for President, Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018) ........................................................................ 21

*Corsi v. Caputo*,
   2020 WL 1703934 (D.D.C. Apr. 7, 2020) (Kelly, J.) ...................................................... 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ......................................................................................... 18

*Dixon v. City of Lawton, Okla.*,
   898 F.2d 1443 (10th Cir.1990) ............................................................................. 43

*Doe v. Buratai*,
   318 F. Supp. 3d 218 (D.D.C. 2018) ................................................................... *passim*

*Doe v. Buratai*,
   792 F. App'x 6 (D.C. Cir. 2019) (per curiam) ............................................................ 24

*Doe v. Constant*,
   2006 U.S. Dist. LEXIS 101961 (S.D.N.Y. Oct. 24, 2006) ................................................ 45

# TABLE OF AUTHORITIES — CONT'D

*Doe v. Exxon Mobil Corp.*,
  654 F.3d 11 (D.C. Cir. 2011), vacated, 527 F. App'x 7 (D.C. Cir. 2013) .......................................... 36

*Doğan v. Barak*,
  932 F.3d 888 (9th Cir. 2019) ........................................................................................ 27, 33, 34

*Duarte v. Nolan*,
  190 F. Supp. 3d 8 (D.D.C. 2016) ........................................................................................ 20

*First Chicago Int'l v. United Exch. Co., Ltd.*,
  836 F.2d 1375 (D.C. Cir. 1988) ........................................................................................ 19

*Gill v. Islamic Republic of Iran*,
  249 F. Supp. 3d 88 (D.D.C. 2017) ........................................................................................ 45

*Giraldo v. Drummond Co.*,
  808 F. Supp. 2d 247 (D.D.C. 2011), aff'd, 493 F. App'x 106 (D.C. Cir. 2012) (per
  curiam) .................................................................................................................... 27

*Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C.*,
  288 F. Supp. 2d 482 (S.D.N.Y. 2003) ........................................................................................ 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ........................................................................................................ 18

*Gregory v. Mihaylov*,
  No. 1:12-CV-2266-TWT, 2013 U.S. Dist. LEXIS 1251 (N.D. Ga. Jan. 4, 2013) ........................... 17

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ........................................................................................ 36, 37

*Halverson v. Univ. of Utah Sch. of Med.*,
  No. 2:06CV228 DAK, 2007 U.S. Dist. LEXIS 72974 (D. Utah Sep. 28, 2007) ............................. 43

*Heath v. Alabama*,
  474 U.S. 82 (1985) ........................................................................................................ 34

*Indem. Ins. Co. of N. Am. v. K-Line Am.*,
  Inc., 2007 U.S. Dist. LEXIS 43567 (S.D.N.Y. June 13, 2007) ........................................... 17

*Ivey v. Lynch*,
  No. 1:17CV439, 2018 U.S. Dist. LEXIS 133656 (M.D.N.C. Aug. 8, 2018) ................................... 33

*Jaramillo v. Naranjo*,
  No. 10-21951-CIV, 2014 U.S. Dist. LEXIS 138887 (S.D. Fla. Sep. 30, 2014) ............................. 36

*Jazini by Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998) ........................................................................................ 17

## TABLE OF AUTHORITIES — CONT'D

*Jenkins v. Wachovia Bank, Nat'l Ass'n,*
 309 Ga. App. 562 (2011) ................................................................ 44

*Khatib v. All. Bankshares Corp.,*
 846 F. Supp. 2d 18 (D.D.C. 2012) ................................................ 19

*Lewis v. Mutond,*
 918 F.3d 142 (2019).......................................................................... 34

*Malden Transp., Inc. v. Uber Techs.,*
 Inc., 404 F. Supp. 3d 404 (D. Mass. 2019) ................................ 43

*Manouchehr Mohammadi v. Islamic Republic of Iran,*
 947 F. Supp. 2d 48 (D.D.C. 2013)), aff'd, No. 18-7170, 2019 WL 668339 (D.C.
 Cir. Feb. 15, 2019) ........................................................................ 24

*Matar v. Dichter,*
 563 F.3d 9 (2d Cir. 2009)...................................................... 27, 30, 31

*Miango v. Democratic Republic of Congo,*
 Civil Action No. 15-1265 (ABJ), 2020 U.S. Dist. LEXIS 113722 (D.D.C. June 29,
 2020) ................................................................................ 26, 29, 32

*Mohamad v. Palestinian Authority,*
 566 U.S. 449 (2012) ...................................................................... 36

*Moriah v. Bank of China,*
 Ltd., 107 F. Supp. 3d 272 (S.D.N.Y. 2015) ................................26, 32

*Nat'l Resident Matching Program v. Elec. Residency LLC,*
 720 F. Supp. 2d 92 (D.D.C. 2010) .............................................. 17

*Nikbin v. Islamic Republic,*
 471 F. Supp. 2d at 73 .................................................................... 24

*Nnaka v. Fed. Republic of Nigeria,*
 756 F. App'x 16 (D.C. Cir. 2019) .............................................. 34

*Nuevos Destinos, LLC v. Peck,*
 2019 WL 78780 (D.D.C. Jan. 2, 2019) ......................................20, 23

*Ofisi v. BNP Paribas, S.A.,*
 2018 WL 396234 (D.D.C. Jan. 11, 2018) ..................................21, 36

*Oussama El Omari v. Ras Al Khaimah Free Trade Zone Auth.,*
 2017 U.S. Dist. LEXIS 136172 (S.D.N.Y. Aug. 17, 2017)................ 32

## TABLE OF AUTHORITIES — CONT'D

*Pimal Prop. v. Capital Ins. Grp., Inc.,*
  No. CV11-02323-PHX-DGC, 2012 U.S. Dist. LEXIS 24172 (D. Ariz. Feb. 27,
  2012) ............................................................................................................................... 44

*Price v. Socialist People's Libyan Arab Jamahiriya,*
  294 F.3d 82 (D.C. Cir. 2002) ........................................................................................... 23

*Ragsdale v. Lashkar-E-Taiba,*
  No. 1:11-cv-03893-DLI-CLP, ECF No. 19-1 (E.D.N.Y.) .................................................. 28

*Richardson v. Attorney General of the British Virgin Islands,*
  2013 U.S. Dist. LEXIS 117763, 2013 WL 4494975 (D.V.I. Aug. 20, 2013) ..................... 29

*Rishikof v. Mortada,*
  70 F. Supp. 3d 8 (D.D.C. 2014) .................................................................................... 29, 30

*In re Ross Sys. Sec. Litig.,*
  No. C-94-0017-DLJ, 1994 U.S. Dist. LEXIS 21263 (N.D. Cal. July 21, 1994) ................ 44

*Samantar v. Yousuf,*
  560 U.S. 305 (2010) ...................................................................................................... 28, 29

*Sinaltrainal v. Coca-Cola Co.,*
  578 F.3d 1252 (11th Cir. 2009) *abrogated on other grounds* ....................................... 36

*Smith v. Ghana Commer. Bank, Ltd.,*
  No. 10-4655, 2012 U.S. Dist. LEXIS 99735 (D. Minn. June 18, 2012) ....................... 29, 33

*Snow v. DirecTV,*
  450 F.3d 1314 (11th Cir. 2006) ....................................................................................... 17

*Stutts v. De Dietrich Grp.,*
  No. 03-CV-4058 (ILG), 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. June 30, 2006) .......... 44

*Tawfik v. al-Sabah,*
  2012 U.S. Dist. LEXIS 115946 (S.D.N.Y. Aug. 16, 2012)) ............................................. 27

*Taylor v. Am. Chemistry Council,*
  576 F.3d 16 (1st Cir. 2009) ............................................................................................ 44

*In re Terrorist Attacks on Sept. 11, 2001,*
  122 F. Supp. 3d 181 (S.D.N.Y. 2015) ............................................................................. 31

*Tolton v. Day,*
  Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793 (D.D.C. May 19,
  2020) ............................................................................................................................... 35

*United States v. Gladish,*
  536 F.3d 646 (7th Cir. 2008) ........................................................................................... 42

## TABLE OF AUTHORITIES — CONT'D

*Unspam Techs., Inc. v. Chernuk,*
  716 F.3d 322 (4th Cir. 2013) ............................................................................. 18

*Walden v. Fiore,*
  571 U.S. 277 (2014) ............................................................................. 19, 20, 21

*Warfaa v. Ali,*
  33 F. Supp. 3d 653 (E.D. Va. 2014), *aff'd*, 811 F.3d 653 (4th Cir. 2016) ......... 45

*Weiming Chen v. Ying-Jeou Ma,*
  2013 U.S. Dist. LEXIS 118668 (S.D.N.Y. Aug. 19, 2013) ................................ 29

*Weisskopf v. Neeman,*
  No. 11-cv-665-wmc, 2013 U.S. Dist. LEXIS 201309 (W.D. Wis. Mar. 20, 2013) ........... 32, 46

## Other Authorities

Bradley Hope, Justin Scheck & Warren P. Strobel, *Saudi Arabia Wants its Fugitive*
  *Spymaster Back*, Wall St. J., July 17, 2020 ................................................... 22

*Family of Exiled Top Saudi Officer Saad Al-Jabri 'Targeted'*, BBC, May 25, 2020,
  https://www.bbc.com/news/world-middle-east-52790864) ............................... 22

Federal Rule of Civil Procedure 4(k)(2) ............................................................... 46

Hazel Fox, *The Law of State Immunity* (2d. ed. 2008) ......................................... 26

*Hero. He's Now the Target of a Brutal Campaign by MBS*, Wash. Post, May 28, 2020 ............ 23

https://www.reuters.com/article/us-saudi-khashoggi-adviser-insight/how-the-man-
  behind-khashoggi-murder-ran-the-killing-via-skype-idUSKCN1MW2HA ................... 13

*Khashoggi Crisis*, CNN, Nov. 16, 2018,
  https://www.cnn.com/2018/10/15/opinions/how-the-saudis-played-trump-
  bergen/index.html; ................................................................................... 22

Prosser, *Handbook of the Law of Torts* 293 (4th ed. 1971) .................................. 43

Restatement (Second) of Agency § 14 (1958); ..................................................... 21

Restatement (Second) of Foreign Relations Law of the United States §66(f) (1965) ........... 27

Restatement (Third) of Agency § 1.01 (2006) ................................................ 21, 37

Rule 12(b)(6) ...................................................................................................... 35

Saudi Palace Coup, Reuters, July 19, 2017 .......................................................... 22

The Complaint reads like a novel, and not a realistic work of fiction at that. The plaintiff, Dr. Saad Aljabri, does not and cannot allege facts to support the fantastic claims he makes against Saud Alqahtani, Ahmed Alassiri, Mishal Fahad Alsayed, Khalid Ibrahim Abdulaziz Algasem, Saud Abdulaziz Alsaleh, Bandar Saeed Alhaqbani, or Ibrahim Hamad Abdulrahman Alhomid (for purposes of this Motion, the "Defendants"). The Complaint posits a plot by the Defendants, Saudi citizens, to kill Aljabri in Canada. None of the Defendants were aware of, much less participated in, any such scheme. The Complaint, in any event, must be dismissed on a number of legal grounds. As an initial matter, the Complaint fails to come close to alleging that the Defendants had sufficient contacts with the United States related to the purported plot to give this Court personal jurisdiction over them. In addition to lacking personal jurisdiction over the Defendants, the Court lacks subject matter jurisdiction over the claims asserted. Further, the claims are barred by the Act of State Doctrine and the Complaint fails to join a necessary party. Finally, the Complaint fails to state a claim. For each of these reasons, the Complaint should be dismissed.

