## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAAD ALJABRI<br><br>Plaintiff,<br><br>v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, et al.<br><br>Defendants. | §<br>§<br>§<br>§<br>§  Case No. 1:20-cv-02146-TJK<br>§<br>§<br>§<br>§ |

**PRINCE MOHAMMED BIN SALMAN ABDULAZIZ FOUNDATION'S MOTION TO DISMISS**

Defendant Prince Mohammed Bin Salman Abdulaziz Foundation, by and through undersigned counsel, hereby moves this Court, before the Honorable Timothy J. Kelly, at E. Barrett Prettyman U.S. Courthouse, 333 Constitution Ave., N.W., Washington, DC 20001, for an Order dismissing the Complaint in its entirety as to Prince Mohammed Bin Salman Abdulaziz Foundation under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, under Rule 12(b)(2) for lack of personal jurisdiction, under Rule 12(b)(7) for failure to join an essential party and under Rule 12(b)(6) for failure to state a claim. The grounds for this Motion are set forth in Prince Mohammed Bin Salman Abdulaziz Foundation's Memorandum in Support of its Motion to Dismiss.

Dated: December 7, 2020

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:   */s William W. Taylor, III*

William W. Taylor, III (D.C. Bar No. 84194)
Margarita K. O'Donnell (D.C. Bar No. 1005972)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: wtaylor@zuckerman.com
E-mail: modonnell@zuckerman.com
Telephone: (202) 778-1800
Facsimile: (202) 822-8106

*Attorneys for Defendant Prince Mohammed Bin Salman Abdulaziz Foundation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. SAAD ALJABRI | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:20-cv-02146-TJK |
| | § | |
| MOHAMMED BIN SALMAN BIN | § | |
| ABDULAZIZ AL SAUD, et al., | § | |
| | § | |
| Defendants. | | |

**PRINCE MOHAMMED BIN SALMAN ABDULAZIZ FOUNDATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I. THE COURT LACKS PERSONAL JURISDICTION OVER THE MISK
FOUNDATION. ............................................................................................................ 3

  A. Aljabri's Conclusory Allegations Cannot Establish Personal Jurisdiction. ............ 5

  B. There Is No Connection Between the Sole Claim Against the MiSK
Foundation and the Foundation's Educational Events in D.C. ............................. 9

  C. Asserting Jurisdiction Over the MiSK Foundation Would Offend
Constitutional Notions of Fair Play and Substantial Justice. ............................... 13

II. THE COURT DOES NOT HAVE JURISDICTION OVER THE CLAIM
AGAINST THE FOUNDATION BECAUSE IT IS IMMUNE. ....................................... 15

  A. The MiSK Foundation is Immune Under the State Department Test. .................. 16

  B. The MiSK Foundation is Immune Under the Restatement Test. .......................... 18

III. PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE ACT OF STATE
DOCTRINE. ................................................................................................................. 20

IV. THE COURT MUST DISMISS THE CLAIM AGAINST THE MISK
FOUNDATION BECAUSE SAUDI ARABIA IS A NECESSARY PARTY THAT
CANNOT BE JOINED. ................................................................................................ 21

V. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THE
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IF IT
DISMISSES THE OTHER DEFENDANTS AND CLAIMS. ......................................... 21

VI. THE ALLEGATIONS AGAINST THE MISK FOUNDATION FAIL TO STATE
A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. .......... 22

  A. The Intentional Infliction of Emotional Distress Claim is Governed by
Saudi Arabian Law and Must be Dismissed. ...................................................... 22

  B. Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional
Distress under D.C. Law. .................................................................................... 22

    1. Plaintiff's Direct Liability Theory Fails. .................................................. 23

    2. Plaintiff's Conclusory Allegations of Conspiracy or Aiding and
Abetting Do Not Salvage His Claim. ...................................................... 26

CONCLUSION ...................................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
  480 U.S. 102 (1987).............................................................................................. 14, 15

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................. passim

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................. 5–6

*Bernhardt v. Islamic Republic of Iran*,
  2020 WL 6743066 (D.D.C. Nov. 16, 2020) ............................................... 12, 28, 29

*\*Bigelow v. Garrett*,
  299 F. Supp. 3d 34 (D.D.C. 2018)............................................................................ 13

*Boucher v. Wal-Mart Canada Corp.*,
  2014 ONCA 419 ....................................................................................................... 24

*Broidy Capital Mgmt. LLC v. Muzin*,
  2020 WL 1536350 (D.D.C. Mar. 31, 2020) ....................................................... 16, 17

*Brunson v. Kalil & Co., Inc.*,
  404 F. Supp. 2d 221 (D.D.C. 2005)................................................................... 14, 15

*Carswell v. Air Line Pilots Ass'n, Int'l*,
  540 F. Supp. 2d 107 (D.D.C. 2008).......................................................................... 29

*\*Cockrum v. Donald J. Trump for President, Inc.*,
  319 F. Supp. 3d 158 (D.D.C. 2018)................................................ 8, 10–11, 12, 13

*Corsi v. Caputo*,
  2020 WL 1703934 (D.D.C. Apr. 7, 2020) ................................................................. 3

*Coulter v. Ramsden*,
  510 F. App'x 100 (3d Cir. 2013) ................................................................................ 7

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).................................................................................................. 14

*Doe 1 v. Buratai*,
  318 F. Supp. 3d 218 (D.D.C. 2018).......................................................................... 20

_____

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*Dogan v. Barak,*
  932 F.3d 888 (9th Cir. 2019) ............................................................... 18–19

*Estate of Klieman v. Palestinian Auth.,*
  923 F.3d 1115 (D.C. Cir. 2019) ................................................................. 4, 5

*Etchebarne-Bourdin v. Radice,*
  982 A.2d 752 (D.C. 2009) ............................................................................ 11

*First Chi. Int'l v. United Exch. Co.,*
  836 F.2d 1375 (D.C. Cir. 1988) ...................................................................... 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) ........................................................................................ 9

*Gorman v. Ameritrade Holding Corp.,*
  293 F.3d 506 (D.C. Cir. 2002) ...................................................................... 11

*Halberstam v. Welch,*
  705 F.2d 472 (D.C. Cir. 1983) ...................................................................... 28

*Heath v. Alabama,*
  474 U.S. 82 (1985) ........................................................................................ 21

*IMAPizza, LLC v. At Pizza Ltd.,*
  334 F. Supp. 3d 95 (D.D.C. 2018) ................................................................ 14

*Int'l Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ........................................................................................ 4

*Johnson v. Metro. Direct Prop. & Cas. Ins. Co.,*
  2019 WL 176851 (D.D.C. Jan. 11, 2019) ...................................................... 27

*Klayman v. Judicial Watch, Inc.,*
  296 F. Supp. 3d 208 (D.D.C. 2018) .............................................................. 25

*Lewis v. Mutond,*
  918 F.3d 142 (D.C. Cir. 2019) .......................................................... 16, 17, 19

*Livnat v. Palestinian Auth.,*
  851 F.3d 45 (D.C. Cir. 2017) ................................................................. 3, 6, 7

*Mattiaccio v. DHA Grp., Inc.,*
  20 F. Supp. 3d 220 (D.D.C. 2014) ................................................................ 27

*Md. Digital Copier v. Litig. Logistics, Inc.,*
  394 F. Supp. 3d 80 (D.D.C. 2019) ............................................................... 4, 9

*Miango v. Democratic Republic of Congo*,
    2020 WL 3498586 (D.D.C June 29, 2020) .............................................................. 19

*Moriah v. Bank of China Ltd.*,
    107 F. Supp. 3d 272 (S.D.N.Y. 2015) ............................................................... 17–18

*Muhammad v. United States*,
    300 F. Supp. 3d 257 (D.D.C. 2018) ...................................................................... 22

*Nat'l Resident Matching Program v. Elec. Residency LLC*,
    720 F. Supp. 2d 92 (D.D.C. 2010) ......................................................................... 6

*Nnaka v. Fed. Republic of Nigeria*,
    756 F. App'x 16 (D.C. Cir. 2019) ........................................................................ 21

