# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. SAAD ALJABRI,<br><br>    Plaintiff,<br><br>    v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al*.<br><br>    Defendants. | Civil Action No. 1:20-cv-02146-TJK |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S SECOND MOTION FOR ALTERNATIVE SERVICE**

Plaintiff Dr. Saad Aljabri ("Dr. Saad" or "Plaintiff") respectfully requests that the Court authorize Plaintiff to serve Defendants Ahmed Abdullah Fahad Albawardi ("Defendant Albawardi"), Bader Mueedh Saif Alqahtani ("Defendant Bader Alqahtani"), and Bijad Alharbi ("Defendant Alharbi") (collectively, the "Second Alternative Service Defendants"),[1] all current residents of the Kingdom of Saudi Arabia, through alternative means under Federal Rule of Civil Procedure ("Rule") 4(f)(3).

**INTRODUCTION**

On August 6, 2020, Dr. Saad brought this action to hold the defendants accountable for attempting to reach across international borders, including into the United States, to extrajudicially kill him. Dkt. 1 ("Compl."). On February 4, 2021, Dr. Saad filed an Amended Complaint, which provides additional allegations and identifies by name Defendants Albawardi and Bader Alqahtani

---

[1] Defendant Alharbi was named as a defendant in Plaintiff's original Complaint, Dkt. 1; Defendants Albawardi and Bader Alqahtani were named as John Doe defendants in Plaintiff's original Complaint, and after discovery of their identities, were first identified by name as defendants in Plaintiff's Amended Complaint, Dkt. 66.

1

as defendants in this action. Dkt. 66 ("Am. Compl."). As detailed in the Amended Complaint, Defendants' conduct was aimed at, occurred in, and violated the laws of the United States. Given the current Saudi Arabian residency of the Second Alternative Service Defendants, Dr. Saad hereby moves for leave to serve Defendants Albawardi, Bader Alqahtani, and Alharbi through alternative means pursuant to Rule 4(f)(3).[2]

Alternative service is necessary in this case.[3] Saudi Arabia has refused to accede to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). As a result, litigants in the United States have no choice but to seek alternative means of service for defendants in Saudi Arabia, and courts routinely authorize alternative service on Saudi-resident defendants under Rule 4(f)(3).[4,5]

Moreover, given the nature of the allegations in the Amended Complaint, personal service poses a risk of grave harm to the server. In the interest of judicial economy, Dr. Saad incorporates by reference the rationale described in his September 11, 2020 Memorandum of Law in Support of Plaintiff's Motion for Alternative Service, Dkt. 14-2 ("First Alternative Service Motion"), as that rationale has not changed. This Court granted Dr. Saad's First Alternative Service Motion on

---

[2] Because counsel for the Second Alternative Service Defendants have not yet appeared in this action, Dr. Saad has been unable to ascertain their position with respect to this motion. *See* D.C. District Court Local Rule 7(m); Standing Order ¶ 11(a), ECF No. 5.

[3] Dr. Saad intends to attempt service using other means, but in light of challenges associated with those means and the Court's instruction that plaintiffs effect service "promptly," Standing Order ¶ 3, Dr. Saad is seeking permission to serve process by alternative means under Rule 4(f)(3) in parallel with these other efforts. *See infra* Section I.

[4] *See* First Alternative Service Motion (as defined *infra*), at 2 n.4 (collecting cases); *see also, e.g.*, *Juniper Networks, Inc. v. Bahattab*, No. CIV.A. 07-1771 (PLF), 2008 WL 250584, at *1, *2 (D.D.C. Jan. 30, 2008) (permitting service of process by email on resident of Saudi Arabia); *de Leon v. Abudawood*, No. 8:18-CV-01030, 2018 WL 6321632, at *4–*5 (C.D. Cal. Oct. 23, 2018) (authorizing service by email and FedEx to defendants in Saudi Arabia).

[5] *See* First Alternative Service Motion at 3.

September 22, 2020. Dkt. 15 ("First Alternative Service Order"). Dr. Saad thereafter effected service on the Alternative Service Defendants (as defined in the First Alternative Service Motion; referred to herein as the "First Alternative Service Defendants"). Dkts. 35 & 36.

