# Exhibit M

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAAD ALJABRI,<br>    *Plaintiff*,<br><br>v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al.*,<br>    *Defendants*. | Civil Action No. 20-2146 (TJK) |

### DECLARATION OF SUJIT CHOUDHRY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS

1. My name is Sujit Choudhry, and I am the principal of choudhry.law in Toronto, Canada. I am submitting this declaration in support of Defendants' motions to dismiss in the above-captioned litigation.

2. I hold law degrees from the University of Oxford, the University of Toronto, and the Harvard Law School, and served as Law Clerk to Chief Justice Antonio Lamer of the Supreme Court of Canada. I was admitted to practice in Ontario in 2001. I practice constitutional law, both in Canada and globally, including on related questions of international human rights law. I have appeared as counsel before the Supreme Court of Canada.

3. In this declaration, I provide my opinion, based on my experience describe above, about the remedies available in Canada for an alleged extrajudicial killing.

4. There are multiple causes of action available to foreign nationals under Canadian law that could provide a remedy for damages arising from an alleged extrajudicial killing.

5. The first such cause of action is a common law cause of action for violation of customary international law, which the Supreme Court of Canada recognized in *Nevsun Resources Ltd. v. Araya*, 2020 SCC 5. The holding in *Nevsun Resources* rests on two

1

propositions. First, "as a result of the doctrine of adoption, norms of customary international law . . . are fully integrated into, and form part of, Canadian domestic common law" without the need for legislative enactment. *Id.* ¶ 94. Second, "recognizing the possibility of a remedy for the breach of norms already forming part of the common law is . . . a necessary development," *id.* ¶ 118, because of Canada's international law obligation, under Article 2 of the *International Covenant on Civil and Political Rights*, 999 U.N.T.S. 171, "to ensure an effective remedy to victims of violations of those rights," *Nevsun Resources*, 2020 SCC 5, ¶ 119,[1] and the common law principle that, "where there is a right, there must be a remedy for its violation," *id.* ¶ 120.

6. The *Nevsun Resources* case dealt specifically with the prohibitions on crimes against humanity; slavery; forced labour; and cruel, inhuman, and degrading treatment. *See* 2020 SCC 5, ¶¶ 100-103. The court concluded that it could take judicial notice that those prohibitions had been "adopted" into Canadian common law, without requiring "proof by evidence," because the norms prohibiting such conduct are "accepted to be of such fundamental importance as to be characterized as *jus cogens*, or peremptory norms." *Id.* ¶¶ 98-99.

7. The international law norm against extrajudicial killing is a *jus cogens* norm, like the norms at issue in *Nevsun Resources*.[2] Accordingly, if a Canadian court were faced with a

---

[1] The right of one not to "be arbitrarily deprived of his life" is among the rights for which the *International Covenant on Civil and Political Rights* requires its signatories, including Canada, to "have an effective remedy." Art. 2(3)((a).

[2] *See*, *e.g.*, International Covenant on Civil and Political Rights, art. 6(1), Dec. 16, 1966, 999 U.N.T.S. 171 (entered into force Mar. 23, 1976) ("No one shall be arbitrarily deprived of his life."); Geneva Convention Relative to the Protection of Civilian Persons in Time of War, art. 3(1)(d), Apr. 21-Aug. 12, 1949, 6 U.S.T. 3516 (entered into force Feb. 2, 1956) (prohibiting "the carrying out of executions without previous judgment pronounced by a regularly constituted court, affording all the judicial guarantees which are recognized as indispensable by civilized peoples").

civil claim brought on the basis of the customary international law prohibitions against extrajudicial killing, it would, in accordance with *Nevsun Resources*, take judicial notice of the existence and specific content of these norms, and hold that they had been adopted into Canadian common law. On the basis of *Nevsun Resources*, any new case brought on the basis of a breach of customary international law would survive a motion to strike (analogous to a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure).

8. The cause of action recognized by *Nevsun Resources* is available to non-Canadian citizens. For example, in *Nevsun Resources*, the plaintiffs were Eritrean citizens and did not hold Canadian citizenship. *See Araya v. Nevsun Resources*, 2016 BCSC 1856, ¶ 42. Nonetheless, they were able to bring an action for violations of customary international law because they enjoyed the benefits of the *jus cogens* prohibitions on crimes against humanity; slavery; forced labour; and cruel, inhuman, and degrading treatment.

