# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAAD ALJABRI,<br><br>    *Plaintiff*,<br><br>v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al.*,<br><br>    *Defendants*. | Civil Action No. 20-2146 (TJK) |

**SUPPLEMENTAL DECLARATION OF FAHAD NASSER ALARFAJ
IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

1. My name is Fahad Nasser Alarfaj, and I am a partner at the law firm of Abdulaziz H. Al Fahad & Partners in Riyadh, Saudi Arabia. I previously submitted a legal opinion on Saudi law issues in support of Defendants' motions to dismiss. *See* ECF No. 92-7.

2. I offer this supplemental declaration in further support of Defendants' motions to dismiss to address misunderstandings of Saudi Arabia's legal system and Saudi Arabian law put forward in the expert report of Professor Chibli Mallat, ECF No. 102-3 ("Mallat Report"). In addition, I respond to the assertions made in the Doe Declaration regarding the Public Prosecution, and the prosecution and conviction of Omar bin Saad bin Khaled Aljabri and Sarah bint Saad bin Khaled Aljabri.

3. In this declaration, I explain: (1) that Saudi Arabia's judiciary is independent of the Saudi Royal Family and entertains both criminal and civil suits against members of the Saudi Royal Family; (2) that Saudi Arabian law does not recognize a cause of action analogous to the American common-law cause of action for intentional infliction of emotional distress ("IIED"); and (3) Exhibit L to the Motion To Dismiss of Mohammed bin Salman bin Abdulaziz Al Saud,

1

ECF No. 92-13, which consists of official records of the Public Prosecution describing judgments rendered by the Riyadh Criminal Court against Omar and Sarah Aljabri.

**Independence of Saudi Arabia's Judiciary**

4.  Professor Mallat states the opinions that His Royal Highness Mohammed bin Salman bin Abdulaziz Al Saud ("the Crown Prince") "cannot be held liable in Saudi Arabia for directing an attempted extrajudicial killing," Mallat Report ¶ 10, and that "Saudi courts lack independence," *id.* ¶ 14.  Those views are incorrect.

5.  Members of the Royal Family, including the Crown Prince, are not immune from criminal or civil suits arising from wrongdoing undertaken by them in their personal capacities. In 2016, for instance, the Saudi Ministry of Interior announced a death penalty sentence issued against Saudi Prince Turki bin Saud bin Turki bin Saud Al-Kabir for shooting and murdering another Saudi national during an altercation.[1]  There are numerous other public examples of Royal Family members facing court judgments including: (1) A recent decision rendered by the general court in Riyadh against a member of the Royal Family in favor of a Saudi national in a civil action for the repayment of a debt.[2]  In rendering its decision, the court confirmed that the Royal Order approving service of process by electronic means does not exempt any person, including members of the Royal Family.  The court further confirmed that all princes and princesses have civil records and that their mobiles are registered with Absher (the National eServices Portal).  (2) A court decision rendered against a Prince and two other individuals for forging academic qualifications

---

[1] *See* Alarabiya website (https://www.alarabiya.net/saudi-today/2016/10/18/%D8%A7%D9%84%D8%B3%D8%B9%D9%88%D8%AF%D9%8A%D8%A9-%D8%A7%D9%84%D9%82%D8%B5%D8%A7%D8%B5-%D9%85%D9%86-%D8%A3%D9%85%D9%8A%D8%B1-%D8%A7%D8%B1%D8%AA%D9%83%D8%A8-%D8%AC%D8%B1%D9%8A%D9%85%D8%A9-%D9%82%D8%AA%D9%84).

[2] *See* General Court Deed No. 411208486 dated 04/05/1441H (30 December 2019G).

for job-seeking purposes.[3]  (3) The Enforcement Court's decision number 38133062 dated 22/02/1438H (corresponding to 22 November 2016G) against Prince Alwaleed bin Talal Al Saud relating to a final judgment of the Traffic Circuit.[4]

6.  Professor Mallat cites no authority to the contrary.  Instead, he points to provisions of Saudi Arabia's Basic Law of Governance (the "Basic Law") – Saudi Arabia's equivalent to the U.S. Constitution – delineating the responsibilities of the King and the Crown Prince.  *See* Mallat Report ¶¶ 11-12.  Those provisions say nothing about immunity one way or another.

