# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAAD ALJABRI,<br><br>    *Plaintiff*,<br><br>v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al*.,<br><br>    *Defendants*. | Civil Action No. 20-2146 (TJK) |

**SUPPLEMENTAL DECLARATION OF SUJIT CHOUDHRY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

1.  My name is Sujit Choudhry, and I am a barrister at Huron Chambers, in Toronto, Canada. On December 7, 2020, I submitted a declaration in the above-captioned litigation, which set forth my qualifications, experience, and opinions on certain issues of Canadian law.

2.  In this supplemental declaration, I respond to the opinions set forth in the June 10, 2021 Declaration of François Larocque. I disagree with Professor Larocque's opinion that the Canadian legal system does not offer Plaintiff adequate available remedies for an extrajudicial killing.

3.  Professor Larocque is correct that Canada has no express statutory cause of action for extrajudicial killing, aside from the Justice for Victims of Terrorism Act, S.C. 2012, c. 1, s. 2, which in any case would be inapplicable to Plaintiff's allegations. He is incorrect, however, in opining that a common law claim for a violation of customary international law is "speculative at best." Larocque Decl. ¶ 8.

4.  The Supreme Court of Canada is a "General Court of Appeal for Canada." *Constitution Act, 1867*, ¶ 101. It "stands at the top of the hierarchy not only of federal courts, but of provincial (state) courts as well," and "is therefore the final authority on the interpretation of

1

the entire body of Canadian law," including "federal common law[] [and] provincial common law."  Peter W. Hogg, *Jurisdiction of the Court—The Supreme Court of Canada*, 3 CANADA-UNITED STATES L.J. 39, 41 (1980).  The Court has authority "to adapt and develop common law rules to reflect changing circumstances in society at large."  *R. v. Salituro*, [1991] 3 SCR 654, 666.  Accordingly, when the Court recognizes a common law cause of action, the availability of that cause of action is manifest, not "speculative."

5. In *Nevsun Resources Ltd. v. Araya*, 2020 SCC 5, the Supreme Court of Canada recognized a common law cause of action for violation of customary international law.  The Court asserted its power to develop the common law to hold that "recognizing the possibility of a remedy for the breach of norms already forming part of the common law" – *i.e.*, the norms of customary international law – "is . . . a necessary development."  *Nevsun Resources*, ¶ 118.  *Nevsun Resources* reiterated and relied on the proposition that, "[i]n the domestic context, the general principle that 'where there is a right, there must be remedy for its violation' has been recognized in numerous decisions of this Court."  *Id*. ¶ 120 (citations omitted).  On the facts, the Court rejected Nevsun Resources' motion to strike, because it was "not 'plain and obvious' that Canadian courts cannot develop a civil remedy in domestic law" – in that case, for "corporate violations of the customary international law forms adopted in Canadian law."  *Id*. ¶ 122.  The holding of *Nevsun Resources* is consistent with Professor Larocque's own long-standing views that "violations of well-established customary [international law] norms may give rise to privately actionable rights at common law," including in Canada, because "the actionability of customary norms at common law is defensible as a matter of first principle."  François Larocque, CIVIL ACTIONS FOR UNCIVILIZED ACTS:  THE ADJUDICATIVE JURISDICTION OF COMMON LAW COURTS IN TRANSNATIONAL HUMAN RIGHTS PROCEEDINGS (2010), 139.

6. Professor Larocque opines that *Nevsun Resources* did not expressly establish a cause of action for an extrajudicial killing. The holding of *Nevsun Resources*, however, was not limited to the specific violations of customary international law at issue in that case, *i.e.*, crimes against humanity, the prohibition against slavery, the prohibition against forced labour, and the prohibition on cruel, inhuman, and degrading treatment. Instead, it applies equally to other established violations of customary international law. Professor Larocque apparently recognizes as much, stating in his declaration that it is "uncontroversial" that "Canadian courts would likely acknowledge that the prohibition against extrajudicial killing is a customary international norm" that is incorporated as "part of the common law" after *Nevsun Resources*. Larocque Decl. ¶ 22.

