**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

DR. SAAD ALJABRI,                                          )
                                                                       )
                            Plaintiff,                            )
                                                                       )
              v.                                                    )          Civil Action No. 1:20-cv-02146-TJK
                                                                       )
MOHAMMED BIN SALMAN BIN                       )
ABDULAZIZ AL SAUD, *et al.*                       )
                                                                       )
                            Defendants.                       )
_____ )


<u>**REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED
COMPLAINT OF DEFENDANTS YOUSEF ALRAJHI, MOHAMMED ALHAMED,
LAYLA ABULJADAYEL, AND HANI FAKRI HAMED**</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................iii

GLOSSARY ............................................................................................................... vi

CITATION LEGEND ................................................................................................. vi

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.     The Amended Complaint Fails To State A Claim For Secondary Liability...................... 3

     A.     Because There Is No Primary Liability, There Cannot Be Secondary Liability. ............................................................................................ 3

     B.     The Plain, Unambiguous Language Of The TVPA Does Not Provide For Secondary Liability. ...................................................................... 7

     C.     The Student-Defendants' And Mr. Hamed's Alleged Actions Do Not Satisfy Essential Elements Of Any Secondary Liability Theory Under U.S. Or International Law. .............................................................................. 8

          1.     The Student-Defendants' And Mr. Hamed's Alleged Assistance Was Entirely Disconnected From The Alleged Attempt To Harm Plaintiff. ............................................................................................ 9

          2.     The Student-Defendants And Mr. Hamed Lacked Knowledge As To The Intent Of The Alleged Perpetrators. ............................................. 13

          3.     Plaintiff Makes Only Conclusory Allegations That The Student-Defendants And Mr. Hamed Agreed To Assist The Alleged Attempt To Harm Plaintiff. .................................................................... 17

II.     As Alleged Agents Of The Crown Prince, The Student-Defendants And Mr. Hamed Are Entitled To Foreign-Official Immunity. ...................................................... 19

III.     This Court Does Not Have Personal Jurisdiction Over Messrs. Alrajhi And Hamed. ........................................................................................................... 21

CONCLUSION .......................................................................................................... 22

## TABLE OF AUTHORITIES

**CASES**

*Al-Aulaki v. Obama*, 727 F. Supp. 2d 1 (D.D.C. 2010) .................................................. 4

*Alkanani v. Aegis Def. Servs. LLC*, 976 F. Supp. 2d 13 (D.D.C. 2014) ........................................ 21

*Appel v. Hayut*, No. 20 Civ. 6265, 2021 U.S. Dist. LEXIS 122511 (S.D.N.Y. June 30, 2021)... 4

*Belhas v. Ya'Alon*, 46 F. Supp. 2d 127 (D.D.C. 2006) .................................................. 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 18, 19

*Bernhardt v. Islamic Republic of Iran*, No. 18-2739 (TJK), 2020 U.S. Dist. LEXIS 214185 .........

   (D.D.C. Nov. 16, 2020) ...................................................................... 9, 11

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) .. 7, 8

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)...................................................... 4

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................ 22

*Doe v. Exxon Mobil Corp.*, 654 F.3d 11 (D.C. Cir. 2013) ("*Exxon I*") ..................... 9, 11, 14, 17

*Doe v. Exxon Mobil Corp.*, No. 01-1357 (RCL), 2015 U.S. Dist. LEXIS 91107 .........................

   (D.D.C. July 6, 2015) ("*Exxon II*").............................................. 12, 13, 15, 16

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30 (D.D.C. 2007) ..................................... 21

*Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323 (D.D.C. 2020)..................................... 5

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) ........................................ *passim*

*Honickman v. Blom Bank Sal*, No. 20-575, 2021 U.S. App. LEXIS 22480 ...................................

   (2d Cir. July 29, 2021) ....................................................................... 14, 16

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) ........................................... 5, 6, 7

*Kaplan v. Lebanese Canadian Bank, SAL*, No. 19-3522, 2021 U.S. App. LEXIS 17105...............

   (2d Cir. June 9, 2021) ....................................................................... 13, 14

*Kareem v. Haspel*, 986 F.3d 859 (D.C. Cir. 2021) ........................................................ 17

*Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254 (2d Cir. 2007)...................................... 9, 11

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ...................................... 7, 8

*Kuwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012)........................................... 22

*Lagayan v. Odeh*, 199 F. Supp. 3d 21 (D.D.C. 2016)............................................ 18, 19

*Lewis v. Mutond*, 918 F.3d 142 (D.C. Cir. 2019) .............................................. 20

*Moriah v. Bank of China Ltd.,* 107 F. Supp. 3d 272 (S.D.N.Y. 2015) ........................................ 20

*\*Nestle USA, Inc. v. Doe*, 210 L. Ed. 2d 207 (2021) ............................................. 6, 8

*\*Ofisi v. BNP Paribas*, S.A., 278 F. Supp. 3d 84 (D.D.C. 2017) ("*Ofisi I*") .................. 12, 16, 18

*Ofisi v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2018 U.S. Dist. LEXIS 4859 ..............................

   (D.D.C. Jan. 11, 2018) ("*Ofisi II*")................................................. 9

*Orellana v. Crop Life Int'l*, 740 F. Supp. 2d 33 (D.D.C. 2010) ................................... 22

*Rishikof v. Mortada*, 70 F. Supp. 3d 8 (D.D.C. 2014) .................................. 20

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012)................................ 7

*\*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)............................................. 6

*Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91 (D.D.C. 2002)................................... 18, 19

*United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008)................................................. 4

*Warfaa v. Ali*, 33 F. Supp. 3d 653 (E.D. VA. 2012) ............................................. 5

*Wiwa v. Royal Dutch Petroleum*, No. 96 Civ 8386, 2002 U.S. Dist. LEXIS 3293 ........................

   (S.D.N.Y. Feb. 28, 2002) ................................................. 7

*Yousuf v. Samantar*, No. 1:04-cv-1360, 2012 U.S. Dist. LEXIS 122403......................................

