# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. SAAD ALJABRI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-02146-TJK |
| | ) | |
| MOHAMMED BIN SALMAN BIN | ) | |
| ABDULAZIZ AL SAUD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION OF
MESSRS. ALQAHTANI, ALASSIRI, ALSALEH,
ALSAYED, ALGASEM, ALHAQBANI, ALHOMID,
ALBAWARDI, AND BADER ALQAHTANI
TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

ARGUMENT....................................................................................................................................... 2

I.  These Defendants are immune from suit. .............................................................................. 2

  A.  *The alleged actions were within the scope of the Crown Prince's authority and Saudi Arabia has not disavowed any conduct related to Aljabri by these Defendants.* ............................... 2

  B.  *These Defendants were foreign officials allegedly acting in their official capacity.* ..................... 2

II.  Saudi Arabia is a necessary and indispensable party and the Act of State doctrine bars Aljabri's claims. ....................................................................................................................... 5

III.  The claims against these Defendants must be dismissed because the Amended Complaint fails to establish personal jurisdiction over them............................................... 5

  A.  *Aljabri cannot establish personal jurisdiction over these Defendants based on his argument that the alleged conduct was "purposefully directed" at United States.* ........................................ 5

  B.  *Requiring these Defendants to defend against a lawsuit in the United States would offend the notions of fair play and substantial justice* ........................................................................... 6

  C.  *The Amended Complaint fails to establish personal jurisdiction over Messrs. Saud Alqahtani and Alassiri.* ......................................................................................................................... 7

    1.  Aljabri cannot establish personal jurisdiction based on media reports of alleged conduct unrelated to a supposed plot to kill Aljabri and/or alleged conduct that was not directed at the United States. .................................................. 7

    2.  Aljabri cannot establish personal jurisdiction based on Saud Alqahtani's alleged prior service on the board of the MiSK Foundation. ............................... 8

    3.  Aljabri cannot establish personal jurisdiction over Mr. Saud Alqahtani or Mr. Alassiri based on assertions of secondary liability. .......................................... 9

  D.  *The Amended Complaint fails to establish personal jurisdiction over Messrs. Algasem, Alsayed, Alhomid, Albawardi, Alhaqbani, and Bader Alqahtani, who the Amended Complaint alleges travelled to Canada.* ......................................................................... 10

    1.  Personal jurisdiction cannot be based solely on the passage through United States airspace in route to Canada. ............................................................... 10

    2.  Conclusory allegations of secondary liability do not establish personal jurisdiction. .............................................................................................. 11

    3.  Aljabri's argument that the so-called Tiger Squad Defendants would have known about the Crown Prince's motives or objectives with respect to Aljabri is unsupported, far-fetched, and does not establish personal jurisdiction. ........................................................................................... 12

  E.  *The Amended Complaint fails to establish personal jurisdiction over Mr. Alsaleh.* ............................ 13

IV.  The Amended Complaint fails to state a TVPA claim (the first cause of action) against these Defendants........................................................................................................ 13

  A.  *The Amended Complaint fails adequately to allege that Messrs. Saud Alqahtani and Alassiri are liable for a violation of the TPA as a result of alleged conduct as commanders and principals, for participating in a conspiracy, or for aiding and abetting.* .............................. 13

B.  *The Amended Complaint fails adequately to allege that the so-called Tiger Squad Defendants conspired or personally committed an alleged attempted extrajudicial killing in violation of the TVPA.*............................................................................................................................................ 16

C.  *The Amended Complaint fails adequately to allege that Mr. Alsaleh conspired, or personally committed an alleged attempted extrajudicial killing in violation of the TVPA.*............................. 19

V.  The Amended Complaint fails to state an ATS claim (the second cause of action) against these Defendants................................................................................................................ 20

A.  *The Amended Complaint fails adequately to allege that Messrs. Saud Alqahtani and Alassiri are directly liable for an alleged attempted extrajudicial killing, aided and abetted it, or participated in a joint criminal enterprise in violation of the ATS.*.................................... 20

B.  *The Amended Complaint fails to allege adequately that the so-called Tiger Squad Defendants are directly liable, or that they participated in a joint criminal enterprise in violation of the ATS.* ................................................................................................................................ 20

C.  *The Amended Complaint fails adequately to allege that Mr. Alsaleh is directly liable, or that he participated in a joint criminal enterprise in violation of the ATS.*............................... 21

VI. The Amended Complaint fails to state an intentional infliction of emotional distress (IIED) claim (the third cause of action) against these Defendants. ........................................ 21

CONCLUSION........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
   671 F.3d 140 (2d Cir. 2011) ........................................................................................... 4

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.,*
   480 U.S. 102 (1987) ..................................................................................................... 6, 7

*Associated Producers, Ltd. v. Vanderbilt Univ.,*
   76 F. Supp. 3d 154 (D.D.C. 2014) ................................................................................ 8

*Atchley v. AstraZeneca UK Ltd.,*
   474 F. Supp. 3d 194 (D.D.C. 2020) .............................................................................. 6

*Atkins v. Fischer,*
   232 F.R.D. 116 (D.D.C. 2005) ...................................................................................... 4

*Belhas v. Ya'Alon,*
   466 F. Supp. 2d 127 (D.D.C. 2006) .............................................................................. 4

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................... 16

*Boim v. Holy Land Found. for Relief & Dev.,*
   549 F.3d 685 (7th Cir. 2008) ....................................................................................... 16

*Car Carriers, Inc. v. Ford Motor Corp.,*
   745 F.2d 1101 (7th Cir. 1984) ..................................................................................... 10

*Cockrum v. Donald J. Trump for President, Inc.,*
   319 F. Supp. 3d 158 (D.D.C. 2018) ............................................................................ 11

*Coleman v. Pension Benefit Guaranty Corp.,*
   94 F. Supp. 2d 18 (D.D.C. 2000) ................................................................................ 10

*Doe v. Buratai,*
   18 F. Supp. 3d 218 (D.D.C. 2018) ................................................................................ 2

*Dogan v. Barak,*
   932 F.3d 888 (9th Cir. 2019) ......................................................................................... 4

*In re Investment Tech. Grp., Inc. Sec. Litig.,*
   251 F. Supp. 3d 596 (S.D.N.Y. 2017) .......................................................................... 4

*Jiggetts v. District of Columbia,*
    319 F.R.D. 408 (D.D.C. 2017) ........................................................................................17

*Jung v. Ass'n of Am. Med. Colls.,*
    300 F. Supp. 2d 119 (D.D.C. 2004) .......................................................................... 10, 17

*Estate of Klieman v. Palestinian Auth.,*
    923 F.3d 1115 (D.C. Cir. 2019) ........................................................................................5

*Lagayan v. Odeh,*
    199 F. Supp. 3d 21 (D.D.C. 2016) ...................................................................................15

*Livnat v. Palestinian Auth.,*
    851 F.3d 45 (D.C. Cir. 2017) ............................................................................................5

*Mamani v. Berzain,*
    654 F.3d 1148 (11th Cir. 2011) ......................................................................................14

