IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. SAAD ALJABRI,<br><br>    Plaintiff,<br><br>v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al.*,<br><br>    Defendants. | Civil Action No. 1:20-cv-02146-TJK |

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiff Dr. Saad Aljabri ("Plaintiff" or "Dr. Saad") files this Notice of Supplemental Authority to bring to the Court's attention three recent decisions.

**A.** ***Broidy Capital Management v. Muzin*** **(D.C. Cir.)**

The first decision is *Broidy Capital Management v. Muzin*, No. 20-7040, 12 F.4th 789 (D.C. Cir. Sept. 3, 2021) (attached as Ex. A). During the motion-to-dismiss briefing, the parties cited the district court's decision in *Broidy*. MBS Br. at 31-32, Dkt. 92; Alasaker Br. at 23-24, Dkt. 94; MiSK Br. at 18, Dkt. 95; Tiger Squad Br. at 10, Dkt. 93; Pl.'s Opp'n Br. at 41-42, Dkt. 102.[1] The D.C. Circuit affirmed the district court's holding that the defendants were not entitled to foreign-official immunity. In three ways, that decision is relevant to the parties' motion-to-dismiss arguments.

***First***, *Broidy* emphasized that "the close connections of the parties and the claims to the United States counts against immunity," pointing to—among other things—that the defendants included "U.S. residents" who were sued "under U.S. law" for "conduct that allegedly took place in the United States." *Broidy*, 12 F.4th at 801. That accords with Dr. Saad's argument that the significant U.S. conduct in this case militates against immunity, particularly because Defendants

---

[1] Citations to "Dkt." refer to filings in this action unless otherwise indicated.

Youssef Alrajhi, Mohammed Alhamed, Layla Abuljadayel, and Hani Fakri Hamed were all U.S. residents at the time of the relevant conduct. Pl.'s Opp'n Br. at 35-36, Dkt. 102. *But see* MBS Reply Br. at 21, Dkt. 110 (arguing that the "location" of the acts is irrelevant).

***Second***, *Broidy* holds that a state's failure to request immunity from the Department of State "weighs heavily against immunity." *Broidy*, 12 F.4th at 800. Here, the Kingdom of Saudi Arabia has not requested a Suggestion of Immunity for any defendant besides Defendant Mohammed bin Salman bin Abdulaziz Al Saud ("Defendant bin Salman").[2] The Department of State has declined to grant the request to suggest immunity for Defendant bin Salman, which has been pending since October 2020.[3]

***Third***, *Broidy* is relevant to the doctrine of derivative foreign immunity. Defendants Prince Mohammed bin Salman Abdulaziz Foundation, Alasaker, Alrajhi, Alhamed, Abuljadayel, and Hamed have argued that they are immune under this doctrine, citing *Butters v. Vance International, Inc.*, 225 F.3d 462, 465 (4th Cir. 2000); *see* U.S. Agents' Br. at 41-42, Dkt. 96; MiSK Br. at 23 n.15, Dkt. 95; Alasaker Br. at 28 n.15, Dkt. 94. As Plaintiff explained in opposition, the *Broidy* district court rejected *Butters* and declined to recognize this doctrine. Pl.'s Opp'n Br. at 41, Dkt. 102. On appeal, the D.C. Circuit explained that it was "inclined to agree" with the "district court's thoughtful opinion." *Broidy*, 12 F.4th at 802. But it ultimately did not resolve that issue: Even where derivative immunity applies, the D.C. Circuit explained, it reaches only "conduct

---

[2] As to Defendant bin Salman, the Kingdom's request of course does not imply that he *is* immune. Not only has the State Department declined to grant the Kingdom's request, but bin Salman has submitted no evidence that the Kingdom has "said that the conduct challenged as unlawful [*i.e.*, the extrajudicial killing of Dr. Saad] was at its behest." *Broidy*, 12 F.4th at 792.

[3] The State Department's inaction is not due to the United States' lack of attention to the disputes concerning Dr. Saad. On August 6, 2020, the Department sent a letter to Senator Patrick Leahy describing Dr. Saad's service as a "valued partner to the U.S. Government" and expressing concern about the "persecution" and wrongful detention of his children. Am. Compl., Dkt. 66, ¶ 22 & n.7.

specifically ordered or authorized and directed by the Government"—which the *Broidy* defendants could not show. *Id.* (internal quotation marks omitted).⁴ Here, too, Defendants have not shown that the government of the Kingdom (as opposed to Defendant bin Salman personally) specifically ordered their actions.

