**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DR. SAAD ALJABRI**, <br><br> Plaintiff, <br><br> v. <br><br> **MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, et al.**, <br><br> Defendants. | Civil Action No. 1:20-cv-02146-TJK |

### DEFENDANTS YOUSSEF ALRAJHI, MOHAMMED ALHAMED, LAYLA ABULJADAYEL, AND HANI FAKRI HAMED'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants Youssef Alrajhi, Mohammed Alhamed, Layla Abuljadayel (the "Student Defendants"), and Hani Fakri Hamed ("Mr. Hamed"), hereby adopt the responses to Plaintiff's Notice of Supplemental Authority [Dkt. No. 115] of: Crown Prince Mohammed Bin Salman Bin Abdulaziz Al Saud, concerning *Broidy Capital Management LLC v. Muzin*, 12 F.4th 789 (D.C. Cir. 2021), *Jane W. v. Thomas*, No. 18-569, 2021 WL 4206665 (E.D. Pa. Sept. 15, 2021), and *Sakab Saudi Holding Co. v. Aljabri*, No. 1:21-cv-10529-NMG (D. Mass.) [Dkt. No. 116]; and, of Messrs. Alqahtani et al. [Dkt. No. 117], Mr. Alasaker [Dkt. No. 118], and Prince Mohammed Bin Salman Abdulaziz Foundation [Dkt. No. 119] concerning *Broidy*. The Student Defendants and Mr. Hamed submit this further response to address *Broidy*'s relevance to this case, and its treatment of official and derivative immunity. The Court need not reach the issue of immunity for the Student Defendants and Mr. Hamed if it accepts their primary arguments that the Amended Complaint fails to state a claim against them under the TVPA, or jurisdiction under the ATS.

This case and *Broidy* have few material facts in common, a divergence significant enough to drain *Broidy* of relevance here. The *Broidy* individual defendants were U.S. citizens and a U.S.

company who had been hired as contractors to mount a public relations campaign. *See Broidy Capital Mgmt. LLC*, 12 F.4th at 792-93, 801. The *Broidy* individual defendants' relationship with Qatar was governed by "an arms-length, general agreement", which "expressly disclaim[ed] the creation of an agency relationship" but otherwise gave the defendants discretion how to perform their work. *Id.* at 800. When *Broidy* filed suit, Qatar expressed little interest in the case, and appeared not to have requested a suggestion of immunity from the United States. *See id.* at 798; *see also id.* *800 ("Qatar's apparent silence on this case weighs heavily against immunity," because "Qatar, on whose behalf the defendants purportedly acted, has not indicated any interest in this case, whether by requesting a formal suggestion of immunity or otherwise.") (quoting *Samantar v. Yousuf*, 571 U.S. 1156 (2014) (Br. for the U.S. as Amicus Curiae, at 22)).[1]

In a further critical distinction, "*Broidy*'s complaint [did] not . . . allege that Qatar hired the defendants to act as its agents to carry out any sovereign functions, nor d[id] it specify that Qatar requested, approved, or even knew of the unlawful conduct at the heart of Broidy's claims". *Id.* (emphasis added). The plaintiff instead alleged that Qatar and the individual defendants had what the Court termed a "kind of loose and limited agency relationship", but the defendants did not contradict those allegations. *Id.* at 801. As a result, the Court held that the complaint's allegations "stop short of describing even the sort of agency relationship the defendants contend would immunize them." *Id.*

These aspects led the *Broidy* Court to conclude that extending immunity would be incompatible with the kind of relationship that Qatar had with the individual defendants. *Id.* at

---

[1] Given Saudi Arabia's request for immunity for the Crown Prince, Plaintiff incorrectly implies that individual defendants must make their own request for immunity from the United States, *see* Notice [Dkt. No. 115], at nn. 2-3, but *Broidy* did not require this step as it considered whether to extend immunity to the individual defendants.

\*800-01.  The *Broidy* Court also wrote that it "need not decide whether derivative immunity might apply were a sovereign specifically to order a private party to take action on its behalf as sovereign in violation of U.S. law." *Id.* at 802.

In contrast, Plaintiff expressly describes the Student Defendants and Mr. Hamed as "the U.S.-Based Covert Agent Defendants", alleges them to be "agents of the Crown Prince" throughout the Amended Complaint, and asserts that their "acts were committed under apparent authority or color of law of the government of Saudi Arabia."  Am. Compl. [Dkt. No. 66] ¶¶ 366 (general allegations); 389 (count one), 401 (count two).  Plaintiff alleges that the Student Defendants and Mr. Hamed had no discretion whatsoever, and "were subject to the ultimate control and authority of Defendant bin Salman, who is personally involved in decisions around the funding and discipline of Saudi students."  *Id.* ¶ 227.  Consistent with that allegation, Plaintiff repeatedly asserts that the Student Defendants and Mr. Hamed took action only at the direction of the Crown Prince.  While these allegations are conclusory, if they are credited by the Court, then they require official immunity for the Student Defendants and Mr. Hamed.

