IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. SAAD ALJABRI,<br><br>       Plaintiff,<br><br>       v.<br><br>MOHAMMED BIN SALMAN BIN ABDULAZIZ AL SAUD, *et al.*<br><br>       Defendants. | Civil Action No. 1:20-cv-02146-TJK |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO SERVE TWO THIRD-PARTY SUBPOENAS
IN ORDER TO PREVENT DESTRUCTION OF EVIDENCE**

Plaintiff Dr. Saad Aljabri ("Dr. Saad" or "Plaintiff") respectfully submits this memorandum in support of his motion for leave to serve third-party subpoenas upon Air Canada and Deutsche Lufthansa AG ("Lufthansa") seeking the production of documents concerning the Tiger Squad's travel to Canada.[1] Such relief is necessary in order to prevent the imminent destruction of evidence directly relevant to this case. Plaintiff files this motion because absent judicial action Air Canada and Lufthansa are unable to confirm that they will voluntarily preserve evidence beyond December 31, 2021, and discovery in this matter has not yet commenced as Defendants have refused to participate in a Rule 26(f) conference while their motions to dismiss are pending.

---

[1] As alleged in the Amended Complaint, the Tiger Squad is a personal hit squad, several members of which are named as Defendants in this action, that has carried out numerous covert killings and attempted killings. Dkt. 66 ¶¶ 17, 111–123.

## BACKGROUND

In his Amended Complaint, Dr. Saad alleges that, on or around October 15, 2018, a hit squad that included all but one of the Tiger Squad Defendants traveled to Canada to kill Dr. Saad. Dkt. 66 ¶¶ 17, 111–123, 334. As Dr. Saad alleges in painstaking detail, this attack was an integral part of a years-long campaign to trap, hunt, and murder Dr. Saad, a former high-ranking Saudi security official with deep ties to the U.S. Intelligence Community. The purpose of the Tiger Squad Defendants' travel was unmistakable: arriving in Canada days following the murder of Jamal Khashoggi were members of a private death squad who have carried out numerous covert killings and attempted killings; they possessed a variety of expertise relevant to executing a target and covering up the murder; and they carried forensic tools to facilitate their work. *Id*. ¶¶ 17–19, 334–349. Certain of the Tiger Squad Defendants traveled on Air Canada flight AC839 from Frankfurt, Germany to Ottawa, Ontario, Canada on or around October 15, 2018. *Id.* ¶ 334. Dr. Saad alleges that other Tiger Squad Defendants arrived in Montreal one day later. *Id.* ¶ 349.[2] Subsequent to the filing of the Amended Complaint, Dr. Saad has obtained additional information indicating that one or more of these Defendants traveled via Lufthansa. In an effort to shield the true purpose of their travel, all but one of the Tiger Squad Defendants attempted to enter Canada, most of them using tourist visas. *Id*. ¶¶ 17, 114–123, 331, 334. Their plot was foiled by border authorities, who subjected them to secondary screening and discovered photographic evidence

---

[2] The Amended Complaint identified seven Tiger Squad Defendants by name and also alleged that Defendants John Does 1-8 are further "members of the Tiger Squad" who also "took actions for the purpose of extrajudicially killing Dr. Saad" but whose "exact names and identities, and the precise number of such John Does, are, despite diligent efforts, presently unknown to Plaintiff Dr. Saad." *Id.* ¶¶ 111–123.

2

rebutting the Tiger Squad Defendants' claims that they did not know each other, along with forensic tools. *Id.* ¶¶ 18, 344–348.

Because of the central importance of the Tiger Squad's travel to Canada to Dr. Saad's claims, he served legal hold notices (the "Notices") on Lufthansa and Air Canada (together, the "Airlines"). *See* Declaration of Jason Hipp, dated December 3, 2021 ("Hipp Decl."), Exhibits A & B. The Notices requested that the Airlines preserve, *inter alia*, a narrow subset of documents relating to the Defendants and their airline travel during the relevant time period at issue in this lawsuit. *Id.*

In response to the Notices, both Lufthansa and Air Canada refused to voluntarily comply with Dr. Saad's preservation request. Instead, they stated they would only preserve relevant documents with a court order. Further, the Airlines refused to offer assurances that the documents would not be destroyed due to their automatic processes for document maintenance and deletion. In fact, Lufthansa stated that certain documents within the scope of the Notice and therefore relevant to the Tiger Squad's travel to Canada may be permanently deleted before the end of the 2021 calendar year.