## BACKGROUND

The Defendants incorporate and adopt by reference the Introduction and Summary of Allegations and Materials Cited in the Complaint in the Motion to Dismiss filed by His Royal Highness Mohammed bin Salman bin Abdulaziz Al Saud, the Crown Prince of the Kingdom of Saudi Arabia ("the Crown Prince"). *See Defendant Mohammed bin Salman bin Abdulaziz Al Saud's Motion to Dismiss* ("Crown Prince Mot. to Dismiss") pp. 1-11.

Aljabri's complaint contains numerous factual allegations unrelated to the causes of actions he asserts. For example, the Complaint contains repeated references to Jamal Khashoggi, allegations that, while salacious (and based on media reports, rather than any purported first-hand knowledge), are wholly unrelated to any of the three causes of actions asserted against the Defendants, each of which is premised on a supposed plot to assassinate Aljabri in Canada in October 2018. Count One

claims that supposed Defendants "personally committed, conspired with, or aided and abetted the commission of the attempted extrajudicial killing" (Compl. at ¶ 259) of Aljabri in Canada, in violation of the Torture Victim Protection Act (TPVA); Count Two claims that the same alleged attempted extrajudicial killing violated the Law of Nations under the Alien Tort Statute (ATS); and Count Three claims that the same alleged attempted extrajudicial killing of Aljabri constituted the intentional infliction of emotional distress (IIED). The Complaint asserts that the Court has personal jurisdiction over the Defendants for the first two causes of action "pursuant to Federal Rule of Civil Procedure 4(k)(2) because these Defendants engaged in intentional, tortious conduct directed at the United States, and this action arises out of that conduct," and over the third cause of action because it arises out of a common nucleus of facts as the first two. *See* Compl. at ¶86; 92.[1]

The following summarizes the Complaint's factual allegations against each of the seven Defendants as they relate to these three causes of action.

*Saud Alqahtani*

Saud Alqahtani is alleged to be a Saudi national who is characterized as a former top aide to the Crown Prince. He is alleged to have been a director and supervisor of the so-called "Tiger Squad." Without providing any specific factual allegations, the Complaint alleges in conclusory fashion, based on "information and belief," that Mr. Alqahtani planned, oversaw, and coordinated a mission to kill Aljabri in Canada, "dispatched" the "Tiger Squad" to Canada for this purpose, and "possessed and

---

[1] As discussed in the Crown Prince's Motion to Dismiss, p.1, Aljabri is being prosecuted in Saudi Arabia for participating in a massive scheme to misuse or steal billions of dollars of Saudi funds. Adult children of Aljabri have been arrested in Saudi Arabia for their complicity in this scheme. To the extent Aljabri's IIED claim is based in part on the arrest of his children, the Complaint does not allege that the Defendants were involved in any way in the arrest of his children.

exercised command and operational control over the Tiger Squad Defendants in connection with the attempted extrajudicial killing of Dr. Saad." *See id.* at ¶¶ 44-50; 249.[2]

The Complaint alleges no contacts of Mr. Alqahtani with the United States related to the alleged plot to kill Aljabri. The only contacts of Alqahtani with the United States alleged in the Complaint are that "Defendant Alqahtani served as a member of the board of directors of the MiSK Foundation" (*id.* at ¶ 47) and that he "engaged several Washington, D.C.-based public relations firms in connection with lobbying activities in the United States" *in 2016*, (*id.* at ¶ 49), two years before the alleged plot to kill Aljabri in Canada. There are no factual allegations connecting Mr. Alqahtani's membership on the board of the MiSK Foundation or his retention of lobbying firms to his purported involvement in an attempted extrajudicial killing.

While the Complaint alleges in conclusory fashion that Mr. Alqahtani "coordinated the tracking of Dr. Saad in the United States" (*id.* at ¶ 245), the Complaint's allegations related to supposed efforts to "recruit" people to "track" or "hunt" for Aljabri in the United States do not even mention Mr. Alqahtani. *See id.* at ¶ 14 ("Acting through his personal charitable foundation, *Defendant Prince Mohammed Bin Salman bin Abdulaziz Foundation* (also known as the "MiSK Foundation") and *Defendant Bader Alasaker* ("Defendant Alasaker"), *Defendant bin Salman* recruited and deployed a network of Saudi

---

[2] The Complaint also alleges that Mr. Alqahtani Tweeted, "Do you think I'm acting on my own whim? I am a civil servant and a faithful executioner of the orders of the King and the Crown Prince." *Id.* at ¶ 48. The Complaint implies that this tweet pertains to the alleged attempted extrajudicial killing of Aljabri only through supposition, using the word "presumably." *See id* at ¶48 ("Defendant Alqahtani published a tweet stating explicitly that all of his actions and activities—presumably including extrajudicial killing—are carried out at the direction of Defendant bin Salman."). The Complaint fails to provide a date or context with respect to this alleged tweet, but it cites an article dated October 23, 2018 that states that the tweet was "last summer" – well before the alleged plot to kill Aljabri in Canada. *See id.* at n.16 (citing https://www.reuters.com/article/us-saudi-khashoggi-adviser-insight/how-the-man-behind-khashoggi-murder-ran-the-killing-via-skype-idUSKCN1MW2HA). The Complaint, therefore, does not allege facts, that, if true, would plausibly establish any connection between the tweet by Mr. Alqahtani and an attempted plot kill Aljabri.

agents living in the United States (the "U.S.-Based Covert Agent Defendants") who used covert and deceptive means to hunt Dr. Saad and his family in Boston, Massachusetts . . . .") (emphasis added); *id.* at ¶ 59 ("Acting at the direction of *Defendant bin Salman* and relying largely on *Defendant MiSK Foundation* as a front, *Defendant Alasaker* recruited and organized a network of agents in the United States and deployed these individuals (the "U.S.-Based Covert Agent Defendants"), identified in the paragraphs that immediately follow, to hunt down and locate Dr. Saad and his family—ultimately in furtherance of his extrajudicial killing—in and around September 2017.") (emphasis added).

*Ahmed Alassiri*

Ahmed Alassiri is alleged to be a Saudi national who was Deputy Intelligence Chief for Saudi Arabia's principal intelligence agency. *Id.* at ¶51. The Complaint alleges, "On information and belief, Defendant Alassiri played a supervisory role in the attempted extrajudicial killing of Dr. Saad and was involved in overseeing the members of the Tiger Squad who traveled to Canada to kill Dr. Saad." *Id.* at ¶52. Again, with no specific factual allegations, the Complaint alleges Mr. Alassiri planned, oversaw, and coordinated the supposed mission to kill Aljabri in Canada. *Id.* at 245, 249, 251. He also allegedly "dispatched" the Tiger Squad to Canada. *Id.* at ¶225.

The Complaint alleges no contacts of Mr. Alassiri with the United States related to the alleged plot to kill Aljabri. While, as with Mr. Alqahtani, the Complaint alleges in conclusory fashion that Mr. Alassiri "coordinated the tracking of Dr. Saad in the United States" (*id.* at ¶ 245), as quoted above, the Complaint's only allegations in that regard fail to mention Mr. Alassiri. The Complaint makes no other factual allegations of contacts by Mr. Alassiri with the United States.

*Mishal Fahad Alsayed*

Mishal Alsayed is alleged to be a Saudi national and forensic DNA expert who worked for the General Department of Criminal Evidence in the Ministry of Interior and holds the rank of lieutenant

colonel.  The Complaint alleges the conclusion, with no supporting factual allegations, that he was a member of the "Tiger Squad" who traveled to Canada for the purpose of killing Aljabri. *Id.* at ¶77.

The Complaint alleges no contacts of Mr. Alsayed with the United States related to the alleged plot to murder Aljabri.  Indeed, the Complaint makes no allegations whatsoever, not even conclusory allegations, of any contacts by Mr. Alsayed with the United States.

*Khalid Ibrahim Abdulaziz Algasem*

Khalid Algasem is alleged to be a Saudi national and forensic DNA expert who works for the General Department of Criminal Evidence in the Ministry of Interior.  The Complaint alleges the conclusion, with no supporting factual allegations, that he was a member of the "Tiger Squad" who traveled to Canada for the purpose of killing Aljabri.  *Id.* at ¶78.  As with Mr. Alsayed, the Complaint makes no allegations, not even conclusory allegations, of any contacts by Mr. Algasem with the United States.

*Saud Abdulaziz Alsaleh*

Saud Alsaleh is alleged to be a Saudi national and military intelligence officer in the Intelligence Department of the Ministry of Defense.  The Complaint makes the conclusory allegation that Mr. Alsaleh is allegedly a coordinator or leader of the "Tiger Squad" and that he "took actions for the purpose of extrajudicially killing Dr. Saad." *Id.* at ¶79.  The Complaint makes no factual allegations as to what actions Mr. Alsaleh purportedly took with respect to the supposed plot to kill Aljabri.  As with Messrs. Alsayed and Algasem, the Complaint makes no allegations, not even conclusory allegations, of any contacts by Mr. Alsaleh with the United States.[3]

---

[3]  The Complaint also alleges that "Defendant Alsaleh attended a program for 'senior military officers' in the Asia-Pacific region hosted by the Nanyang Technical University in Singapore" in 2019 (*id.* at ¶79 n. 41), without alleging any relationship at all between his participation in this program in Singapore and the alleged plot to kill Aljabri in Canada a year earlier.