*Ofisi v. BNP Paribas, S.A.*,
    278 F. Supp. 3d 84 (D.D.C. 2017), *order vacated in part on other grounds*,
    285 F. Supp. 3d 240 (D.D.C. 2018) ................................................................. 27, 28

*Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
    2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017) ...................................................... 18

*Ortberg v. Goldman Sachs Grp.*,
    64 A.3d 158 (D.C. 2013) ............................................................................... 23, 25

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ............................................................................................ 21

*Republic of Sudan v. Owens*,
    194 A.3d 38 (D.C. 2018) ............................................................................... 23, 26

*Richardson v. Trump*,
    2020 WL 5969270 (D.D.C. Oct. 8, 2020) ............................................................ 11

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ..................................................................................... 16, 17

*Second Amendment Found. v. U.S. Conference of Mayors*,
    274 F.3d 521 (D.C. Cir. 2001) ....................................................................... 10, 13

*Thompson Hine, LLP v. Taieb*,
    734 F.3d 1187 (D.C. Cir. 2013) ............................................................................ 4

*TJGEM LLC v. Republic of Ghana*,
    26 F. Supp. 3d 1 (D.D.C. 2013), *aff'd*,
    2015 WL 3653187 (D.C. Cir. June 9, 2015) ......................................................... 21

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................................................ 4

*Willis v. Willis*,
   655 F.2d 1333 (D.C. Cir. 1981) .............................................................................. 14

*Yousuf v. Samantar*,
   699 F.3d 763 (4th Cir. 2012) .................................................................................. 16

**STATUTES**

28 U.S.C. § 1331 ........................................................................................................... 3

28 U.S.C. § 1367 ......................................................................................................... 22

D.C. Code § 13-423 ......................................................................................... 1, 3–4, 11

**OTHER MATERIALS**

Br. for United States as Amicus Curiae Supporting Petitioners,
   *Mutond v. Lewis*, No. 19-185, 2020 WL 2866592 (U.S.) .................................. 16–17

Hazel Fox, *The Law of State Immunity* 455 (2d ed. 2008) ........................................ 16

Letter from Harold Hongju Koh, Legal Adviser, U.S. Dep't of State, to Stuart F. Delery,
   Principal Dep. Ass't Att'y Gen., Civil Div., U.S. DOJ, at 2,
   *Ragsdale v. Lashkar-E-Taiba*, No. 1:11-cv-03893-DLI-CLP
   (E.D.N.Y. Dec. 17, 2012), ECF No. 19-1 .............................................................. 17

*Misk becomes pioneering partner for UN youth work*, Saudi Gazette (Sept 26, 2018),
   https://live.saudigazette.com.sa/article/544261/SAUDI-ARABIA/Misk-becomes-pioneering-
   partner-for-UN-youth-work. ................................................................................. 11

Office of the Legal Advisor, U.S. Dep't of State, *Digest of United States Practice in
   International Law* (Carrielyn D. Guymon, ed. 2015), Ch. 10, § B(3) ...................... 17

Restatement (Second) of Foreign Relations Law § 66 ........................................... 17, 19

Restatement (Second) of Torts § 46 ............................................................................ 26

*Saudi Arabia Wants Its Fugitive Spymaster Back*, WSJ (July 17, 2020) ..................... 19

*The Misk Foundation - the Saudi Arabian Youth Empowerment Nonprofit Established by H.R.H.
   Crown Prince Mohammed bin Salman - Announces Events in Six U.S. Cities in Conjunction
   With Royal Visit*, PR Newswire, https://www.prnewswire.com/news-releases/the-misk-
   foundation--the-saudi-arabian-youth-empowerment-nonprofit-established-by-hrh-crown-
   prince-mohammed-bin-salman--announces-events-in-six-us-cities-in-conjunction-with-royal-
   visit-300617789.html (Mar. 21, 2018) ..................................................................... 10

## INTRODUCTION

We demonstrate in this Memorandum that the Court must dismiss the claim for intentional infliction of emotional distress, brought by Plaintiff Saad Aljabri against the Prince Mohammed Bin Salman bin Abdulaziz Foundation (the "MiSK Foundation" or the "Foundation"). This is the sole claim brought against the Foundation.[1] There are six reasons why the Court should dismiss this claim, each of which is sufficient and all of which are meritorious.

First, the allegations in the Complaint, fairly read, do not state facts sufficient to confer personal jurisdiction over the Foundation. Plaintiff's theory of personal jurisdiction is apparently that the Foundation held events in the District of Columbia at which people were "recruited" to search for the Plaintiff, Compl. ¶ 93 & n.51, and that the Foundation is therefore subject to suit here under the District of Columbia long arm statute, D.C. Code § 13-423(a)(1). The Complaint does not identify a single event in the District of Columbia at which anyone was recruited or at which the so-called plot was even discussed, or connect any of these events to the alleged plot to kill Aljabri in any other way. Conclusory allegations like these do not satisfy Plaintiff's obligation under *Iqbal* and its progeny to plead facts establishing jurisdiction. But even if the allegations had some factual support, the hosting of events in the District of Columbia in furtherance of a foundation's purposes does not subject the foundation to personal jurisdiction here for intentional infliction of emotional distress elsewhere.

Second, the Court lacks subject matter jurisdiction over the MiSK Foundation because it is immune from suit under the common law of conduct-based immunity. The Complaint, on its face, establishes the MiSK Foundation's entitlement to immunity because it alleges that "all acts,"

---

[1] This motion to dismiss and memorandum in support thereof is filed on behalf of defendant the MiSK Foundation. As set forth below, for efficiency and to minimize duplicating arguments for the Court, the Foundation joins and incorporates by reference the arguments made by several other defendants.

including those by the Foundation, "were carried out under actual or apparent authority or color of law of the government of Saudi Arabia." Compl. ¶ 239. It further claims that the MiSK Foundation is actually a "front" for the Crown Prince of Saudi Arabia. *Id.* ¶ 56. The Complaint itself thus demonstrates that the Foundation is immune from suit.

Third, the act of state doctrine bars Aljabri's action because adjudicating his claims would require this Court to inquire into the validity of the public acts a foreign sovereign committed within its own territory.

Fourth, the Complaint must be dismissed under Rule 12(b)(7) because Saudi Arabia is a necessary and indispensable party that cannot be joined in this suit because it is subject to sovereign state immunity.

Fifth, to the extent the Court dismisses the federal claims brought against the other defendants, the Court should not exercise supplemental jurisdiction over the intentional infliction of emotional distress claim.

Finally, the Complaint does not allege a plausible cause of action against the MiSK Foundation. The intentional infliction of emotional distress claim, which is governed by Saudi law, is not a cognizable claim under Saudi law and should be dismissed for that reason alone. But even if the Court considered the claim under District of Columbia law, it must be dismissed. Aljabri's assertions of direct, aiding and abetting, and conspiracy liability against the MiSK Foundation rest on conclusory allegations of "recruiting" others, with no allegations of actual facts in support. Furthermore, none of the MiSK Foundation's actions constituted "extreme and outrageous" conduct necessary to state a claim nor did those actions cause any harm to Aljabri.

ARGUMENT[2]

I.   **THE COURT LACKS PERSONAL JURISDICTION OVER THE MISK FOUNDATION.**

Aljabri bears the burden of establishing that the Court has personal jurisdiction over all defendants. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017). To establish jurisdiction, a plaintiff must "allege specific acts connecting [the] defendant with the forum and may not rely on bare allegations or conclusory statements." *Corsi v. Caputo*, 2020 WL 1703934, at *2 (D.D.C. Apr. 7, 2020) (Kelly, J.) (alteration in original) (citation omitted). Although the Court must "resolve factual disputes in favor of the plaintiff[,] . . . it need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts." *Id.* (quoting *Livnat*, 851 F.3d at 57). Accordingly, the D.C. Circuit has held that a court lacks jurisdiction where a plaintiff relies only on conclusory allegations of jurisdiction. *See Livnat*, 851 F.3d at 57.