Accordingly, Dr. Saad seeks leave to serve Defendants Albawardi and Bader Alqahtani by sending the Summons and Amended Complaint directly to each defendant's personal mobile device through WhatsApp and Signal and, in addition, by mail to each of their places of employment. In addition, Dr. Saad seeks leave to serve Defendant Alharbi, who is currently being held as a detainee by the Presidency of State Security, the Kingdom of Saudi Arabia's internal security agency, by mail to the Office of the Presidency of State Security. These methods will put the Second Alternative Service Defendants on notice of this suit—to the extent they are not already—and are fully consistent with methods of service in Saudi Arabia and the Court's prior order pertaining to service. *See* Dkt. 15.

## **FACTUAL BACKGROUND**

The defendants in this case attempted to extrajudicially kill Dr. Saad Aljabri. Because the Second Alternative Service Defendants were included as either named or John Doe defendants in Plaintiff's original Complaint, Dkt. 1, Dr. Saad incorporates by reference the factual background contained in his First Alternative Service Motion, Dkt. 14-2. The Second Alternative Service Defendants, who participated in this heinous act, include: (1) residents of Saudi Arabia who traveled to Canada in October 2018 in an attempt to extrajudicially kill Dr. Saad; and (2) a resident of Saudi Arabia who hunted Dr. Saad in the United States, and who is currently believed to be held in detention in Saudi Arabia.

As described in the Amended Complaint and First Alternative Service Motion, defendants who are the subject of this motion—along with other defendants previously served pursuant to

other Rules and the First Alternative Service Order[6]—orchestrated a scheme to lure, hunt, and ultimately kill Dr. Saad to cut off the U.S. Government's access to a key partner with unique knowledge of the Saudi Royal Court and Defendant bin Salman, knowledge and access that were perceived to jeopardize Defendant bin Salman's efforts to consolidate support in the United States. As the U.S. Government acknowledged after Dr. Saad filed this Complaint, Dr. Saad has been "a valued partner to the U.S. Government, working closely with [the United States] to ensure the safety of Americans and Saudis."[7]

## LEGAL STANDARD

As outlined in the First Alternative Service Motion, Dkt. 14-2 at 6–8, Rule 4(f)(3) allows service upon foreign individuals by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). The exact manner of service is left to the discretion of the district court. *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 13 (D.D.C. 2016). The D.C. Circuit applies a "liberal treatment of service requirements under Rule 4," *Miller v. Holzmann*, No. CIV.A. 95-1231 (RCL), 2007 WL 710134, at *9 (D.D.C. Mar. 6, 2007), and the "decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court," *Bazarian*, 168 F. Supp. 3d at 13.

Provided the method of service is consistent with due process and not contrary to international agreements, courts are empowered to fashion a manner of service that fits the facts

---

[6] Proofs of service for the First Alternative Service Defendants were filed on October 29, 2020. Dkts. 35–42. Defendant Yousef Alrajhi was personally served in Fairfax, Virginia pursuant to Rule 4(e) on August 11, 2020. Dkt. 13. Defendant Layla Abuljadayel waived service on October 9, 2020. Dkt. 26.

[7] Letter from Ryan M. Kaldahl, Acting Assistant Secretary, Bureau of Legislative Affairs, U.S. Dep't of State, to Sen. Patrick Leahy, U.S. Senate 1 (Aug. 6, 2020), https://twitter.com/hsu_spencer/status/1291766667639496706/photo/1.

and circumstances of the particular case. *See Lagayan v. Odeh*, 318 F.R.D. 208, 209–10 (D.D.C. 2016). A method of service comports with constitutional notions of due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1240 (Fed. Cir. 2010) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, a plaintiff need not "first exhaust the methods of service contemplated by Rule 4(f)(1) and (2) before petitioning the Court for permission to use alternative means under Rule 4(f)(3)." *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013).

## **ARGUMENT**

Alternative service is warranted, appropriate, and authorized for the same reasons that supported this Court's order authorizing alternative service for the First Alternative Service Defendants in the First Alternative Service Order. Dkts. 14-2, 15. Below, Plaintiff explains: (I) why alternative service is warranted; (II) why alternative service via WhatsApp, Signal and trackable mail are appropriate and authorized under the Federal Rules; and (III) which methods are available for each of the Second Alternative Service Defendants. Appendix A lists those methods in detail.