9. Canadian courts would also generally have jurisdiction over a cause of action arising out of an extrajudicial killing occurring in Canada. For a Canadian provincial superior court to have jurisdiction, there must be a "real and substantial connection . . . between the court and the subject matter of the litigation." *Van Breda v. Village Resorts, Ltd.*, 2012 SCC 17, ¶ 26. In determining whether a real and substantial connection exists, Canadian courts rely on "presumptive connecting factors." *Id.* ¶ 75. For torts, a presumptive connecting factor is whether "the tort was committed in the province." *Id.* ¶ 90. Although remedying a violation of *jus cogens* norms may not strictly sound in tort, *see Nevsun Resources*, 2020 SCC 5, ¶¶ 123-130, it is my opinion that a Canadian court would draw an analogy between claims for violations of customary international law, in relation to physical liberty and life, and tort

3

claims. It follows that the presumptive factor for a provincial superior court would be that the breach of customary international law took place in the court's province.

10.     It is my opinion that a cause of action for violation of customary international law under *Nevsun Resources* would permit the plaintiff to seek monetary damages. I conclude this for three reasons. First, the sole remedy sought by the plaintiffs in *Nevsun Resources* was damages. 2016 BCSC 1856, ¶ 4. Second, *Nevsun Resources* quoted with approval from *Vancouver (City) v. Ward*, 2010 SCC 27, *see Nevsun Resources*, 2020 SCC 5, ¶ 129, which set out the principles for the award of damages under s. 24(1) of the *Canadian Charter of Rights and Freedoms* ("*Charter*"), Canada's constitutionally entrenched bill of rights. Third, *Nevsun Resources* discussed the principles governing money damages for breaches of customary international law – which is premised on such a remedy being available. Specifically, it contrasted remedies appropriate for tort and with those suitable for remedying breaches of *jus cogens* norms. The latter, the court said, "requires different and stronger responses than typical tort claims." 2020 SCC 5, ¶ 129. In Canadian law, tort damages are based on "the fundamental principle of restorative, compensatory damages for actual loss suffered," *Cunningham v. Wheeler*, [1994] 1 SCR 359, 388, whereas *Charter* damages are based on a broader set of objectives, including vindication and deterrence, *see Ward*, 2010 SCC 27, ¶ 25.[3] *Nevsun Resources* clearly saw parallels between *Charter* damages and damages for violations of customary international law, which could likewise have the aims of compensation, vindication, and deterrence.

---

[3] Under Canadian law, "punitive damages should be resorted to only in exceptional cases and with restraint." *Whiten v. Pilot Insurance Co.*, 2002 SCC 18, ¶ 69. For torts, "punitive damages will largely be restricted to intentional torts." *Id.* ¶ 67. Their purpose is "retribution, deterrence and denunciation." *Id.*, ¶ 43.

4

11. It is also my opinion that a plaintiff alleging a cause of action for violation of customary international law under *Nevsun Resources* could seek declaratory and injunctive relief in an appropriate case, by drawing on the remedial principles developed under the *Charter*, as *Nevsun Resources* did for damages. What constitutes "an appropriate and just remedy," *Ward*, 2010 SCC 27, ¶ 20, under s. 24(1) of the *Charter* depends on a set of factors that includes what would "meaningfully vindicate the rights and freedoms of the claimants," *id.*, and encompasses declaratory (*Canada (Prime Minister) v. Khadr*, 2010 SCC 3, ¶ 46) and injunctive (*Doucet-Boudreau v. Nova Scotia (Minister of Education)*, 2003 SCC 62, ¶ 70) relief. By a parallel line of reasoning, these two remedies could be available for breaches of customary international law in an appropriate case.

12. An extrajudicial killing occurring in Canada could also give rise to liability for domestic torts, including battery. At common law, "[a] person who provides that the defendant made direct contact with her person makes her case for battery." Linden et al., *Canadian Tort Law* (11th ed., 2018), § 2.39. Direct contact need not consist of actual physical contact and, for example, can occur through firing gunshots. *Camaso v. Egan*, 2011 BCSC 456, ¶ 6.

13. An extrajudicial killing in Canada could also trigger liability for assault. Assault is an intentional tort at common law. It consists of the intentional creation of the apprehension of imminent harmful or offensive contact. *M.(K.) v. M.(H.)*, [1992] 3 SCR 6, 26; *N.E.T. v. British Columbia (Attorney General)*, 2018 BCCA 380, ¶ 27. The tort of assault protects "the interest in freedom from fear of being physically interfered with." Linden et al., *Canadian Tort Law* (11th ed., 2018), § 2.49. The threat must be imminent, not a threat "to do harm to someone at some future time." *Id.* § 2.41. Although most assaults consist of physical gestures, threatening words can constitute an assault if there is "a threat of violence . . . exhibit[ing] an

5

intention to assault and a present ability to carry out the threat." *Mainland Sawmills Ltd. v. USW Union Local 1-3567*, 2007 BCSC 1433, ¶ 102.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of December 2020 in Toronto, Canada.

_____

Sujit Choudhry