7.  Professor Mallat is also incorrect that, "[l]egally, [the Crown Prince] could not be held liable in Saudi courts absent a Royal Order from the King specifically authorizing such relief." *Id.* ¶ 10.  Under the Implementing Regulations of Saudi Criminal Procedural Law, consent from the King is required prior to arresting, seizing, or initiating a criminal investigation or criminal proceedings against a current or former Minister.  However, no such consent or order from the King is necessary to initiate a civil case against a current or former Minister.  Moreover, no such consent or order from the King is required to obtain relief from Royal Family members in Saudi Arabia's criminal and civil courts.[5]  In fact, the King has stated publicly that any citizen can file lawsuits against the King, the Crown Prince, or other members of the Royal Family.[6]

8.  Professor Mallat cites to the Basic Law's designation of the King as the "ultimate arbiter" of the "Authorities of the State."  Basic Law art. 44.  However, he ignores the unambiguous language establishing the Saudi judiciary as "an independent authority" and stating that "[t]he

---

[3]  *See* (https://www.spa.gov.sa/viewstory.php?lang=ar&newsid=2231906).

[4]  *See* (https://www.okaz.com.sa/local/na/1518627).

[5]  *See* Council of Ministers Resolution No. 142 dated 21/03/1436H (12 January 2015G), Art. 179.

[6]  *See* (https://youtu.be/mkUi4tIq0Cc).

3

decisions of judges shall not be subject to any authority other than the authority of the Islamic Sharia." *Id.* art. 46.[7]  Professor Mallat also ignores that even the King is subject to Islamic Sharia, *see id.* art. 55 ("The King shall run the affairs of the nation in accordance with the dictates of Islam"), which is the foundation of Saudi Arabia's system of government, *see id.* art. 8 ("Governance in the Kingdom of Saudi Arabia is based on justice, shura (consultation) and equality according to Islamic Sharia.").  Thus, the Basic Law is similar in material respects to the U.S. Constitution:  each sets up a judicial system that independently adjudicates cases according to generally applicable sources of law.  *See id.* art. 46.

9. Professor Mallat's further assertion that the Crown Prince and "those acting at his direction would be insulated from liability in Saudi Arabia for attempting an extrajudicial killing," Mallat Report ¶ 13, is incorrect.  Professor Mallat relies on the erroneous premise that the King has "absolute authority over all branches of Saudi government," *id.*, and that, as a result, the Crown Prince would be entitled to a form of derivative immunity.  Both premises are false.  As set forth above, Saudi Arabia's judicial branch is "an independent authority" in the Saudi government.  Basic Law art. 46.  Moreover, both the King and the Crown Prince (and any other member of the Royal Family) are subject to criminal and civil suit for acts carried out in their personal capacities.[8]

10. Moreover, Professor Mallat is incorrect to suggest (at ¶ 15) that Saudi Arabia's prosecution of individuals involved in the murder of Jamal Khashoggi demonstrates "the impunity held by [the Crown Prince] and his agents."  Decisions to prosecute or not are based on the strength

---

[7] *See also* Law of the Judiciary, issued by Royal Decree No. M/78 dated 19/09/1428H (1 October 2007G), Art. 1 ("Judges are independent and, in the administration of justice, they shall be subject to no authority other than the provisions of Sharia and laws in force. No one may interfere with the judiciary.").

[8] *See supra* ¶¶ 5-7.

4

of the evidence and prosecutorial discretion, just as in the U.S. legal system.[9] Decisions to convict or acquit likewise are based on the strength of the evidence, just as in the U.S. legal system.[10] Professor Mallat is free to disagree with those decisions, just as any individual is free to disagree with the outcomes of investigations or prosecutions in the United States. However, his mere disagreement is not evidence that the Crown Prince or anyone else possesses "impunity." Mallat Report ¶ 15.