7. Professor Larocque also opines that "remedies for domestic torts are limited and may not constitute an adequate response to the public nature and importance of the violations alleged in cases like the present litigation." Larocque Decl. ¶ 26. But Professor Larocque does not explain how these remedies are limited or inadequate. More importantly, he does not dispute that the lower courts, which are tasked by *Nevsun Resources* with developing the appropriate remedies for violations of customary international law, could in principle award monetary damages, as well as order declaratory and injunctive relief – the very remedies that Plaintiff seeks here. Nor does he dispute that these same remedies are currently available in Canada for other common law torts, such as battery and assault, that apply to extrajudicial killings.

8. Finally, Professor Larocque opines that Canada's State Immunity Act, R.S.C. 1985, c. S-18, may be a procedural barrier for the Plaintiff in this case to a common law claim recognized by *Nevsun Resources*. That Act confers immunity on a "foreign state," which "includes . . . any government of the foreign state or of any political subdivision of the foreign state, including any of its departments, and any agency of the foreign state." *State Immunity Act*, ¶¶ 2, 3(1). Although

3

the State Immunity Act does not expressly confer immunity on foreign officials, the Supreme Court of Canada held in *Kazemi Estate v. Islamic Republic of Iran*, 2014 SCC 62, "that public officials must be included in the meaning of 'government' in s. 2," *id.* ¶ 85. The *Kazemi* court also held, however, that "public officials will only benefit from state immunity when acting in their official capacity." *Id.* ¶ 93.

9. Professor Larocque states that foreign officials are "acting in their official capacity" under the *State Immunity Act* "[s]o long as their conduct involved the use of resources, powers and opportunities afforded by their office." Larocque Decl. ¶ 29. The law, however, is not settled on this point, and Professor Larocque cites no Canadian case articulating the standard in the same way he does. Moreover, as Professor Larocque has previously commented, the standard he articulates in his declaration would "not distinguish between the immunity of the state and the immunity of state officials." Larocque, CIVIL ACTIONS FOR UNCIVILIZED ACTS, 281 (citing *Jaffe v. Miller*, 13 O.R. (3d) 745 (C.A. Ontario 1993), 759). Professor Larocque has previously commented that the *State Immunity Act* "should be read narrowly, in a manner that preserves rather than supersedes pre-existing common law," and, as a matter of common law, "there is no necessary requirement of symmetry between the scope of the immunity afforded by statute to the state and the immunity of state officials at common law." *Id.* at 282-83.

10. In any event, my understanding is that the conduct-based immunity standard under United States law also depends on whether the official performed the acts at issue in an "official capacity." Ltr. from Harold Hongju Koh, Legal Adviser, U.S. Dep't of State, to Stuart F. Delery, Principal Dep. Ass't Att'y Gen., Civil Div., U.S. Dep't of Justice, at 2 (Dec. 17, 2012) ("Ragsdale Ltr."), *docketed at Ragsdale v. Lashkar-E-Taiba*, No. 1:11-cv-03893-DLI-CLP, ECF No. 19-1 (E.D.N.Y. Dec. 17, 2012) (describing State Department test); *see also* Restatement (Second) of

Foreign Relations Law of the United States § 66(f) (1965).  Under that test, "acts of defendant foreign officials who are sued for exercising the powers of their office are treated as acts taken in an official capacity."  Ragsdale Ltr. at 2.  This standard is the same, or at least substantially the same, as the "official capacity" standard that the Supreme Court of Canada articulated in *Kazemi* and the same "powers and resources of their office" standard that Professor Larocque articulates in his declaration.  Larocque Decl. ¶ 31.  Thus, even if one accepts Professor Larocque's articulation of the immunity standard in Canada, remedies for an extrajudicial killing are no less available to Plaintiff in Canada than they are in the United States.

      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of August 2021 in Toronto, Canada.

 

                                                _____

                                                        Sujit Choudhry