   (E.D. Va. Aug. 28, 2012)................................................. 5

*Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847 (N.D. Ill. 2004) .................... 22

**STATUTES**

15 U.S.C. § 78t(e) ................................................................................................... 7

28 U.S.C. § 1350 (note) ......................................................................................... 4

28 U.S.C. § 1605 ................................................................................................... 5

D.C. Code § 13-423(a)(1) ................................................................................ 21, 22

*\*Authorities on which these Defendants chiefly rely on are marked with an asterisk.*

## GLOSSARY

| ABBREVIATION | DEFINITION |
|---|---|
| ATS | Alien Tort Statute |
| Crown Prince | His Royal Highness Mohammed Bin Salman Bin Abdulaziz Al Saud |
| MiSK Foundation | Defendant Prince Mohammed Bin Salman Bin Abdulaziz Foundation |
| Student-Defendants | Defendants Yousef Alrajhi, Mohammed Alhamed, and Layla Abuljadayel |
| TVPA | Torture Victim Protection Act of 1991 |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| USG | United States government |

## CITATION LEGEND

| ABBREVIATION | DEFINITION |
|---|---|
| AC | The Amended Complaint Filed By Saad Aljabri, ECF No. 66. |
| Alasaker Br. | Memorandum Of Law In Support Of Defendant Bader Alasaker's Motion To Dismiss The Amended Complaint, ECF No. 94. |
| Crown Prince Br. | Memorandum Of Law In Support Of Defendant Mohammed bin Salman bin Abdulaziz Al Saud's Motion To Dismiss The Amended Complaint, ECF No. 92. |
| Crown Prince Reply Br. | Reply Memorandum Of Law In Support Of Defendant Mohammed bin Salman bin Abdulaziz Al Saud's Motion To Dismiss The Amended Complaint, ECF No. 110. |
| Opp'n Br. | Plaintiff's Memorandum Of Law In Opposition to Defendant's Motion to Dismiss, ECF No. 102. |
| Students Defs.' Br. | Memorandum Of Law In Support Of Defendants Yousef Alrajhi, Mohammed Alhamed, Layla Abuljadayel And Hani Fakri Hamed's Motion To Dismiss The Amended Complaint, ECF No. 96. |

## **INTRODUCTION**

In their Motion, the Student-Defendants and Mr. Hamed established that Plaintiff's claims against them, which depend exclusively on theories of secondary liability, should be dismissed because Plaintiff has failed to plausibly allege the primary liability of the other Defendants.  The Student-Defendants and Mr. Hamed also demonstrated that the TVPA does not permit an aiding and abetting claim, because the plain, unambiguous language of the statute does not include a private right of action for secondary liability.  In any event, Plaintiff grounds his claims on alleged facilitative acts by these Defendants that do not satisfy essential elements of any secondary liability theory under U.S. or international law.  Further, assuming that the Student-Defendants and Mr. Hamed were acting as the Crown Prince's agents, as alleged, they are entitled to official immunity for those acts.  Moreover, there is no personal jurisdiction over Student-Defendant Alrajhi and Mr. Hamed.

Without sufficiently plausible allegations to support his primary liability claims, Plaintiff's secondary liability claims against the Student-Defendants and Mr. Hamed collapse.  These are not minor omissions, easily correctable by further amendment.  Instead, Plaintiff has neglected the fundamental core of his case, failing to show that:  1) the alleged acts of the Student-Defendants and Mr. Hamed were substantially connected to the alleged primary tort; 2) these Defendants had actual knowledge that their alleged facilitative acts were connected to the alleged primary tort (the attempted extrajudicial killing of Plaintiff); 3) they were generally aware that they were playing a role in the alleged illegal or tortious activity by the primary-liability Defendants; and, 4) they agreed with anyone to commit any illegal or tortious act.  What remains is a 200-page Amended Complaint, largely barren of plausible allegations, and entirely reliant on sensational claims that demand great leaps of imagination and unearned faith, which ultimately warrants dismissal.

Despite a 174-page Opposition, Plaintiff never addresses the majority of the dispositive omissions the Student-Defendants and Mr. Hamed examined in the Motion, including:

- Plaintiff never alleges a plausible substantial connection between the information the Student-Defendants and Mr. Hamed allegedly learned in the U.S. in the Fall of 2017, and the alleged attempt on Plaintiff's life in Canada, over one year later in October 2018.  (Students-Defs.' Br. at 27-28).

- The alleged plot to harm Plaintiff in Canada does not depend on any of the alleged actions of the Student-Defendants or Mr. Hamed; the U.S.-focused allegations are entirely disconnected from the Canadian-focused allegations.  (*Id.* at 30).

- Plaintiff never alleges that or how the Student-Defendants and Mr. Hamed had <u>actual knowledge</u> they were allegedly assisting an attempt on Plaintiff's life, and instead advocates for an erroneous "should have known" legal standard.  (*Id.* at 28-29).

- Plaintiff never alleges Mr. Hamed's knowledge or intent for the events described in the AC.  (*Id.* at 15).

- Plaintiff alleges that Messrs. Hamed and Alasaker orchestrated a "surveillance mission", but the AC contradicts that claim by alleging that Mr. Hamed only had contact with one other Defendant.  (*Id.* at 7).

- The AC alleges very little about Mr. Hamed, and none of those allegations attempt to connect Mr. Hamed to the alleged plot to kill Plaintiff.  (*Id.* at 4, 6-7).

- The AC never alleges that or how Mr. Hamed shared his surveillance information with other Defendants.  (*Id.* at 7).

- Plaintiff never alleges that there was "an agreement to do an unlawful act" between the Student-Defendants (or Mr. Hamed) and anyone else, as required to state a conspiracy claim.  (*Id.* at 29-30).

Plaintiff instead devotes the bulk of his Opposition to the Crown Prince and other Defendants who face primary liability.  The AC's negligible pleading about the Student-Defendants and Mr. Hamed, and Plaintiff's lack of attention to these Defendants in his Opposition, together demonstrate that these Defendants are minor figures who have been added to this case because Plaintiff has no other U.S. connection to establish jurisdiction in this Court.

<u>**ARGUMENT**</u>

**I.     The Amended Complaint Fails To State A Claim For Secondary Liability.**

Plaintiff asserts only secondary liability claims against the Student-Defendants and Mr. Hamed, "for conspiring to commit an extrajudicial killing and for aiding and abetting the [attempted] killing."[1]  The aiding and abetting claims are only partially pled, however, and where pled, the allegations are utterly implausible.  Plaintiff's argument regarding the weight of the information that the Student-Defendants allegedly "learned" is meaningless, in fact, because it was publicly available, and/or was discovered or discoverable through other means.

Plaintiff's pleading defects are dispositive for at least three reasons:  (i) Plaintiff has not plausibly pled a primary violation of either the ATS or the TVPA, without which there cannot be secondary liability; (ii) the TVPA does not permit secondary liability; and, (iii) Plaintiff fails to plead plausibly all of the elements for secondary liability under either the TVPA or the ATS.  Each of these defects is discussed in turn below.

**A.     <u>Because There Is No Primary Liability, There Cannot Be Secondary Liability.</u>**

Plaintiff cannot establish his secondary liability claims against the Student-Defendants and Mr. Hamed, because he fails to state a claim for primary liability against the Crown Prince and the other Defendants.[2]  Plaintiff asserts primary liability claims under the TVPA and the ATS exclusively against the Crown Prince and other Defendants.  For secondary liability to attach, the primary tortfeasor must have committed a substantive underlying tort—but neither of the alleged underlying statutes allows a primary liability claim for attempt.[3]

---

[1] Opp'n Br. at 92, 127 (bracketed term added).
[2] *See* Crown Prince Br. at §§ III.A and III.B; Crown Prince Reply Br. at §§ III.A and IV.A; *see also* Crown Prince Reply Br. at § I.B.
[3] *See id*; *see also* Student Defs.' Br. at 25-26.