*Moriah v. Bank of China,*
    Ltd., 107 F. Supp. 3d 272 (S.D.N.Y. 2015) ......................................................................3

*Nuevos Destinos, LLC v. Peck, No. 15-CV-1846 (EGS),*
    *2019 WL 78780 (D.D.C. Jan. 2, 2019)*.............................................................................6

*Rush v. Savchuk,*
    444 U.S. 320 (1980) ...........................................................................................................6

*Shatsky v. PLO,*
    955 F.3d 1016 (D.C. Cir. 2020) ........................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001,*
    538 F.3d 71 (2d Cir. 2008) ................................................................................................6

*Tolton v. Day,*
    Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793 (D.D.C. May 19,
    2020)............................................................................................................................ 14, 15

*Walden v. Fiore,*
    571 U.S. 277 (2014) ...........................................................................................................6

*Walker v. S.W.I.F.T. SCRL,*
    517 F. Supp. 2d 801 (E.D. Va. 2007) ...............................................................................4

**Other Authorities**

*The Crown Prince of Saudi Arabia,* FRONTLINE (Oct. 1, 2019),
    https://www.pbs.org/wgbh/frontline/film/the-crown-prince-of-saudi-
    arabia/transcript/) ..............................................................................................................3

HAMBURGER Tom Hamburger et al., *Inside the Saudis' Washington Influence Machine: How the Kingdom Gained Power Through Fierce Lobbying and Charm Offensives*, Wash. Post (Oct. 21, 2018) https://www.washingtonpost.com/politics/inside-the-saudis-washington-influence-machine-how-the-kingdom-gained-power-through-fierce-lobbying-and-charm-offensives/2018/10/21/8a0a3320-d3c3-11e8-a275-81c671a50422_story.html ................................................................................................................8

Press Release, U.S. Dep't of Treasury, *Treasury Sanctions 17 Individuals for Their Roles in the Killing of Jamal Khashoggi* (Nov. 15, 2018), https://bit.ly/3cu3siG.) ............................................15

U.S. Dep't of Treasury, *Treasury Sanctions the Saudi Rapid Intervention Force and Former Deputy Head of Saudi Arabia's General Intelligence Presidency for Roles in the Murder of Journalist Jamal Khashoggi* (Feb. 26, 2021), https://bit.ly/3gmzAFV ....................................................15

Plaintiff Saad Aljabri's Response in Opposition to the Motion to Dismiss the Amended Complaint by Saud Alqahtani, Ahmed Alassiri, Mishal Fahad Alsayed, Khalid Ibrahim Abdulaziz Algasem, Saud Abdulaziz Alsaleh, Bandar Saeed Alhaqbani, Ibrahim Hamad Abdulrahman Alhomid, Ahmed Abdullah Fahad Albawardi, and Bader Mueedh Saif Alqahtani (collectively, "these Defendants") only serves to underscore that the Amended Compliant, rather than alleging facts that could plausibly establish a relationship between these Defendants and the facts that underlie the causes of action asserted, instead relies on events that, on their face, are wholly unrelated to those that underlie the asserted causes of action.  For example, in the Response (at p. 16), Aljabri references a syllabus discussed in the Amended Complaint (at ¶116) from a university course in 2016.  The syllabus reflects that a group of speakers over the span of five days included one of these Defendants and also included (on a different day) a person who is not a defendant.  The Amended Complaint alleges that this other person was involved in the murder of Jamaal Khashoggi.  But it does not allege that this other person participated in the supposed plot to kill Mr. Aljabri in Canada, on which the Amended Complaint bases each of its causes of action.  Indeed, while each of the causes of action is based on a purported plot to kill Aljabri, not on the murder of Mr. Khashoggi, Aljabri invokes Khashoggi's name over seventy-five times in his Response.

The allegations in the Amended Complaint about these Defendants that do relate to the asserted causes of action are conclusory and therefore insufficient.  The Court, however, need not even reach that issue.  The Amended Complaint must be dismissed because these Defendants are immune from this suit, Saudi Arabia is a necessary and indispensable party, the Act of State doctrine bars Aljabri's claims, and this Court lacks personal jurisdiction over these Defendants.  In any event, each cause of action fails as a matter of law.

# ARGUMENT

## I.   These Defendants are immune from suit.[1]

### A.   *The alleged actions were within the scope of the Crown Prince's authority and Saudi Arabia has not disavowed any conduct related to Aljabri by these Defendants.*

Aljabri argues that these Defendants cannot be immune because their "conduct is not 'condoned by the foreign sovereign.'"  Plaintiff's Memorandum in Opposition to Motion to Dismiss, ECF No. 102 ("Resp.") at 30.  As the Crown Prince explains, however (Reply Br. §II(B)), the test is whether Saudi Arabia has disavowed the conduct, which it has not.  Saudi Arabia has never disavowed the alleged conduct of these Defendants.  Nor does Aljabri allege that it has.[2]

### B.   *These Defendants were foreign officials allegedly acting in their official capacity.*

In his Response, Aljabri does not contest that each of these Defendants held official government positions.  Instead, he contends that because he alleges they were acting "under color of law" pursuing a personal agenda, rather and acting in official capacity, they are not entitled to sovereign immunity.  *See* Resp. at 39.

That the Amended Complaint alleges repeatedly that the Crown Prince was motivated by a personal agenda is of no moment.  Regardless of his alleged motivation, the Crown Prince allegedly acted within his authority as the Crown Prince.  Thus, his conduct is immune from suit.  Like in *Doe v. Buratai*, 18 F. Supp. 3d 218, 231 (D.D.C. 2018), "although the plaintiffs take great pains to emphasize that they are suing the defendants in the defendants' personal or 'individual capacities alone,' the allegations show otherwise." (internal citations omitted).

---

[1] These Defendants adopt and incorporate the arguments in the Crown Prince's Reply brief, §II, with respect to immunity.

[2] Aljabri's claims three Saudi government agencies refused to participate in extraterritorial rogue operations.  *See* Resp. at 9, 40.  This allegation, however, is unrelated to the asserted plot to kill Aljabri. *See* Amended Complaint, ECF No. 66 ("Am. Compl.") ¶¶273-78 (alleging three Saudi government agencies, one of which was run by Aljabri, refused to participate in an "extraterritorial rendition" of Prince Saud bin Saif Alnasr from France to Saudi Arabia).

2

Like the Crown Prince, these Defendants, allegedly acting in their official capacities at the behest of the Crown Prince, are immune from suit. The Amended Complaint alleges repeatedly that these Defendants were government officials acting under the command and control of the Crown Prince. *See, e.g.*, Am. Compl. at ¶¶374, 376, 378; *see also* ECF No. 93 ("Mot. to Dismiss") at 10-17. Accordingly, they are immune from suit. *See Moriah v. Bank of China*, Ltd., 107 F. Supp. 3d 272, 277-78 (S.D.N.Y. 2015)(citations omitted)("It is 'well-settled law that contractors and common law agents [of a foreign sovereign] acting within the scope of their employment . . . have derivative sovereign immunity. . . . Ciechanover "did not undertake this task in his capacity as a private individual—he performed it solely because the National Security Advisor made a request. As such, he acted as an agent of the Israeli government.""").