### B. *Jane W. v. Thomas* (E.D. Pa.)

The second decision is *Jane W. v. Thomas*, No. 18-569, 2021 WL 4206665 (E.D. Pa. Sept. 15, 2021) (attached as Ex. B). As Dr. Saad showed, the overwhelming weight of authority holds that the Torture Victim Protection Act ("TVPA") imposes liability for attempted extrajudicial killings, consistent with the statute's text and structure. Pl.'s Opp'n Br. at 80-83, Dkt. 102. In reply, Defendants cited one district court opinion that departed from the consensus. MBS Reply at 32, Dkt. 110. The recent decision in *Jane W.* follows the consensus and holds that the TVPA "allow[s] liability for attempted extrajudicial killings, 'even if no one died as a result.'" 2021 WL 4206665, at *16 (quoting *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 99 (D.D.C. 2017)). Indeed, *Jane W.* identifies "attempted extrajudicial killings" as among the "acts for which the TVPA creates an 'unambiguous and modern basis' for liability." *Id.* at *14 (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 728 (2004)).

### C. *Sakab Saudi Holding Company v. Aljabri* (D. Mass.)

The third decision is Memorandum and Order, *Sakab Saudi Holding Company v. Aljabri*, No. 1:21-cv-10529-NMG (D. Mass. Oct. 26, 2021), Dkt. 63 (attached as Ex. C). During the motion-to-dismiss briefing, Defendants asserted that Dr. Saad had committed massive fraud while

---

⁴ Indeed, *Broidy* found this test unmet even though the defendants pointed to significant evidence of work on behalf of the foreign government: Certain defendants had consulting agreements to act on the government's behalf, and others were registered foreign agents under the Foreign Agents Registration Act. 12 F.4th at 801.

serving as a Saudi government official, relying on preliminary orders issued by a Canadian court. MBS Br. at 1-2, Dkt. 92; Declaration of Andrew C. Shen, Exs. A, B & E, Dkt. 92-2, 92-3, 92-6 (attaching Canadian preliminary orders); MBS Reply Br. at 1, 42, Dkt. 110; Tiger Squad Br. at 2 n.1, Dkt. 93; *but see* Pl.'s Opp'n Br. at 18-19, Dkt. 102.  The Canada action does not raise common questions of law or fact with the allegations in this case, and Dr. Saad does not believe the Canada action is relevant to the claims before the Court in this case.  Because Defendants cited the preliminary orders in their motions to dismiss, however, we are alerting the Court to developments in *Sakab*.

Subsequent to the filing of this action, entities controlled by Defendant bin Salman filed suit against Dr. Saad in Massachusetts, raising allegations of fraud parallel to the Canada action. *Sakab*, No. 1:21-cv-10529-NMG, Dkt. 1-1.  On August 3, 2021, the United States moved to intervene as a party, *id.* Dkt. 40, and on August 27, 2021, the United States took the rare step of asserting the state secrets privilege, *id.* Dkt. 47.  The Director of National Intelligence asserted a privilege over "information concerning sources, methods, capabilities, activities, or interests of the [U.S. Intelligence Community]," which was "intended to specifically include information known to [Dr. Saad]."  *Id.* Dkt. 47-1 ¶ 12.

On October 26, 2021, Judge Gorton granted the United States' motion to intervene.  *Id.* Dkt. 63 at 7, 18.  Judge Gorton also concluded that the Massachusetts action concerns "transactions which implicate the state secrets claim asserted by the government," *id.* at 6, and, in light of the "breadth of the claim and the highly sensitive nature of the privileged material," *id.* at 9, Dr. Saad "cannot fairly defend [himself] without resort to privileged information," *id*. at 11.  As to the allegations in the Canada action that Dr. Saad improperly expropriated funds, Judge Gorton observed that "any attempt by [Dr. Saad] to rebut those allegations, i.e. to establish the legitimacy

and legality thereof, would necessarily result in the examination and disclosure of privileged information concerning counter-terrorism activities undertaken in partnership with the United States government." *Id*. at 10.  Judge Gorton directed the Saudi entities controlled by Defendant bin Salman to show cause why the action should not be dismissed. *Id*. at 18.

| | |
|---|---|
| Dated: November 1, 2021 | Respectfully submitted, |
| | JENNER & BLOCK LLP |
| | /s/ David Pressman |
| | David Pressman<br>D.C. Bar No. 1013431<br>Jason P. Hipp<br>DDC No. NY0397<br>Jenner & Block LLP<br>919 Third Avenue<br>New York, NY 10022<br>Telephone:  (212) 891-1654<br>Fax: (212) 891-1699<br>dpressman@jenner.com<br>jhipp@jenner.com |
| | Lindsay Harrison<br>D.C. Bar No. 977407<br>Zachary C. Schauf<br>D.C. Bar No. 1021638<br>Jenner & Block LLP<br>1099 New York Avenue, NW<br>Suite 900<br>Washington, DC 20001-4412<br>Telephone:  (202) 639-6865<br>Fax:  (202) 639-6066<br>lharrison@jenner.com<br>zschauf@jenner.com |
| | *Counsel for Plaintiff* |

5