*Broidy* does not undermine any such entitlement to official immunity by its holding that "the close connections of the parties and the claims to the United States counts against immunity." *Broidy Capital Mgmt. LLC*, 12 F.4th at 801.  *Broidy* ascribed the weight it did to the parties' "close connections" because the *Broidy* individual defendants were U.S. citizens and U.S. residents, and because of "the weakness of the defendants' claimed connection with Qatar".  *Id.*  In contrast, the Student Defendants are Saudi citizens who were in the U.S. for the limited purpose of attending college and graduate school, *see* Am. Compl. [Dkt. No. 66] ¶¶ 88-108.  Mr. Hamed is alleged only to have been a resident of Massachusetts.  *See id.* ¶ 109.

Likewise, Plaintiff's allegation of an unsuccessful attempt to kill Plaintiff in Canada more

than one year after the Student Defendants' alleged actions in the United States has no "close connection" to Plaintiff's claims. In *Broidy*, the plaintiff pled a "close connection" between the hiring of U.S. citizens and a U.S. firm and their actions in the course of a paid public relations campaign for Qatar, and the reputational and other harm alleged by the plaintiff, one of Qatar's most visible U.S. critics. *Broidy Capital Mgmt. LLC*, 12 F.4th at 801. By contrast here, even under Plaintiff's theory of the case, none of the alleged actions of the Student Defendants and Mr. Hamed in the U.S. contributed causally or in any other substantial way to the alleged unsuccessful attempt to kill Plaintiff in Canada more than a year later. *See* Reply Br. [Dkt. No. 111], at 2 ("[T]he U.S.-focused allegations are entirely disconnected from the Canadian-focused allegations.").

Finally, *Broidy* did not rule out derivative immunity, but rather observed (in dicta) that there could not be derivative immunity in *Broidy*, because "the complaint simply does not allege Qatar 'specifically ordered' the defendants to participate in a scheme to hack and distribute Broidy's private emails . . . ." *Broidy Capital Mgmt. LLC*, No. 20-7040, 12 F.4th at 803 (distinguishing *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000), which alleged the "defendant contractor acted 'under the direct military orders of' a Saudi official").

*Broidy* also observed that the fact that conduct had occurred in the U.S. was not typically dispositive of immunity, and suggested that immunity could protect agents of an immunized principal even when the agents' actions occurred entirely in the U.S. and contributed substantially to the plaintiff's injuries. *See id.* at 801 (citing *Butters*, 225 F.3d at 465); *see also, e.g., Miango v. Democratic Republic of Congo*, Civil Action No. 15-1265 (ABJ), 2020 U.S. Dist. LEXIS 113722, at *15 (D.D.C. June 29, 2020) (allowing foreign official immunity for agents of the DRC's government for the alleged use of force on protesters outside a hotel in Washington, D.C.); *Rishikof v. Mortada,* 70 F. Supp. 3d 8, 12-16 (D.D.C. 2014) (recognizing common law immunity for "low-

level deliveryman" in relation to car accident death he caused in the United States while acting as an agent for the Swiss government); *cf., Mireskandari v. Mayne*, No. CV 12-3861 JGB (MRW), 2016 U.S. Dist. LEXIS 38944, at *56-57 (C.D. Cal. Mar. 23, 2016) (recognizing immunity of foreign police officers who travelled to California at foreign officials' request to allegedly "intimidate[e] and attempt[] to bribe witnesses to prevent them from testifying or submitting evidence on" plaintiff's behalf).

Dated:  November 8, 2021

      */s/ Mitchell R. Berger*
      Mitchell R. Berger (DC 385467)
      Benjamin D. Wood (DC 478799)
      Alexandra E. Chopin (DC 490736)

      SQUIRE PATTON BOGGS (US) LLP
      2550 M Street, NW
      Washington, D.C.  20037
      Phone:  202-457-6000
      Fax:  202-457-6315
      mitchell.berger@squirepb.com
      benjamin.wood@squirepb.com
      alexandra.chopin@squirepb.com

      *Attorneys for Defendants Youssef Alrajhi, Mohammed Alhamed, Layla Abuljadayel, and Hani Fakri Hamed*

## CERTIFICATE OF SERVICE

I certify that on November 8, 2021, I caused a copy of the foregoing Defendants Youssef Alrajhi, Mohammed Alhamed, Layla Abuljadayel, and Hani Fakri Hamed's Response to Plaintiff's Notice of Supplemental Authority, to be filed using the ECF system, which sent notice of filing in this matter to all counsel of record.

*/s/ Mitchell R. Berger*
Mitchell R. Berger (DC 385467)

*Attorneys for Defendants Youssef Alrajhi, Mohammed Alhamed, Layla Abuljadayel, and Hani Fakri Hamed*