In particular, Lufthansa advised that its practice is to delete certain records—including information relating to ticket purchases, such as the name of the passenger, information about the ticket, and general flight information, including the origin and destination of the flight—at the end of the third calendar year after the creation of such records. Hipp Decl. ¶ 4. Thus, under Lufthansa's existing policies, certain records relating to flights that took place in October 2018— including flights on which the Tiger Squad Defendants are believed to have traveled—may be deleted on December 31, 2021. *Id.*

For its part, Air Canada confirmed that relevant information pertaining to the Tiger Squad's October 2018 flight to Canada referenced in Dr. Saad's preservation notice exists and is currently available, but could not identify when these documents would be deleted pursuant to Air Canada's existing practices and policies.  Hipp Decl. ¶ 8.  Air Canada refused to take steps to preserve the documents absent a court order, despite confirming that relevant documents exist and despite its inability to provide any assurances that those documents would be retained after January 2022. *See id.*

Given the Defendants' refusal to commence discovery during the pendency of the motions to dismiss and the Airlines' position refusing to preserve documents, Dr. Saad prepared two limited subpoenas—one directed to Lufthansa and the other to Air Canada —to ensure this highly relevant evidence is preserved.  Hipp Decl. Exhibits C and D.[3]  The subpoenas are limited in scope, containing just two requests each, and appropriately tailored to seek information regarding only those Defendants whom Dr. Saad holds a good faith belief traveled to Canada in connection with the attempted extrajudicial killing.  Specifically, the subpoena to Air Canada seeks: (1) records relating to two specific flights on which certain Defendants traveled into the United States and landed in Canada, and (2) records relating to eleven specific individuals Dr. Saad believes traveled to or supervised travel to Canada in connection with the attempted extrajudicial killing in a narrow 14-month window surrounding the known travel.  Hipp Decl. Ex. D.  The subpoena to Lufthansa is similarly limited in scope and seeks: (1) records relating to a specific Lufthansa flight on which Dr. Saad has reason to believe certain Defendants traveled, and (2) records relating to eleven

---

[3] Dr. Saad identified a corporate address for Lufthansa in New York under its English name, as well as an agent for service of process for Lufthansa in Virginia under its German name.  As such, Dr. Saad proposes to serve his single subpoena to Lufthansa upon both addresses.

4

specific individuals Dr. Saad believes traveled to Canada in connection with the attempted extrajudicial killing in the same narrow 14-month window. Hipp Decl. Ex. C.

On November 22, 2021, Dr. Saad contacted counsel for Defendants by email to request that the parties hold a conference pursuant to Rule 26(f). *See* Fed. R. Civ. P. 26(f). By email dated November 24, 2021, counsel for Defendants indicated their refusal to participate in a Rule 26(f) conference. Dr. Saad thereafter conferred with counsel for Defendants about Dr. Saad's motion for leave to serve Rule 45 subpoenas on Air Canada and Lufthansa to ensure that key relevant documents are not destroyed. Defendants' counsel indicated that they take no position with respect to the relief sought herein at this time.

## **LEGAL STANDARD**

Under Rule 26, the Court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (internal quotation marks omitted); *see also Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020) ("[D]istrict courts have broad discretion over the structure, timing, and scope of discovery."). This includes "the inherent power to order that evidence be preserved . . . ." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004) (citations omitted); *see also Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, No. CV 14-765 (GK), 2016 WL 10676292, at *3 (D.D.C. Dec. 12, 2016) (acknowledging that if the records at issue "were destroyed for some reason, Plaintiff would have no recourse whatsoever" and ordering that the defendant preserve relevant documents to provide "assurances against the risk that the [records] could be destroyed"). In the context of documents held by non-parties, a Rule 45 document production subpoena is the appropriate mechanism to ensure that relevant documents are not destroyed. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 102 (D.D.C. 2018) (observing that "the Federal Rules

5

expressly permit a document production subpoena but do not provide for a document preservation subpoena").