*Bandar Saeed Alhaqbani*

Bandar Alhaqbani is alleged to be a Saudi national employed by the Ministry of Interior in Saudi Arabia.  The Complaint alleges the conclusion, with no supporting factual allegations, that he was a member of the "Tiger Squad" who traveled to Canada for the purpose of killing Aljabri.  *Id.* at ¶80.  As with Messrs. Alsayed, Algasem, and Alsaleh, the Complaint makes no allegations, not even conclusory allegations, of any contacts by Mr. Alhaqbani with the United States.

*Ibrahim Hamad Abdulrahman Alhomid*

Ibrahim Hamad Alhomid is alleged to be a Saudi national employed by the Ministry of Foreign Affairs in Saudi Arabia.  The Complaint alleges he holds a diplomatic passport as a diplomatic official for Saudi Arabia.  *Id.* at ¶232.  The Complaint further alleges the conclusion, with no supporting factual allegations, that he was a member of the "Tiger Squad" who traveled to Canada for the purpose of killing Aljabri.  *Id.* at ¶81.  The Complaint alleges he  was permitted to enter Canada with his diplomatic passport.  *Id..* ¶232.  It does not allege that, upon entry into Canada, Mr. Alhomid attempted to kill Aljabri or took any action to further an alleged plot to kill Aljabri.

The Complaint alleges no contacts of Mr. Alhomid with the United States other than that, at some unspecified point in time, he entered the United States using his diplomatic passport and visited the United Nations Security Council.  *Id.* at ¶ 232.  The Complaint does not allege any relationship at all between this visit and a supposed plot to kill Aljabri.

## ARGUMENT

**I.  This Court lacks personal jurisdiction over Messrs. Alqahtani, Alassiri, Alsayed, Algasam, Alsaleh, Alhaqbani, and Alhomid ("the Defendants").**

The Defendants incorporate and adopt by reference the legal standard and arguments that this Court lacks personal jurisdiction over the Defendants set forth in the Crown Prince's Motion to Dismiss, pp. 11-24.

As this Court has held: "To establish jurisdiction, a plaintiff must "allege specific acts connecting [the] defendant with the forum and may not rely on bare allegations or conclusory statements." *Corsi v. Caputo*, 2020 WL 1703934, at *2 (D.D.C. Apr. 7, 2020) (Kelly, J.); *see also Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 99 (D.D.C. 2010) ("vague and conclusory allegations do not suffice to demonstrate that a defendant is subject to personal jurisdiction in a particular forum.") (citing *Agee v. Sebelius*, 668 F. Supp. 2d 1, 5-6 (D.D.C. 2009)); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44-46 (D.D.C. 2003) (same); *see also Gregory v. Mihaylov*, No. 1:12-CV-2266-TWT, 2013 U.S. Dist. LEXIS 1251, at *13-14 (N.D. Ga. Jan. 4, 2013)("The Court will not credit conclusory allegations in determining whether the Plaintiff has established personal jurisdiction over the [] Defendants.")(citing *Snow v. DirecTV*, 450 F.3d 1314, 1318 (11th Cir. 2006) (rejecting conclusory allegations in personal jurisdiction inquiry)); *Indem. Ins. Co. of N. Am. v. K-Line Am.*, Inc., 2007 U.S. Dist. LEXIS 43567, at *13 (S.D.N.Y. June 13, 2007)("Mere conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction.") (citing *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)); *Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C.*, 288 F. Supp. 2d 482, 484 (S.D.N.Y. 2003)).[4]

In order to survive a motion to dismiss, therefore, a complaint must make specific factual allegations that, if true, would plausibly establish that the court has either general jurisdiction over the defendant or specific personal jurisdiction over the defendant. General jurisdiction exists only when

---

[4] Indeed, conclusory allegations do not even suffice to entitle the plaintiff to take discovery in an effort to establish personal jurisdiction. *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 330 n.1 (4th Cir. 2013) (suggesting that the court did not abuse its discretion in denying jurisdictional discovery based on conclusory allegations of personal jurisdiction); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 403 (4th Cir. 2003) ("where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.")(citation omitted); *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) (affirming district court's denial of plaintiff's request to engage in jurisdictional discovery based on "conclusory assertions").

the defendant has had such continuous and systematic contacts with the jurisdiction that the court can exercise jurisdiction even in the absence of allegations that the defendant's contacts with the jurisdiction relate to the subject matter of the suit.  Specific jurisdiction exists only when the cause of action arises from or relates to the defendant's contacts with the jurisdiction.  Here, the Complaint fails to make specific factual allegations that could plausibly establish either general or specific personal jurisdiction with respect to the Defendants.

      A.     *The Complaint fails adequately to allege general jurisdiction over the Defendants.*

As set forth above, each of the Defendants is a Saudi national residing in Saudi Arabia who is alleged either to have extremely limited contacts with the United States or none whatsoever.  None has "affiliations" with the forum jurisdiction that "are so 'continuous and systematic' as to render [it] essentially at home in the forum."  *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (quoting *Goodyear Dunlop Tires Operations*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (alteration in *Bauman*).  Indeed, while the Complaint in conclusory fashion alleges that this Court has specific personal jurisdiction over the Defendants (Compl. at ¶86), it does not even purport to allege general personal jurisdiction over them.

      B.     *The Complaint fails adequately to allege specific personal jurisdiction over the Defendants.*

The Complaint fails to allege facts that, if true, would plausibly establish the "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum."  *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

      1.     <u>The Court lacks personal jurisdiction over Messrs. Alqahtani and Alassiri.</u>

Messrs. Alqahtani and Alassiri are each alleged to be a Saudi national and employee or official of the Saudi government who, the Complaint alleges in conclusory fashion, supervised the "Tiger Squad," which was allegedly comprised of other Saudi nationals who were sent from Saudi Arabia to Canada in October 2018 in an attempt to kill Aljabri in Canada.  A "bare allegation" that members of

the "Tiger Squad" were agents of Messrs. Alqahtani and Alassiri would be "insufficient to establish personal jurisdiction," even if the alleged members of the "Tiger Squad" engaged in tortious conduct directed at the United States. *See Khatib v. All. Bankshares Corp.,* 846 F. Supp. 2d 18, 33 (D.D.C. 2012)(a "bare allegation of . . . agency is insufficient to establish personal jurisdiction.") (quoting *First Chicago Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1378-79 (D.C. Cir. 1988); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (conclusory allegations are "not entitled to the assumption of truth."). Even if these conclusory allegations were sufficient, however, what the Complaint would allege would be a plan to kill Aljabri to be carried out in Canada, not the United States.

The Complaint makes the allegation that Messrs. Alqahtani and Alassiri allegedly conspired with, and aided and abetted, U.S.-based "covert agents" over whom they had authority and control. ¶240-41. This allegation is likewise entirely conclusory. The Complaint fails to set forth a single factual allegation regarding what actions were supposedly performed by Alqahtani or Alassiri with respect to any U.S.-based covert agents or how those actions related to a plot to kill Aljabri in Canada.

Instead, Mr. Alqahtani is alleged to be a board member of Defendant the MiSK Foundation, which the Complaint alleges, again in conclusory fashion, was used by Defendants *bin Salman* and *Alasaker* to recruit the "covert agents" in the United States to hunt Aljabri in the United States. Complaint at ¶47. There is no even conclusory allegation that Mr. Alqahtani, as a board member of the MiSK Foundation, or Mr. Alassiri, who is not alleged to have been a board member, used the Foundation to recruit "covert agents" in the United States to hunt for Aljabri. This conclusory description of *others'* alleged conduct in the United States – even if the defendants had knowledge of it, which they did not – cannot form the basis for jurisdiction for Mr. Alqahanti or Mr. Alassiri. *See Walden*, 571 U.S. at 284 (the focus of jurisdiction is "contacts that the 'defendant himself' creates with the forum"; a defendant's "knowledge" of someone else's "strong forum connections" does not create personal jurisdiction); *see also Nuevos Destinos, LLC v. Peck*, 2019 WL 78780, at *8 (D.D.C. Jan. 2, 2019)

("[T]he Court cannot assert jurisdiction over individual defendants based on another defendant's actions."); *Duarte v. Nolan*, 190 F. Supp. 3d 8, 11 (D.D.C. 2016) (quoting *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) ("a plaintiff 'cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.").[5]

Not only does the Complaint fail to allege any connection between Messrs. Alqahtani or Alassiri individually with the United States, it also fails to allege that they have a connection to the United States vicariously based on the conduct of others.  The Complaint seems to attempt to proceed on such a theory by including allegations regarding supposed "covert agents" in the United States and suggesting that these "covert agents" were either agents of Messrs. Alqahtani and Alassiri or that Messrs. Alqahtani and Alassiri conspired with them.

The Complaint fails to allege any specific facts that, if true, would plausibly establish an agency relationship between Alqahtani or Alassiri and "covert agents" in the United States.  "[A]n agency relationship arises only where the principal 'has the right to control the conduct of the agent with respect to matters entrusted to him.' "  *Carswell v. Air Line Pilots Ass'n Int'l*, 540 F.Supp.2d 107, 122 (D.D.C.2008) (quoting Restatement (Second) of Agency § 14 (1958)); *see also* Restatement (Third) of Agency § 1.01 (2006) (an agency relationship is the "fiduciary relationship that arises when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's control").  Aljabri does not allege facts that could plausibly establish that Messrs. Alqahtani or Alassiri manifested assent to have "covert agents" in the United States act on their behalf.

---

[5]   In any event, the allegations about covert agents hunting for Aljabri in the United States are ultimately of no moment for purposes of personal jurisdiction, since the Complaint alleges Aljabri was found in Canada independent of these efforts, resulting in the plot to kill Aljabri in Canada, the plot on which each cause of action is based.  Compl. at ¶220.  The Defendants adopt and incorporate by reference the arguments of the Crown Prince in this regard.  *See* Crown Prince Mot. to Dismiss, pp. 17-18.