Plaintiff asserts subject matter jurisdiction over the other defendants under 28 U.S.C. § 1331, which grants federal question jurisdiction, and personal jurisdiction over these same other defendants primarily under Federal Rule of Civil Procedure 4k(2). Compl. ¶¶ 85, 86. For that reason, Plaintiff spends a significant amount of time and energy in the Complaint attempting to persuade the Court that those defendants were involved in conduct in the United States, including because of Aljabri's alleged importance to the "U.S. Intelligence Community," *id.* ¶¶ 85, 87–88. But with regard to the MiSK Foundation, which is not the subject of these federal claims, Plaintiff must demonstrate personal jurisdiction under the District of Columbia long-arm statute, D.C. Code

---

[2] Aljabri contends that he served the MiSK Foundation through mail and WhatsApp. *See* ECF Nos. 35, 42. For the reasons described in the motion to dismiss by Defendant Mohammed bin Salman bin Abdulaziz Al Saud ("Crown Prince's Brief"), those methods of service violate Saudi law. The Foundation adopts and incorporates by reference the arguments in the Crown Prince's Brief concerning service. *See* Crown Prince Br. at 11.

§ 13-423(a), and therefore must establish the requisite connection to the forum in which this Court sits. *See id.* Plaintiff's failure to do so requires dismissal under Rule 12(b)(2).

D.C. Code § 13-423(a)(1) provides that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." That provision is subject to Section 13-423(b), which states that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." Any such jurisdiction must be consistent with the constitutional parameters set forth in the Due Process Clause. *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013). Because Section 13-423(a)(1) and (b) provide "jurisdiction to the full extent allowed by the Due Process Clause," the jurisdictional analysis is governed by the limitations of the Due Process Clause, and thus is the focus of the Court's inquiry. *Thompson Hine*, 734 F.3d at 1189 (citation omitted).

The Due Process Clause requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Md. Digital Copier v. Litig. Logistics, Inc.*, 394 F. Supp. 3d 80, 90 (D.D.C. 2019) (Kelly, J.) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Importantly, for a court "to exercise [specific] jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a *substantial connection* with the forum." *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1120 (D.C. Cir. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)), *cert. granted, vacated, and remanded*, 140 S. Ct. 2713 (2020).

The Court lacks jurisdiction over the MiSK Foundation for three reasons: first, Aljabri's jurisdictional allegations rest on conclusory assertions that the Foundation was involved in

"recruiting" with no underlying factual support; second, the MiSK Foundation's educational events in D.C. have no connection to the intentional infliction of emotional distress allegedly suffered by Aljabri in Canada; and third, forcing the Foundation into a court in this jurisdiction would offend notions of fair play and substantial justice.

A.     **Aljabri's Conclusory Allegations Cannot Establish Personal Jurisdiction.**

Aljabri's theory of personal jurisdiction relies on the unfounded allegation that the MiSK Foundation's educational events in the District of Columbia were "recruiting" events for searchers for Aljabri in the United States. Compl. ¶ 93 & n.51. Aljabri's allegations of "recruiting" are textbook examples of conclusory allegations that cannot satisfy his burden to establish personal jurisdiction over the MiSK Foundation.

The Supreme Court in *Ashcroft v. Iqbal* illustrated, in the Rule 12(b)(6) context, the types of allegations that are conclusory and therefore will not sustain complaints which depend upon them. 556 U.S. 662 (2009); *see also Klieman*, 923 F.3d at 1125 (applying *Iqbal* to personal jurisdiction analysis). For example, "naked assertion[s] devoid of further factual enhancement" could not satisfy a plaintiff's burden. *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that offered only "labels and conclusions" would also fail on the pleadings. *Id.* (citation omitted). The application of those principles in *Iqbal* led to dismissal. There, the plaintiff alleged that former Attorney General John Ashcroft and then-FBI Director Robert Mueller were, respectively, the "principal architect" of an allegedly discriminatory policy and "instrumental" in implementing the policy. *Id.* at 680–81. Those "bare assertions," the Court held, were "conclusory and not entitled to be assumed true." *Id.* at 681. Likewise, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that a "formulaic recitation of the elements of a cause of action will not do," and that a complaint must contain allegations of fact in order to withstand a motion attacking its sufficiency. 550 U.S. 544, 555, 557 (2007). In this respect, bare assertions of "conspiracy" or a "conclusory

allegation of agreement at some unidentified point" is insufficient at the pleadings stage. *Id.* at 557.

A similar analysis applies for personal jurisdiction. When faced with conclusory assertions for jurisdiction, the D.C. Circuit instructs that district courts should dismiss for lack of jurisdiction. *See Livnat*, 851 F.3d at 57; *see also First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (citation omitted) (conclusory statements "[do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction" under D.C.'s long-arm statute). In *Livnat*, the plaintiffs' jurisdictional theory asserted that an attack in the West Bank was "part of" a "policy and practice" of the defendant to "us[e] terrorism to influence United States public opinion and policy." 851 F.3d at 57. The D.C. Circuit held that those allegations, which were supported by an expert declaration, "failed to 'make a *prima facie* showing of the pertinent jurisdictional facts." *Id.* at 56–57 (citation omitted). The plaintiffs' allegations were "conclusory" because they "merely state[d] the plaintiffs' theory of specific jurisdiction," without presenting any underlying facts. *Id.* at 57; *see also Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 99 (D.D.C. 2010) ("[V]ague and conclusory allegations do not suffice to demonstrate that a defendant is subject to personal jurisdiction in a particular forum.").

Those principles guide the Court's decision in this case. According to Aljabri, "all" of the MiSK Foundation's events in Washington, D.C. were "designed and executed" to "recruit and develop a network of agents in the United States to carry out acts in furtherance of Defendant bin Salman's objectives," including the alleged search for Aljabri. Compl. ¶ 93.[3] Although the Complaint alleges that three individual defendants, who made various inquiries in the United

---

[3] Despite relying heavily on allegations that there was a "search" in the United States to make this forum relevant to Plaintiff's claims, the Complaint is noticeably silent about whether Aljabri was ever actually in the United States during that time period.

States regarding the location of Aljabri's wife in the fall of 2017, had been "recruited" "through" the Foundation to allegedly search for Aljabri, it does not allege that they were recruited in Washington, D.C. *See* Compl. ¶ 61 (Youssef Alrajhi); *id.* ¶ 66 (Mohammed Alhamed); *id.* ¶ 69 (Layla Abuljadayel).[4]

As in *Livnat*, Aljabri's jurisdictional allegations do no more than restate his *theory* of personal jurisdiction – that the Foundation "recruited" individuals in Washington, D.C. to search for Aljabri. But these allegations are "naked assertions" of recruiting without *any* "factual enhancement." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also Coulter v. Ramsden*, 510 F. App'x 100, 103 (3d Cir. 2013) (holding that "bald assertion" that two defendants "recruited" another was conclusory and "insufficient to show the existence of an agreement").

Aljabri does not specifically allege that *any individual* involved in this case was "recruited" at an event in Washington, D.C. To the contrary, by the Complaint's own allegations, two of the defendants who participated in the search for Aljabri were supposedly "recruited" after MiSK Foundation events in *Boston*, Compl. ¶ 57, one of those was allegedly "cultivated" at events in *Boston* and *New York*, *id.* ¶ 66 n.32, and the Complaint is silent about where the third defendant

---

[4] Plaintiff uses the term "U.S.-Based Covert Agent Defendants" to refer to Defendant Alrajhi, Defendant Alhamed, Defendant Abuljadayel, Defendant John Doe 1, and Defendant Alharbi. *See* Compl. ¶¶ 59–71. At one point, the Complaint alleges that "Defendant bin Salman's agents in the United States—including the U.S.-Based Covert Agent Defendants—had been recruited and cultivated . . . through the MiSK Foundation." *Id.* ¶ 163. But the Complaint contains no additional information (much less any factual support) regarding the Foundation's alleged connection to "Defendant John Doe 1" or Defendant Alharbi. *See, e.g.*, *id.* ¶ 70 (describing John Doe's role in the alleged conduct and failing to mention any connection to the Foundation); *id.* ¶ 71 (describing Alharbi's role in the alleged conduct and failing to mention the Foundation but stating that Alharbi was "acting at the direction" of the Crown Prince). These types of broad and unfounded allegations, which attempt to group defendants together but are not corroborated by factual detail or are later contradicted in other allegations, are endemic to the Complaint. Thus, under *Iqbal*, the Court should set aside altogether any allegation that rests on a connection between the Foundation, "Defendant John Doe 1," and Defendant Alharbi. Those simply cannot be the basis for jurisdiction or a substantive claim against the Foundation.

was recruited. Also absent from the Complaint is an allegation that anyone purportedly "recruited" at the D.C. events for the alleged search for Aljabri even *attended* those D.C. events. *See id.* ¶ 93 & n.51. The only defendant who allegedly was present at "some or all" of those events was the Secretary-General of the organization. *Id.* ¶ 93.