In addition, in light of the First Alternative Service Defendants' past efforts to thwart service of the original Summons and Complaint, Plaintiff has a reasonable expectation that Defendants Albawardi and Bader Alqahtani will similarly hinder Plaintiff's ability to effect service once their names become public upon the filing of the Amended Complaint. The alternative means requested in this Motion are identical to the alternative means this Court authorized with respect to the First Alternative Service Defendants, which are publicly accessible on the Docket. Once

Defendants Albawardi and Bader Alqahtani learn that they are named defendants in this action, they will be able to thwart the alternative means of service requested in this Motion. Thus, waiting to serve Defendants until this Court authorizes these alternative means of service risks these methods becoming moot because Defendants will then be able to easily thwart them. Accordingly, Plaintiff intends to serve the Summons and Amended Complaint on Defendants Albawardi and Bader Alqahtani via WhatsApp and Signal while the Court considers this Motion, before the Defendants have an opportunity to thwart service, and requests the Court retroactively approve such service.

I. **Alternative Service Is Warranted Under the Circumstances of this Case.**

Alternative service is warranted and is the best means to directly serve the Second Alternative Service Defendants. Other methods of service under Rule 4(f) are unavailable or impracticable.

The Kingdom of Saudi Arabia has refused to accede to the Hague Convention, or any other applicable international treaty that would govern service in this or related litigation, and therefore service under Rule 4(f)(1)—which allows for service by letters rogatory, the state's Central Authority, or by mail unless the state has objected to that method—is unavailable.[8]

Although Dr. Saad intends to attempt service through a mailing sent by the clerk with a signed receipt pursuant to Rule 4(f)(2)(C)(ii), such attempt is unlikely to be successful because the Second Alternative Service Defendants could easily evade the signed receipt requirement. Dr.

---

[8] U.S. Dep't of State, *Saudi Arabia Judicial Assistance Information, Hague/Inter-American*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/SaudiArabia.html; *see also Ehrenfeld v. Salim A Bin Mahfouz*, No. 04 CIV. 9641 (RCC), 2005 WL 696769, at *2, *4 (S.D.N.Y. Mar. 23, 2005) (granting motion for alternative service of defendant in Saudi Arabia in part because the country is not a signatory to Hague Convention).

Saad may also attempt service pursuant to Rule 4(f)(2)(A), which authorizes service on foreign individuals "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Although the methods proposed here are fully consistent with the methods prescribed by Saudi law, *see generally* Decl. of Dr. Abdullah Alaoudh, ("Alaoudh Decl."), Dkt. 14-5, those laws could easily be distorted in an absolute monarchy where the Defendants include an influential member of the royal family and many of the laws are unwritten.[9] In light of these realities and the Court's instruction that plaintiffs effect service "promptly," Standing Order ¶ 3, Dr. Saad is seeking permission to serve process by alternative methods under Rule 4(f)(3) in parallel with other attempts to ensure prompt service of all defendants. Additionally, as explained in the First Alternative Service Motion, personal service under Rule 4(f)(2)(C)(i) would be both futile and dangerous. The Second Alternative Service Defendants have used covert and deceptive means to carry out an attempted extrajudicial killing of Dr. Saad. *See, e.g.*, Am. Compl. ¶¶ 110, 121–22, 247–55, 334, 341–42, 344–48. Effecting personal service in Saudi Arabia could pose unique and significant dangers to personnel involved. This risk is more than mere conjecture. In another high-profile case involving service of process in Saudi Arabia, "the process server hired to serve some of the defendants was apparently murdered during his attempts to complete service of process for one of the instant lawsuits." *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 490 (S.D.N.Y. 2010), *aff'd on other grounds*, 714 F.3d 109 (2d Cir. 2013).[10]

---

[9] Muamar Hasan Salameh and Jaida Aboul Fotouh, *The Development of Legal Education in the Kingdom of Saudi Arabia*, 11 Fiat Justisia 289, 290 (July-Sept. 2017), https://jurnal.fh.unila.ac.id/index.php/fiat/article/view/973/975 ("The law in Saudi Arabia can primarily be described as consolidation of both written and unwritten laws.").