11.     Professor Mallat claims (at ¶ 16) that "[the HRC and the NSHR] are irrelevant to the question of whether a remedy exists under Saudi law against Defendant bin Salman or his agents for attempting an extrajudicial killing." I mentioned these two entities in my April 1, 2021 declaration as examples of Saudi Arabia's efforts to protect against human rights violations, including extrajudicial killings.[11] As stated in that declaration, extrajudicial killing is prohibited under Saudi law and is a crime punishable by death regardless of the status of the person

---

[9]     See Royal Decree No. M/2 dated 22/01/1435H (25 November 2013G), Law of Criminal Procedures, Art. 124 ("If the investigator finds, upon completion of the investigation, that there is no sufficient evidence or grounds to file a case, he shall recommend to the head of the relevant department to close the case and release the accused, unless he is detained for another reason. The order of the head of the relevant department supporting the same shall be effective, except in major crimes where the order shall not be valid unless endorsed by the Chairman of the Bureau of Investigation and Public Prosecution or designee. Said order shall state the grounds therefor and be communicated to the private right claimant notifying him of his right to claim private right before the competent court pursuant to Article 16 of this Law, or to his heirs at his place of residence in case of his death").

[10]    See Law of Criminal Procedures, Art. 3 ("No penal punishment shall be imposed on any person except in connection with a forbidden and punishable act, whether under Shari'ah principles or under the statutory laws, and after he has been convicted pursuant to a final judgment rendered after a trial conducted in accordance with Shari'ah principles."), and Art. 179 ("A court shall base its judgment on the evidence produced during the trial. The judge shall not base his judgment on his knowledge of the facts, nor on facts contradicting such knowledge.").

[11]    See April 1, 2021 Declaration of Fahad Nasser Alarfaj in Support of Defendants' Motions To Dismiss (ECF No. 92-7) ¶¶ 9-12.

committing the extrajudicial killing.[12] Professor Mallat seems to have ignored the authorities relating to Saudi law's prohibition on extrajudicial killings and limited his discussions to the powers and authorities of the HRC and the NSHR. As provided in my April 1, 2021 declaration, the wording of Articles 5(1) and 5(7) of the HRC statute clearly tasks the HRC with the authority to investigate and to "take legal measures" to remedy human rights violations.[13] Similar language is provided in Article 3 of the NSHR law ("receiv[ing] complaints and grievances" about violations of human rights and "follow[ing] them up with competent entities").

12. Professor Mallat claims that the NSHR would be biased in favor of the Crown Prince. However, he provides no legal authority for this assertion, and, to the contrary, Article 1 of the NSHR bylaws states that the NSHR shall be established with an independent juridical personality.

**Absence of a Cause of Action Similar to IIED**

13. Professor Mallat also states the opinions that "Saudi judicial decisions awarding compensation for moral harm have recognized elements analogous to those required to establish IIED," that the Supreme Court decision discussed in paragraph 15 of my initial declaration is "not persuasive outside of the criminal courts," and that the case is "unique" for purportedly involving His Majesty the King's "personal[] interven[tion]." Mallat Report ¶¶ 29-30. Professor Mallat misunderstands the structure of Saudi Arabia's judiciary and misinterprets the Supreme Court's recent decision and other case law.

14. In my April 1, 2021 declaration, I explained that the judicial system in Saudi Arabia consists of three parts: (1) the general judiciary, (2) the administrative judiciary, and (3) specialized

---

[12] *Id.*

[13] *Id.* ¶ 10.

judicial tribunals. *See* ¶ 6. I further explained that, under Saudi law, the present action would fall within the jurisdiction of the general judiciary, which consists of courts of first instance, appellate courts, and the Supreme Court. *See id.* If Aljabri sought to bring this case in Saudi Arabia, courts in the general judiciary would adjudicate it. My April 1, 2021 declaration explains that the criminal court in the general judiciary has jurisdiction over criminal claims, as well as related civil actions. *See id.* ¶ 12. A stand-alone civil claim to recover damages as a result of criminal conduct may be filed separately in the general court. *See id.* Civil claims that do not fall within the jurisdiction of specialized courts of first instance fall under the jurisdiction of the general court.[14]