The "one, cardinal canon" of statutory interpretation is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  The TVPA states in plain terms that it creates liability for "wrongful death".  28 U.S.C. § 1350 (note).  Plaintiff challenges the unambiguous language of the statute, however, in order to force a new meaning:  "Congress could have" but did not explicitly "limit[] the definition of 'extrajudicial killing' to *completed* killings."[4]  Judge Posner rejected a similar interpretation of another statute, because "[i]n tort law, unsuccessful attempts do not give rise to liability"—in contrast to criminal law, which "aims at taking dangerous people out of circulation before they do harm . . . even if his plan was thwarted."[5]  Congress easily could have included a "personal injury" claim in the TVPA, just as it did in the FSIA, but did not do so.[6]

Plaintiff asserts that there is an "unbroken wall" of cases holding that the TVPA's statutory language permits attempt liability.[7]  Plaintiff's "wall" is made of straw and sticks, however, and is directly contradicted by the *Appel* court's survey of Plaintiff's cited authority.  *See Appel v. Hayut*, No. 20 Civ. 6265, 2021 U.S. Dist. LEXIS 122511 (S.D.N.Y. June 30, 2021).  *Appel* concluded that courts permitting attempt liability under the TVPA had simply assumed the TVPA included a cause of action for attempt, and therefore "did not have the occasion to truly grapple with the statutory language."  *Id.* at *27-28 (distinguishing Plaintiff's cases).

Every one of those cases, on which Plaintiff relies to urge this Court's recognition of the claims, presented materially different facts and circumstances.  Most notably, in each of those cases the plaintiff(s) had been physically injured.  Further, in *Warfaa v. Ali*, 33 F. Supp. 3d 653,

---

[4] Opp'n Br. at 82 (emphasis in original); *see also* Student Defs.' Br. at 11 (collecting cases).
[5] *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008) (Posner, J.).
[6] *C.f. Al-Aulaki v. Obama*, 727 F. Supp. 2d 1, 36-37 (D.D.C. 2010).
[7] Opp'n Br. at 80-81 (discussing cases).

659, 663 (E.D. VA. 2012), *aff'd* 811 F.3d 653 (4th Cir. 2016), the defendants argued only political question, official immunity, act of state, and statute of limitations defenses, while *Yousuf v. Samantar*, No. 1:04-cv-1360, 2012 U.S. Dist. LEXIS 122403, at *10-11 (E.D. Va. Aug. 28, 2012), only considered a statute of limitations defense because the defendant had defaulted.  Plaintiff's remaining cited cases arose under the FSIA.  While the FSIA and TVPA define extrajudicial killing identically, the comparison is otherwise irrelevant because the FSIA allows a broader claim "for personal injury **or** death."[8]

Plaintiff next asserts that TVPA attempt liability "turn[s] on the FSIA's distinctive features."[9]  If Plaintiff is correct, then attempt liability is bounded by the FSIA's limitation of recovery to attempts that cause death or physical injury.[10]  *See Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323, 360-61 (D.D.C. 2020) (holding that that FSIA liability extends to "material support or resources for an intended extrajudicial killing … as long as the victim represented in the case was injured") (collecting cases)).  Plaintiff admits that he was not injured as a result of the conduct complained of here.

Plaintiff also alleges an ATS claim for "an attempted extrajudicial killing,"[11] but the ATS does not recognize liability for an attempt.[12]  The Supreme Court in *Jesner v. Arab Bank, PLC* admonished that federal courts "must refrain" from recognizing a new remedy under the ATS in favor of waiting for Congress to act.  138 S. Ct. 1386, 1402 (2018) (majority).[13]  *Jesner* considered

---

[8] 28 U.S.C. § 1605(a)(5) (emphasis added); *see* Opp'n Br. at 81-82.
[9] Opp'n Br. at 84.
[10] *See* Student Defs.' Br. at 19-20 (collecting FSIA cases).
[11] AC ¶ 397.
[12] Crown Prince Br. at 58-60.
[13] *See also id.* at 1402 (plurality) (arguing recognition of a new ATS remedy is a two-step process in which "the Judiciary must defer to Congress").  The USG, as amicus curiae in *Nestlé USA Inc.*

"whether the Judiciary has the authority, in an ATS action, to make that determination and then to enforce that liability in ATS suits, all without any explicit authorization from Congress to do so", and discussed the many reasons U.S. courts should not expand the scope or language of a statute to create additional liability. *Id.* at 1394. *Jesner* relied on *Sosa*, which had warned of "possible collateral consequences of making international rules privately actionable".[14] *Sosa* instructed that there is "a high bar to new private causes of action for violating international law", because of the possible implications for U.S. foreign relations, and the need for the courts to be "particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." *Id. Jesner* echoed that caution, elaborating that "the separation-of-powers concerns that counsel against courts creating private rights of action apply with particular force in the context of the ATS".[15] *Nestle USA, Inc. v. Doe*, 210 L. Ed. 2d 207, 213 (2021) (Part III plurality opinion) (internal citation omitted) ("[O]ur precedents since *Sosa* have clarified that courts must refrain from creating a cause of action whenever there is even a single sound reason to defer to Congress. . . . Tellingly, we have never created a cause of action under the ATS.").

These concerns are at their apex here, because Congress already has spoken on the scope of liability under the ATS by creating a new private right of action for an extrajudicial killing, *i.e.*, the TVPA. The *Jesner* plurality emphasized the significance of the fact that the TVPA is "the only cause of action under the ATS created by Congress rather than the courts", observing that Congress took "great care to delineate the TVPA's boundaries" and "specified who may be liable, created an exhaustion requirement, and established a limitations period". *Id.* (concurrence) (citing *Kiobel*

---

*v. Doe*, adopted that argument. *See* Br. for U.S. as Amicus Curiae Supporting Pet'r at 25, *Nestlé v. Doe*, No. 19-416, 2020 U.S. S. Ct. Briefs LEXIS 3554, at *36 (Sept. 8, 2020).

[14] *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004).

[15] 138 S. Ct. at 1403-04 (concurrence).