That the Amended Complaint alleges that these Defendants were acting in their capacities as agents of the Saudi government is well illustrated by a tweet it cites in which Mr. Saud Alqahtani allegedly stated, "Do you think I'm acting on my own whim? I am a *civil servant* and a faithful executioner of the *orders of the King and the Crown Prince*." *See* Am. Compl. ¶56 (citing *The Crown Prince of Saudi Arabia*, FRONTLINE (Oct. 1, 2019), https://www.pbs.org/wgbh/frontline/film/the-crown-prince-of-saudi-arabia/transcript/) (emphasis added). In his Response, Aljabri, apparently recognizing that this tweet is inconsistent with the theory he now advances, reiterates that Saud Alqahtani allegedly acted as a "faithful executioner of the orders of the … Crown Prince," but simply omits from this quote the references to him being a civil servant and following orders of not just of the Crown Prince, but of the King. *See* Resp. at 99.

Aljabri does not deny that the Amended Complaint alleges that these Defendants were government officials acting at the behest of the Crown Prince or that these allegations are inconsistent with his argument that these Defendants were rouge actors and working outside official channels. Rather, he argues that the Amended Complaint also contains other allegations that he claims support

his argument.  *See* Resp. at 40 (citing Am. Compl. ¶278).  But these other allegations are about events unrelated to the supposed plot to kill Aljabri.  *See, e.g.*, Resp. at 9-11 (citing Am. Compl. ¶¶274-78 (allegations about an "extraterritorial rendition" of Prince Saud bin Saif Alnasr from France to Saudi Arabia), ¶284 and ¶¶287-94 (allegations Prince Saud, Sulaiman Aldoweesh, and Khashoggi were targets of "Tiger Squad" plots, ¶¶302-306 (allegations about the murder of Khashoggi)).[3]

Thus, setting aside the conclusory allegation that these Defendants were acting only under color of law, the facts alleged in the Amended Complaint are that these Defendants were acting in their official capacity.  Regardless, these Defendants adopt and incorporate Mr. Alasaker's Reply Brief §II, explaining that *Dogan v. Barak*, 932 F.3d 888, 894 (9th Cir. 2019) (one of the authorities upon which Aljabri relies) does not support the distinction argued by Aljabri between acting in an official capacity and acting under color of law.  *See also* Student-Defendants Reply Br. §II (adopted and incorporated by reference) (citing *Belhas v. Ya'Alon*, 466 F. Supp. 2d 127, 129 (D.D.C. 2006) ("Plaintiffs allege that '[a]t all times relevant hereto, Defendant was acting under color of Israeli law' … [i]t therefore is undisputed that [Defendant] was acting in his official capacity with respect to the events underlying this lawsuit")).

---

[3] These allegations, which rely on media reports largely based on secondhand accounts or anonymous sources, should, in any event, not be credited in resolving the motion to dismiss.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam) (rejecting "a single conclusory statement from an anonymous source" in a newspaper article as insufficient to plead standing); *In re Investment Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 623 (S.D.N.Y. 2017) (rejecting as insufficient "vague" allegations premised on statements by "people familiar with" alleged events) ; *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (refusing to allow plaintiffs "to fill gaps in their factual allegations by reference to unnamed or anonymous sources in a newspaper article"); *see also Atkins v. Fischer*, 232 F.R.D. 116, 132 (D.D.C. 2005) ("[C]ourts within this Circuit have consistently barred newspaper articles from introduction as evidence due to the fact that they constitute inadmissible hearsay.")

In sum, the Amended Complaint does not allege a rogue personal operation by these Defendants directed at Aljabri, but rather alleges that these Defendants were government officials acting in their official capacities. They are therefore immune from suit.

## II.   Saudi Arabia is a necessary and indispensable party and the Act of State doctrine bars Aljabri's claims.

These Defendants adopt and incorporate by reference the Crown Prince's arguments that Aljabri's claims must be dismissed because Saudi Arabia is a necessary and indispensable party, and the Act of State doctrine bars Aljabri's claims. *See* Crown Prince Reply Br. §II(C) and (D).

## III.   The claims against these Defendants must be dismissed because the Amended Complaint fails to establish personal jurisdiction over them.[4]

A.   *Aljabri cannot establish personal jurisdiction over these Defendants based on his argument that the alleged conduct was "purposefully directed" at United States.*

Aljabri's theory of personal jurisdiction, that the purported conduct was "purposefully directed" at the United States, fails for the reasons detailed in the Crown Prince's Reply brief. *See* Crown Prince Reply Br. §I(A). His Response argues that because the Crown Prince allegedly wanted to affect U.S. Intelligence, the conduct was aimed at the United States. *See* Resp. at 52. When arguing against foreign official immunity, however, Aljabri argues that the Court should focus on the Crown Prince's alleged *conduct*, not his motive. *See id.* at 31-32 (emphasis in original). In the personal jurisdiction analysis, too, the Court must look to the *conduct*. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017); *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1124 (D.C. Cir. 2019); *Shatsky v. PLO*, 955 F.3d 1016, 1037 (D.C. Cir. 2020) (cases against the Palestinian Authority in which the D.C. Circuit rejected arguments that terrorist attacks in the West Bank were directed at the United States, even though American citizens were injured or killed in the attacks and even though the

---

[4] These Defendants adopt and incorporate by reference the Crown Prince's arguments that the Court lacks personal jurisdiction. *See* Crown Prince Reply Br. §I.

plaintiffs proffered evidence that Palestinian groups engaged in terrorism in efforts to affect United States policy).  The alleged conduct by these Defendants was directed at Aljabri in Canada, not the United States.

Further, even if the Crown Prince's alleged conduct were motivated by a desire to deprive U.S. intelligence of Aljabri as a source, and even if that motive could establish personal jurisdiction over the Crown Prince, the Amended Complaint fails to allege any facts that these Defendants knew of or shared in his aim.  Accordingly, there is no personal jurisdiction over these Defendants.  *See Nuevos Destinos, LLC v. Peck, No. 15-CV-1846 (EGS), 2019 WL 78780 (D.D.C. Jan. 2, 2019)*, at \*8 (finding no personal jurisdiction where "the thrust of [plaintiffs'] argument is that the nine defendants are subject to the jurisdiction of this Court based on other defendants' actions").[5]

    B.    *Requiring these Defendants to defend against a lawsuit in the United States would offend the notions of fair play and substantial justice.*

Requiring any of these Defendants to defend against a lawsuit in the United States – a forum in which they do not reside, are not citizens, and to which they lack any connection – would offend the notions of fair play and substantial justice.  *See Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").  Aljabri's primary argument to the contrary again relies on his assertion that these Defendants "purposefully directed" their purported conduct at the United States.  *See* Resp. at p. 66, 76.  This argument fails for the same reasons described *supra* §III(A).