Courts in this Circuit have applied two different tests to determine whether to authorize discovery in advance of a Rule 26(f) conference: a "reasonableness" test and the "*Notaro* test."[4] *Dunlap*, 319 F. Supp. at 103 (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). Recent cases have concluded that the "reasonableness" or "good cause" test is most consistent with the District Court's "broad discretion in handling discovery." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (Bates, J.); *see also Garnett v. Zeilinger*, No. 17-CV-1757 (CRC), 2017 WL 8944640, at *1 (D.D.C. Dec. 15, 2017) (Cooper, J.) (granting motion for expedited discovery using the "'reasonableness' test" set forth in *Guttenberg*); *Strike 3 Holdings, LLC v. Doe*, No. 17-CV-2347 (TJK), 2018 WL 385418, at *1 (D.D.C. Jan. 11, 2018) (granting motion for leave to serve third-party subpoena prior to Rule 26(f) conference using "good cause" standard); *Malibu Media, LLC v. Doe*, No. CV 19-2025 (TJK), 2019 WL 3238636, at *1 (D.D.C. July 18, 2019) (same). Under this test, courts consider the following factors:

> (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on

---

[4] Although discovery ordinarily does not begin prior to a Rule 26(f) conference, courts are empowered to authorize discovery prior to such conference under Rule 26(d)(1) and typically apply one of these two tests. Chief Judge Howell recently indicated that neither test may be appropriate in light of the 2015 amendment to Rule 26, which deleted the "good cause" language in favor of a proportionality standard. *See Goodwin v. D.C.*, No. 21-CV-806 (BAH), 2021 WL 1978795, at *3 n.1 (D.D.C. May 18, 2021) (applying neither *Notaro* nor "good cause" to a request for early discovery). Nevertheless, because the D.C. Circuit's most recent foray into the topic declined to reconsider the standard—*see Strike 3 Holdings*, 964 F.3d at 1207 n.2 (declining to address "whether the 'good cause' standard continues to apply under the current version of Rule 26")—and because this Court has applied the good cause standard subsequent to the rule change, *see Malibu Media*, 2019 WL 3238636, at *1, Dr. Saad focuses on that test here. In any event, the factors of a proportionality analysis significantly overlap with the reasonableness test, *see Goodwin*, 2021 WL 1978795, at *3 (enumerating factors), and Dr. Saad would prevail on his request under either test.

the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019) (Chutkan, J.) (granting motion for expedited discovery) (internal quotation marks omitted).

The alternate test, known as the "*Notaro* test," requires that the party seeking discovery prior to a Rule 26(f) conference show:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Dunlap*, 319 F. Supp. 3d at 103 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).

## ARGUMENT

### I. Service of Two Subpoenas Is Necessary to Prevent Destruction of Relevant Documents.

Under any test, in these circumstances Dr. Saad should be entitled to serve subpoenas on Air Canada and Lufthansa to ensure that documents relevant to his case are not destroyed. Under the reasonableness test most often applied in this district, good cause exists to grant leave to serve the two limited subpoenas because without them key evidence may be permanently destroyed. Likewise, under the *Notaro* test, Dr. Saad is entitled to the relief sought because he will suffer irreparable harm if he is not permitted to serve the subpoenas.

#### A. Dr. Saad Satisfies the Reasonableness Test.

Dr. Saad's request to serve the two subpoenas is eminently reasonable under the circumstances because it is solely meant to avoid the permanent destruction of key documents. In particular, the factors pertaining to the limited scope of the subpoenas, the important purpose they

serve, and the non-existent burden on Defendants strongly favor granting Dr. Saad leave to serve the subpoenas.

First, the subpoenas are targeted and narrow in scope. They seek information only about Defendants alleged or believed to have traveled to Canada to extrajudicially kill Dr. Saad or who directly supervised those Defendants, and about expressly identified flights on which the Defendants are believed to have traveled. Each subpoena is limited to two requests for documents from a narrow time period that the subpoena recipients are unwilling to preserve absent judicial action.