To the extent Aljabri attempts to rely on conspiracy jurisdiction, – already a dubious legal concept – *see Ofisi v. BNP Paribas, S.A.*, 2018 WL 396234, at *5 (D.D.C. Jan. 11, 2018) ("[a]s far as the Court is aware, no court to have considered the question has permitted the assertion of conspiracy jurisdiction under Rule 4(k)(2).") – Aljabri fails plausibly to allege any agreement with any defendant in the United States.  The Complaint makes no factual allegations that Messrs. Alassiri or Alqahtani had knowledge of any defendant's actions in the United States allegedly attempting to locate Aljabri two years prior to Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid traveling to Canada for the purported purpose of killing Aljabri in Canada.  As a result, the Complaint's conclusory conspiracy theory contains multiple shortcomings and wholly fails to establish jurisdiction. *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158 (D.D.C. 2018)("Adopting the approach taken by Judge Mehta [in   *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*], this Court concludes that if any conspiratorial jurisdiction survives *Walden* [*v. Fiore*, 571 US 277 (2014)] , a plaintiff pursuing such a theory must allege that the defendant knew of the co-conspirator's acts in the forum. Furthermore, at the very least, a plaintiff needs to meet the Circuit's strict particularity requirement to comport with due process.").

Finally, the Complaint alleges that the ultimate objective of Messrs. Alqahtani and Alassiri was to "limit the U.S. government's access to a key partner with unique knowledge."  *Id.* at ¶18.  Not only does this conclusory allegation fail to establish personal jurisdiction as the Crown Prince discusses in his Motion to Dismiss, pp. 18-20, which the Defendants adopt and incorporate by reference, but also the online articles cited by Aljabri do not support the allegation that Messrs. Alqahtani and Alassiri had such an objective, or for that matter any objective, pertaining to Aljabri.  *See* Compl. at n. 44, 46, 64, 4 (citing Frank Gardner, *Family of Exiled Top Saudi Officer Saad Al-Jabri 'Targeted'*, BBC, May 25, 2020, https://www.bbc.com/news/world-middle-east-52790864)("But former Western intelligence officials believe *MBS* still sees [Aljabri] as a threat to his legitimacy.") (emphasis added); Bradley Hope,

Justin Scheck & Warren P. Strobel, *Saudi Arabia Wants its Fugitive Spymaster Back*, Wall St. J., July 17, 2020,       https://www.wsj.com/articles/a-spymaster-ran-off-after-saudis-say-billions-went-missing-they-want-him-back-11595004443 ("His family argues that the Saudi government wants him back because he knows the secrets of the royal family, and that *Crown Prince Mohammed bin Salman* has a personal vendetta against him because of a disagreement over the country's Yemen policy and other disputes") (emphasis added); Peter Bergen, *Trump's Uncritical Embrace of MBS Set the Stage for Khashoggi Crisis*, CNN, Nov. 16, 2018, https://www.cnn.com/2018/10/15/opinions/how-the-saudis-played-trump-bergen/index.html; Addiction and Intrigue: Inside the Saudi Palace Coup, Reuters, July 19, 2017,       https://www.reuters.com/article/us-saudi-palace-coup/addiction-and-intrigue-inside-the-saudi-palace-coup-idUSKBN1A41IS ("After removing his cousin as Crown Prince and making himself the heir apparent, *MBS* also set out to remove all other possible challenges to his total grip on power using a Stalinist playbook, minus the gulags.") (emphasis added); David Ignatius, *This Former Intelligence Official Was a Hero. He's Now the Target of a Brutal Campaign by MBS*, Wash. Post, May 28, 2020, https://www.washingtonpost.com/opinions/2020/05/28/this-former-intelligence-official-was-hero-hes-now-target-brutal-campaign-by-mbs/ ("What was discussed at those meetings isn't known, but *MBS* evidently thought Aljabri was plotting behind his back on behalf of his rival, MBN.") (emphasis added).

Aljabri seeks to impute the Crown Prince's purported motivations to each of the Defendants without any factual allegations to support doing so.  *See* Compl. ¶ 89.  The Complaint alleges that "each Defendant" was "aware of" or 'knew' what Defendant bin Salman "viewed" or "desire[d]" concerning Aljabri.  *Id.*  But Aljabri fails to plead any facts on which to base the conclusion that the Defendants were aware of the Crown Prince's supposed motivations, much less that each acted with the same supposed intent as the Crown Prince.  *See Nuevos Destinos*, 2019 WL 78780, at *8 (finding no

personal jurisdiction where "the thrust of [plaintiffs'] argument is that the nine defendants are subject to the jurisdiction of this Court based on other defendants' actions").

Further, even if the assertion that Messrs. Alqahtani and Alassiri had an objective of limiting the access of the United States government to Aljabri were pled with more than a contradicted conclusory claim, an objective by people outside of the United States to take tortious action outside of the United Sates against a person located outside the United States cannot establish personal jurisdiction in this Court.  Indeed, even if Aljabri were a United States citizen, rather than merely an alleged foreign intelligence source of the United States, an effort to silence him by taking action against him outside the United States would not result in personal jurisdiction in the United States.  *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) ("tortur[ing] two American citizens in Libya' would be 'insufficient to satisfy the usual 'minimum contacts' requirement' for personal jurisdiction"); *see also Doe v. Buratai*, 318 F. Supp. 3d 218, 228 (D.D.C. 2018) ("acts of terror or torture committed against American citizens abroad, *standing alone*, can support personal jurisdiction only if the defendant expressly intended the effects of the act to be felt in the United States") (citing *Nikbin*, 471 F. Supp. 2d at 73; *Manouchehr Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 73 n.26 (D.D.C. 2013)), aff'd, No. 18-7170, 2019 WL 668339 (D.C. Cir. Feb. 15, 2019) (per curiam), and aff'd sub nom. *Doe v. Buratai*, 792 F. App'x 6 (D.C. Cir. 2019) (per curiam).

> 2.   The Court lacks personal jurisdiction over Messrs. Alsayed, Algasam,
> Alhaqbani, and Alhomid.

Messrs. Alsayed, Algasam, Alhaqbani, and Alhomid are all Saudi nationals living in Saudi Arabia who the Complaint alleges to be members of the "Tiger Squad" who traveled to Canada in October 2018 on orders from the Crown Prince of Saudi Arabia for the supposed purpose of killing Aljabri in Canada.  *See* Compl. ¶¶72-78, 80-81.  These conclusory allegations fail to allege contacts by Messrs. Alsayed, Algasam, Alhaqbani, and Alhomid with the United States that would give rise to personal jurisdiction over them in this Court.  *See e.g. Manouchehr Mohammadi,* 947 F. Supp. 2d at 73, n.26 (dismissing for lack of subject matter jurisdiction, but noting that there is a "serious question" as to whether the Court has personal jurisdiction over any of the defendants in an action brought by and on behalf of four former Iranian nationals who were imprisoned, tortured, and/or killed in a Tehran prison against the Islamic Republic of Iran, Ayatollah Sayid Ali Hoseyni Khamenei, President Mahmoud Ahmadinejad, and the Army of the Guardians of the Islamic Revolution, because the plaintiffs had not established that Khamenei and Ahmadinejad have had "minimum contacts" with the United States or have "purposefully directed" their activities here).

The Complaint does not allege, even in conclusory fashion, that Messrs. Alsayed, Algasam, Alhaqbani, or Alhomid had any relationship whatsoever with the "U.S.-based agents."  Nor does the Complaint allege any other connection to the United States, much less a connection related to the causes of action the Complaint advances against them.

> 3.   The Court lacks personal jurisdiction over Mr. Alsaleh.

Mr. Alsaleh, a Saudi national and military intelligence officer in the Intelligence Department of the Saudi Ministry of Defense, is not alleged to have any connection at all with any place outside Saudi Arabia, other than having attended a conference in Singapore.  The Complaint alleges he was a member and "coordinator or leader" of the "Tiger Squad."  *See* Compl. at ¶79.  Yet, the Complaint does not allege any facts that, if true, would plausibly support the notion that Mr. Alsaleh was a

"coordinator or leader" of the "Tiger Squad," much less that he traveled to Canada or took any actions whatsoever related to, or even knew anything about, an alleged plot to kill Aljabri.  The Complaint does not, even in conclusory fashion, allege any connection at all between Mr. Alsaleh and the United States, much less contacts with the United States relevant to the causes of action set forth in the Complaint.

<p style="padding-left:3em;"><b>C.</b> <i>Asserting jurisdiction over the Defendants would offend notions of fair play<br>and substantial justice.</i></p>

The Defendants incorporate and adopt by reference the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that asserting jurisdiction over any them would offend notions of fair play and substantial justice.  *See* Crown Prince Mot. to Dismiss, pp. 21-23.  The Defendants are all citizens and residents of the Kingdom of Saudi Arabia with no ties to the United States.  The burden on them would be severe if they were required to "submit its dispute to a foreign nation's judicial system."  *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  Additionally, the forum Aljabri selected – the United States – has minimal interest in this litigation.  As the Crown Prince explains, the allegations in the Complaint stem from an internal dispute among high-ranking members of the Saudi Arabian government and involves alleged official action of the Saudi government.  *See* Crown Prince's Mot. to Dismiss, pp. 1-2, 33-34. Aljabri has no special interest in seeking relief in the United States.  He is not a U.S. citizen, does not reside in the United States, and alleges conduct outside of the United States in an attempt to kill him outside of the United States.  Aljabri has failed to allege any facts that, if true, would plausibly establish the United States would be a convenient forum in which to litigate his claims.  For the reasons the Crown Prince sets forth in his Motion to Dismiss, pp. 21-23, both Canada, where Aljabri currently

resides, and Saudi Arabia, where he is a citizen, have a stronger connection to this suit than the United

States, yet he has not pursued his claims in either forum.

## II.      The Court lacks subject matter jurisdiction because the Defendants are immune from suit.

Defendants incorporate, and adopt by reference, the legal standards and arguments presented

in the Crown Prince's Motion to Dismiss, pp. 24-48.

An official or employee of a foreign sovereign government may assert immunity for acts

performed within the scope of his official duty.  "It is 'well-settled law that contractors and common

law agents [of a foreign sovereign] acting within the scope of their employment . . . have derivative

sovereign immunity.'" *Moriah v. Bank of China*, Ltd., 107 F. Supp. 3d 272, 277 (S.D.N.Y. 2015)(citations

omitted).  This immunity is conduct-based.  "Therefore, to determine the scope of a foreign official's

immunity, the relevant inquiry focuses on the official's acts, and not the official's status."  *Id.*; *see also*

Hazel Fox, *The Law of State Immunity* at 455 (2d. ed. 2008) ("The doctrine of the imputability of the

acts of the individual to the State ... in classical law... imputes the act solely to the state, who alone is

responsible for its consequence.  [Therefore,] any act performed by the individual as an act of the

State enjoys the immunity which the State enjoys.").