The Complaint itself undermines the assertion that the Foundation's Washington, D.C. events were for "recruiting" defendants to search for Aljabri. According to the Complaint's own allegations, *every event* listed as a purported "recruiting event" in D.C. took place *after* the alleged "hunt" for Aljabri was *over*. The so-called "hunting" of Aljabri in the United States happened between September and December 2017. *Id.* ¶ 162. Thus, recruiting of the individuals involved in that search must have occurred before fall 2017. But all the D.C. "recruiting events" that Plaintiff marshals in support of jurisdiction occurred in 2018. *See id.* ¶ 93 n.51.[5] *See Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 182 (D.D.C. 2018) ("Activities that occur after the injury occurred . . . do not constitute in-forum contacts for purposes of establishing specific jurisdiction.").[6]

Because Aljabri's jurisdictional theory is based on conclusory allegations of "recruiting" in Washington, D.C. by the MiSK Foundation, he has failed to establish personal jurisdiction.

---

[5] Aljabri cites a Bloomberg article from 2016 touting the partnership between Bloomberg and the MiSK Foundation. *See* Compl. ¶ 93 n.51 (citing Press Release, Bloomberg, *Bloomberg and the MiSK Foundation To Explore Multi-Year Financial Education and Business Journalism Training Initiative for Young Saudis* (Nov. 15, 2016), https://www.bloomberg.com/company/press/bloomberg-misk-foundation-journalism-training). That article does not mention an event in Washington, D.C., but a tweet cited by Aljabri shows that a Bloomberg D.C. event occurred in 2018. *See id.* (citing @MiSKinitiatives, Twitter (June 28, 2018, 11:53 AM), https://twitter.com/MiSKinitiatives/status/1012363258236456963).

[6] The only two Foundation-related allegations in Washington, D.C. that occurred before September 2017 are entirely irrelevant. Plaintiff alleges that the MiSK Foundation donated to the Women Entrepreneur's Finance Initiative around May 2017, Compl. ¶ 95, and signed a contract in D.C. for the establishment of a business school in Saudi Arabia, *id.* ¶ 94. There are no allegations that any "recruiting" related to this case occurred with respect to either transaction.

B.    **There Is No Connection Between the Sole Claim Against the MiSK Foundation and the Foundation's Educational Events in D.C.**

Once Aljabri's conclusory allegations are stripped away, his expansive jurisdictional theory is laid bare: he seeks to hale a Saudi charitable foundation into this forum because it hosted in Washington, D.C. a handful of events which have no connection to a claim of intentional infliction of emotional distress suffered by a foreign plaintiff in Canada.

This Court has explained that "[b]oth D.C. Code § 13-423 and the Due Process Clause require that the defendant's contacts with the forum state have a connection to the underlying controversy." *Md. Digital Copier*, 394 F. Supp. 3d at 93–94 (requiring "causal relationship" for purposes of due process analysis); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" (citation omitted)). As the D.C. Circuit has recognized, absent these protections, "people would be unable to meet in the nation's capital to discuss issues of concern without subjecting themselves to the jurisdiction of the D.C. courts." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

The innocuous events forming the purported basis for jurisdiction are contained in a footnote in the Complaint, Compl. ¶ 93 n.51, which reveals a series of functions consistent with the Foundation's charitable mission to "develop and empower Saudi youth to become active participants in the knowledge economy,"[7] *id.* ¶ 56 (explaining that the MiSK Foundation's mission

---

[7] *The Misk Foundation - the Saudi Arabian Youth Empowerment Nonprofit Established by H.R.H. Crown Prince Mohammed bin Salman - Announces Events in Six U.S. Cities in Conjunction With Royal Visit*, PR Newswire (Mar. 21, 2018), https://www.prnewswire.com/news-releases/the-misk-foundation--the-saudi-arabian-youth-empowerment-nonprofit-established-by-hrh-crown-prince-mohammed-bin-salman--announces-events-in-six-us-cities-in-conjunction-with-royal-visit-300617789.html (cited Compl. ¶ 93 n.51)

is to "cultivat[e] and encourage[e] learning and leadership in youth for a better future in Saudi Arabia"[8]). The events held in D.C. included two TED-type talks, an art exhibit at the Kennedy Center, an art discussion with a tour of the Newseum, and a "training workshop . . . in cooperation with Bloomberg and LinkedIn." *Id.* ¶ 93 n.51. The reports of these events, cited by Aljabri, highlight that they featured leaders from across different fields and furthered the stated mission of the Foundation. The MiSK Talk in Washington, D.C. included the Head of Global Public Policy at Paypal, the Director of the Albright Stonebridge Group (a consulting firm chaired by former Secretary of State Madeleine Albright), as well as students from Georgetown, George Mason and other universities.[9] The event at the Newseum, titled "Changing Landscapes," was moderated by CNN Diplomatic Correspondent Michelle Kosinski and included National Public Radio reporter Deborah Amos. *Id.*[10]

There is *no link* between those events and a claim for intentional infliction of emotional distress that Aljabri allegedly suffered in Canada. *See Cockrum*, 319 F. Supp. 3d at 175 ("[F]or purposes of asserting jurisdiction over defendants, the Court must determine from the allegations

[8] Cited in the Complaint as *About MiSK*, https://misk.org.sa/en/about-misk/. Compl. ¶ 56 n.23.

[9] *The Misk Foundation - the Saudi Arabian Youth Empowerment Nonprofit Established by H.R.H. Crown Prince Mohammed bin Salman - Announces Events in Six U.S. Cities in Conjunction With Royal Visit*, https://www.prnewswire.com/news-releases/the-misk-foundation--the-saudi-arabian-youth-empowerment-nonprofit-established-by-hrh-crown-prince-mohammed-bin-salman--announces-events-in-six-us-cities-in-conjunction-with-royal-visit-300617789.html (cited Compl. 93 ¶ 51).

[10] The D.C. events are consistent with other activities of the MiSK Foundation in the United States, including the signing of an "Historic Agreement for Global Youth Work" with the United Nations in 2018. Compl. ¶ 40 n.9. As part of that agreement, the United Nations Secretary-General's Envoy on Youth lauded the Foundation's "commitment and dedication . . . to supporting youth development globally." *Misk becomes pioneering partner for UN youth work*, Saudi Gazette (Sept 26, 2018), https://live.saudigazette.com.sa/article/544261/SAUDI-ARABIA/Misk-becomes-pioneering-partner-for-UN-youth-work. Courts may "take[] judicial notice of the existence of . . . news article[s]." *Richardson v. Trump*, 2020 WL 5969270, at *2 n.4 (D.D.C. Oct. 8, 2020).

in the complaint what suit-related conduct by defendants . . . took place in D.C."). The Court has jurisdiction pursuant to Section 13-423(a)(1) only if the alleged claims *arise out* of the Foundation's "transacting any business in the District of Columbia." Plaintiff has not made that essential connection.