[10] The murder of the process server occurred while he was attempting to carry out service of process in Saudi Arabia. *See* Aff. of Nelson Tucker, Ex. B to Pls.' Mot. For Extension of Time

7

Under similar circumstances, courts have readily approved alternative service for defendants residing in Saudi Arabia because "personal service is not practical or reliable and could prove dangerous." Order Authorizing Service of Summons by Mail Pursuant to FRCP 4(f)(3) at 1, *Sharif v. Int'l Dev. Grp.*, No. 1:02-cv-05430 (N.D. Ill. Dec. 6, 2002), ECF No. 11; *see also In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d at 490.

## II. The Proposed Methods of Alternative Service are Consistent with Due Process and Reasonably Calculated to Provide Notice to Defendants.

While the methods proposed in this motion may be considered "alternative" means of service under the Federal Rules, they are ordinary means of service in Saudi Arabia, and are the best means to provide actual and direct notice to each of the Second Alternative Service Defendants.

### A. Service Through the Messaging Applications WhatsApp and Signal.

WhatsApp, a messaging application that allows users to communicate by text and multi-media message, is routinely used for official government business in Saudi Arabia, including by Defendants Albawardi and Bader Alqahtani. It is also widely used as a primary means of mobile text communications amongst Saudi citizens generally.[11] WhatsApp allows users to send documents on its platform and includes a built-in function that verifies when a message has

---

for Service of Process and for Leave to Serve Certain Listed Defs. by Publication Pursuant to Federal Rule 4(f) ¶ 8, *Burnett v. Al Baraka Inv. & Dev'l Corp.*, No. 1:02-cv-01616 (D.D.C. Mar. 24, 2003), *consolidated into In Re Terrorist Attack on September 11, 2001*, 03-MDL01570 (S.D.N.Y.), ECF No. 95.

[11] *Facebook and Twitter Top in Number of Users, Over 18 Million Users of Social Media Programs And Applications In Saudi Arabia*, Ministry of Comm'ns & Info. Tech. (Mar. 17, 2016), https://www.mcit.gov.sa/en/media-center/news/89698#:~:text=Saudi%20Arabia%20ranked%20first%20among,%2C%20and%2021%25%20for%20Facebook. ("Saudi Arabia ranked first among Arab countries and second worldwide in the use of Snapchat. WhatsApp and Facebook had the top rates of social networking platforms use, with 22% for WhatsApp, and 21% for Facebook.").

successfully been sent, when the message was successfully delivered to the recipient's phone, and, in some cases, when the recipient has read the message (known as "read receipts.").[12]  It is the digital equivalent of a "form of mail . . . that requires a signed receipt."  Fed. R. Civ. P. 4(f)(2)(C)(ii).

Given Defendants Albawardi and Bader Alqahtani's documented and habitual use of WhatsApp, service through WhatsApp will provide actual notice, and forensically confirmable service, to them.  Using WhatsApp's built-in tools,[13] Plaintiff's counsel confirmed that Defendants Albawardi and Bader Alqahtani have accessed their WhatsApp accounts within the 24-30 hours prior to filing this motion and routinely use the WhatsApp application throughout the course of their day.[14]  Service by WhatsApp will allow Plaintiff to forensically document:  (1) successful delivery of the Summons and Amended Complaint to Defendants Albawardi and Bader Alqahtani; (2) that Defendants Albawardi and Bader Alqahtani logged into their accounts after service; and

---

[12] *See How to Check Read Receipts*, WhatsApp, https://faq.whatsapp.com/android/security-and-privacy/how-to-check-read-receipts/ (Android); *How to Check Read Receipts*, WhatsApp, https://faq.whatsapp.com/iphone/security-and-privacy/how-to-check-read-receipts (iPhone).

[13] WhatsApp allows users to see when other WhatsApp users are currently or were last "Online" (*i.e.* had the application open).  *See About Last Seen and Online*, WhatsApp, https://faq.whatsapp.com/general/chats/about-last-seen-and-online/?lang=en.