15. A party may, in certain circumstances, petition to the Supreme Court[15] for reversal of a judgment rendered by the courts of appeal that fall within the general judiciary.[16] In addition, the role of the Supreme Court includes reviewing judgments and decisions rendered or upheld by the courts of appeal, and reviewing objections to decisions of the courts of appeal that such decisions are not consistent with principles of Sharia law or the laws decreed by the King that do not violate Sharia law.[17]

16. Contrary to Professor Mallat's claim, there is nothing unique about Supreme Court Decision No. 429183 dated 10/02/1442H (27 September 2020H), which held that intangible or moral damages cannot be awarded because they cannot be precisely or accurately quantified. The Supreme Court rendered its decision based on its roles and responsibilities as determined by law and reversed the decision made by the lower court (the criminal court) on the basis of discrepancies

---

[14] *See* Law of the Judiciary, Art. 19.

[15] Paragraph 6 of my April 1, 2021 declaration referred to the Supreme Court as the Supreme Judicial Council, its former name.

[16] *See* Royal Decree No. M/1 dated 22/01/1435H (25 November 2013G), Law of Civil Procedures, Art. 193.

[17] *See* Law of the Judiciary, Art. 11.

and inconsistency with Saudi law.  It is immaterial whether the request to review the judgment or decision was made by the King or any other person.  The wording of Article 11 of the Law of the Judiciary provides that the Supreme Court may review the judgment or decision if an objection is made regarding the consistency of the ruling with Sharia and Saudi law.  A request made by the King has no impact on the Supreme Court's decision.

17.     The Supreme Court is the highest tribunal in the general judiciary.  As such, its decisions guide those of the lower general judiciary courts, including the general court and the criminal court.  I am unaware of any criminal court or general court decision that contradicts Supreme Court Decision No. 429183.  In fact, the criminal courts and the general courts have been consistent in rejecting claims for moral damages, including claims for psychological damages.  For example, the appellate court upheld the decision of the lower criminal court of Al Ahsa Provence rejecting the plaintiff's claim for psychological damages it suffered from the defendant, a cell phone technician who sent to her phone disturbing images after fixing it.  The court's reasoning for rejecting the claim for compensation for psychological damages was because awarding such damages would violate the principles of Sharia.[18]  The appellate court also upheld a decision rendered by the general court in Hail to reject the plaintiff's claim for moral damages on the basis that Sharia scholars have declared that moral damages shall not be awarded.[19]

18.     Because the Supreme Court's decisions guide those courts, the Supreme Court decision discussed in paragraph 15 of my initial declaration – Supreme Court Decision No. 429183 dated 10/02/1442H (27 September 2020H) – would also be applicable to Aljabri's case.  The above decisions from other criminal and general courts reinforces this conclusion.  Under Supreme Court

---

[18]    *See* Appellate Court Decision No. 35229781 dated 02/05/1435H (4 March 2014G).

[19]    *See* Appellate Court Decision No. 35317009 dated 15/07/1435H (15 May 2014G).

8

Decision No. 429183, Aljabri would have no claim to intangible or moral damages for reasons explained above and in my April 1, 2021 declaration.

19. Professor Mallat's opinions to the contrary are based on irrelevant legal authority. The Commercial Court and Administrative Court decisions cited by Professor Mallat (at ¶¶ 25-29) are inapplicable on their face because, as set forth above, these courts would have no jurisdiction over Aljabri's claims. In any event, they also do not establish that Saudi Arabian law recognizes a cause of action analogous to IIED.

20. As mentioned in my declaration, the Administrative Court and other tribunals award moral damages only in limited circumstances and exclusively as a consequence of physical injury or other tangible harm. *See* ¶ 16. The Administrative Court in the Saudi Arabian Airlines case I cited in my declaration, clearly states at page 3344 that the alleged psychological harm was a result of physical harm caused by filth on the plaintiff's daughter's body and clothes. As a result of that physical harm, the daughters were placed in separate seats, away from their parents, which caused additional moral and psychological injury. In its reasoning, the court cited two quotes from Sharia scholars stating that a plaintiff may recover for pain and psychological injury resulting from a physical injury. This case has no application to the alleged facts here, where there has been no alleged physical injury or other tangible harm.