*v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013)).  Congress created a structure for a cause of action under the ATS, and "[a]bsent a compelling justification, courts should not deviate from that model."[16]

      B.    <u>The Plain, Unambiguous Language Of The TVPA Does Not Provide For Secondary Liability.</u>

Plaintiff has no secondary liability cause of action under the TVPA, because Congress did not include language in the statute providing for one.[17]  "The text of the TVPA is silent as to aiding and abetting, and such silence should not be interpreted as granting and authorizing that liability." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 618 (S.D.N.Y. 2012) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994)).  Plaintiff cites authority acknowledging this dispositive defect—"The language of the TVPA could be more precise"[18]—yet Plaintiff urges this Court to recognize the cause of action because "the TVPA's text—via the word 'subject'—**invites** secondary liability."[19]  This is precisely the invitation that the Supreme Court has cautioned and admonished the U.S. courts to decline.

*Central Bank of Denver* illustrates precisely how the Supreme Court expects this process to work.  There, the Supreme Court held that a private party cannot maintain an action for aiding and abetting violations of Section 10(b) because the plain language of the statute does not reflect that remedy.  A year after *Central Bank of Denver* was decided, Congress enacted the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78t(e) ("PSLRA").  In the PSLRA, <u>Congress</u> created an exception in Section 10(b) to explicitly authorize the USG to bring enforcement actions for aiding and abetting violations of the antifraud provisions of Section 10(b).  The plain language

---

[16] *Jesner*, 138 S. Ct. at 1403 (plurality concurrence).
[17] *See* Student Defs.' Br. at 23-24; *see also* Alasaker Br. at 31-32.
[18] *Wiwa v. Royal Dutch Petroleum*, No. 96 Civ. 8386, 2002 U.S. Dist. LEXIS 3293, at *50 (S.D.N.Y. Feb. 28, 2002).
[19] Opp'n Br. at 93-94 (emphasis added).

of the TVPA does not include any language providing for aiding and abetting liability. Accordingly, federal courts must enforce the statute as written.

Plaintiff stretches the meaning of "subject" to include people who directly or indirectly <u>cause</u> someone to undergo extrajudicial killing.  If "subject" indicates causation, however, then it cannot also mean aiding and abetting, because "aiding and abetting liability extends beyond persons who engage, even indirectly, in a proscribed activity" to reach "<u>persons who do not engage in the proscribed activities at all</u>, but who give a degree of aid to those who do."  *Central Bank of Denver*, 511 U.S. at 176 (emphasis added).

Unlike the TVPA, the ATS permits aiding-and-abetting claims, but only if the primary-liability allegations focus on ATS actions that "touch and concern" the U.S.  After *Kiobel*, 569 U.S. 108 at 124-25, any domestic facilitative conduct must be materially linked to the primary international law violation.[20]  In *Nestlé*, the Supreme Court rejected an argument that "operational decision[s]" made in the U.S. could "establish domestic application of the ATS."[21]  Plaintiff's case for imposing ATS liability on the Student-Defendants and Mr. Hamed is weaker than the one in *Nestlé*, because Plaintiff alleges domestic U.S. facilitative conduct that is not plausibly connected to alleged primary conduct in Saudi Arabia and Canada.

C.   <u>The Student-Defendants' And Mr. Hamed's Alleged Actions Do Not Satisfy Essential Elements Of Any Secondary Liability Theory Under U.S. Or International Law.</u>

Even if Plaintiff could plausibly plead primary liability against the other Defendants, and the TVPA recognized attempt liability, Plaintiff's TVPA and ATS claims for aiding and abetting and conspiracy liability must still be dismissed because they fail to meet "the proper legal

---

[20] The Student-Defendants and Mr. Hamed adopt and incorporate by reference the Crown Prince's Reply Brief at § IV.B.
[21] *Nestlé*, 2021 U.S. LEXIS 3120 at *7-8; *c.f.* Opp'n Br. at 16-17.

framework . . . for how . . . [f]ederal civil aiding and abetting and conspiracy liability claims should function." *Bernhardt v. Islamic Republic of Iran*, No. 18-2739 (TJK), 2020 U.S. Dist. LEXIS 214185, at *14-15 (D.D.C. Nov. 16, 2020) (internal quotations omitted) (citing legal framework in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)).  Plaintiff's aiding and abetting claims under the ATS fail to meet any international law standards recognized within this Circuit, to the extent those differ.  *Ofisi v. BNP Paribas, S.A.*, No. 15-2010 (JDB), 2018 U.S. Dist. LEXIS 4859, at *10 n.7 (D.D.C. Jan. 11, 2018) ("*Ofisi II*") (citation omitted); Student Defs.' Br. at 24 n.26.

1.      The Student-Defendants' And Mr. Hamed's Alleged Assistance Was Entirely Disconnected From The Alleged Attempt To Harm Plaintiff.

Plaintiff does not plausibly allege that Student-Defendants' and Mr. Hamed's alleged conduct "ha[d] a substantial effect on the perpetration of the crime'".  *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 33-34 (D.C. Cir. 2013) ("*Exxon I*")); *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 277 (2d Cir. 2007)); *see also Halberstam*, 705 F.2d at 477.  In fact, the AC fails to plausibly plead any causal link between the alleged actions of the Student-Defendants and Mr. Hamed in the fall of 2017 and the alleged October 2018 plot by others to kill Plaintiff.[22]  Plaintiff does not allege that any of the Student-Defendants or Mr. Hamed ever located Plaintiff or his wife, or physically harmed Plaintiff or anyone else.  The AC portrays these Defendants, at most, as dispensable actors who had little to no involvement with other Defendants, and who undertook their alleged inquiries without any intent to harm, without actual knowledge of any plot to harm, and without causing any physical or other harm to Plaintiff, or anyone else.[23]

Attempting to strengthen his argument that the alleged acts of the Student-Defendants and

---

[22]  *See* Student Defs.' Br. at 7-9.
[23]  *Id.* at 4-8.

Mr. Hamed had a "substantial effect" on the alleged attempted killing, Plaintiff repeatedly asserts that "[t]he information acquired by the U.S.-Based Covert Agent Defendants was key to bin Salman's plot to target and kill Dr. Saad."[24]   Plaintiff admits, however, that the Student-Defendants allegedly learned just four pieces of "valuable information" from their activities:   (1) "that [Plaintiff]'s wife was not in Saudi Arabia"; (2) "that [Plaintiff]'s son Khalid[], was a U.S. permanent resident but not a citizen"; (3) "that Khalid's family resided in London"; and, (4) "that the Aljabri family had a residence at the Mandarin Oriental" in Boston.[25]   Neither the AC nor the Opposition explains how the first three pieces of information played any role, let alone a "key" role, which "provid[ed] substantial assistance" to others' alleged attempts to locate and kill Plaintiff in Canada more than one year later.