---

[5] Additionally, even if these Defendants were aware of someone else's connection to the United States, mere "awareness" of another's forum contacts does not suffice for personal jurisdiction.  *See* Alasaker Reply Br. §I(B) (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014); *Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 204 (D.D.C. 2020); *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 93 (2d Cir. 2008); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)) (adopted and incorporated by reference).

Aljabri additionally asserts that these Defendants should have thought about the burdens of litigation in the United States before allegedly committing a tort and that because they have been able to obtain counsel in the United States there is no undue burden placed on them by requiring them to defend the suit here.  These arguments would apply to almost every foreign defendant facing a claim from a plaintiff who baselessly chose to file suit in the United States and are inconsistent with Supreme Court precedent requiring the court to place significant weigh on the unique burdens placed upon one who must defend oneself in a foreign legal system.  *Asahi*, 480 U.S. at 114.

C.   *The Amended Complaint fails to establish personal jurisdiction over Messrs. Saud Alqahtani and Alassiri.*

1.   <u>Aljabri cannot establish personal jurisdiction based on media reports of alleged conduct unrelated to a supposed plot to kill Aljabri and/or alleged conduct that was not directed at the United States.</u>

Aljabri's primary response to the Court's lack of personal jurisdiction with respect to Messrs. Saud Alqahtani and Alassiri is that his allegation, based on media accounts often relying on anonymous sources, that they allegedly participated in other purportedly nefarious activities at the behest of the Crown Prince, unrelated to the supposed plot to kill Mr. Aljabri.[6]  Because these allegations are neither suit-related, nor directed at the United States, they cannot establish cannot establish specific personal jurisdiction.  *See*, *e.g.*, at 68 (citing Am. Compl. ¶¶263-66) (allegations of a "coordinated network of Saudi Twitter users" who allegedly posted tweets directed at Aljabri and then-Crown Prince Mohammed bin Nayef, criticizing Aljabri for having sought exile in Canada, conduct allegedly directed at Aljabri, but not at the United States); ¶57 (in 2016 – two years prior to the alleged plot to kill Aljabri – Saud Alqahtani signed contracts with U.S. public relations firms, alleged conduct directed at the United States, but not directed at Aljabri, much less part of an alleged plot to kill him); ¶ 67 (Mr.

---

[6] These Defendants additionally adopt and incorporate by reference the arguments in Mr. Alasaker's Reply brief that a "similar scheme"—even if one existed—does not allege suit-related conduct that could establish personal jurisdiction. *See* Alasaker Reply Br. §I(A).

Alassiri is alleged, based solely "upon information and belief" relying on a newspaper article, during a trip to Washington, D.C. that the cited article states was part of extensive lobbying efforts by the Saudi government to maintain goodwill with the United States, to have received support Defendant Alhamed, conduct that is directed at the United States, but not directed at Aljabri, much less part of an alleged plot to kill him).[7]

> ## 2.   Aljabri cannot establish personal jurisdiction based on Saud Alqahtani's alleged prior service on the board of the MiSK Foundation.

Aljabri invokes Saud Alqahtani's prior relationship with the MiSK Foundation in a feeble attempt to connect him to a purported search for Aljabri in the United States. *See* Resp. at 67 (citing Am. Compl. ¶58). The Amended Complaint, however, merely makes a vague and conclusory allegation that at some unspecified point in time Mr. Alqahtani served on the board of the MiSK Foundation, which Aljabri alleges other defendants "used to deploy covert agents to hunt Dr. Saad in the United States." Am. Compl. ¶58 ("…Defendant MiSK—acting as an alter ego of Defendants bin Salman and Alasaker—was used to deploy covert agents to hunt Dr. Saad in the United States."). No facts are alleged that would plausibly link Saud Alqahtani's alleged prior service at some unspecified point in time on the board of the MiSK Foundation with him knowing of, much less participating in, a purported hunt to locate Aljabri in the United States to kill him. Unlike his claims against the Crown

---

[7] *See* Am. Compl., ¶67, n. 52 (citing Tom Hamburger et al., *Inside the Saudis' Washington Influence Machine: How the Kingdom Gained Power Through Fierce Lobbying and Charm Offensives*, Wash. Post (Oct. 21, 2018) https://www.washingtonpost.com/politics/inside-the-saudis-washington-influence-machine-how-the-kingdom-gained-power-through-fierce-lobbying-and-charm-offensives/2018/10/21/8a0a3320-d3c3-11e8-a275-81c671a50422_story.html. Aljabri contends that any "factual discrepancies" about what Mr. Alassiri was actually doing in Washington, D.C. must be resolved "in favor of the plaintiff." Resp. at 68 (citing *Associated Producers, Ltd. v. Vanderbilt Univ.*, 76 F. Supp. 3d 154, 161 (D.D.C. 2014)). But there are no "factual discrepancies," only an *absence* of any alleged facts tying Mr. Alassiri's alleged trip to the United States to the alleged plot against Aljabri. *See Vanderbilt Univ.*, 76 F. Supp. 3d at 161 ("To establish that personal jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but 'must allege specific acts connecting [each] defendant with the forum." (citations and internal quotation omitted).

Prince and Mr. Alasaker, Aljabri does not even argue that the "U.S.-Based Covert Agent Defendants" were agents of Saud Alqahtani. *Compare* Resp. at 62-63 *with* Resp. at 66-68.

> 3.      Aljabri cannot establish personal jurisdiction over Mr. Saud Alqahtani or Mr. Alassiri based on assertions of secondary liability.

Aljabri does not appear to press the theory of "conspiracy jurisdiction" to assert personal jurisdiction Saud Messrs. Alqahtani and Alassiri, and such a theory is not viable under Rule 4(k)(2). *See* Crown Prince Reply Br. §I(B)(1). Even if it were, however, as explained in these Defendants' Mot. to Dismiss, pp. 23, 32, such a theory would fail for a lack of plausible factual allegations.

Aljabri states in a footnote in his Response that "even if [Aljabri] had to show that the Tiger Squad Defendants and the U.S.-Based Covert Agent Defendants acted as common-law agents for [Saud] Alqahtani and Alassiri, he has plausibly pled that Alqahtani and Alassiri directed and controlled the Tiger Squad when the team moved to kill again." Resp., n. 61. Yet, as explained in Defendants' Motion to Dismiss, pp. 20-22, 32, Aljabri has offered no more than vague, speculative conclusions that Messrs. Saud Alqahtani and Alassiri even knew of the so-called U.S.-Based Covert Agent Defendants (or the so-called Tiger Squad Defendants for that matter), much less that they directed and controlled them. *See also* Crown Prince Reply Br. §I(B)(1) (reciting the requirements of agency, and noting "that Aljabri points to no facts – either in his Amended Complaint or in his opposition – that show or plausibly suggest that the Crown Prince manifested assent for any other Defendant to act on his behalf in allegedly pursuing Aljabri in the United States.")(adopted and incorporated by reference).