Next, the requests serve a critical purpose—namely, preserving evidence relevant to Dr. Saad's allegations that may otherwise be lost forever. *See Warner Bros. Recs. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) (granting Plaintiffs expedited discovery to serve a third-party subpoena where "the information [was] not only relevant but crucial to the prosecution of plaintiffs' claims"); *cf. Goodwin v. D.C.*, No. 21-CV-806 (BAH), 2021 WL 1978795, at *6 (D.D.C. May 18, 2021) (granting motion for early discovery because of "the importance of the issues at stake in the action" where the case "involves serious claims of use of excessive force and misconduct by MPD officers in their interactions with peaceful protesters"). Dr. Saad's claims—which arise under statutes (the Torture Victim Protection Act and the Alien Tort Statute) designed to ensure that flagrant violations of U.S. law and international norms do not go unchecked—could be prejudicially hampered without access to the travel records of the Tiger Squad Defendants.

Here, the destruction of the records sought would not only deprive Dr. Saad of evidence supporting his allegations against the Defendants that have been identified to date, but it also could preclude him from identifying the John Doe Defendants who participated in the attempted extrajudicial killing and traveled to Canada in coordination with the Tiger Squad Defendants that

Dr. Saad has identified to date. *See supra* n.2 and Dkt. 66 ¶ 123. There is good cause to serve third-party subpoenas early in a case for the purpose of discovering the identity of John Doe defendants, so that the case can move forward against these otherwise unidentified defendants. *See, e.g.*, *Strike 3 Holdings*, 964 F.3d at 1214; *Malibu Media*, 2019 WL 3238636, at *1–2; *Strike 3 Holdings, LLC v. Doe*, No. 17-CV-2347 (TJK), 2018 WL 385418, at *1–2 (D.D.C. Jan. 11, 2018).

As to the factor pertaining to the burden on Defendants to comply with the requests, the subpoenas impose no burden at all on Defendants because they seek information only from third parties Air Canada and Lufthansa. To the extent consideration of the burden imposed on the Airlines is relevant to this factor, that burden is minimal, particularly given the limited scope of the subpoenas.

Other factors considered in the "reasonableness" inquiry do not change the analysis. Although there is no preliminary injunction pending (factor 1), that factor is not dispositive. *See Arista Recs. LLC v. Does 1-19*, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) (the argument that expedited discovery is unavailable "'without a prayer for injunctive relief' . . . is meritless").[5] Likewise, the timing of the subpoenas relative to the typical discovery process (factor 5) is not a reason to deny Dr. Saad leave to serve them. Indeed, the fact that this request precedes a Rule 26(f) conference—which Plaintiff sought but Defendants refused—does not change the calculus, because the urgency of preserving the narrow documents at issue here bears no relationship to the progress of the litigation. Dr. Saad cannot wait until closer to the discovery period to serve the subpoenas because the records he is seeking very well may no longer exist at that point.

---

[5] If instead Chief Judge Howell's formulation of a proportionality test applies, whether a preliminary injunction is pending is not even a factor. *See Goodwin*, 2021 WL 1978795, at *3.

In sum, there is good cause to grant Dr. Saad leave to serve the subpoenas—namely, to prevent imminent destruction of records that are critical to ensuring that Defendants do not escape liability for their wanton attempt on Dr. Saad's life. *See Veeder-Root Fuelquest, LLC v. Wisdom*, No. 2:21-CV-00352-RAJ, 2021 WL 1209257, at *4 (W.D. Wash. Mar. 31, 2021) (holding that "[p]laintiff's request for expedited discovery is reasonable" given, *inter alia*, plaintiff's valid "concerns about the loss or destruction of" information); *United States v. Gachette*, No. 6:14-CV-1539-ORL-37, 2014 WL 5518669, at *1 (M.D. Fla. Sept. 26, 2014) (good cause for expedited discovery exists "to preserve evidence that may be destroyed before it can be obtained by ordinary discovery"); *R & D Film 1, LLC v. Does 85-133*, No. 2:12-CV-1113, 2012 WL 12887945, at *1 (S.D. Ohio Dec. 20, 2012) (observing that "[g]ood cause is often found in cases . . . where evidence may be lost or destroyed with time" and granting plaintiff leave to serve limited expedited discovery).