Even alleged violations of *jus cogens* does not usurp sovereign immunity.  *See Miango v. Democratic*

*Republic of Congo*, Civil Action No. 15-1265 (ABJ), 2020 U.S. Dist. LEXIS 113722 (D.D.C. June 29,

2020) (dismissing claims against the former President of the Democratic Republic of the Congo and

five others who were alleged to have been members of the former president's entourage who allegedly

assaulted the plaintiffs when they protested across the street from the hotel in Washington, D.C. where

former president's delegation was staying.); *Doe v. Buratai*, 318 F. Supp. 3d at 236 ("[T]he Court—

following courts in this circuit and other circuits—declines to adopt and apply a jus cogens

exception."); *Giraldo v. Drummond Co.*, 808 F. Supp. 2d 247, 251 (D.D.C. 2011) ("[P]laintiffs' allegations

of *jus cogens* violations do not defeat former President Uribe's immunity."), aff'd, 493 F. App'x 106

(D.C. Cir. 2012) (per curiam); *see also Doğan v. Barak*, 932 F.3d 888, 896-97 (9th Cir. 2019) (declining to recognize an exception from official immunity for *jus cogens* violations); *Matar v. Dichter*, 563 F.3d 9, 15 (2d Cir. 2009) ("A claim premised on the violation of jus cogens does not withstand foreign sovereign immunity."); *Burma Task Force v. Sein*, 2016 U.S. Dist. LEXIS 42326, at *6-*7 (S.D.N.Y. Mar. 30, 2016) (dismissing TVPA claims against the Foreign Minister of Myanmar based on alleged acts of genocide, torture, and arbitrary detention of plaintiffs (citing *American Justice Center et al. v. Modi*, 2015 U.S. Dist. LEXIS 177427 (S.D.N.Y. Jan. 14, 2015); *Tawfik v. al-Sabah*, 2012 U.S. Dist. LEXIS 115946 (S.D.N.Y. Aug. 16, 2012)).

In determining the applicability of conduct-based immunity, courts generally either apply the criteria recognized by "the established policy of the State Department" or the test outlined in §66(f) of the Restatement (Second) of Foreign Relations Law of the United States (1965)("Restatement (Second)"). *See Broidy Capital Mgmt. LLC v. Muzin,* 2020 WL 1536350, at *5 (D.D.C. Mar. 31, 2020). As set forth in the Crown Prince's Motion to Dismiss, and adopted and incorporated by reference here, the weight of authority is in favor of following State Department policy rather than the Restatement (Second).  *See* Crown Prince Mot. to Dismiss, pp. 31-32.  Under either standard, however, the Defendants are entitled to conduct-based immunity and the Complaint against them should be dismissed.

      A.     *The Defendants are entitled to conduct-based immunity under the State Department's established policy because they are each an official of a foreign state allegedly performing acts in his official capacity.*

Under the established policy of the State Department, "acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity."  Ltr. from Harold Hongju Koh, Legal Adviser, U.S. Dep't of State, to Stuart F. Delery, Principal Dep. Ass't Att'y Gen., Civil Div., U.S. Dep't of Justice, at 2 (Dec. 17, 2012) ("*Ragsdale* Ltr."), docketed at *Ragsdale v. Lashkar-E-Taiba*, No. 1:11-cv-03893-DLI-CLP, ECF No. 19-1 (E.D.N.Y.).  The Executive Branch

has made clear that it "does not recognize any exception to a foreign official's immunity for civil suits alleging *jus cogens* violations." *See Br. for the United States of America as Amicus Curiae in Support of Affirmance at 4, Mahar v. Dichter*, No. 07-2579-cv (2d Cir. Dec. 19, 2007), 2007 WL 6931924 (brief signed by the Legal Adviser of the State Department).

At the time of the alleged tortious conduct, each of the Defendants is alleged to have held a position in the Saudi government. *See* Compl. at ¶¶44-50 (Mr. Alqahtani was a top aide to the Crown Prince.); *id.* at ¶51 (Mr. Alassiri was Deputy Intelligence Chief for Saudi Arabia's principal intelligence agency, the General Intelligence Presidency); *id.* at ¶77 (Mr. Alsayed was a forensic DNA expert who worked for the General Department of Criminal Evidence in the Ministry of Interior and held a senior rank of lieutenant colonel); *id.* at ¶78 (Mr. Algasem was a forensic DNA expert who worked for the General Department of Criminal Evidence in the Ministry of Interior); *id.* at ¶79 (Mr. Alsaleh was a military intelligence officer in the Intelligence Department of the Ministry of Defense); *Id.* at ¶80 (Mr. Alhaqbani was employed by the Ministry of Interior in Saudi Arabia); *id.* at ¶81 (Mr. Alhomid was employed by the Ministry of Foreign Affairs in Saudi Arabia who held a diplomatic passport).

Each of these positions plainly satisfies the initial inquiry in the conduct-based immunity analysis. *See Samantar v. Yousuf,* 560 U.S. 305, 321 (2010) (high ranking government official in Somalia); *Belhas v. Ya'alon*, 515 F.3d 1279, 1282 (D.C. Cir. 2008) (former head of Israeli Army Intelligence); *Miango*, 2020 U.S. Dist. LEXIS 113722 (Democratic Republic of Congo security forces); *Buratai*, 318 F. Supp. 3d at 231 (members of the government, military, and police); *Weiming Chen v. Ying-Jeou Ma*, 2013 U.S. Dist. LEXIS 118668, at *2 (S.D.N.Y. Aug. 19, 2013)(Chief of the Bureau of Civil Affairs of the Government of Kinmen County); *Smith v. Ghana Commer. Bank, Ltd.*, No. 10-4655 (DWF/JJK), 2012 U.S. Dist. LEXIS 99735, at *31-32 (D. Minn. June 18, 2012) (the Attorney General of the Republic of Ghana).

When examining a foreign public official's qualification for immunity, the level of office the public official holds does not bear on the analysis. *See Doe v. Buratai*, 318 F. Supp. 3d at 231 ("high-level 'decision-making authority is not . . . required' for immunity and 'past case law has not focused on the degree of an official's 'authority' to act on behalf of the foreign state' because 'conduct-based immunity may extend to an 'agent' of a foreign state.") (citing *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014); *Samantar v. Yousuf,* 560 U.S. at 321); *see also Richardson v. Attorney General of the British Virgin Islands*, 2013 U.S. Dist. LEXIS 117763, 2013 WL 4494975 (D.V.I. Aug. 20, 2013)(customs officer involved a motor vehicle negligence action against was entitled to common law immunity because the "alleged actions which [gave] rise to the [Plaintiffs'] complaint were undertaken within the scope of his duty and thus fit neatly within the general contours of official-act immunity.").

In *Rishikof v. Mortada*, the plaintiff argued that the defendant's status "as a low-level deliveryman [] renders him ineligible to invoke 'foreign official immunity'" under the common law. *See* 70 F. Supp. 3d at 12-15.  This Court rejected that argument, finding that "it is more in keeping with the common law to conclude that decision-making authority is not a required element."  *Id.*

The Court held:

> past case law has not focused on the degree of an official's 'authority' to act on behalf of the foreign state.  Rather, it has been the act itself and whether the act was performed on behalf of the foreign state and thus attributable to the state that has been the focus of the courts' holdings.  The rank of the agent who performed the act was not the determining factor.

*Id.* (citing *Bashe Abdi Yousuf v. Mohamed Ali Samantar,* 699 F.3d 763, 774 (4th Cir. 2012) (conduct-based immunity "stands on the foreign official's actions, not his or her status"); *see also Bashe Abdi Yousuf v. Mohamed Ali Samantar*, 699 F.3d at 774 ("numerous domestic courts [have] embraced the notion, stemming from international law, that the "immunity of a foreign state ... extends to ... any ... public minister, official, or agent of the state with respect to acts performed in his official capacity"); *Matar*

*v. Dichter*, 563 F.3d at 9 ("An immunity based on acts—rather than status—does not depend on tenure in office.").

Having established that the Defendants are foreign officials, the second determination is whether they were allegedly performing acts in their officials capacities.  In *Doe v. Buratai*, 318 F. Supp. 3d at 231, this Court dismissed a case against officials of the Nigerian government, military, and police who allegedly brutally tortured and killed peaceful protesters.   In addition to lacking personal jurisdiction over the defendants, this Court held that the defendants were immune from suit through sovereign immunity.   The Court explained that "… all of the defendants were Nigerian public ministers, officials, or agents when they allegedly violated the Torture Victims Protection Act: as alleged in the complaint, they were Nigerian governors, the Director General of the Nigerian State Security Service, members of the Nigerian army ranging from the Chief of Staff to unit commanders, and members of the Nigerian police ranging from the Inspector General to state commissioners and superintendents."  *Id.* (internal citations omitted).  The Court found that the defendants were acting in their official capacities, "although the plaintiffs take great pains to emphasize that they are suing the defendants in the defendants' personal or 'individual capacities alone,' the allegations show otherwise." *Id.* (internal citations omitted).  The Court explained, "suits against officers in their personal capacities must pertain to private action[s],—that is, to actions that exceed the scope of authority vested in that official so that the official cannot be said to have acted on behalf of the state."  *Id.* (citations omitted). By contrast, the Court found, "the defendants' alleged actions were part of their official duties within the Nigerian government, military, and police."  *Id.*

According to the complaint in *Doe v. Buratai*, "the defendants 'directed the Armed Forces, the Police Command, [State Security Service], and militia force paramilitary troops to use lethal force.' The defendants all 'exercised effective command and operational control' over the Nigerian military and police forces and the State Security Service or 'exercised command authority and control over the

perpetrators' of the attacks." *Id.* (internal citations omitted). Thus, the Court held, "These allegations do not describe private actions. Rather, as alleged by the complaint, the defendants acted within the structure of the Nigerian government and military, drawing on official powers and duties and relying on the governmental and military chains-of-command—i.e., within their official capacities." *Id.* (citing *Matar v. Dichter*, 563 F.3d at 14 ("the common law of foreign sovereign immunity recognized an individual official's entitlement to immunity for 'acts performed in his official capacity,'" and stating that a "plaintiff's concession that defendant was 'at all relevant times an employee and agent of the defendant Spanish Government' sufficed to dispose of the claim against the individual defendant.")); *see also In re Terrorist Attacks on Sept. 11, 2001*, 122 F. Supp. 3d 181, 187-89 (S.D.N.Y. 2015) (granting foreign-official immunity because "[t]he only non-conclusory allegation, regarding [defendant's conduct], is an action taken in his official—not his personal—capacity").