Even if the Court credits the allegation that someone was "recruited" at a MiSK event, holding events in furtherance of an organization's mission is not the same as holding events for the purpose of executing an assassination plot. The fact that plotters met at a party given by a third party does not without more create jurisdiction over the host who is otherwise not present in the forum. *See Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 759 (D.C. 2009) ("appellants' malpractice actions cannot be said to 'arise from' the doctor's attendance at these [training and continuing medical education] meetings" in D.C.); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) ("[B]ecause Gorman's breach of contract claim against Ameritrade does not arise out of any business transacted between the parties in the District, this font of jurisdiction is unavailable."); *Bernhardt v. Islamic Republic of Iran*, 2020 WL 6743066, at *3 (D.D.C. Nov. 16, 2020) (Kelly, J.) (holding plaintiffs failed to establish personal jurisdiction where they "d[id] not show that their injuries, caused by the tragic suicide attack at Camp Chapman, 'arose out of' or 'relate to' [defendants'] contacts with the United States").

Two recent decisions from this jurisdiction are instructive. In *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158 (D.D.C. 2018), plaintiffs alleged a conspiracy between the Trump Campaign and Russia to release hacked emails from the Democratic National Committee and brought two claims, including intentional infliction of emotional distress. In support of specific personal jurisdiction, Plaintiffs identified, among other contacts, two meetings in D.C.: one involving President Trump and his national security team, which allegedly led to adoption of a

more favorable Russia policy; and a private conversation in D.C. between Russian Ambassador Kislyak, and then-candidate Donald Trump and others. *Id.* at 168. None of these acts was sufficient for personal jurisdiction because "plaintiffs d[id] not allege anything more than that there was a March meeting at a D.C. hotel where the Trump Campaign adopted a favorable approach to Russia and an April meeting at another D.C. hotel where high-level Trump Campaign officials talked to the Russian Ambassador." *Id.* at 178. The court refused, "[w]ithout more specific allegations," to "assume that meetings in the District in March and April involving the Trump Campaign's national security team or the Russian Ambassador related to plaintiffs' claims." *Id.* at 179.

Like the plaintiffs in *Cockrum*, Aljabri asks the Court to "assume" that the Foundation's events—attended by corporate executives, journalists, and students who undisputedly have no connection to Aljabri's wide-ranging conspiracy— are "related to plaintiff[']s claims." *Id.* There is no factual support for that proposition. Moreover, accepting Aljabri's position necessarily means that "people would be unable to meet in the nation's capital to discuss issues of concern without subjecting themselves to the jurisdiction of the D.C. courts." *Id.* (quoting *Second Amendment Found.*, 274 F.3d at 524).

This case is also similar to *Bigelow v. Garrett*, 299 F. Supp. 3d 34 (D.D.C. 2018), where the plaintiff (a photographer) alleged that the defendants (a Congressman and his campaign) had violated copyright laws when they used a photograph taken by the photographer in campaign material. *Id.* at 40–41. The plaintiff identified a number of actions that the defendants had taken in the District, including soliciting and receiving funds from District residents, making payments in the District of Columbia for campaign events, and "maintain[ing] professional relationships with D.C.-based person[s] or entit[ies] . . . [who] participated in the alleged infringements." *Id.* at 41–42, 45 (internal quotation marks omitted). The District Court found that the plaintiff had failed to

establish jurisdiction under Section 13–423(a)(1) because there was no allegation that any of those events was related to the underlying claim of improperly "creat[ing] or disseminat[ing] [the] photograph." *Id.* at 45.

Similarly, Aljabri identifies events that the MiSK Foundation held in the District of Columbia, including making a donation to another non-profit and signing a contract to create a university in Riyadh (all work that is consistent with the Foundation's mission) but fails to identify how any of those events bore any causal relationship to his tort claim. The absence of such a connection requires dismissal.

In sum, the Complaint does not contain any allegations that tie the Foundation's Washington, D.C. activities to the specific intentional infliction of emotional distress claim against the Foundation. Because the "transacting any business" prong of the D.C. statute is the only statutory ground on which Plaintiff asserts personal jurisdiction over this defendant, the Court lacks personal jurisdiction over the MiSK Foundation and should dismiss this claim.

C.   **Asserting Jurisdiction Over the MiSK Foundation Would Offend Constitutional Notions of Fair Play and Substantial Justice.**

Finally, to subject the MiSK Foundation—a Saudi charitable foundation sued by a Saudi national living in Canada—to a Washington, D.C. court's jurisdiction would not comport with notions of fair play and substantial justice. In this analysis, courts consider "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief in the forum State, and the interests of other sovereigns in resolving the dispute." *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 115 (D.D.C. 2018) (Kelly, J.) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 145 (2014) (Sotomayor, J., concurring)). All those factors weigh heavily against exercising jurisdiction here.

-13-

*First*, the burden on the MiSK Foundation would be "severe" if it were required to "submit its dispute . . . to a foreign nation's judicial system." *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987). Indeed, the Supreme Court instructs that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.*

*Second*, the interests of the forum state are minimal. D.C. courts have little interest in a dispute between a Saudi plaintiff living in Canada and a Saudi charitable foundation. *See Willis v. Willis*, 655 F.2d 1333, 1338 (D.C. Cir. 1981) ("The District of Columbia has little interest in providing a forum to a nonresident plaintiff."); *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 238 (D.D.C. 2005) ("[W]here the parties are both non-residents, the District's legitimate interests in the dispute have considerably diminished." (citation omitted)). Moreover, based on the allegations in the Complaint, the "documents, records, and witnesses" that are relevant to the intentional infliction of emotional distress claim are all located outside Washington, D.C. *See Brunson*, 404 F. Supp. 2d at 238.

*Third*, any interest of the Plaintiff is also lessened here. Aljabri has not chosen to bring suit in the forum in which he currently resides, Canada, or the forum in which he is a citizen, Saudi Arabia. Although he alleges that Saudi Arabia lacks adequate remedies, Compl. ¶ 253, he makes no such claim as to Canada and is silent about his failure to bring this suit in Canada. Aljabri has not explained why this foreign forum is more convenient for him, and accordingly his interest should be accorded little weight. *See Asahi*, 480 U.S. at 114 ("Cheng Shin has not demonstrated that it is more convenient for it to litigate its indemnification claim against Asahi in California rather than in Taiwan or Japan.").

*Finally*, both Canada and Saudi Arabia have a stronger connection to this suit than Washington, D.C. Canada is where Aljabri resides, and Saudi Arabia is where Aljabri is a citizen, where the MiSK Foundation is located, and where the relationships that give rise to Aljabri's claims are based.

Accordingly, asserting jurisdiction over the MiSK Foundation would not comport with due process, and the Court should dismiss the claim against the Foundation. *See id.* at 115 (emphasizing that courts should be "unwilling[] to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State").

## II.   THE COURT DOES NOT HAVE JURISDICTION OVER THE CLAIM AGAINST THE FOUNDATION BECAUSE IT IS IMMUNE.

The Court's personal jurisdictional inquiry of course, is a threshold one. But there is another threshold reason that requires dismissal of the Complaint against the Foundation: the MiSK Foundation is entitled to common law conduct-based immunity, and therefore the Complaint should be dismissed pursuant to Rule 12(b)(1).

Conduct-based immunity is afforded to "any . . . public minister, official, or agent of the state with respect to acts performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule of law against the state." *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019); *see Yousuf v. Samantar*, 699 F.3d 763, 769 (4th Cir. 2012) (noting that conduct-based immunity "applies to current and former foreign officials"). Conduct-based immunity "derives from the immunity of the State" and is based on the " 'classical' " theory that " 'any act performed by the individual as an act of the State enjoys the immunity which the State enjoys.' " *Yousuf*, 699 F.3d at 774 (quoting Hazel Fox, *The Law of State Immunity* 455 (2d ed. 2008)); *see Samantar v. Yousuf*, 560 U.S. 305, 322 (2010) ("[W]e do not doubt that in some circumstances the immunity of the foreign state extends to an individual for acts taken in his official capacity."). The MiSK

-15-

Foundation adopts and incorporates by reference the arguments in the Crown Prince's Brief about the applicability of conduct-based immunity to these circumstances. *See* Crown Prince Br. § II.A.3.