[14] Defendant Albawardi (last utilized WhatsApp on February 4, 2021, at 9:54 AM ET, and has used WhatsApp every day since January 25, 2021); Defendant Bader Alqahtani (last utilized WhatsApp on February 4, 2021, at 8:40 AM ET, and has used WhatsApp every day since January 25, 2021).

(3) unless the "read receipt" feature has been disabled, actual receipt and review of the Summons and Amended Complaint by Defendants Albawardi and Bader Alqahtani.[15]

Service by WhatsApp and Signal minimizes offense to Saudi law. The use of a direct messaging application is an ordinary means of service of process in Saudi Arabia. A Royal Decree issued by the King of Saudi Arabia in 2017 authorized service of process through electronic means, including through WhatsApp messages to an individual's mobile phone number.[16] Alaoudh Decl. ¶ 5. Text messages, WhatsApp/Signal messages, and email to verified mobile phone numbers and email addresses are all "valid and effective" means of service in Saudi Arabia, just like "other means traditionally recognized by the law," and are widely used. *Id.* ¶ 6.

Accordingly, service by WhatsApp or Signal is appropriate under Rule 4(f)(3). *See* First Alternative Service Order, Dkt. 15; *L.J. Star Inc.*, 2020 WL 1957155, at *4–6 (granting motion to serve via WhatsApp); *cf.* Short Form Order at 2, *Alzaabi v. Jaskon*, No. 713360/2018 (NY Sup. Ct. Queens Cty. Nov. 19, 2018), Dkt. 7 (granting motion to serve via WhatsApp where "the parties were able to communicate successfully via WhatsApp").

### B. Service by Mail to Business Addresses.

Plaintiff also proposes to serve Defendants Albawardi and Bader Alqahtani through trackable mail. Given the lack of a systemic residential address system in Saudi Arabia, mail to individuals in Saudi Arabia is routinely routed through a recipient's place of employment.

---

[15] Dr. Saad also proposes to serve Defendants Albawardi and Bader Alqahtani through Signal in addition to WhatsApp. Signal is also an encrypted messaging application, and these defendants have Signal accounts tied to identical mobile phone numbers as their WhatsApp accounts. Service by Signal will allow Plaintiff to forensically document that the message was successfully sent and successfully delivered to Defendants Albawardi and Bader Alqahtani's devices.

[16] Royal Decrees are a primary source of law in Saudi Arabia. *See* First Alternative Service Motion at 14; Alaoudh Decl. ¶ 5 n.3.

Defendants Albawardi and Bader Alqahtani's places of employment are publicly available, and serving process at those addresses is reasonably calculated to provide notice. *See, e.g.*, First Alternative Service Motion at 14; *see also In re Coudert Bros. LLP*, No. 16-CV-8248 (KMK), 2020 WL 373838, at *2 (S.D.N.Y. Jan. 23, 2020). Further, service at Defendants Albawardi and Bader Alqahtani's places of employment minimizes offense to Saudi law because Saudi law permits service of process at an individual's place of employment, and this method of service is common in Saudi Arabia. Alaoudh Decl. ¶ 8–10 (explaining that service upon an individual's place of employment is common in Saudi Arabia because the country does not have a well-developed system for residential addresses).

### C.   Service By Mail to the Office of the Presidency of State Security.

Serving Defendant Alharbi through the Office of the Presidency of State Security is not prohibited under Saudi law, and, in fact, Saudi law permits prisoners to be served through the official responsible for their custody. *See* Law of Procedure before Sharia Courts, Royal Decree No. M/1, art. 17 (22/1/1435H, Nov. 26, 2013), *translated in* Official Translation Dep't, Bureau of Experts at the Council of Ministers, *Law of Civil Procedures*, Ministry of Justice (2016), https://www.moj.gov.sa/Documents/Regulations/pdf/En/50.pdf (allowing prisoners and detainees to be served through official responsible for their custody). Other courts have found service of prisoners by mail to be valid. *See, e.g.*, *Sec. & Exch. Comm'n v. Nevatia*, No. 14-CV-05273-JCS, 2015 WL 6912006, at *4 (N.D. Cal. Oct. 19, 2015), *report and recommendation adopted*, No. 14-CV-05273-CRB, 2015 WL 6871869 (N.D. Cal. Nov. 9, 2015) (allowing service under Rule 4(f)(2)(A) by sending the service package to the official responsible for the prisoner's custody, noting that UAE law on serving prisoners, which is very similar to Saudi law, allowed service by those means); *Martinez v. White*, No. 06-CV-01595 CRB, 2006 WL 2792874, at *2 (N.D. Cal.