21. The same is true of the case Professor Mallat cites in paragraph 28 of his declaration. In that case, the court awarded moral damages suffered as a result of the daughter falling into an open tank and spending time in the ICU. In awarding recovery for pain and psychological injury, which resulted from this physical injury, the court cited the same quotes from

9

the same two Sharia scholars cited in the Saudi Arabian Airlines case. This case has no application to the facts here since, again, Aljabri has not alleged any physical injury or other tangible harm.[20]

22. The Commercial Court case cited by Professor Mallat in paragraph 25 is also irrelevant. Professor Mallat states that "[t]he commercial court of Jeddah found in favor of the plaintiff, and granted him 500,000 riyals in compensation, a sum meant to compensate for the moral harm the defendant caused." He further states that, "[i]n doing so, the court explained that it was entitled, under its discretionary power, to order compensation for moral harm." Professor Mallat has misread this decision. On the first page of the decision, the court states that the plaintiff had claimed damages, including moral damages to his reputation. However, the 500,000 riyals ultimately awarded by the court was not for compensation for moral damages. The court clearly stated that this was an estimate of the amount the plaintiff would have earned if he had maintained his position as a board member. The only remedy that the court awarded to the plaintiff for damage to his reputation was to require the defendant to publish an apology to the plaintiff in two newspapers.

**The Prosecution of Omar and Sarah Aljabri**

23. I have been asked to review Exhibit L to the Motion To Dismiss of Mohammed bin Salman bin Abdulaziz Al Saud filed on April 5, 2021. Exhibit L consists of official stamped records of the office of the Public Prosecution describing judgments rendered by the Riyadh Criminal Court against two defendants, Omar bin Saad bin Khaled Aljabri and Sarah bint Saad bin Khaled Aljabri. The records comprising Exhibit L summarize the charges against the two

---

[20] Similarly, the case cited by Professor Mallat in paragraph 26 arises out of a claim of false imprisonment, which gave rise to physical injury. No such alleged physical injury is present here.

10

defendants, the judgments of the Court, and the sentences imposed upon them. The records also note that both convictions were upheld by the Court of Appeals.

24. I have also reviewed a declaration dated June 10, 2021, by an individual whose name is redacted in the only copy of the declaration that I have seen. I have been asked to refer to this person as Doe. Although Doe claims (at ¶ 2) to have "a deep understanding of the types of documents issued by the Ministry of Justice and the Public Prosecution in Saudi Arabia," both Doe's qualifications and experience are redacted from the declaration, and therefore I cannot comment upon them. But I can say that Doe makes a number of assertions about Exhibit L that I know to be incorrect or otherwise misleading.

25. I should note at the outset that, although Doe purports to criticize the records comprising Exhibit L, Doe offers no reason to question their accuracy. As the records note, the two defendants were convicted on November 4, 2020, on charges including money laundering and plotting to leave Saudi Arabia after being ordered to remain while the investigation of the Public Prosecution into their activities was ongoing. Omar Aljabri was sentenced by the Riyadh Criminal Court to eight years in prison for money laundering and one year in prison for conspiring to leave Saudi Arabia in an irregular manner and for perverting the course of the investigation. Sarah Aljabri was sentenced to six years on the former crime and six months on the latter. Both defendants were adults at the time of the crimes for which they were convicted. Their convictions were affirmed on December 24, 2020.

26. In paragraph 5 of the declaration, Doe claims that the prosecution documents "are not publicly available, are not court records, and are unusual, because they purport to describe the outcome of proceedings held under a different ministry (the Ministry of Justice)." Doe is correct that these records are not publicly available, but the remaining statements are not accurate. There

is nothing "unusual" about these documents. These types of documents are usually created in the ordinary course by the Public Prosecution in cases pertaining to individuals who are outside of Saudi Arabia or in cases relating to a public official and involving national security.[21] I have seen several similar documents issued by the Public Prosecution in my practice. Here, the convictions of Omar and Sarah Aljabri relate to the investigation of their father Saad Aljabri, who is located abroad. Moreover, it is evident that the investigation of Saad Aljabri's theft and corruption implicates Saudi Arabia's national security concerns, given Saad Aljabri's former government position in the Ministry of Interior.