Plaintiff insists that the location of his family's residence at the Mandarin Oriental was the "most important" information obtained by the Student-Defendants and Mr. Hamed, because it could not have been obtained through public sources.[26]   Plaintiff arguably hangs his entire case against these Defendants on an allegation "on information and belief" that the Mandarin Oriental information only could have been discovered through Defendant Alrajhi and Defendant Hamed's alleged activities.   AC ¶ 245 ("There are no public records of the Aljabri family's association with the Mandarin Oriental" and "the only way Defendant Hamed could have learned that [Plaintiff] or his family resided there was through the efforts of his co-agent, Defendant Alrajhi."); *id.* ¶¶ 87, 109 ("At the time of Defendant Hamed's surveillance effort, the Mandarin Oriental was not publicly linked to Dr. Saad."); Opp'n at 14-15.

Plaintiff knows these allegations are not truthful, however, because <u>Plaintiff and his son,</u>

---

[24] Opp'n Br. at 15; *see also id.* at 106.
[25] *Id.* at 14.
[26] *See id.* at 14.

Khalid Aljabri, <u>filed public records of Plaintiff's property ownership in the Mandarin Oriental as early as May 1, 2017</u>.  On May 1, 2017, New East Back Bay LLC, a company owned and managed by Plaintiff and his son, registered a Residential Condominium Unit Deed with the Massachusetts's Suffolk County Registry of Deed for property that it owned at the Mandarin Oriental located at 776 Boylston Street in Boston, Massachusetts.  *See* Exhibit A.[27]  New East Back Bay LLC concurrently filed with the deed a Certificate of Organization from the Massachusetts Secretary of the Commonwealth, stating that Plaintiff and his son, Khalid Aljabri, were the managers of New East Back Bay LLC, and were "authorized to act with respect to" the property at the Mandarin Oriental.  *Id.*  This was <u>more than four months before</u> any of the Student-Defendants' alleged inquiries and <u>over six months before</u> Mr. Hamed's alleged surveillance.

The information that the Student-Defendants allegedly "learned" is meaningless, in fact, because the information was publicly available, and/or was discovered or discoverable through other means.  Aware of this core weakness, Plaintiff argues that TVPA and ATS secondary liability does not require but-for causation.[28]  Plaintiff's argument misses the point.  Aiding and abetting liability requires a "substantial" connection between the alleged facilitative conduct and the primary tort.  *Exxon I*, 654 F.3d at 33-34 (citing *Halberstam*, 705 F.2d at 477); *Khulumani*, 504 F.3d at 277).  The AC does not allege any such "substantial" connection.

Here, the Student-Defendants and Mr. Hamed's alleged failed attempts to locate Plaintiff in the U.S. did not "cause[] Plaintiff[']s injuries," *Bernhardt*, 2020 U.S. Dist. LEXIS 214185, at *21, or make "a significant difference to the commission of the criminal act by the principal," *Ofisi v. BNP Paribas*, S.A., 278 F. Supp. 3d 84, 108 (D.D.C. 2017) ("*Ofisi I*") (citation omitted).

---

[27] The records in this exhibit were filed with the Massachusetts's Suffolk County Registry of Deed on May 1, 2017 and are publicly available at https://www.masslandrecords.com/Suffolk/.
[28] *See* Opp'n Br. at 106, 122-23.

Concerning the latter standard, *Halberstam* makes clear that a defendant's act "could constitute 'substantial assistance'" if it is an "indispensable prerequisite" to the underlying tort.  705 F.2d at 482.  But Plaintiff is once again missing elemental allegations for his claim to survive dismissal.  None of the information allegedly discovered by the Student-Defendants and Mr. Hamed was an "indispensable prerequisite" to the location and alleged attempted killing of Plaintiff in Canada more than one year later.  *See supra* at 10-11.  The AC never alleges that some of the information was communicated to or used by the other Defendants.  Plaintiff's argument regarding the weight of the information that the Student-Defendants allegedly "learned" is meaningless, in fact, because it was publicly available, and/or was discovered or discoverable through other means.

Nor do the facts alleged against the Student-Defendants and Mr. Hamed meet the causation standard articulated by the international tribunals cited in *Doe v. Exxon Mobil Corp.*, No. 01-1357 (RCL), 2015 U.S. Dist. LEXIS 91107 at *28 (D.D.C. July 6, 2015) ("*Exxon II*").[29]  Plaintiff asserts that, under the international tribunal causation requirement, "there need only be 'some sort of direct relationship'" between the underlying violation and the assistance rendered.[30]  But *Exxon II* identified the situations in which "some sort of direct relationship" is met.  The first, which Plaintiff characterizes as "sufficient but not necessary",[31] is when "the underlying crime 'probably would not have occurred in the same way had not someone acted in the role that the accused [aider and abettor] in fact assumed.'"  *Id.* at *29 (internal citation omitted).  The Student-Defendants' and Mr. Hamed's actions do not meet this threshold.[32]

Recognizing this, Plaintiff instead argues that "'[f]acilitating the commission of a[] . . .

---

[29] *See* Opp'n Br. at 106, 122.
[30] *Id.* at 123 (quoting *Exxon II,* 2015 U.S. Dist. LEXIS 91107 at *28-29).
[31] Opp'n Br. at 123 n.128.
[32] *See supra* at 10-11; *see also* Student Defs.' Br. at 27-28.

violation may also satisfy' the substantial-assistance requirement."[33]  But in both of the examples relied on by the *Exxon II* court for this standard, the defendants' "acts ha[d] a substantial effect on the primary violation" because the defendants "permit[ted] the use of resources under [their] control" that were used to "facilitate <u>directly</u> the ultimate commission of the underlying offense." *Id.* at *29-30 (emphasis added).  The Student-Defendants and Mr. Hamed are not alleged to have permitted the use of resources under their control to facilitate directly the alleged attempted killing in Canada.  Accordingly, the AC does not plausibly allege facts under *Halberstam* or international law to support Plaintiff's allegation that any of the Student-Defendants' or Mr. Hamed's alleged actions had "a substantial effect on the perpetration of" Plaintiff's alleged attempted murder.

2.     <u>The Student-Defendants And Mr. Hamed Lacked Knowledge As To The Intent Of The Alleged Perpetrators.</u>

To successfully allege aiding and abetting liability, Plaintiff must also plausibly allege that the Student-Defendants and Mr. Hamed "knowingly" assisted "the principal violation" while being "generally aware of [their] role as part of an overall illegal or tortious activity at the time that [they] provide[] the assistance."  *Halberstam*, 705 F.2d at 477, 487-88.  The Second Circuit's recent application of *Halberstam* in *Kaplan v. Lebanese Canadian Bank, SAL*, No. 19-3522, 2021 U.S. App. LEXIS 17105 (2d Cir. June 9, 2021), reinforced that the "knowingly" component of "substantial assistance" for aiding and abetting requires "actual knowledge," *id.* at *34, *55, and that the defendant's alleged facilitative conduct substantially assisted "someone who performed wrongful conduct".  *Id.* at *34 (quoting *Halberstam*, 705 F.2d at 478).