D.     *The Amended Complaint fails to establish personal jurisdiction over Messrs. Algasem, Alsayed, Alhomid, Albawardi, Alhaqbani, and Bader Alqahtani, who the Amended Complaint alleges travelled to Canada.*

1.    <u>Personal jurisdiction cannot be based solely on the passage through United States airspace in route to Canada.</u>

Aljabri offers a theory of personal jurisdiction over the so-called Tiger Squad Defendants who allegedly travelled to Canada, based on his contention that they entered United States airspace on a flight from Frankfurt, Germany to Ottawa, Canada.[8]  This theory should be disregarded by the Court, because this allegation appears nowhere in the Amended Complaint.  *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (Plaintiffs are not permitted "to supplement the bare and insufficient allegations in their complaint with additional assertions from their brief.  It is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (citing *Car Carriers, Inc. v. Ford Motor Corp.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see Coleman v. Pension Benefit Guaranty Corp.*, 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)).

Even if Aljabri had alleged in the Amended Complaint that the so-called Tiger Squad Defendants happened to enter into United States airspace on their way from Saudi Arabia to Canada, however, this allegation could not support personal jurisdiction over them.  Unknowingly flying over United States airspace does not create specific jurisdiction in the United States.  To create specific personal jurisdiction over a defendant, *at a minimum*, the Amended Complaint would need to allege that the defendant knew or intended to fly through United States airspace, which not only does the

---

[8] The Amended Complaint alleges that Messrs. Algasem, Alsayed, Alhomid, Albawardi, Alhaqbani, and Bader Alqahtani were members of the Tiger Squad who travelled to Canada.  *See* Am. Comp. ¶¶ 116-117, 119-122.  It also alleges that Mr. Alsaleh was a member of the Tiger Squad, but does not allege that he travelled to Canada.  *Id.* ¶118.  Accordingly, references to "the so-called Tiger Squad Defendants" in this section refer to Messrs. Algasem, Alsayed, Alhomid, Albawardi, Alhaqbani, and Bader Alqahtani, but not to Mr. Alsaleh.

Amended Complaint not allege, but also the Response does not contend. *See* Crown Prince Reply Br. §I(C) (adopted and incorporated by reference).

        2.   <u>Conclusory allegations of secondary liability do not establish personal jurisdiction.</u>

Aljabri also argues that the allegation that the so-called "Tiger Squad" Defendants, who have no related connections to the United States and traveled from Saudi Arabia to Canada, "relied on a hunt on U.S. soil" supports personal jurisdiction over them in the United States. *See* Resp. at 66. As an initial matter, as explained in Defendants' Motion to Dismiss, and *supra* §III(C)(3), personal jurisdiction over a defendant cannot rest on contacts of an alleged co-conspirator with the forum because "conspiracy jurisdiction" itself is faulty legal concept.

Even if the concept were sound, however, the Amended Complaint hardly provides a basis upon which plausibly to conclude that a conspiracy existed between the so-called Tiger Squad Defendants and anyone in the United States. *See* Def.'s Mot. to Dismiss at 27. Further, as explained by the Crown Prince, and as with Messrs. Saud Alqahtani and Alassiri, the alleged inquiries by other defendants about the location of Aljabri and his family do not create the requisite "strong relationship" between the so-called Tiger Squad Defendants, the United States, and this litigation. *See* Crown Prince Mot. to Dismiss §I(B)(2) (adopted and incorporated by reference).

Moreover, even under authority on which Aljabri relies, the so-called Tiger Squad Defendants would have had to know of the acts supposedly taken by co-conspirators in the forum. *See* Resp. at 69-70, n. 65 (citing *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 186 (D.D.C. 2018) (jurisdiction may rest on conspiracy when "defendant knew of the co-conspirator's [forum] acts")). Recognizing this, Aljabri attempts to satisfy this requirement by claiming, "Here, Alasaker, the U.S.-Based Covert Agent Defendants, and MiSK all committed overt acts within the United States, and each Defendant knew about them." *Id.* Aljabri, however, does not cite, and cannot cite, any factual allegation in the Amended Complaint to support this conclusory claim. It is not plausibly alleged that

any of the so-called Tiger Squad Defendants, much less all of them, knew of the *existence* of purported

co-conspirators in the United States or their actions in the United States, let alone formed an

agreement with the alleged co-conspirators in the United States.   Thus, even if "conspiracy

jurisdiction" were a viable legal theory, it would fail here.

> 3.   Aljabri's argument that the so-called Tiger Squad Defendants would have known about the Crown Prince's motives or objectives with respect to Aljabri is unsupported, far-fetched, and does not establish personal jurisdiction.

Aljabri argues that Messrs. Algasem, Alsayed, Alhomid, Albawardi, Alhaqbani, and Bader

Alqahtani are subject to specific personal jurisdiction because of the conduct they "purposefully

directed" at the United States.   *See* Resp. at 68.   Aljabri repeats the refrain that the Crown Prince's

purported *personal* motive means that the so-called Tiger Squad Defendants who supposedly sent from

Saudi Arabia to Canada to kill Aljabri engaged in conduct was directed at the United States.   Aljabri

argues that because several of the so-called Tiger Squad Defendants specialize in intelligence and

criminal investigations and because he alleges others have previously interrogated individuals before

harming them, the so-called Tiger Squad Defendants "had to know why bin Salman wanted [him]

dead."   *Id.* at 68-69.

As set forth *supra* §III(A) however, the Crown Prince's alleged motives do not establish

personal jurisdiction over the Crown Prince.   Accordingly, simply being "aware" of such motives

would not derivatively establish personal jurisdiction over others.   In any event, the Amended

Complaint does not allege, for example, that a "forensic DNA technician," as it describes Messrs.

Algasem and Alsayed, would by virtue of that position enjoy such a close personal relationship with

the Crown Prince that it would be reasonable to infer that the "forensic DNA technician" would be

privy to the Crown Prince's personal motivation.   Nor does it allege facts with respect to  any of the

other so-called Tiger Squad Defendants' about their government positions that could lead to such a

conclusion.

E.    *The Amended Complaint fails to establish personal jurisdiction over Mr. Alsaleh.*

The Plaintiff's Response with respect to Mr. Alsaleh is as sparse as is the Amended Complaint. Mr. Alsaleh garners barely a mention.  While the Amended Complaint labels Mr. Alsaleh as a member of the "Tiger Squad," and, indeed, a "coordinator or leader" of it, the Amended Complaint does not allege, as it does with the other so-called Tiger Squad Defendants, that he travelled to Canada.  Rather, it merely alleges with no supporting allegations that he obtained a Canadian tourist visa for the purpose of travelling to Canada to kill Aljabri.  Since it is not alleged that he travelled to Canada, Aljabri's argument that entering United States airspace on the way to Canada gives rise to personal jurisdiction in the United States does not apply to him.  Aljabri's remaining arguments with respect to Mr. Alsaleh fail for the same reasons described *supra* §III that they fail with respect to the other so-called Tiger Squad Defendants.[9]

IV.   **The Amended Complaint fails to state a TVPA claim (the first cause of action) against these Defendants.[10]**

Even if these Defendants were not immune, Saudi Arabia were not a necessary and indispensable party, the Act of State did not preclude this suit, and the Court had personal jurisdiction over these Defendants, each of the causes of action fails to state a claim against them.