### B. Dr. Saad Also Satisfies the More Stringent *Notaro* Test.

Even under the stricter *Notaro* test, which has fallen out of favor in this Circuit, Dr. Saad is clearly entitled to the relief sought. Dr. Saad will obviously suffer irreparable injury if he is not granted leave to serve subpoenas on the Airlines, because he will be permanently deprived of key evidence supportive of his claims. *See, e.g.*, *Am. Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 233 (D.D.C. 1980) (finding that the plaintiff "will suffer significant, irreparable injury if defendants' continuing destruction of FBI files [in accordance with its record destruction program] is not enjoined"). The connection between the discovery sought and the avoidance of irreparable injury could not be closer. Defendants will suffer no injury or prejudice at all if the request is granted because no information is sought from them. Further, Dr. Saad has established the requisite probability of success on the merits. The Amended Complaint alleges in exceptional

detail the relentless efforts by Defendants to track him down so that he could be killed, spelling out over the course of hundreds of paragraphs the purpose and timeline of the attempted extrajudicial killing, as well as each Defendant's contribution to the scheme.

Thus, even if the Court relies on the *Notaro* factors, leave to serve the subpoenas is appropriate. *See Monsanto Co. v. Woods*, 250 F.R.D. 411, 414 (E.D. Mo. 2008) (plaintiffs were entitled to expedited discovery under both "good cause" and *Notaro* standards where they alleged the "potential for spoliation of evidence and resulting prejudice to plaintiffs and the connection between that prejudice and the discovery sought").

## II. The Subpoenas Do Not Impose an Undue Burden on Nonparties.

Because Dr. Saad seeks to serve subpoenas under Rule 45, the Court may also consider the burden imposed by the proposed subpoenas. *See Dunlap*, 319 F. Supp. at 101. In addition to exercising "general[] sensitiv[ity] to the costs imposed on third parties," courts evaluating whether a third-party subpoena imposes an undue burden consider the factors relevant to all discovery and set forth in Rule 26(b)—namely:

> whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

*Watts*, 482 F.3d at 509 (quoting Fed. R. Civ. P. 26(b)(1)–(2)).

Here, the subpoenas are narrowly crafted in order to minimize the burden on Air Canada and Lufthansa. In brief, the subpoenas ask for documents concerning only two flights in a 14 month time period and regarding eleven individuals. These requests seek a circumscribed set of records that already exist and that are easily identifiable; thus, complying with the subpoenas

requires only that the Airlines search for such records and produce a finite set of materials in the same format in which they are presently stored.[6] The evidence is not cumulative or duplicative, and it cannot be obtained from any other source. If it is destroyed pursuant to Air Canada and Lufthansa's document retention policies, there will be no way to recover it. Further, for the reasons set forth above, the "benefit" of these documents, "taking into account the needs of the case," Fed. R. Civ. P. 26(b)(1), is substantial.

## CONCLUSION

Based on the foregoing, Dr. Saad respectfully requests that the Court grant leave to serve two third-party subpoenas necessary to prevent the destruction of relevant evidence as described herein.

Dated: December 3, 2021

Respectfully submitted,

JENNER & BLOCK LLP

  /s/ David Pressman

David Pressman
D.C. Bar No. 1013431
Jason P. Hipp
DDC No. NY0397
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com
jhipp@jenner.com

---

[6] In this respect, Dr. Saad's subpoenas are unlike the subpoena at issue in *Dunlap*, where the court found that the "[p]laintiff's sprawling list of nineteen specific document categories likely would render compliance with this subpoena rather difficult, even assuming [the subpoenaed person] has diligently maintained the documents at issue." 319 F. Supp. 3d at 104.

                                      Lindsay Harrison
                                      D.C. Bar No. 977407
                                      Zachary C. Schauf
                                      D.C. Bar No. 1021638
                                      Jenner & Block LLP
                                      1099 New York Avenue, NW
                                      Suite 900
                                      Washington, DC 20001-4412
                                      Telephone: (202) 639-6865
                                      Fax: (202) 639-6066
                                      lharrison@jenner.com
                                      zschauf@jenner.com

                                      *Counsel for Plaintiff*