The Complaint here repeatedly refers to the official channels of authority and direction. *See, e.g.*, Compl. at ¶3 (Mohammed bin Salman al Saud is the Crown Prince of the Kingdom of Saudi Arabia); *id.* at ¶239; 260 ("The acts described herein were carried out under actual or apparent authority or color of law of the government of Saudi Arabia."); *id.* at ¶204 ("Because the members of the Tiger Squad had separate chains of command in their disparate official Saudi government positions, only Defendant bin Salman would have had the authority to assemble such an interagency team."); *Id.* at ¶251 ("Defendants bin Salman, Alqahtani, Alassiri, and Alasaker had the legal authority and practical ability to exert control over their subordinates, including the Tiger Squad Defendants…On information and belief, the attempted extrajudicial killing was committed pursuant to the authority of Defendants bin Salman, Alqahtani, Alassiri, and Alasaker"); *id.* at ¶72 (Messrs. Alhomid, Alsayed, Alhaqbani, and Algasem, who allegedly were members of the "Tiger Squad" and in that capacity traveled to Canada, and Mr. Alsaleh who, despite the lack of any specific factual allegations, is alleged to have been a coordinator or leader of the "Tiger Squad," allegedly performed their actions under

21

the direction and supervision of Defendant bin Salman, Defendant Alqahtani, and Defendant Alassiri); *id.* at ¶247 ( "…the Tiger Squad Defendants each provided substantial assistance by carrying out the orders of their superiors").

The allegations that the Defendants either exercised command and operational control or were operating under such control, establish that each was acting in their official capacity. *Doe v. Buratai*, 318 F. Supp. at 231*; see also Miango*, 2020 U.S. Dist. LEXIS 113722, at *5; *Oussama El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 U.S. Dist. LEXIS 136172, at *31-32 (S.D.N.Y. Aug. 17, 2017)(despite the United States' criticism of the UAE for arbitrary arrests, a lack of judicial independence, and other rule of law and human rights problems, "[t]aken as true, these allegations demonstrate that Sheikh Saud's actions causing El Omari's detention were undertaken through RAK official channels and on behalf of the RAK, presumptively in furtherance of its enforcement of its laws," therefore they are official acts and he is entitled to immunity); *Weisskopf v. Neeman*, No. 11-cv-665-wmc, 2013 U.S. Dist. LEXIS 201309, at *21 n.14 (W.D. Wis. Mar. 20, 2013) (finding foreign conduct-based sovereign immunity for decisions made by foreign officials through the enforcement of state family law); *Moriah*, 107 F. Supp. 3d at 278 ("Ciechanover acted as an agent of the Israeli government for this specific task. He was contacted by the National Security Advisor, a high-ranking official in the Prime Minister's office, and asked to undertake a task. He performed that task and then reported back. He did not undertake this task in his capacity as a private individual—he performed it solely because the National Security Advisor made a request. As such, he acted as an agent of the Israeli government.").

None of the Defendants is alleged to have taken rogue action. Rather, each is alleged to have acted only in their official capacities, as officials or employees of the government of Saudi Arabia. *See* Compl. at ¶ 239 ("The acts described herein were carried out under actual or apparent authority or

22

color of law of the government of Saudi Arabia."). Therefore, they are entitled to conduct based sovereign immunity.

B.   *Exercising jurisdiction would have the effect of enforcing a rule of law against the foreign state and therefore the Defendants are entitled to immunity under the Restatement (Second).*

Although the Court need not reach this inquiry under the correct standard of sovereign immunity based on the State Department's established policy, *see* Crown Prince's Mot. to Dismiss, pp. 31-32, the Defendants nevertheless also satisfy the third prong under the Restatement (Second). A judgment against the Defendants in the case would have the practical effect of enforcing a rule of law against the Kingdom. *See Ivey v. Lynch*, No. 1:17CV439, 2018 U.S. Dist. LEXIS 133656, at *20-21 (M.D.N.C. Aug. 8, 2018)(applying conduct-based immunity: because Lynch was an agent in the United States acting at the direction of a German government official performing delegated official functions, "denying Lynch immunity and ultimately determining the merits of the claims against him would have the effect of enforcing a rule of law against Germany."); *Ghana Commer. Bank, Ltd.*, 2012 U.S. Dist. LEXIS 99735, at *31-32 ("Plaintiff's allegations against Ghana's Attorney General render the Republic of Ghana the real party in interest here and show that Plaintiff seeks to hold the Attorney General liable for acts performed in his official capacity.").

The court in *Dogan v. Barak*, 932 F.3d at 894, highlighted language from the complaint in that case that was almost identical to that used here: "The Complaint's claims for relief state—several times—that Barak's actions were done under 'actual or apparent authority, or color of law, of the Israeli Ministry of Defense and the Government of the State of Israel.'" *Compare with* Compl. at ¶¶ 239; 260 ("Defendants' acts were committed under actual or apparent authority, or color of law, of the government of Saudi Arabia"). Based on these allegations, the Ninth Circuit concluded that the defendants were entitled to conduct-based foreign official immunity. *See id.* ("We conclude that exercising jurisdiction over Barak in this case would be to enforce a rule of law against the sovereign

state of Israel…. And that Barak [] therefore be entitled to common-law foreign sovereign immunity….").

The Complaint alleges that the conduct at issue in the Complaint was purportedly part of a broader attempt to "consolidate [the Crown Prince's] grip on power within Saudi Arabia." *See* ¶108, 184. The news articles cited in the Complaint refer to an alleged internal struggle among Saudi Arabia's rulers. *See supra* p. 12-13. This Court should not interfere in an alleged foreign political power struggle that plainly has diplomatic ramifications for this country and "the precarious state of U.S.-Middle East relations." *Dogan v. Barak,* No. 2:15-cv-08130-ODW(GSJx), 2016 U.S. Dist. LEXIS 142055, at *28 (C.D. Cal. Oct. 13, 2016) *aff'd,* 932 F.3d 888. Further, as the Crown Prince notes in his Motion to Dismiss, a ruling against the defendants would "force [Saudi Arabia] to take specific action," *Lewis v. Mutond,* 918 F.3d 142, 147 (2019) – namely, to cease its criminal investigation of Aljabri's wrongdoing, even though "an executive decision to conduct a criminal investigation . . . ranks '[f]oremost among the prerogatives of sovereignty.'" *Nnaka v. Fed. Republic of Nigeria*, 756 F. App'x 16, 18 (D.C. Cir. 2019) (quoting *Heath v. Alabama,* 474 U.S. 82, 93 (1985)).[6]

## III.    The Act of State Doctrine precludes the Court from inquiring into the validity of public acts taken by a recognized foreign sovereign within its own territory.

The Defendants adopt, and incorporate by reference, the legal standards and the arguments presented in the Crown Prince's Motion to Dismiss that if the Court adjudicates Aljabri's claims, it

---

[6] In a concurring opinion in *Lewis v. Mutond*, Judge Randolph suggested that the TVPA abrogates conduct-based immunity. *See Lewis*, 918 F.3d at 150. The reasoning turned on the existence of a "clear conflict" between the TVPA (which explicitly provided for liability for torture) and common law immunity (which immunized against liability for torture). There is no clear conflict, however, with respect to immunity for *attempted* extrajudicial killing, because the TVPA does not by its terms create liability for attempted extrajudicial killing. Congress is presumed to retain established common law principles unless a statute explicitly says otherwise. *See, e.g., Baker Botts LLP v. ASARCO LLC*, 576 U.S. 121, 126 (2015). Therefore, to the extent that the TVPA abrogates common law conduct-based immunity, the abrogation extends only to the causes of action Congress chose to reference in the text of the TVPA, which does not include a cause of action for attempted extrajudicial killing.

would inevitably have to rule on the legality of certain alleged official acts that the Kingdom undertook within its own territory, thereby violating the Act of State Doctrine.  *See* Crown Prince Mot. to Dismiss, pp. 44-48.

**IV.     Saudi Arabia is a necessary and indispensable party that is immune from suit.**

The Defendants adopt, and incorporate by reference, the arguments in the Crown Prince's Motion to Dismiss that Saudi Arabia is a necessary and indispensable party whose joinder is not possible, and, therefore, the case must be dismissed.  *See* Crown Prince Mot. to Dismiss, pp. 38-44.

**V.     If the Court were to find it has personal and subject matter jurisdiction, the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim.**

The Defendants adopt, and incorporate by reference, the legal standards and arguments in the Crown Prince's Motion to Dismiss that Aljabri fails to state a claim under statutory or common law. *See* Crown Prince Mot. to Dismiss, pp. 48-69.

> A.   *The claims are not pled with sufficient specificity plausibly to state a claim.*

"[T]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory allegations [] will not suffice to state a claim."  *Tolton v. Day*, Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793, at *105 (D.D.C. May 19, 2020)(internal quotations omitted).   This fundamental rule applies to each of the federal causes of action that the Complaint attempts to plead.

> To plead a TVPA claim, a plaintiff must allege with specificity that the defendant, while under actual or apparent authority and/or color of law of a foreign nation, committed extrajudicial killing or torture. . . . A plaintiff's failure to plead any of the elements of a TVPA claim results in a failure to state a claim upon which relief can be granted.

*Jaramillo v. Naranjo*, No. 10-21951-CIV, 2014 U.S. Dist. LEXIS 138887, at *23-25 (S.D. Fla. Sep. 30, 2014); *see also Beanal v. Freeport-McMoran, In*c., 197 F.3d 161, 169 (5th Cir. 1999)("Because we find that Beanal fails to state with the requisite specificity and definiteness his claims of individual human rights violations under the ATS, we find that his allegations under the TVPA also suffer from the same pleading defects. Beanal fails to provide sufficient underlying facts to support his claims."); *Sinaltrainal*

*v. Coca-Cola Co.*, 578 F.3d 1252, 1266-70 (11th Cir. 2009) (applying *Iqbal*'s pleading standard to claims brought under the Alien Tort Statute and Torture Victim Protection Act) *abrogated on other grounds* by *Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).

As Defendant Alasaker notes in his Motion to Dismiss, the inquiries under the Torture Victim Protection Act— under the common law—and the Alien Tort Statute— under international law— "overlap." *See Ofisi*, 2018 WL 396234, at *4 n.7.  Because the common law and international law are not meaningfully different, the D.C. Circuit has held that the common-law standard may be applied to both claims. *See Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 39 (D.C. Cir. 2011), vacated, 527 F. App'x 7 (D.C. Cir. 2013).