Because the Foundation has not requested a suggestion of immunity from the U.S. Department of State at this time, "the District Court is authorized to decide whether all the requisites for foreign-official immunity exist." *Lewis*, 918 F.3d at 145–46. In making this determination, the Foundation bears the burden to demonstrate its entitlement to immunity, and although the court must assume the truth of the plaintiff's factual allegations, it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Broidy Capital Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *4 (D.D.C. Mar. 31, 2020) (citation omitted) (evaluating common-law immunity as applied to an entity).

D.C. courts have applied two tests to determine whether a defendant is entitled to conduct-based immunity, the "State Department" test, *see id.*, and a three-part test set forth in the Restatement (Second) of Foreign Relations Law § 66(f), *Lewis*, 918 F.3d at 146. The MiSK Foundation agrees that, for the reasons set forth in the other defendants' briefs, this Court should apply the State Department test in this case, and adopts and incorporates by reference the arguments made therein. *See* Crown Prince Br. § II.A.2; Mem. of Law of Youssef Alrajhi, Mohammed Alhamed, and Layla Abuljadayel in Support of their Mot'n to Dismiss ("Student-Defendants Br.") § VIII.A. Ultimately, regardless of what test this Court applies, the Foundation is entitled to conduct-based immunity.

A.     **The MiSK Foundation is Immune Under the State Department Test.**

The "State Department" test assesses "whether it is 'the established policy of the State Department to recognize' the asserted 'ground of immunity.'" *Broidy*, 2020 WL 1536350, at *5 (quoting *Samantar*, 560 U.S. at 312). In this case, immunity is clearly appropriate under the "State

Department" test, as the United States has recently explained to the Supreme Court that "conduct-based foreign-official immunity generally turns on whether the challenged action was taken in an official capacity." Br. for United States as Amicus Curiae Supporting Petitioners, *Mutond v. Lewis*, No. 19-185, 2020 WL 2866592, at \*10 (U.S.). And "the State Department's adherence to that principle is . . . reflected in its annual Digest of United States Practice in International Law." *Id.* at \*\*10–11 (citing Office of the Legal Advisor, U.S. Dep't of State, *Digest of United States Practice in International Law* (Carrielyn D. Guymon, ed. 2015), Ch. 10, § B(3), at 426); *see also* Letter from Harold Hongju Koh, Legal Adviser, U.S. Dep't of State, to Stuart F. Delery, Principal Dep. Ass't Att'y Gen., Civil Div., U.S. DOJ, at 2, *Ragsdale v. Lashkar-E-Taiba*, No. 1:11-cv-03893-DLI-CLP (E.D.N.Y. Dec. 17, 2012), ECF No. 19-1 ("acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity").

The "State Department" test is satisfied here. Plaintiff has alleged that the MiSK Foundation operated as a "front" for the Crown Prince of Saudi Arabia. Compl. ¶¶ 36, 56, 59; *see also id.* ¶ 14 (alleging that the Crown Prince "[a]ct[ed] through" the Foundation). Plaintiff likewise alleges that all "[t]he acts" described in Complaint—including those taken by the MiSK Foundation—"were carried out under actual or apparent authority or color of law of the government of Saudi Arabia." *Id.* ¶ 239. And although the Complaint asserts that the Foundation is the Crown Prince's "personal" foundation, *id.* ¶ 55 the "actions at issue" in the Complaint do not "concern[] these private positions or interests rather than . . . governmental interests," namely the prosecution of Aljabri for corruption. *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at \*10 n.8 (S.D.N.Y. Aug. 18, 2017).

Indeed, the District Court for the Southern District of New York held that a non-party was immune from deposition testimony as an agent of the Israeli government where the individual was

"contacted by the National Security Advisor, a high-ranking official in the Prime Minister's office, and asked to undertake a task" which he performed and "then reported back." *Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 278 (S.D.N.Y. 2015). The court concluded that the individual "did not undertake this task in his capacity as a private individual—he performed it solely because the National Security Advisor made a request. As such, he acted as an agent of the Israeli government." *Id.* The same holds true here, where the Plaintiff alleges that the Foundation was a "front" through which the Crown Prince "act[ed]." Compl. ¶¶ 14, 36. As a result, those allegations show that, based on Plaintiff's theory, the MiSK Foundation is entitled to immunity.

B.   **The MiSK Foundation is Immune Under the Restatement Test.**

As described in the Crown Prince's brief, there are important reasons why this Court should not apply the Restatement (Second) test here, including that the subsequent Restatements of Foreign Relations Law have not adopted the "conduct-based" immunity test set forth in the Restatement (Second) in 1966. *See* Crown Prince Br. § II.A.2. However, even if the Court were to apply the Restatement (Second), the Foundation would be entitled to conduct-based immunity. The Restatement (Second) of Foreign Relations Law § 66(f) evaluates the following three elements: "[f]irst, whether the actor is a public minister, official, or agent of the foreign state. Second, whether the acts were performed in her official capacity. And third, whether exercising jurisdiction would serve to enforce a rule of law against the foreign state." *Lewis*, 918 F.3d at 146 (citations omitted).

As above, the first and second elements are satisfied from the face of the Complaint because Plaintiff has alleged that the MiSK Foundation operated as a "front" for the Crown Prince of Saudi Arabia, Compl. ¶ 36, and because Plaintiff alleges that all "[t]he acts" described in the Complaint—including those taken by the MiSK Foundation—"were carried out under actual or apparent authority or color of law of the government of Saudi Arabia," *id.* ¶ 239. *See Dogan v.*

*Barak*, 932 F.3d 888, 894 (9th Cir. 2019) (holding that immunity applied where "[t]he Complaint's claims for relief state—several times—that Barak's actions were done under 'actual or apparent authority, or color of law, of the Israeli [government]'"); *Miango v. Democratic Republic of Congo*, 2020 WL 3498586, at *6 (D.D.C June 29, 2020) (holding immunity applied where "defendants' assertions are entirely consistent with plaintiffs' own allegations in this case, as plaintiffs have consistently maintained throughout this litigation that the individual defendants were acting in their official capacities").

This case also satisfies the third prong of the Restatement (Second). As the Complaint demonstrates, Aljabri is currently sought by Saudi Arabian authorities for potential crimes committed in Saudi Arabia. *See* Crown Prince Br. § II.A.2.b; *Saudi Arabia Wants Its Fugitive Spymaster Back*, WSJ (July 17, 2020) (cited Compl. ¶ 180 n.95) (explaining that Aljabri "is on the run from Saudi Arabia," for misusing billions in government money and "[t]he Saudi government issued extradition requests and Interpol notices"). Many of the actions that Aljabri complains of, such as the "freezing" of his bank account, the submission of a notice to INTERPOL, and various immigration issues encountered by Aljabri's family, are acts that are tied up with the policies and actions of the Saudi government. *See* Crown Prince Br. § II.A.2.b. The only direct claim against the MiSK Foundation—concerning the supposed "hunt" for Plaintiff in the United States—is allegedly a part of that endeavor. During the time of the purported "hunt," Aljabri was subject to an INTERPOL diffusion notice, Compl. ¶ 176, and Saudi Arabia had asked Turkey to formally extradite him, *id.* ¶ 137. *See also* Crown Prince Br. § II.A.2.b.