Sept. 28, 2006) (allowing service under Rule 4(f)(2)(C)(ii) by registered mail to the official responsible for the defendant's custody).

### III. The Proposed Alternative Service Methods Are Reasonably Calculated to Provide Notice to Each Alternative Service Defendant.

To facilitate the Court's review of this Motion, in this section Dr. Saad outlines the available service methods as to each Second Alternative Service Defendant.

#### A. Defendants Albawardi and Bader Alqahtani.

Defendants Albawardi and Bader Alqahtani are Saudi nationals employed as engineers with the National Information Center, an information technology division within the Saudi Ministry of Interior. Defendants Albawardi and Bader Alqahtani are also members of the "Tiger Squad," a private death squad made up of approximately 50 intelligence, military, and forensic operatives recruited from different branches of the Saudi government with one unifying mission: loyalty to the personal whims of Defendant bin Salman. Am. Compl. ¶¶ 111, 121–22. Defendants Albawardi and Bader Alqahtani obtained Canadian tourist visas in May 2018 and traveled from Frankfurt, Germany to Ottawa International Airport in Canada on or around October 15, 2018 as part of the Tiger Squad mission to extrajudically kill Dr. Saad. *Id.* ¶¶ 121–22, 334.

Dr. Saad proposes serving Defendants Albawardi and Bader Alqahtani (1) by WhatsApp and Signal messages to each Defendant's personal WhatsApp and Signal accounts; and (2) by mail to the address of their employer, the National Information Center.

Contact and employment information for Defendants Albawardi and Bader Alqahtani was obtained in connection with their applications for travel to Canada, which was planned and carried out for the purpose of killing Dr. Saad. This information was submitted by Defendants Albawardi and Bader Alqahtani in official government documents with an accompanying declaration that

each question was answered "fully and truthfully."[17]  Plaintiff's counsel has also confirmed that Defendants Albawaradi and Bader Alqahtani have accessed their WhatsApp accounts within the last 24-30 hours of filing this motion.

### B.  Defendant Alharbi.

Defendant Alharbi is currently being held as a detainee by the Presidency of State Security, the Kingdom of Saudi Arabia's internal security agency, which operates facilities designed to hold those accused of "crimes" against the state.  *See* U.S. Dep't of State Bureau of Democracy, Human Rights & Labor, *2019 Country Reports on Human Rights Practices: Saudi Arabia* (2019), https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/saudi-arabia/.

Because Defendant Alharbi is currently detained by the Presidency of State Security, Dr. Saad proposes serving Defendant Alharbi by sending the Amended Complaint and Summons to the place at which he is being detained.  Rule 4(f)(3) permits a court to authorize service "by other means not prohibited by international agreement."  Fed. R. Civ. P. 4(f)(3).  Serving Defendant Alharbi at the place of his detention is not prohibited by international agreement and is practically the only method available to Plaintiff to effect service on Defendant Alharbi.

### CONCLUSION

Dr. Saad respectfully requests that the Court grant his motion for alternative service.

Dated: February 4, 2021                                      Respectfully submitted,

                                                                          JENNER & BLOCK LLP

                                                                          /s/ David Pressman

                                                                          David Pressman
                                                                          D.C. Bar No. 1013431
                                                                          Jenner & Block LLP

---

[17] Application for Visitor Visa (Temporary Resident Visa) at 5, Gov't of Canada, https://www.canada.ca/content/dam/ircc/migration/ircc/english/pdf/kits/forms/imm5257e.pdf.

919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com

Lindsay Harrison
D.C. Bar No. 977407
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Telephone: (202) 639-6865
Fax: (202) 639-6066
lharrison@jenner.com

*Counsel for Plaintiff*