27.     In paragraph 6 of the declaration, Doe claims that "[the Crown Prince] has complete control over the Royal Court and therefore the Public Prosecution and its chief prosecutor, the Attorney General." This statement is incorrect. The Public Prosecution is part of the Judiciary and is completely independent of the Royal Court.[22] In fact, like the independence of judges in Saudi Arabia,[23] members of the Public Prosecution are completely independent, and they shall not be subject to authority other than the provisions of Sharia and Saudi law.[24] Under Saudi law, no one shall interfere with their works.[25] No one, including the Royal Court, may interfere with the work of the Public Prosecution or the Attorney General.

28.     In paragraph 9 of the declaration, Doe states that "there are no records of Omar and Sarah Aljabri's cases in Najiz, an online database of court cases in Saudi Arabia. As a result of

---

[21]     *See* Royal Order No. 69053 dated 04/12/1440H (5 August 2019G).

[22]     *See* Royal Decree No. M/56 dated 24/10/1409H (30 May 1989G), the Law of the Bureau of Investigation and Public Prosecution, and Royal Decree No. M/125 dated 14/09/1441H (7 May 2020), Art. 1.

[23]     *See supra* ¶ 8.

[24]     *See* Law of the Bureau of Investigation and Public Prosecution (currently known as the Public Prosecution), Art. 5.

[25]     *Id.*

there being no records on Najiz, there is no way to track the appellate court proceedings in Sarah and Omar Aljabri's cases, and no public record of whether the appellate court ever reached a judgment." These statements are misleading. Najiz is not a public online database. Instead, it allows only the parties to a legal proceeding and their counsel of record to access court records pertaining to that particular proceeding. Members of the general public, and even other attorneys, cannot access records on Najiz pertaining to a case they are not involved in. Because Doe is not counsel of record for Omar or Sarah Aljabri, he or she would be unable to access any records pertaining to Omar or Sarah Aljabri's cases, or even determine whether records existed on Najiz pertaining to those cases. In addition, although the Ministry of Justice does release records of cases to the public,[26] it does not do so until many years after a case concludes. This is because such records are released after a careful review and elimination of all identifying information about the parties involved.[27] Here, Omar and Sarah Aljabri were convicted in November 2020, and their appeal was denied in December 2020. Accordingly, it will likely be several years before records of these cases are made public.

29. In paragraph 12 of the declaration, Doe claims that the records of the Public Prosecution, which Doe labels "PPO Documents," "were created at the request of the Royal Court, acting on orders from [the Crown Prince], for the purposes of this litigation." He further claims that "[t]he PPO Documents were created on April 1, 2021, only four days before [the Crown Prince]'s deadline in this case." Again, these statements are not correct. The Public Prosecution and its members are completely independent of the Royal Court, and the Royal Court does not interfere with their work. Moreover, in my experience, the date that the document is stamped as

---

[26]   *See* Law of the Judiciary, Art. 71(3).

[27]   *See* Council of Ministers Resolution No. 162 dated 17/06/1423H (26 August 2002G).

being sent out of a government office may not be the date on which the document was created – the document may have been created well before that date.  The important point is not when they were stamped but whether they accurately reflect the information contained in the PPO's files.  As noted, Doe gives no reason to question the accuracy of the information in Exhibit L.

30.     In paragraph 13 of the declaration, Doe claims that "[a]n investigation and trial for crimes considered 'major,' like the ones alleged here, usually take between three and four years." Doe further claims (at ¶ 8) that the PPO Documents "do not mention the date of the charges, but I [Doe] have been advised that charges were filed in September 2020, soon after this lawsuit was initiated in the U.S. District Court for the District of Columbia on August 6, 2020."  Doe does not indicate who "advised" Doe of that date.  In any event, Doe is incorrect that an investigation and trial for the crimes for which Omar and Sarah Aljabri were convicted usually take between three and four years.  I am aware of numerous criminal cases involving similar charges that were investigated, charged, and tried within a few months.  This is not at all unusual for criminal cases in Saudi Arabia.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9th day of August 2021 in Riyadh, Saudi Arabia.

_____
Fahad Nasser Alarfaj