To satisfy that standard, "plaintiffs are required to include allegations of the facts or events they claim give rise to an inference of [such actual] knowledge", because "[t]hat knowledge

---

[33] Opp'n Br. at 123 n.128 (quoting *Exxon II,* 2015 U.S. Dist. LEXIS 91107, at *29).

component 'is designed to avoid' imposing liability on 'innocent, incidental participants.'" *Id.* at *55, 57 (quoting *Halberstam*, 705 F.2d at 485 n.14). Plaintiff's allegations against the Student-Defendants and Mr. Hamed fail to establish that any of them was "generally aware," let alone that they had actual "knowledge that [their conduct] w[ould] assist" an attempt on Plaintiff's life. *Exxon I*, 654 F.3d at 34; *see also* Student Defs.' Br. at 28-30.

To begin, the Opposition does not argue that the Student-Defendants or Mr. Hamed had actual knowledge of the alleged extrajudicial killing attempt. Plaintiff instead argues that "intent and knowledge may be alleged generally" and that his allegations are sufficient because he "has plausibly pled that the U.S.-Based Covert Agent Defendants knew 'something illegal was afoot.'" Opp'n Br. 102, at 103 (quoting *Halberstam*, 705 F.2d at 486). This is insufficient. Generally, the alleged aider and abettor must know that the actions giving rise to primary liability were a "foreseeable risk" of the type of illegal activity that the defendant knew she was assisting.

For example, in *Halberstam*, the D.C. Circuit rejected the defendant's pleas of ignorance about her boyfriend's wrongdoing and reasoned that it "defies credulity that Hamilton did not know that something illegal was afoot," due to "[her boyfriend]'s pattern of unaccompanied evening jaunts over five years, . . . the sudden influx of great wealth, . . . [and] Hamilton's collusive and unsubstantiated treatment of income and deductions on her tax forms." 705 F.2d at 486. But subsequent case law applying *Halberstam* confirms that a defendant cannot be held secondarily liability for another's primary violation if the primary violation at issue was not "a foreseeable risk" of the illegal activity that the defendant was generally aware she was supporting. *Honickman v. Blom Bank Sal,* No. 20-575, 2021 U.S. App. LEXIS 22480, at *15 (2d Cir. July 29, 2021) (holding that, for aiding and abetting liability under *Halberstam*, the defendant "must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury

- 14 -

was *foreseeable*." (emphasis in original); *see also Exxon II,* 2015 U.S. Dist. LEXIS 91107  at *30-31 (holding a defendant can only be secondarily liable for a primary violation that she was "aware . . . will probably be committed"); *Halberstam*, 705 F.2d at 488 (concluding "violence and killing is a foreseeable risk" given defendant's knowledge of "involve[ment] in some type of personal property crime at night").  The AC does not plausibly allege how, when, why or that these Defendants should have foreseen that their U.S.-location inquiries would lead to a later attempted murder plot in Canada.

Plaintiff argues that certain publicly available media reports about the Crown Prince, several of which post-date the Student-Defendants' and Mr. Hamed's alleged activities, create a plausible inference that the Student-Defendants and Mr. Hamed knew that "something illegal was afoot" and that the Crown Prince "was up to illegality."  Opp'n Br. at 103.  But the cases Plaintiff cites underscore why the AC's reliance on publicly available sources about the Crown Prince are insufficient to show it was foreseeable to the Student-Defendants or Mr. Hamed that their alleged actions would support an attempted killing.  In each case cited by Plaintiff, something more—beyond publicly available information—added to the defendant's store of knowledge—*e.g.*, a regulatory due diligence requirement or additional facts demonstrating the plaintiff's actual knowledge.  For example, in *Exxon II*, 2015 U.S. Dist. LEXIS 91107 at *42-44, the court held that the defendant's executives were "aware of the probability that the crimes allegedly committed against plaintiffs would occur" and "knew that their actions would have a substantial effect on the commission of the underlying offenses," because they "received [briefings and] reports that Exxon security personnel engaged in rape, torture, unlawful detention, assault, and killings," contemporaneous "reports that Exxon security personnel were committing human rights violations on Exxon property, using Exxon equipment," and other, similar information.

While Plaintiff argues that the Student-Defendants and Mr. Hamed <u>should have known</u> that their conduct would become part of an alleged murder plot based on publicly available information, that less rigorous standard "will not suffice in this context" where "actual knowledge" is required.  *Ofisi I*, 278 F. Supp. 3d at 109 (internal citation omitted).  Plaintiff fails to allege that any of the Student-Defendants or Mr. Hamed knew that they were assisting the Crown Prince in any way or that they were assisting anyone with illegal activity, let alone an alleged attempted extrajudicial killing of Plaintiff.  Unlike the defendant in *Exxon II*, there are no allegations of any direct reports to the Student-Defendants or Mr. Hamed that put them on notice that their actions were indirectly supporting the other defendants' alleged unlawful activity.

Plaintiff asserts that the Student-Defendants "held leadership positions at Saudi organizations funded and overseen by MiSK and Alasaker" and "Abuljadayel and Alrajhi were directly employed by MiSK and paid for their work."[34]  None of the public sources identified by Plaintiff that preceded or were contemporaneous to the Student-Defendants' alleged actions reported that MiSK or Mr. Alasaker were involved in any purported unlawful activities.  *See Honickman*, 2021 U.S. App. LEXIS 22480, at *33  (dismissing claim banking defendant was "generally aware" based on publicly available sources where the sources postdated the alleged material assistance).  Nothing in those reports supports a plausible inference that the Student-Defendants were generally aware or actually knew that they were providing support to illegal activity or an attempt on Plaintiff's life.

Recognizing that contemporaneous media reports about the Crown Prince do not fill the gaps in the AC's pleading defects for secondary liability *mens rea*, Plaintiff proclaims that the

---

[34] Opp'n Br. at 105.  Nor are there well-pled factual allegations to support Plaintiff's assertions that any of the Student-Defendants "acted alongside" Defendant Alasaker or were subject to his "ultimate control and authority."  *See* Crown Prince Reply Br. at 10 n.7; Alasaker Br. at 15-16.

Student-Defendants were "not ordinary members of the public" and affixes them with the label of "loyal and trusted agent[s] of . . . bin Salman and Alasaker" who "received access that would be granted only to trusted and well-connected operatives."[35]   Even if true, which the Student-Defendants and Mr. Hamed dispute, it should not be surprising that the Student-Defendants interacted with others who supported the Saudi student organizations in which they were involved.