A.    *The Amended Complaint fails adequately to allege that Messrs. Saud Alqahtani and Alassiri are liable for a violation of the TPA as a result of alleged conduct as commanders and principals, for participating in a conspiracy, or for aiding and abetting.*

Aljabri claims that Messrs. Saud Alqahtani and Alassiri are liable for the alleged conduct as commanders and principals, for participating in a conspiracy, and for aiding and abetting.  *See* Resp.

---

[9] Aljabri is not entitled jurisdictional discovery to attempt to establish personal jurisdiction over these Defendants for the reasons set forth in the Crown Prince's Reply Brief, §I(E) (adopted and incorporated by reference).

[10] These Defendants adopt and incorporate the arguments in the Crown Prince's Reply brief, §III, with respect to the TVPA, including that the Amended Complaint fails to allege an "extrajudicial killing" and that Aljabri has not exhausted adequate, available remedies.   Additionally, these Defendants adopt and incorporate the arguments in Mr. Alasaker's Reply brief, §III(C)(1), that the TVPA does not provide for aiding and abetting or conspiracy liability.

at 92.  None of these theories is supported by the facts alleged in the Amended Complaint.  Aljabri alleges Messrs. Saud Alqahtani and Alassiri "commanded" the so-called "Tiger Squad."  *See* Resp. at 99.  Aljabri, however, fails to cite any facts alleged in the Amended Complaint that if true would demonstrate the existence of a superior-subordinate or command relationship between Messrs. Saud Alqahtani and Alassiri and any of the so-called "Tiger Squad" Defendants.  Simply repeating the words and phrases like "command" "control," "personally committed," and "legal authority and practical ability to exert control" are "threadbare recitals of the elements of a cause of action," which are insufficient to state a claim.  *See Tolton v. Day*, Civil Action No. 19-945 (RDM), 2020 U.S. Dist. LEXIS 87793, at *105 (D.D.C. May 19, 2020)(internal quotations omitted); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (finding allegations that defendants "exercised command responsibility over, conspired with, ratified, and/or aided and abetted subordinates in the Armed Forces . . . to commit acts of extrajudicial killing" conclusory and insufficient).  The Amended Complaint does not allege facts that, if true, would establish Messrs. Alqahtani and Alassiri knew of the existence of the so-called Tiger Squad Defendants, much less does it allege any communications between Messrs. Saud Alqahtani and Alassiri and these individuals.  In short, the Amended Complaint does not allege when, where, or how Messrs. Saud Alqahtani and Alassiri supposedly supervised or commanded the so-called Tiger Squad Defendants in a plot to kill Aljabri and, therefore, the Amended Complaint fails to state a claim based on this purported theory of liability.[11]

Aljabri attempts to bolster his conclusory allegations by offering simply more allegations of other unrelated alleged incidents largely gleaned from media reports.  *See e.g. id.*, 99-100 (citing Am.

---

[11] The same fatal defects would be true with any contention that Messrs. Saud Alqahtani and Alassiri are principals in an agency relationship with the so-called Tiger Squad.  Aljabri points to no facts – either in his Amended Complaint or in his opposition – that show or plausibly suggest that the Messrs. Saud Alqahtani and Alassiri manifested assent for any other defendant to act on his behalf.  *See* Crown Prince Reply. Br. §I(B)(1)(discussing agency requirements).

Compl. ¶¶52 (Khashoggi); 53 (Sultan bin Turki II); 64-66 (Khashoggi); 272 (two individuals from France); 293 (Prince Saud bin Saif, Omar Abdulaziz, and Khashoggi); 294 (Sultan bin Turki II); 335 (Salem Almuzaini); 337 (Khashoggi).   Aljabri argues "[g]iven that Alqahtani and Alassiri were *caught* supervising the Tiger Squad members who killed Khashoggi, *id.* ¶¶ 52, 60-61, 64-66, they cannot claim it *implausible* that they played a similar role in the similar killing the Tiger Squad tried days later."  Resp. at 100 (emphasis in original).  Aljabri's reasoning is doubly flawed.  First, it ignores an exhibit Aljabri appended to his Response that notes Messrs. Saud Alqahtani and Alassiri were both acquitted of allegations that they participated in Khashoggi's murder.  *See* Resp., Ex. 3, *Expert Report of Professor Chible Mallat*, ECF No. 102-3 at 5.[12]  Second, even it were true that they had been "caught" supervising those who killed Khashoggi, that would not be a sufficient basis to infer that they also supervised others in an unrelated alleged plot to kill Aljabri.

For much of the same reasons, Aljabri's argument that he plausibly pled the elements of conspiracy fails.  *See id.* at 100.  The Response merely asserts that an agreement may be inferred from circumstantial evidence.  *See id.*  Yet, as explained above, no plausible facts are alleged, circumstantial or otherwise, that Messrs. Saud Alqahtani and Alassiri formed any agreement to violate the law and took an over act in furtherance of that agreement.  Repeatedly invoking instances of unrelated alleged conduct involving different people hardly amounts to showing an agreement with these purported co-conspirators to violate the law with respect to Aljabri.  *See Lagayan v. Odeh*, 199 F. Supp. 3d 21, 30 (D.D.C. 2016) ("To support a claim of conspiracy, the complaint must contain 'enough factual matter

---

[12]  Aljabri's citation to the U.S. Treasury Department's conclusion that Messrs. Saud Alqahtani and Alassiri had planning or organizational roles in Mr. Khashoggi's death does nothing to further his argument because it, too, offers only a conclusion without factual support.  *See* Resp. at 99 (citing *id supra* p. 66)(citing n. 60, U.S. Dep't of Treasury, *Treasury Sanctions the Saudi Rapid Intervention Force and Former Deputy Head of Saudi Arabia's General Intelligence Presidency for Roles in the Murder of Journalist Jamal Khashoggi* (Feb. 26, 2021), https://bit.ly/3gmzAFV; Press Release, U.S. Dep't of Treasury, *Treasury Sanctions 17 Individuals for Their Roles in the Killing of Jamal Khashoggi* (Nov. 15, 2018), https://bit.ly/3cu3siG.).