To plead conspiracy liability, a plaintiff must allege with specificity: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (applying *Halberstam* to Alien Tort Statute claim).

Aiding and abetting liability "includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d at 477.

To plead liability under an agency theory, as discussed *supra* Section I(B)(1), the plaintiff must allege a relationship in "the principal 'has the right to control the conduct of the agent with respect to matters entrusted to him.'" *Carswell v. Air Line Pilots Ass'n Int'l*, 540 F.Supp.2d at 122 (quoting Restatement (Second) of Agency § 14 (1958)); *see also* Restatement (Third) of Agency § 1.01 (2006) (an

26

agency relationship "arises when [a principal] manifests assent to [an agent] that the agent shall act on the principal's behalf and subject to the principal's control").

1.   The allegations against Messrs. Alassiri, Alqahtani, and Alsaleh are purely conclusory and therefore fail to state a claim.

i.   *Messrs. Alassiri and Alqahtani*

The Complaint alleges that Messrs. Alassiri and Alqahtani "personally committed" the attempted extrajudicial killing.  Compl. at ¶ 257.  This claim is not supported by even the barest of conclusory statements in the preceding 100 pages.  There is no allegation Messrs. Alassiri or Alqahtani traveled to Canada, much less that they personally attempted to kill him.  Rather the Complaint appears to rely on secondary liability.  It alleges that Messrs. Alassiri and Alqahtani "played a supervisory role" in the attempted extrajudicial killing of Aljabri and were "involved in overseeing" the members of the "Tiger Squad" who traveled to Canada.  *Id.* at ¶52.  It repeats the words, "planned, oversaw, and coordinated" and states that after Messrs. Alassiri and Alqahtani "coordinated the tracking of Dr. Saad" they "dispatched" the Tiger Squad.  None of these conclusions, however, is supported by any factual allegations about what Messrs. Alassiri and Alqahtani did to plan, oversee, or coordinate. [7]

Further, the Complaint, which purports to proceed in part on conspiracy liability, does not offer even conclusory allegations that Messrs. Alassiri and Alqahtani formed an agreement with *any* of the other defendants.  In fact, the Complaint does not make any factual allegation that Messrs. Alassiri and Alqahtani even knew the defendants alleged to have traveled to Canada, let alone that they formed an agreement with them to participate in a scheme to attempt to kill Aljabri.

---

[7] The Complaint also inserts references to the "U.S. Based Covert Agents" in the paragraphs stating the causes of actions.  As explained, *supra,* Background (citing ¶¶14, 59), however, there are no factual allegations that could support the conclusion that Messrs. Alassiri and Alqahtani coordinated "U.S. Based covert agents".

Similarly, the Complaint fails to allege a claim based on aiding and abetting liability.  As discussed in more detail *infra* Section VIII, there is no principal tortfeasor who allegedly caused injury. Moreover, there are no facts alleged to support a claim that Messrs. Alassiri and Alqahtani knew about the purported mission of the "Tiger Squad" to attempt to kill Aljabri, much less facts that, if true, would plausibly demonstrate Messrs. Alassiri and Alqahtani took any step to assist in such a scheme.

Finally, the Complaint fails to state a claim based on an agency theory.  The Complaint does not allege facts that, if true, would plausibly demonstrate Messrs. Alassiri and Alqahtani had the authority to control members of the so called "Tiger Squad."  Indeed, it does not even allege that Messrs. Alassiri and Alqahtani, on the one hand, and the defendants alleged to be members of the "Tiger Squad," on the other hand, knew each other or knew of each another.

With respect to Mr. Alqahtani, the Complaint adds factual allegations that are wholly irrelevant to its conclusory allegation that he supervised the "Tiger Squad" in its supposed effort to kill Aljabri in Canada.  For example, the Complaint alleges that Mr. Alqahtani engaged two D.C. lobbying firms in 2016, but fails to allege, let alone plausibly allege, that the retention of lobbying firms in 2016 relate to the alleged attempted extrajudicial killing of Aljabri in 2018.  Additionally, the Complaint alleges that Mr. Alqahtani tweeted that he acts at the behest of the Saudi government.  The Complaint then offers rank speculation that "presumably" this includes with respect to extrajudicial killings (*see* Compl. at ¶48) – an implicit acknowledgment that there is no factual basis to conclude there is a connection between this tweet and the tort the Complaint alleges was committed well after the tweet was posted.

<div align="center">ii.  *Mr. Alsaleh*</div>

Calling the Complaint "threadbare" as it relates to Mr. Alsaleh would be generous.  In fact, it is unclear even under what *theory* Aljabri purports to hold Mr. Alsaleh liable.  The Complaint alleges: "The Tiger Squad's activities are directed and supervised by Defendant bin Salman, Defendant Alqahtani, and Defendant Alassiri, and supported by Defendant Alasaker," without mentioning Mr.

Alsaleh at all.  Compl. at ¶ 72.  A few paragraphs later, however, the Complaint alleges that Mr. Alsaleh was not only a member of the "Tiger Squad," but also a "coordinator or leader" of the "Tiger Squad Defendants."  *Id.* at ¶ 79.  Yet, unlike the other defendants the Complaint alleges were members of the "Tiger Squad," the Complaint does not allege that Mr. Alsaleh traveled to Canada in an attempt to kill Aljabri.  *Compare id.* at ¶ 79 *with* ¶¶ 77-78; 80-81 (alleging "[o]n information and belief," Defendants Alsayed, Algasem, Alhaqbani, and Alhomid "traveled to Canada in October 2018 in an attempt to kill Dr. Saad.").

Mr. Alsaleh's name is mentioned in only two of the 278 paragraphs of the Complaint: Paragraph 79, which alleges in conclusory fashion that he was a member and coordinator or leader of the "Tiger Squad" and notes that he attended an unrelated program for senior military officers in Singapore in 2019, and in passing in Paragraph 82, which makes no additional factual allegations about Mr. Alsaleh at all.  Thus, the Complaint neither alleges facts about Mr. Alsaleh's supposed coordination or leadership of the "Tiger Squad" or facts about Mr. Alsaleh's supposed role as a member of the "Tiger Squad."  No facts are alleged that would, if true, plausibly establish Mr. Alsaleh's liability – under any theory – in the plot the Complaint alleges.

Because the allegations against Messrs. Alassiri, Alqahtani, and Alsaleh are merely conclusory, without a single factual allegation connecting them to the purported attempted extrajudicial killing, the Complaint must be dismissed.

> 2.   The allegations against Messrs. Alsayed, Alhomid, Alhaqbani, and Algasem are purely conclusory and therefore fail to state a claim.

The Complaint alleges that Messrs. Alsayed, Alhomid, Alhaqbani, and Algasem traveled to Canada "in an attempt to kill Dr. Saad" and "with the express purpose of murdering Dr. Saad." *see* Compl. at ¶¶77-78, 80-81, and 262.  This alleged "attempt," or "express purpose," however, is purely speculative.  The Complaint fails to make factual allegations that, if true, would plausibly support the conclusion the Complaint offers as to the purpose of the travel to Canada.  The Complaint merely

29

alleges that upon arriving in Canada, Messrs. Alsayed, Alhomid, Alhaqbani, and Algasem were traveling on tourist visas, were not forthcoming about knowing one another, and summoned an Embassy attorney, who was "overheard" instructing them to falsely claim they were going to a VIP delegation.  Finally, the Complaint also alleges that Messrs. Alsayed and. Algasem are forensic scientists and had unspecified "forensic tools" with them.  *See Id.* at ¶¶16, 231.[8]

Messrs. Alsayed, Alhaqbani, and Algasem allegedly were prohibited from entering Canada. Mr. Alhomid, who had a diplomatic passport, was permitted to enter Canada, but the Complaint does not allege undertook any action in Canada in furtherance of the supposed plot to kill Aljabri.

There are no facts alleged that could support the conclusion that any of these individuals even knew who Aljabri was, much less that they were trying to kill him.  The Complaint, which does not explain what "forensic tools" forensic scientists had with them while traveling or why the possession of these unidentified forensic tools is any way remarkable, does not allege that any of the Defendants had any sort of weapon or that they made any efforts to procure any; nor does the Complaint allege any facts regarding when, where, or how the supposed extrajudicial killing was to occur.  The Complaint is likewise devoid of any factual allegations that, if true, would plausibly support the conclusion that they were directed by any of the other defendants to go to Canada to kill Aljabri.

---

[8]  The Complaint also resorts to a transparent and strained effort at guilt by association by alleging that "Defendant Alsayed served on the academic panel alongside Dr. Salah Mohammed Tubaigy, who used a bone saw to dismember Khashoggi."  *Id.* at ¶77.  This allegation does not plausibly suggest that Mr. Alsayed was involved in a plot against Khashoggi, much less does it in any way support an allegation that he was involved in a plot to kill Aljabri.  Further, with respect only to the third cause of action, intentionally infliction of emotional distress, the Complaint also alleges that "Defendants," without identifying which ones, "travel[ed] to Canada with the materials necessary to clean up the crime," without alleging what the "materials" were and again without tying the supposed possession of the unnamed cleaning "materials" to a plot to kill Aljabri.  *See id.* at ¶275.

B.     *The Torture Victim Protection Act claim (the first cause of action) fails to state a claim as a matter of law.*

The Defendants adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Aljabri's TVPA claim is legally deficient because the Complaint fails to allege an "extrajudicial killing" and because Aljabri has not exhausted the adequate remedies available to him in Canada or Saudi Arabia.  *See* Crown Prince Mot. to Dismiss, pp. 48-54.

C.     *The Alien Tort Statute claim (the second cause of action) fails to state a claim as a matter of law.*

The Defendants adopt, and incorporate by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that Aljabri's ATS claim fails as a matter of law because an inchoate effort to carry out an extrajudicial killing does not violate universal and obligatory international norms as required under the ATS, and because Aljabri fails to allege any conduct in the United States regulated by the ATS.   *See* Crown Prince Mot. to Dismiss, pp. 54-61.