A holding from this Court that the Foundation's actions were unlawful would be equivalent to enforcing a rule of law against Saudi Arabia. *See* Crown Prince Br. § II.A.2.b. While Plaintiff's characterization of the actions that underlie his intentional infliction of emotional distress (IIED)

claim (the "hunt" for him in the United States, the "travel[] to Canada with the materials necessary to clean up the crime," and "kidnapping his children in an attempt to lure him back to Saudi Arabia," Compl. ¶ 275) underscore Plaintiff's desire to use this Complaint as a public relations effort, the allegations in his Complaint show that all of these actions are intimately tied up with acts of the Saudi Arabian government. For example, the IIED claim asserts that the detention of Aljabri's adult children for their crimes is unlawful. *Id.* But, as the Crown Prince's brief explains, that action is part of Saudi Arabia's executive authority to arrest and prosecute individuals for corruption. *See* Crown Prince Br. § II.A.2.b. Any ruling by this Court would effectively impose liability on the Kingdom for its official actions and dictate that the Kingdom lacks the power to seek to hold individuals responsible for crimes committed in Saudi Arabia. *See Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 233 (D.D.C. 2018) ("By interfering with Nigeria's government, a decision would effectively enforce a rule of law against Nigeria."); *Nnaka v. Fed. Republic of Nigeria*, 756 F. App'x 16, 18 (D.C. Cir. 2019) ("an executive decision to conduct a criminal investigation . . . ranks '[f]oremost among the prerogatives of sovereignty" (quoting *Heath v. Alabama*, 474 U.S. 82, 93 (1985))).[11]

## III.    PLAINTIFF'S CLAIMS ARE PRECLUDED BY THE ACT OF STATE DOCTRINE.

The Court should also dismiss this Complaint because adjudicating this case would require it to inquire into the validity of the public acts a foreign sovereign committed within its own territory, thereby violating the act of state doctrine. In this respect, the MiSK Foundation adopts

---

[11] To the extent that the Court grants immunity to the Crown Prince or Mr. Alasaker, the Foundation is entitled to derivative immunity because of allegations in the Complaint that the MiSK Foundation was a "front" for the Crown Prince and that the Crown Prince "act[ed] through" the Foundation, Compl. ¶ 36, and that Alasaker "operat[ed] through" the Foundation. *See id.* ¶ 42. In this respect, the Foundation adopts and incorporates by reference the arguments made in the Student-Defendants' Brief. *See* Student-Defendants Br. § VIII.E.

and incorporates by reference the arguments made in the Crown Prince's Brief. Crown Prince Br. § II.C.

IV.     **THE COURT MUST DISMISS THE CLAIM AGAINST THE MISK FOUNDATION BECAUSE SAUDI ARABIA IS A NECESSARY PARTY THAT CANNOT BE JOINED.**

The case must also be dismissed because Saudi Arabia is a necessary party to this litigation under Federal Rule of Civil Procedure 19(a)(1), but joinder is not feasible because this suit against Saudi Arabia is barred by sovereign immunity. *See TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1, 13 (D.D.C. 2013), *aff'd*, 2015 WL 3653187 (D.C. Cir. June 9, 2015); *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). As to this issue, the MiSK Foundation also adopts and incorporates by reference the arguments made in the Crown Prince's Brief. Crown Prince Br. § II.B.

V.      **THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM IF IT DISMISSES THE OTHER DEFENDANTS AND CLAIMS.**

The other defendants, who are the subject of both the IIED claim and the federal claims, have raised multiple arguments counseling dismissal of Plaintiff's Complaint in its entirety. In the event that the Court dismisses the remaining defendants or the federal claims against those defendants, the Court should decline to exercise jurisdiction over the common-law claim for IIED. Because Aljabri's basis for jurisdiction over this claim is 28 U.S.C. § 1367, *see* Compl. ¶ 84, the district court may "decline to exercise supplemental jurisdiction over a claim . . . if," *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this respect, the MiSK Foundation incorporates by reference the arguments in the brief by the Crown Prince. *See* Crown Prince Br. § III.C.4.

## VI.     THE ALLEGATIONS AGAINST THE MISK FOUNDATION FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

The arguments briefed above all require the dismissal of the sole claim against the Foundation. But even a closer examination of the substance of the IIED claim as alleged *against the Foundation* shows that this claim must be dismissed for failure to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), "[t]o survive a motion to dismiss, the complaint must plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and must suggest a plausible scenario that shows that the pleader is entitled to relief." *Muhammad v. United States*, 300 F. Supp. 3d 257, 262 (D.D.C. 2018) (Kelly, J.) (citation omitted). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

### A.     The Intentional Infliction of Emotional Distress Claim is Governed by Saudi Arabian Law and Must be Dismissed.

As the motion to dismiss by the Crown Prince shows, the IIED claim is governed by Saudi Arabian law, which does not recognize a cause of action for IIED. Crown Prince Br. § III.C.1. For the reasons set forth therein (which the Foundation incorporates and adopts by reference), the IIED claim must be dismissed under Saudi Arabian law. *Id.*

### B.     Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress under D.C. Law.

Even assuming that the Court reaches the claim and applies D.C. law, the Complaint fails to state a claim of intentional infliction of emotional distress against the Foundation. Compl. ¶¶ 273–78. The Complaint asserts that all defendants are liable for intentional infliction of

emotional distress because "they engaged in, conspired to commit, and/or aided and abetted the commission of extreme and outrageous conduct." *Id.* ¶ 274. The claim focuses on "Defendants' attempt to kill Dr. Saad," which "included, *inter alia*, hunting him down in the United States, traveling to Canada with the materials necessary to clean up the crime, and kidnapping his children in an attempt to lure him back to Saudi Arabia to murder him." *Id.* ¶ 275.

Under D.C. law, to state a claim for IIED, Aljabri must satisfy a "strict test," by alleging "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff [to suffer] severe emotional distress." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163 (D.C. 2013) (citation omitted); *see also Republic of Sudan v. Owens*, 194 A.3d 38, 41 (D.C. 2018) ("This court . . . has expressly adopted the Second Restatement's approach [under § 46]."). In this case, close attention to the allegations in the Complaint shows that Plaintiff has failed to plead that *the MiSK Foundation* engaged in extreme or outrageous conduct, and his efforts to attribute to the Foundation the alleged actions of others are also insufficient to state a claim.

### 1.    Plaintiff's Direct Liability Theory Fails.

As described in the earlier discussion about personal jurisdiction, *Iqbal* requires that Plaintiff allege more than conclusory allegations to support his claim. *See supra* § I.A. As the Supreme Court instructed in *Iqbal*, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. Following that procedure here demonstrates that there are no "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.*

The purported link alleged in the Complaint between the MiSK Foundation and the alleged "attempt to kill" Aljabri is the supposed "recruiting" of individuals through the Foundation, to

search for Aljabri in the United States. As discussed, these allegations are conclusory, and are not entitled to an assumption of truth. *See supra* § I.A.

Without the allegations of "recruiting," the Complaint contains *no* allegations connecting the Foundation to the "hunt" for Aljabri. And, as to the remaining acts forming the basis of the IIED claim—the alleged detention of Aljabri's adult children and the alleged plot in Canada—the Complaint does not offer even a conclusory allegation that the Foundation was involved. Accordingly, there are no well-pled allegations against the Foundation entitling Aljabri to relief.[12]

Even assuming the conclusory allegations of "recruiting" were true, Aljabri still could not state a claim, for several reasons. *First*, to plead extreme or outrageous conduct, Aljabri must plausibly allege "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Ortberg*, 64 A.3d at 163. The Complaint does not allege any such conduct by the MiSK Foundation. And although Aljabri alleges that the Foundation "recruited" individuals to search for Aljabri, he does not allege that recruitment, standing alone, could somehow be extreme or outrageous. Moreover, there are no factual allegations that the Foundation had any knowledge about any plot to kill Aljabri. Accordingly, Aljabri has failed to allege any extreme or outrageous conduct by the MiSK Foundation that would support this claim.

---

[12] The conclusory allegations also require dismissal if Canadian law were to apply. Canada recognizes a tort of intentional infliction of mental suffering, which requires showing that "the defendant's conduct was flagrant and outrageous; the defendant's conduct was calculated to harm the plaintiff; [and] the defendant's conduct caused the plaintiff to suffer a visible and provable illness." *Boucher v. Wal-Mart Canada Corp.*, 2014 ONCA 419, ¶ 41. A naked assertion of "recruiting" does not plead any "flagrant and outrageous conduct" or demonstrate that the Foundation caused any harm to Aljabri. The Complaint also does not allege that the Foundation's "recruiting" was "calculated" to harm Aljabri.