Plaintiff, however, asks this Court to infer based solely "on information and belief" and conclusory proclamations that, because the Student-Defendants were allegedly active in student clubs, they knew that other Defendants allegedly had a plan to harm Plaintiff, and further, that the Student-Defendants shared their intent to assist with any such plan.  The Court can and should disregard such "mere conclusory statements" on a motion to dismiss.  *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (internal citation omitted) (acknowledging a plaintiff can rely on allegations made on information and belief when certain information is exclusively within a defendant's possession and control, and holding that courts "also require that the allegations based on information and belief 'be accompanied by a statement of the facts upon which the allegations are based.'").  Once these conclusory statements are disregarded, no facts remain that plausibly establish that any of the alleged Student-Defendants' or Mr. Hamed's conduct was done with actual "knowledge that [it] w[ould] assist" an attempt on Plaintiff's life.  *Exxon I*, 654 F.3d at 34.

        3.    <u>Plaintiff Makes Only Conclusory Allegations That The Student-Defendants And Mr. Hamed Agreed To Assist The Alleged Attempt To Harm Plaintiff.</u>

Plaintiff also fails to state a claim for conspiracy liability under the TVPA or ATS because the AC does not allege plausibly that the Student-Defendants or Mr. Hamed entered into "an

---

[35] Opp'n Br. at 105.  The Opposition's secondary liability *mens rea* arguments concerning the "U.S.-Based Covert Agent Defendants" does not discuss Mr. Hamed specifically or attempt to identify any allegations in the AC that demonstrate he possessed the requisite knowledge or intent.

agreement to do an unlawful act or a lawful act in an unlawful manner. . . ."[36]  The AC never alleges plausibly that the Student-Defendants or Mr. Hamed agreed with anyone to do anything. Tellingly, the AC resorts to conclusory profiling, arguing that these Defendants "fit the profile" of persons who might otherwise make such unlawful agreements.  Generalized profiling is no curative for the AC's failure to state a claim for conspiracy liability, however.[37]

The Student-Defendants and Mr. Hamed do not dispute that a conspiracy can "generally be inferred from indirect evidence."[38]  They reject Plaintiff's assertion that the AC pleads such indirect evidence.  "To support a claim of conspiracy, the complaint must contain 'enough factual matter (taken as true) to suggest that an agreement was made.'"  *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 30 (D.D.C. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "An allegation of mere parallel conduct is not enough."  *Lagayan*, 199 F. Supp. 3d at 30 (citing *Twombly*, 550 U.S. at 557).  "To demonstrate the existence of a 'chain' conspiracy in which conspirators are not all directly connected," as here, "the critical question is whether each conspirator knows of the existence of the larger conspiracy and of the necessity for the other participants even if he or she does not know their identities."[39]

Here, the "larger conspiracy" is the alleged attempted murder of Plaintiff in Canada, but there are no allegations that support a reasonable inference that the Student-Defendants or Mr. Hamed were aware of this "larger conspiracy."[40]  To the extent there are any allegations in the AC to support an inference that certain persons shared a common goal to kill Plaintiff (which these

---

[36] *Halberstam*, 705 F.2d at 487; Student Defs.' Br. at 28-30*; see also Ofisi I*, 278 F. Supp. 3d at 110; *Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 100 (D.D.C. 2002).
[37] Opp'n Br. at 14, 62, 106.
[38] *Id.* at 97, 106.
[39] *Ungar*, 211 F. Supp. 2d at 100.
[40] Opp'n Br. at 98.

Defendants contest), there is nothing in the AC to support an inference that the Student-Defendants or Mr. Hamed "share[d] [this] common goal." *Ungar*, 211 F. Supp. 2d at 100 (citation omitted). Nor are there any facts alleged that the Student-Defendants or Mr. Hamed "knew of the necessity of the other alleged co-conspirators" or that those alleged co-conspirators "were in fact dependent on them" to achieve the larger conspiracy. *Id.* This dispositive omission is confirmed by Plaintiff's allegations that other Defendants, <u>without</u> allegedly communicating with the Student-Defendants and Mr. Hamed, later located Plaintiff in Canada and, further, that the alleged plot to kill Plaintiff in Canada was developed and attempted by others in October 2018, long after the Student-Defendants allegedly finished their unsuccessful inquiries in 2017. *See* AC ¶¶ 252, 255, 318, 331; Student Defs.' Br. at 30. *Compare id.* ¶¶ 224, 233, 362 (conceding the merely parallel nature of the Student-Defendants and Mr. Hamed's efforts to those of other Defendants) *with Lagayan*, 199 F. Supp. 3d at 30 ("An allegation of mere parallel conduct is not enough" to establish an agreement required for conspiracy liability.) (citing *Twombly*, 550 U.S. at 557 ). Indirect evidence must still support a plausible inference that the required conspiracy elements have been satisfied. That inference is lacking here.

## II.     As Alleged Agents Of The Crown Prince, The Student-Defendants And Mr. Hamed Are Entitled To Foreign-Official Immunity.

The Student-Defendants and Mr. Hamed have already demonstrated to this Court that they were not the "agents" of the Crown Prince. If credited, Plaintiff's conclusory allegations of agency would entitle the Student-Defendants and Mr. Hamed to official immunity.[41] This Court should apply the State Department test for foreign official immunity.[42] But under either the State

---

[41] Student Defs.' Br. at 31-34; Crown Prince Br. at § II.A; Crown Prince Reply Br. at § II.B.

[42] *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019), does not abrogate foreign official immunity under the TVPA or violations of *jus cogens* norms. *See* Crown Prince Reply Br. at § II.B.3*; see also* Student Defs.' Br. at 37-41.

Department or the Restatement test, the Student-Defendants and Mr. Hamed are entitled to foreign official immunity as the alleged "agents" of a foreign state. *Compare Mutond*, 918 F.3d at 146 ("Under Restatement § 66, the court considers three factors. First, whether the actors is a[n] . . . agent of [a] foreign state") *with* AC ¶¶ 92, 95, 107, 109 (alleging Student-Defendants and Mr. Hamed were acting as "agents").

The Restatement contradicts Plaintiff's claim that the Student-Defendants and Mr. Hamed "cannot satisfy the threshold requirement of the Restatement or State Department tests" because they "do not hold <u>any</u> government positions".[43] Courts routinely grant non-officials immunity when they are acting as agents of the foreign state. *See, e.g., Rishikof v. Mortada*, 70 F. Supp. 3d 8, *12-16 (D.D.C. 2014) (granting immunity to "low-level deliveryman"); *Moriah v. Bank of China Ltd.,* 107 F. Supp. 3d 272, 274, 278 (S.D.N.Y. 2015) ("[defendant] acted as an agent of the Israeli government for this specific task. He was contacted by the National Security Advisor … and asked to undertake a task").[44]

It is Plaintiff who lays the foundation for official immunity for these Defendants, by alleging that they "acted under apparent authority or color of law of the government of Saudi Arabia in undertaking the acts described". AC ¶¶ 366, 389, 401. If so, the Student-Defendants' and Mr. Hamed's alleged activities were "performed in [an] official capacity." *Mutond*, 918 F.3d at 146. Plaintiff attempts to manufacture a distinction between "color of law" and official immunity, *see* Opp'n Br. at 39, but cannot explain how the Student-Defendants and Mr. Hamed could have undertaken all the "acts described" in the Complaint "under apparent authority . . . of . . . Saudi Arabia" but not have acted in an official capacity. AC ¶¶ 366, 389, 401; *see also Belhas*

---

[43] Opp'n Br. at 40.
[44] The Student-Defendants and Mr. Hamed also are entitled to derivative sovereign immunity. *See* Student Defs.' Br. at 41-42.