(taken as true) to suggest that an agreement was made.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Similarly, Aljabri's Response that maintains Messrs. Saud Alqahtani and Alassiri aided and abetted a TVPA violation is unpersuasive. *See* Resp. at 100. Aljabri merely recites conclusory terms and unrelated allegations. *See id.* ("Alqahtani and Alassiri knew what they sent the Tiger Squad Defendants to Canada to do (which was the same thing they sent the Tiger Squad to Istanbul to do). *Supra* at 10-12, 66-67. And they provided 'substantial assistance' by organizing and directing that effort.") Further, as Mr. Alasaker explains, allegations of recruiting and directing do not constitute the "substantial assistance" that is required to allege aiding and abetting. *See* Alasaker Reply. Br. §III(C)(2) (adopted and incorporated by reference).[13]

B.     *The Amended Complaint fails adequately to allege that the so-called Tiger Squad Defendants conspired or personally committed an alleged attempted extrajudicial killing in violation of the TVPA.*

Aljabri's response that the so-called Tiger Squad Defendants (with the exception of Mr. Alsaleh) "*personally* traveled to carry out the killing" (Resp. at 101) (emphasis in original) is a conclusion with respect to the purpose of that travel. It is unsupported by any plausible facts. Alleging the "*exact flight*" of many of defendants traveling on tourist visas, *id.* (emphasis in original), if true, would merely establish that they traveled to Canada, not that they did so for the unlawful purpose of carrying out the killing of Mr. Aljabri.[14]

---

[13] Aljabri maintains that a defendant can aid and abet an attempted tort. *See id.* at 100, n. 99. For the reasons detailed in Defendant's Motion to Dismiss, 40-42, stacking these inchoate claims cannot create a viable cause of action. Indeed, the cases upon which Aljabri relies to assert that an attempted tort is a viable claim are all criminal cases. *See id.* at 102, n. 102. As explained in Defendant's Motion to Dismiss and as *Boim v. Holy Land Found. for Relief & Dev.* notes with respect attempts, "we must be careful in borrowing from criminal law…." 549 F.3d 685, 692 (7th Cir. 2008); *see also* Student-Defendants Reply Br. §I(A)(adopted and incorporated by reference) ("Because there is no primary liability, there cannot be secondary liability").

[14] Aljabri recites the same strained guilt by association from his background section, arguing unpersuasively that because one of these defendants was a panelist at a 2016 university course is alleged

Aljabri's other allegations likewise do not plausibly establish that the purpose of the travel was to commit murder. The allegation that the so-called Tiger Squad Defendants supposedly "lied to authorities" about knowing each other (*id*), if true, hardly amounts to alleging a plausible fact that the group must have been on a murder mission targeting Aljabri. Aljabri also relies on the allegation in the Amended Complaint that one of the defendants allegedly carried unspecified "forensic tools." *See id.* at 102. But the Amended Complaint does not allege the nature of these "forensic tool," much less how they supposedly would be used in the murder of Aljabri. Such vague and tenuous factual allegations do not provide support for conclusory allegations and cannot give rise to a plausible claim. *See Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004)("While all inferences are to be drawn in favor of plaintiffs on a motion to dismiss, the Court will not draw inferences from such vague, unsupported allegations.").

Aljabri asserts in a footnote that the so-called Tiger Squad Defendants did not challenge the sufficiency of the Amended Complaint's conspiracy allegations. The Amended Complaint, however, does not clearly assert conspiracy liability against the so-called Tiger Squad Defendants who allegedly traveled to Canada. *See Jiggetts v. District of Columbia*, 319 F.R.D. 408, 415 (D.D.C. 2017) ("It is well established that '[un]necessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'")(citation omitted). Indeed, these Defendants noted Aljabri's "unnecessary prolixity," *id*, and lack of clarity in their Motion to Dismiss. *See* Def.'s Mot. to Dismiss, ECF No. 93, p. 1 ("The Amended Complaint contains numerous theories and claims unrelated to the causes of actions it asserts"); p. 33 ("[I]t is unclear even under what *theory* Aljabri purports to hold Mr. Alsaleh liable.")(emphasis in original). Aljabri's Response illustrates this further. Though the Amended

---

to have been involved in Mr. Khashoggi's death, this defendant who presented at that course must have been on a mission to kill Mr. Aljabri. *See* Resp. at 101 (citing Amend. Compl. ¶116).

Complaint recites the words "aid and abet," Aljabri's Response shows that he does not rely on this theory with respect to the so-called Tiger Squad Defendants.  *See* Resp. at 101.[15]

The Amended Complaint clearly claims that the so-called Tiger Squad Defendants directly participated in the purported attempted murder, but not that they are responsible for the attempted murder on a theory of secondary liability.  For example, the Amended Complaint never states with whom any of the so-called Tiger Squad Defendants are alleged to have conspired.  In any event, to the extent that Aljabri contends that the Amended Complaint does purport to allege conspiracy liability with respect to the so-called Tiger Squad Defendants, it is clear from the Motion to Dismiss that the Defendants do not concede that a conspiracy was plausibly pled in the Amended Complaint.[16]

Aljabri fails plausibly to support his theory that the so-called Tiger Squad Defendants formed an agreement with anyone to violate the law and an act was performed pursuant to that common scheme.  The facts alleged, if true, would establish no more than that six Saudi individuals flew to Canada, five of whom were on the same flight, that they were questioned at the border, and all but one of them were denied entry into Canada.  There is no allegation that the individual who did enter Canada took any steps to kill Aljabri.  As the Crown Prince notes (Reply Br. §II(B)(1)), "the eight

---

[15] Additionally, Aljabri repeats allegations that Mr. Alsaleh was a coordinator or leader of the "Tiger Squad," in some instances, *see* Am. Compl. at 58; Resp., at n.100, but in other instances in the Response, Aljabri groups Mr. Alsaleh in with the defendants who allegedly traveled to Canada stating that Mr. Alsaleh was "dispatched" to Canada and therefore is directly liable for attempting to kill Aljabri. *See* Response p. 5, 127.

[16] *See* Def.'s Mot. to Dismiss, ECF No. 93, p. 1 ("each [defendant] denies he was aware of, much less participated in, any such scheme."); pp. 5-8 (repeating for each so-called "Tiger Squad" Defendant that "The Amended Complaint alleges the conclusion, with no supporting factual allegations, that he was a member of the 'Tiger Squad'...." and for Mr. Alsaleh that "The Amended Complaint provides no non-conclusory factual allegations linking Mr. Alsaleh to a purported plot to kill Aljabri."); p. 27 ("The Amended Complaint does not allege, even in conclusory fashion, that Messrs. Alsayed, Algasam, Alhaqbani, Alhomid, Albawardi, or Bader Alqahtani had any relationship whatsoever with the "U.S.-based agents," who allegedly hunted for Aljabri in the United States."); p. 35 ("There are no facts alleged that could support the conclusion that any of these individuals even knew who Aljabri was, much less that they were trying to kill him.").

other members of the purported 'hit squad' "successfully entered Canada" the very next day.  Am. Compl. ¶ 349.  Despite that successful entry, and the successful entry on October 15, 2018 of a ninth member of the same purported 'death squad,' *id.* ¶ 348, there is no allegation that these nine so-called 'killers,' *id.* ¶ 4, took any actions at all towards Aljabri."

The Amended Complaint does not allege facts that would establish that this trip was for the purpose of killing Aljabri or that any of the so-called Tiger Squad Defendants even knew of Aljabri's existence.  Nor does it allege facts that could plausibly establish where, when, or how, the so-called Tiger Squad Defendants entered into a conspiratorial agreement with any other defendant to travel to Canada for the purpose of killing Aljabri.