D.     *The first and second cases of action also fail to state a claim because secondary liability for an attempted tort is not a viable claim as a matter of law.*

The theory of liability against Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid is that they attempted to kill Aljabri and the theory of liability against Messrs. Alqahtani, Alassiri, and Alsaleh is that they conspired with, aided and abetted, or had an agency relationship with Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid in that attempted murder.  As explained in parts VI and VII, *supra*, this attempted extrajudicial killing does not violate the TVPA or the ATS.  The allegations against Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid that they attempted to kill Aljabri, but abandoned the effort without harming him, fails to state a claim against them because such an entirely "inchoate tort" caused no cognizable damages to Aljabri.  Even if this Court finds that the claims against Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid for an abandoned attempted murder can survive a motion to dismiss, however, the secondary liability claims against Messrs. Alqahtani, Alassiri, and Alsaleh, that

they conspired, aided and abetted, or had an agency relationship with regard to the attempt must be dismissed because secondary liability cannot be premised on an attempt.

> 1. <u>The first and second causes of action fail to state claims against Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid by alleging an entirely inchoate, abandoned attempt to commit murder.</u>

An attempted tort is, at best, a dubious concept. *See United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008) ("In tort law, unsuccessful attempts do not give rise to liability. If you plan to shoot a person but at the last minute change your mind (and you had not threatened him, which might be actionable), you have not committed a tort."); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692 (7th Cir. 2008)("The law of attempt has no counterpart in tort law because there is no tort without an injury.") (citing *United States v. Gladish*, 536 F.3d at 648); *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982)("Tort law, unlike criminal law, does not punish 'inchoate,' which is to say purely preparatory, conduct; for wrongdoing to be actionable as a tort there must be an injury…[B]y their nature involve concerted activity, there is no basis in common law thinking for a tort of conspiracy to commit a tort. If there is a conspiracy and it fails, there is no injury and hence no tort liability; if it succeeds, the damages are fully recoverable in an action on the underlying tort. *See* Prosser, *Handbook of the Law of Torts* 293 (4th ed. 1971); *see also Halverson v. Univ. of Utah Sch. of Med.*, No. 2:06CV228 DAK, 2007 U.S. Dist. LEXIS 72974, at *46 (D. Utah Sep. 28, 2007) ("This Cause of Action fails to state a claim because no constitutional violation is pled. Plaintiff alleges that the Individual Defendants conspired to attempt to force the Plaintiff's resignation from the residency program to prevent her from having access to due process and/or the grievance policies provided by the University…. The alleged conspiracy was unsuccessful…Because there was no actual deprivation of rights, this fails to state a claim for relief." (citing *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir.1990)).

Here, the Complaint alleges that Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid came to Canada with the intent to kill Aljabri, but three of them were stopped at the airport and they never came close to accomplishing that objective.  There is no allegation that they assaulted Aljabri, got anywhere near him, or communicated with him.  In other words, there is no allegation that could plausibly support any finding of damages suffered by Aljabri as a result of the conduct allegedly undertaken by Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid.  Therefore, the TVPA and ATS claims against them must be dismissed.

> 2.  <u>The first and second causes of action fail to state a claim for the secondary liability of Messrs. Alqahtani, Alassiri, and Alsaleh based on their alleged aiding and abetting or conspiring with Messrs. Algasam, Alsayed, Alhaqbani, and Alhomid in their alleged attempt</u>

An attempted tort – even if that concept is actionable – is distinct from the actual commission of a tort.  For secondary liability, such as aiding and abetting, agency, or conspiracy, to attach, a primary tortfeasor must have committed a substantive underlying tort, not merely an attempted tort.  *See Malden Transp., Inc. v. Uber Techs.*, Inc., 404 F. Supp. 3d 404, 426 (D. Mass. 2019) ("The second kind of conspiracy, which plaintiffs have asserted in their claim of aiding and abetting, requires proof of an underlying tort.") (citing *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 35 (1st Cir. 2009)); *Pimal Prop. v. Capital Ins. Grp., Inc.*, No. CV11-02323-PHX-DGC, 2012 U.S. Dist. LEXIS 24172, at *14 (D. Ariz. Feb. 27, 2012) ("Claims of aiding and abetting tortious conduct require proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach"); *Jenkins v. Wachovia Bank, Nat'l Ass'n*, 309 Ga. App. 562 (2011) ("Absent the underlying tort, there can be no liability for civil conspiracy."); *Stutts v. De Dietrich Grp.*, No. 03-CV-4058 (ILG), 2006 U.S. Dist. LEXIS 47638, at *47 (E.D.N.Y. June 30, 2006) ("The required elements of a cause of action for aiding and abetting a tortfeasor under New York or federal common law are: '(1) the existence of a violation by

the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; (3) substantial assistance by the aider and abettor in the achievement of the primary violation.'"); *In re Ross Sys. Sec. Litig.*, No. C-94-0017-DLJ, 1994 U.S. Dist. LEXIS 21263, at *12 (N.D. Cal. July 21, 1994)("The crime of conspiracy may be inchoate, but there is no corollary inchoate tort of conspiracy. In civil cases conspiracy is a theory of liability available only when a completed tort exists.").

In *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 106 (D.D.C. 2010), the plaintiffs alleged secondary liability based on the legal principles of aiding and abetting, agency, and conspiracy. As this Court explained: "In the District of Columbia, none of the three theories gives rise to an independent cause of action; rather, liability under each is reliant upon derivative tortious activity and therefore must be premised on some underlying tort." *Id.* (*citing Ali v. Mid-Atl. Settlement Servs., Inc.*, 640 F. Supp. 2d 1, 9 (D.D.C. 2009) (granting defendant summary judgment on conspiracy and aiding and abetting claims upon dismissal of underlying tort of fraud); *Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. 2d 86, 105 (D.D.C. 2003) ("[l]iability for aiding and abetting, or for conspiracy, must be tied to a *substantive cause of action*")(emphasis added)). The Court in *CropLife* held that because the plaintiffs did not state an actionable claim for the underlying tortious activity, the plaintiffs' secondary liability theories could not be maintained and dismissed the claim against those defendants. *Id.* .

Likewise, Aljabri's claims regarding a violation of TVPA and ATS contain no primary tortfeasor who is actually alleged to have committed "a substantive cause of action." *See Burnett v. Al Baraka Inv. and Dev. Corp.*, 274 F. Supp. at 105. The only alleged completed tort is the IIED claim (which also fails to state a claim, *see infra* p. 36). The TVPA and ATS claims allege an aborted attempted extrajudicial killing. They are not complete because there has been no killing. In fact, unlike other attempted extrajudicial killing cases where there has been a viable claim of injury, there is no allegation of physical contact whatsoever between Aljabri and any of the Defendants. *See Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 99 (D.D.C. 2017); *Boniface v. Viliena*, 338 F. Supp. 3d 50, 67-68 (D. Mass.

2018); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 666 (E.D. Va. 2014), *aff'd*, 811 F.3d 653 (4th Cir. 2016); *Doe v. Constant*, 2006 U.S. Dist. LEXIS 101961, at *12 n.3 (S.D.N.Y. Oct. 24, 2006).  Any injury Aljabri allegedly suffered arises from his IIED claim, not an attempted killing.  *See* Compl. ¶243 ("these overt acts directly and proximately caused injury to Dr. Saad in the form of severe emotional stress and the physical manifestations of that harm…").  Thus, the Complaint, in an effort to make a claim against Messrs. Alassiri, Alqahtani, and Alsaleh, asserts secondary liability to an "inchoate tort."  Since, as explained above, secondary liability requires a primary tortfeasor to commit a substantive tort, the TVPS and ATS claims against Messrs. Alassiri, Alqahtani, and Alsaleh fail to state a claim.

> E.     *The claims under the ATS and TVPA should be dismissed because secondary lability is not cognizable under those statutes.*

The Defendants incorporate, and adopt by reference, the legal standard and arguments set forth in Defendant Alasaker's Motion to Dismiss that secondary lability is not cognizable under the ATS and TVPA.  *See* Alasaker Mot. to Dismiss, pp. 25-27.

> F.     *The claim for intentional infliction of emotional distress (the third cause of action) fails to state a claim.*

The Defendants incorporate, and adopt by reference, the legal standard and arguments set forth in the Crown Prince's Motion to Dismiss that the Court should dismiss Aljabri's common-law claim for intentional infliction of emotional distress (IIED).  *See* Crown Prince Mot. to Dismiss, pp. 61-69.  This claim is not cognizable under Saudi Arabian law.  *See id.* at 61-65.  This claim also fails under D.C. law because an attempt to commit bodily harm that results only in emotional distress is not actionable as an IIED claim, and, to the extent the claim is based on the arrests of Aljabri's adult children, the claim fails because there is no allegation Aljabri was physically present when these arrests occurred.  *See id.* at 65-66.  Further, if the Court dismisses the ATS and TVPA claims, the Court is divested of personal jurisdiction over the Defendants.  Fed. R. Civ. P. 4(k)(2) is available only for a "claim that arises under federal law."  Alternatively, the Court should decline to exercise supplemental

jurisdiction over Aljabri's common-law claim for IIED.  *See* Crown Prince's Mot. to Dismiss, pp. 67-69.

## CONCLUSION

"Even under the most lenient interpretation, [] plaintiff's pleadings present a smorgasbord of manifest, incurable jurisdictional defects, failing further to state even a facially-plausible claim upon which relief can be granted."  *Weisskopf*, 2013 U.S. Dist. LEXIS 201309, at \*2.  The Complaint rests on conclusory allegations and supposition to allege that Saudi nationals, who are officials or employees of the Saudi government, at the behest of the Crown Prince and motivated by internal Saudi politics, plotted in Saudi Arabia to kill a Saudi citizen in Canada.  Even if this fanciful tale were supported by factual allegations, this Court would lack personal jurisdiction over the Defendants.  Further, even if it had personal jurisdiction, the Court would lack subject matter jurisdiction over these claims.  The claims would be barred by the Act of State Doctrine.  Further, the Complaint fails to join a necessary party.  In any event, the Complaint must be dismissed based on its failure to state a claim as matter of law, or to allege facts that, if true, would plausibly demonstrate the existence of the plot the Complaint imagines, much less that the Defendants participated in such a plot.  For all of these reasons and the additional reasons addressed above, the Complaint must be dismissed.

Respectfully Submitted,


_____/s/_____
Barry J. Pollack (DC Bar #434513)
Law Offices of Barry J. Pollack, LLC
1629 K Street, N.W., Suite 300
Washington, DC 20006
202-230-9647
barryjpollack@gmail.com


_____/s/_____
Jessica N. Carmichael (DC Bar #998952)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2020, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.


_____/s/_____
Jessica N. Carmichael