*Second*, the Complaint has failed to sufficiently allege the causation element of the IIED claim. Instead, Plaintiff broadly alleges that he "suffered severe emotional distress requiring medical treatment as a result of Defendants' conduct and . . . has suffered from anxiety, insomnia, increased hypertension, fatigue, and headaches as a result of Defendants' conduct." Compl. ¶ 277. But Aljabri has not alleged any specific, non-conclusory facts supporting an inference that the conduct of the MiSK Foundation specifically caused him distress. The Complaint does not, for example, specifically allege that Aljabri suffered distress upon learning that individuals were searching for him in the United States. *See Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 216 (D.D.C. 2018) (explaining that to adequately plead intentional infliction of emotional distress claim "with respect to his allegation that Defendants' non-payment of insurance contributed to his alleged emotional distress, Plaintiff could be expected to show, for example, '[h]ow emotional distress arose from the non-payment of insurance'"). Instead, the specific allegations in the Complaint identifying the cause of Aljabri's distress suggest that Aljabri suffered this alleged emotional distress in response to learning that his adult children had been "disappeared" in Saudi Arabia—which occurred in March 2020—years after any allegations of any involvement by the Foundation in the underlying events. *See* Compl. ¶ 149.

*Third*, Aljabri cannot state a claim because under D.C. law, an *attempt* to commit bodily harm that results *only* in emotional distress is not actionable as an IIED claim. In this respect, the Foundation adopts and incorporates by reference the arguments made in the Crown Prince's Brief. *See* Crown Prince Br. § III.C.2.

*Fourth*, Plaintiff's allegations regarding the "kidnapping" of his adult children also fails. As discussed above, the Complaint has no allegations that the Foundation had any involvement in this alleged "kidnapping." Compl. ¶¶ 139–50. In addition, as discussed in the Crown Prince's Brief

(which the Foundation adopts and incorporates by reference), Crown Prince Br. § III.C.2, the claim

fails because Aljabri does not allege that he was present for that kidnapping, Compl. ¶ 149, as is

required under D.C. law, *see* Restatement (Second) of Torts § 46(2)(a); *Owens*, 194 A.3d at 41–

42.

In sum, even if the Plaintiff were to overcome the jurisdictional and immunity barriers to

bringing the claim against the MiSK Foundation, his IIED claim would still fail on the merits

because he fails to state a claim under Rule 12(b)(6).

### 2. Plaintiff's Conclusory Allegations of Conspiracy or Aiding and Abetting Do Not Salvage His Claim.

Plaintiff also cannot rely on his conclusory allegations of conspiracy or aiding and abetting

liability to state a claim against the Foundation. To put it simply, Aljabri's conclusory allegations

that the MiSK Foundation "conspired" or "aided and abetted" the "acts of attempted extrajudicial

killing" do not withstand scrutiny. Compl. ¶ 242 ("MiSK, the Tiger Squad Defendants, and the

U.S.-based Covert Agent Defendants are personally liable for acts of attempted extrajudicial

killing . . . because they conspired with, or aided and abetted"); *see also id.* ¶ 244 (alleging that

"MiSK conspired with Defendants bin Salman and Alasaker to covertly recruit individuals to serve

as agents and who participated in the hunt for Dr. Saad"). To plead conspiracy, Aljabri must show

"(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an

injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant

to, and in furtherance of, the common scheme." *Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*,

2019 WL 176851, at *4 (D.D.C. Jan. 11, 2019) (citation omitted).

Aljabri has failed to plead any specific factual allegations showing that the MiSK

Foundation agreed with another defendant to kill Aljabri or to recruit anyone. The Complaint

alleges that "Defendants had ample opportunity to and in fact did agree to commit unlawful acts."

Compl. ¶ 243. But that conclusory group-pleading is patently insufficient to allege an agreement. *See Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 230 (D.D.C. 2014) (dismissing conspiracy claim where "[p]laintiff alleges defendant entered into an agreement, but provides no indication of when or how such an agreement was brokered'" (citation omitted); *Johnson*, 2019 WL 176851, at *4 (dismissing conspiracy claim where plaintiff alleged three times that "Defendants 'conspired' or 'agreed' to defame him"). And there are no specific factual allegations that the Foundation knew about or agreed to the alleged "specific plot" to kill Aljabri, which Plaintiff alleges was concocted in May 2018, Compl. ¶ 220, months after Plaintiff alleges that the MiSK Foundation had any involvement in the underlying actions. *See Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 110 (D.D.C. 2017), *order vacated in part on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018) ("To demonstrate the existence of a 'chain' conspiracy in which conspirators are not all directly connected, the critical question is whether each conspirator knows of the existence of the larger conspiracy and of the necessity for the other participants, even if he or she does not know their identities.") (citation omitted).

For similar reasons, Aljabri has not alleged any specific facts supporting aiding and abetting liability. To plead aiding and abetting liability, Aljabri must plausibly allege: "(1) the party the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v. Welch*, 705 F.2d 472, 487–88 (D.C. Cir. 1983).

As with conspiracy, the Complaint recites the legal elements of aiding and abetting liability without any factual support. It tacks on conclusory allegations that the MiSK Foundation "aided and abetted" the other defendants in the attempted extrajudicial killing. Compl. ¶¶ 242, 274. It then

alleges—parroting *Halberstam*—that "MiSK knowingly provided substantial assistance through its actions to recruit individuals who served as covert agents and helped to hunt Aljabri in the United States" and "[a]t all times, it was aware of its role in the overall scheme." *Id.* ¶ 246. But there are no factual allegations supporting those legal conclusions. Aljabri does not allege facts showing, for example, that the alleged attempted killing was "heavily dependent" on the MiSK Foundation's acts or that its assistance was "indisputably important," or an "essential part of" the act. *See Halberstam*, 705 F.2d at 477; *see also Ofisi*, 278 F. Supp. 3d at 11 ("[P]laintiffs are required to plead a link between the aid rendered and the principal violation (or violations) alleged.") (citation omitted). Moreover, the Complaint contains no facts plausibly showing that the MiSK Foundation had any knowledge of the alleged plot to kill Aljabri in Canada. *See Bernhardt*, 2020 WL 6743066, at *5 (holding that plaintiff failed to plausibly allege knowledge for aiding and abetting where "the[] allegations do not contain facts that plausibly suggest that [defendants] knew they had assumed a role in terrorism"). Aljabri's "allegations . . . come up well short of th[e] high bar" to plead aiding and abetting liability. *Id.* Thus, the Plaintiff cannot avail himself of conspiracy or aiding and abetting liability theories to shore up his Complaint.

To the extent secondary liability is based on an agency relationship with the Crown Prince or Alasaker, the Complaint does not properly allege agency. *See Carswell v. Air Line Pilots Ass'n, Int'l*, 540 F. Supp. 2d 107, 122 (D.D.C. 2008) ("[A]n agency relationship arises only where the principal 'has the right to control the conduct of the agent with respect to matters entrusted to him.'" (citation omitted)). The Complaint repeatedly asserts that the Foundation is a "front" for the Crown Prince "in [this] case." Compl. ¶ 163 n.86. But that allegation is a "naked assertion devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (alteration and citation omitted), that does not support any secondary liability theory.

Plaintiff's failure to adequately allege a theory of either direct lability or liability against the Foundation requires dismissal of the IIED claim against the MiSK Foundation.

## CONCLUSION

For all of these reasons, the Court should dismiss the intentional infliction of emotional distress claim as to the MiSK Foundation.


Respectfully submitted,


 _/s/ William W. Taylor, III_
By:  William W. Taylor, III (D.C. Bar No. 84194)
Margarita K. O'Donnell (D.C. Bar No. 1005972)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: wtaylor@zuckerman.com
E-mail: modonnell@zuckerman.com
Telephone: (202) 778-1800
Facsimile: (202) 822-8106
_Attorneys for Defendant Prince Mohammed Bin Salman Abdulaziz Foundation_

## CERTIFICATE OF SERVICE

I certify that on December 7, 2020, I electronically filed the foregoing Prince Mohammed Bin Salman Abdulaziz Foundation's Motion to Dismiss and Memorandum In Support Of Its Motion To Dismiss, using the ECF system, which sent notice of filing in this matter to all counsel of record.

 _/s/ William W. Taylor, III

William W. Taylor, III
*Attorney for Defendant*
*Prince Mohammed Bin*
*Salman Abdulaziz Foundation*