*v. Ya'Alon*, 446 F. Supp. 2d 127, 129 (D.D.C. 2006) ("Plaintiffs allege that '[a]t all times relevant hereto, Defendant was acting under color of Israeli law' . . . [i]t therefore is undisputed that [Defendant] was acting in his official capacity with respect to the events underlying this lawsuit"). Finally, to the extent the Second Restatement test applies, Plaintiff's suit seeks to enforce a rule of law against Saudi Arabia because "[t]he conduct challenged by Aljabri goes to the heart of Saudi Arabia's ongoing efforts to . . . extradite Aljabri to face criminal prosecution").[45]

### III.     This Court Does Not Have Personal Jurisdiction Over Messrs. Alrajhi And Hamed.

Personal jurisdiction is lacking over defendants Alrajhi and Hamed under D.C. Code § 13-423(a)(1), as Plaintiff cannot demonstrate that the claims against either defendant "arose from . . . <u>business</u> transacted in the District." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 38 (D.D.C. 2007), *aff'd* 529 F.3d 1087 (D.C. Cir. 2008) (emphasis added); *see Alkanani v. Aegis Def. Servs. LLC*, 976 F. Supp. 2d 13, 21 (D.D.C. 2014) (dismissing case because D.C. contacts did not "constitute business transactions . . . for the purpose of D.C.'s long arm statute").[46]

Plaintiff does not identify a single case that has concluded that isolated, non-economic contacts like those of Mr. Alrajhi, such as allegedly "attend[ing] programming in the District of Columbia," AC ¶ 138, or "set[ting] up an important meeting," Opp'n Br. at 74, constitute doing business.  Plaintiff's authority for his argument that "[c]ourts have found jurisdiction where graduate school attendance in the District laid the foundation for the defendant's wrongdoing" focused on the distinct "minimum contacts" requirement for general jurisdiction and predated the narrowing of that requirement in *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  Opp'n Br. at 74

---

[45] Crown Prince Br. at 37-38; *see also* Crown Prince Reply Br. at § II.B.
[46] The Student-Defendants adopt and incorporate by reference the Crown Prince's arguments with regard to the Act of State doctrine, intentional infliction of emotional distress, and supplemental jurisdiction.  *See* Crown Prince Br. at §§ I.C, III.C; Crown Prince Reply Br. at §§ II.D, V.

(citing *Kuwanuka v. Bakilana*, 844 F. Supp. 2d 107, 121-22 (D.D.C. 2012); *Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 858-59 (N.D. Ill. 2004)).  Further, Mr. Alrajhi's limited contacts with the District are entirely disconnected from Plaintiff's alleged injury.  *See* Student Defs.' Br. at 43-44; *supra* at 10-11.  This Court does not have personal jurisdiction over Mr. Alrajhi because he conducted no business in the District that relates to Plaintiff's injury.[47]

This Court has no jurisdiction over Mr. Hamed in the absence of jurisdiction over Mr. Alrajhi under D.C. Code § 13-423(a)(1).[48]  Plaintiff's only new (and plainly false) allegation regarding Mr. Hamed assumes interactions with Mr. Alrajhi because there was "no other way for Hamed to obtain that information except through Alrajhi's efforts."[49]  In any event, the alleged search efforts of the Student-Defendants and Mr. Hamed in the United States were parallel to the alleged efforts to locate Plaintiff in Canada.  The claims against Mr. Alrajhi and Mr. Hamed accordingly must be dismissed for lack of personal jurisdiction.[50]

## CONCLUSION

For the foregoing reasons, the Student-Defendants' and Defendant Hamed's Motion to Dismiss should be granted.

Dated: August 9, 2021
Washington, D.C.

/s/ Mitchell R. Berger
Mitchell R. Berger (DC 385467)
Benjamin D. Wood (DC 478799)
Alexandra E. Chopin (DC 490736)

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.

---

[47] Plaintiff's allegation that "Alrajhi purchased a plane ticket in the District and travelled from the District to Boston" is facially impossible:  There are no airports in the District of Columbia (DCA and IAD are located in Virginia, and BWI is in Maryland).  AC ¶ 138; Opp'n Br. at 74-75.

[48] *See* Student Defs.' Br. at 44; *see also Orellana v. Crop Life Int'l*, 740 F. Supp. 2d 33, 40 (D.D.C. 2010) (cited at Opp'n Br. at 75).

[49] Opp'n Br. at 75-76; *see supra* at 10-11 (alleged information was publicly available).

[50] Jurisdictional discovery should also be denied for the reasons set forth in the Crown Prince's Reply Brief at § I.E.

Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315
mitchell.berger@squirepb.com
benjamin.wood@squirepb.com
alexandra.chopin@squirepb.com

*Attorneys for Defendants*
*Yousef Alrajhi, Mohammed Alhamed,*
*Layla Abuljadayel, and Hani Fakri Hamed*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, I caused a true and correct copy of the foregoing

Reply in Support of the Motion To Dismiss the Amended Complaint of Defendants Yousef Alrajhi,

Mohammed Alhamed, Layla Abuljadayel, and Hani Fakri Hamed  to be served through the Court's

CM/ECF System on all counsel of record in this action, including:

David Pressman
Jason P. Hipp
Jenner & Block LLP
919 Third Avenue New York, NY 10022
Telephone:  (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com

Lindsay Harrison
Zachary C. Schauf
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Telephone:  (202) 639-6865
Fax:  (202) 639-6066
lharrison@jenner.com

*Attorneys for Plaintiff*

/s/ Mitchell R. Berger
Mitchell R. Berger (DC 385467)
Benjamin D. Wood (DC 478799)
Alexandra E. Chopin (DC 490736)

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, D.C. 20037
Phone: 202-457-6000
Fax:    202-457-6315
mitchell.berger@squirepb.com
benjamin.wood@squirepb.com
alexandra.chopin@squirepb.com

*Attorneys for Defendants Yousef Alrajhi,*
*Mohammed Alhamed, Layla Abuljadayel, and Hani*
*Fakri Hamed*