C.   *The Amended Complaint fails adequately to allege that Mr. Alsaleh conspired, or personally committed an alleged attempted extrajudicial killing in violation of the TVPA.*

As with the Amended Complaint, the Response with respect to Mr. Alsaleh merely alleges that he worked for the Saudi government and obtained a tourist visa to Canada.  *See* Resp. at 102, n.100.  Aljabri argues that "although he did not travel, he served as a coordinator for the other Tiger Squad Defendants."  *Id.*  No facts are alleged that, if true, would support this contention.  The Amended Complaint does not allege what it is that Mr. Alsaleh supposedly did to "coordinate" or conspire with the "Tiger Squad," much less with respect to a plot to kill Aljabri.  Aljabri attempts to divert the Court from this failing with more discussion of Mr. Khashoggi's death, (*see* Resp. at 102, n. 100), but this discussion lacks any connection to Mr. Alsaleh or Mr. Aljabri.  Thus, the Amended Complaint fails to state a TVPA claim with respect to Mr. Alsaleh under any theory of liability.

**V.     The Amended Complaint fails to state an ATS claim (the second cause of action) against these Defendants.[17]**

   A.   *The Amended Complaint fails adequately to allege that Messrs. Saud Alqahtani and Alassiri are directly liable for an alleged attempted extrajudicial killing, aided and abetted it, or participated in a joint criminal enterprise in violation of the ATS.*

Aljabri claims that Messrs. Saud Alqahtani and Alassiri are directly liable, aided and abetted, and participated in a joint criminal enterprise in violation of the ATS.  *See* Resp. at 127.  For the reasons explained above, *supra* §IV and in the Defendants' Motion to Dismiss, ECF No. 93 at 29-33, the Amended Complaint fails to plead plausibly that Messrs. Saud Alqahtani and Alassiri are directly liable for an alleged attempted extrajudicial killing or that they aided and abetted it.  Additionally, like Aljabri's failure adequately to allege conspiracy, he has failed to plead plausibly that Messrs. Saud Alqahtani and Alassiri participated in a joint criminal enterprise.  *See id.*  Other than stating it as a conclusion, Aljabri has not offered any support for the theory that Messrs. Saud Alqahtani and Alassiri held a common objective with any other individual in this matter to violate the law.  Nor does the Amended Complaint allege any facts that, if true, would demonstrate that Messrs. Saud Alqahtani and Alassiri participated in executing such a purported plan.

   B.   *The Amended Complaint fails to allege adequately that the so-called Tiger Squad Defendants are directly liable, or that they participated in a joint criminal enterprise in violation of the ATS.*

Similarly, Aljabri argues (Resp. at 127) that for the same reasons he plausibly pled the TVPA claim, he also plausibly pled that the so-called Tiger Squad Defendants are directly liable for an alleged attempted extrajudicial killing, and that they participated in a joint criminal enterprise in violation of the ATS.  This argument fails for the reasons explained *supra* §IV and in these Defendants' Motion to Dismiss, ECF No. 93 at 29-31, 34-35.

---

[17] These Defendants adopt and incorporate the Crown Prince's arguments that Aljabri has failed to state an ATS claim, including that an attempted extrajudicial killing does not violate any specific, universal and obligatory norm of international law and that the domestic conduct alleged in the Amended Complaint did not plausibly aid or abet a primary violation of the law of nations.  *See* Crown Prince Reply Br. §IV.

     C.     *The Amended Complaint fails adequately to allege that Mr. Alsaleh is directly liable, or that he participated in a joint criminal enterprise in violation of the ATS.*

Aljabri again categorizes Mr. Alsaleh one of the "Tiger Squad" Defendants (Resp. at 5, 102, n. 100; 127), but the Amended Complaint does not allege he traveled to Canada and contains only wholly conclusory allegations against him.  For the reasons explained *supra* §IV and in his Motion to Dismiss, ECF No. 93 at 29-31, 33-34, the Amended Complaint fails adequately to allege that Mr. Alsaleh is directly liable for an alleged attempted extrajudicial killing, or that he participated in a joint criminal enterprise.

## VI.    The Amended Complaint fails to state an intentional infliction of emotional distress (IIED) claim (the third cause of action) against these Defendants.

With respect to the Plaintiff's IIED claim, Plaintiff's Response reiterates unrelated and conclusory allegations, without plausible factual support showing that any of these Defendants aided and abetted, conspired, or directly committed intentional infliction of emotional distress.  *See* Resp. at 135.  For the reasons explained *supra* §IV, these efforts, including those in the Amended Complaint, fail to state a claim against all of these Defendants.  The IIED claim further fails as matter of law as explained by the Crown Prince.  *See* Crown Prince Reply Br. §V (adopted and incorporated by reference).[18]

---

[18] Additionally, as Mr. Alasaker explains, Reply Br. §IV (and as the Defendants adopt and incorporate by reference), there are no factual allegations that any of the defendants participated in any "outrageous conduct."  The so-called "Tiger Squad Defendants" are alleged to have obtained visas and flown on an airplane from Saudi Arabia to Canada (and the one who entered Canada and is not alleged to have taken any tortious action while there).  Messrs. Alqahtani, Alassiri, and Alsaleh are alleged (albeit in entirely conclusory terms) to have organized or overseen six individuals who obtained visas and flew on an airplane from Saudi Arabia to Canada. As explained *supra*, Aljabri's repeated conclusory refrain of their purported purpose is unsupported speculation and may not be considered. The conduct for which there are factual allegations – individuals travelling to Canada and supposedly lying to authorities about knowing each other– is not "outrageous conduct."

## CONCLUSION

Aljabri's prolific use of vivid descriptions and unrelated accusations merely creates a veneer to gloss over otherwise hollow vague and conclusory claims.  Indeed, this transparent tactic serves only to highlight just how far Aljabri is reaching to attempt to create viable causes of actions against these Defendants.  Aljabri cannot overcome these Defendants' immunity, since these Defendants are all alleged to be government officials acting within their official roles under the command and control of the Crown Prince acting as agents of the Saudi government.  Aljabri cannot establish personal jurisdiction, since each of the claims against these Defendants are grounded in an alleged plot directed from Saudi Arabia to attempt to kill Aljabri in Canada.  For these reasons as well as the other legal deficiencies discussed above, and in the briefs incorporated above, the Amended Complaint must be dismissed.

Respectfully Submitted,

_____/s/_____

Barry J. Pollack (DC Bar #434513)
Law Offices of Barry J. Pollack, LLC
1629 K Street, N.W., Suite 300
Washington, DC 20006
202-230-9647
barryjpollack@gmail.com

_____/s/_____

Jessica N. Carmichael (DC Bar #998952)
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, 1st FL
Alexandria, Virginia 22314
(703) 684-7908
jessica@carmichaellegal.com

*Attorneys for the defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of August, 2021, I filed the foregoing pleading through the ECF system, which shall then send an electronic copy of this pleading to all parties in this action.

_____/s/_____
Jessica N. Carmichael