IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAAD ALJABRI | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:20-cv-02146-TJK |
| MOHAMMED   BIN   SALMAN   BIN | § | |
| ABDULAZIZ AL SAUD, et al. | § | |
| | § | |
| Defendants. | § | |

**BADER ALASAKER'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO
SERVE TWO THIRD-PARTY SUBPOENAS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

I.    DISCOVERY IN THIS CASE HAS NOT BEGUN. ...................................................... 2

II.   THE PROPOSED SUBPOENAS REVEAL PLAINTIFF'S EFFORTS TO SEEK
      BROAD, UNNECESSARY, AND IRRELEVANT RECORDS. ..................................... 3

ARGUMENT ........................................................................................................................... 5

I.    PLAINTIFF MAY NOT SEEK DISCOVERY UNTIL THE COURT RESOLVES
      DEFENDANTS' MOTIONS TO DISMISS.................................................................... 5

II.   PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE FOR EXPEDITED
      DISCOVERY ................................................................................................................. 6

      A.    The Good Cause Factors Do Not Support The Motion. ......................................... 7

      B.    Plaintiff Has Not Shown Good Cause To Seek Mr. Alasaker's Travel
            Records. .......................................................................................................... 13

III.  A PROTECTIVE ORDER IS NECESSARY IF PLAINTIFF'S MOTION IS
      GRANTED. ................................................................................................................. 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AF Holdings, LLC v. Does 1-1058*,
  752 F.3d 990 (D.C. Cir. 2014) ........................................................................... 8

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 5–6, 11

*Broidy Capital Mgmt. LLC v. Muzin*,
  12 F.4th 789 (D.C. Cir. 2021) ..................................................................... 5, 11

*Carmichael v. Riley*,
  No. 06-5542 RJB/KLS, 2007 WL 1991036 (W.D. Wash. July 3, 2007) ................................. 6

*Commc'ns Satellite Corp. v. F.C.C.*,
  611 F.2d 883 (D.C. Cir. 1977) ......................................................................... 12

*Dunlap v. Presidential Advisory Committee*,
  319 F. Supp. 3d 70 (D.D.C. 2018) ............................................................... 11–12

*Food Lion v. United Food & Com. Workers Union*,
  103 F.3d 1007 (D.C. Cir. 1997) ..................................................................... 8–9

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) ................................................................... 6, 7

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ..................................................................................... 5

*Hunter v. Bryant*,
  502 U.S. 224 (1991) ..................................................................................... 5

*In re Clinton*,
  973 F.3d 106 (D.C. Cir. 2020) ......................................................................... 7

*Landwehr v. F.D.I.C.*,
  282 F.R.D. 1 (D.D.C. 2010) ............................................................................ 7

*Loumiet v. United States*,
  225 F. Supp. 3d 79 (D.D.C. 2016) ..................................................................... 5

*M.G. v. Metro. Interpreters & Translators, Inc.*,
  No. 12cv460-JM (MDD), 2013 WL 690833 (S.D. Cal. Feb. 26, 2013) ................................... 6

———

\* Authorities upon which we chiefly rely are marked with an asterisk.

*Malibu Media, LLC v. Doe*,
No. 19-2025 (TJK), 2019 WL 3238636 (D.D.C. July 18, 2019) .......................................... 6–7

*Notaro v. Koch*,
95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................................................... 7

*O'Sullivan v. Deutsche Bank AG*,
No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018) ..................... 11

*Oueiss v. Al Saud*,
No. 1:20-cv-25022-KMM (S.D. Fla. Apr. 5, 2021), ECF No. 130 ...................................... 6

*Pinson v. U.S. Dep't of Justice*,
No. 18-486 (RC), 2021 WL 3418954 (D.D.C. Aug. 5, 2021) ........................................... 8

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020) ............................................................................. 7, 8, 9–10

**OTHER AUTHORITIES**

Air Canada, 2018 Annual Report (Mar. 1 2019),
https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/annual-
report/2018_ar.pdf ...................................................................................................... 12

*Former Saudi intelligence official accuses Mohammed bin Salman of multiple murder
plots, kidnapping and torture*, CBS News,
https://www.cbsnews.com/video/mohammed-bin-salman-alleged-plot-saad-aljabri-60-
minutes-video-2021-10-24/ (Oct. 24, 2021) ............................................................... 15

Lufthansa Group, 2018 Annual Report (Mar. 14, 2019),
https://investor-relations.lufthansagroup.com/fileadmin/downloads/en/financial-
reports/annual-reports/LH-AR-2018-e.pdf ............................................................... 12

**RULES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 13

Fed. R. Civ. P. 26(d)(1) ............................................................................................. 2, 6

Fed. R. Civ. P. 45(d)(1) ............................................................................................... 12

Local Rule 16.3(b) ............................................................................................... 2, 5, 13

## INTRODUCTION

The Local Rules of this Court make clear that discovery does not begin until the Defendants have filed an answer. Defendants have not filed answers and have filed motions to dismiss which raise significant jurisdictional issues, including the immunity of Defendants. Despite those pending motions, Plaintiff has filed a premature request for leave to serve two third-party subpoenas. That motion should be denied.

*First*, Plaintiff's request is an end-run around both the Local Rules and case law governing assertions of immunity defenses. Defendants' pending motions to dismiss raise dispositive immunity issues. As the Supreme Court has emphasized, discovery should not proceed until immunity arguments are resolved.

*Second*, Plaintiff's request for leave fails to establish good cause for expedited discovery. There is no preliminary injunction pending, and discovery has not started. Plaintiff's subpoenas are a fishing expedition for 14 months of travel information that is overbroad and irrelevant. The subpoenas seek information for a time period that has no basis in the Amended Complaint, for Defendants that are not alleged to have traveled on the subpoenaed airlines, for flights that are not identified in the Amended Complaint, and for destinations that have no relation to this case. Plaintiff also has not established that seeking these records now is necessary, as is clear from his declaration. In addition, Plaintiff's argument that his request would not be burdensome ignores that Defendants have raised immunity defenses and that the subpoenas are also burdensome as to Lufthansa and Air Canada.

*Third*, there is no reason to include Mr. Alasaker in the subpoenas. The Amended Complaint and motion allege no facts linking Mr. Alasaker to the alleged conspiracy after the fall of 2017, no travel by Mr. Alasaker to Canada, no travel on Air Canada or Lufthansa, and no

connection between Mr. Alasaker and the individuals who purportedly did travel on those airlines. Plaintiff's motion does not even mention Mr. Alasaker by name.

For all these reasons, the Court should deny Plaintiff's request for leave to serve subpoenas on Air Canada and Lufthansa.

## BACKGROUND

### I.     DISCOVERY IN THIS CASE HAS NOT BEGUN.

On August 6, 2020, Plaintiff filed his original complaint against over a dozen named defendants, including the Crown Prince Mohammed bin Salman and several Saudi government officials, and multiple John Doe Defendants. On April 5, 2021, all appearing Defendants filed motions to dismiss the Amended Complaint raising significant threshold issues. *See* ECF Nos. 92–96. As alleged by Plaintiff, Mr. Alasaker is a Saudi national who resides in the Kingdom of Saudi Arabia and is the "head of [the Crown Prince's] private office." Am. Compl. ¶ 40. Mr. Alasaker, like other Defendants, argued that this Court lacked personal jurisdiction over him and that he was entitled to sovereign immunity, thus divesting the Court of subject matter jurisdiction over this suit. *See* ECF No. 94.

Consistent with Federal Rule of Civil Procedure 26(d) and this Court's Local Rule 16.3(b), no discovery has taken place in this matter since the Complaint was filed. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," with some exceptions, including a court order.); Local Rule 16.3(b) ("The requirements of this Rule and of Fed. R. Civ. P. 16(b) and 26(f), shall not apply in cases in which no answer has yet been filed."). Despite the rule prohibiting discovery at this juncture in the case, on November 22, 2021, Plaintiff's counsel asked for a Rule 26(f) conference to begin discovery. ECF No. 123–24 (O'Donnell Decl., Ex. A). Defendants responded that such a request was premature under the Local Rules because Defendants' motions to dismiss were pending. *Id.*

On December 1, 2021, Plaintiff's counsel told Defendants' counsel that Plaintiff intended to request leave to issue subpoenas to Lufthansa and Air Canada. *Id.* Defendants' counsel tried to obtain additional information about the specifics of the subpoenas sought by Plaintiff, *see id.*, but Plaintiff did not provide the details of the information sought by the subpoenas until filing the present motion on December 3. ECF No. 121.

## II.  THE PROPOSED SUBPOENAS REVEAL PLAINTIFF'S EFFORTS TO SEEK BROAD, UNNECESSARY, AND IRRELEVANT RECORDS.

The primary basis for Plaintiff's motion for leave is the alleged "imminent destruction of evidence," Mem. 1, although that allegation is not borne out by the declaration. *See infra* Argument, § II.A.

Based on that rationale, Plaintiff's proposed subpoenas seek two types of information. First, the subpoenas ask for all "Documents and Communications" for three flights between Germany and Canada. ECF Nos. 121-5 at 12, 121-6 at 9. Two were Air Canada flights, one on October 15, 2018 and another on July 2, 2018, and one was a Lufthansa flight on October 15–16, 2018. Plaintiff did not narrow those requests by the individuals alleged to have traveled on these flights. Only the Air Canada flight on October 15, 2018 is identified in the Amended Complaint. *See* Am. Compl. ¶ 334. The Amended Complaint never alleges that any Defendant traveled on Lufthansa.

Second, the subpoenas ask each airline to provide "[a]ll Documents and Communications dated January 1, 2018 to February 28, 2019 concerning the Tiger Squad Individuals." ECF Nos. 121-5 at 12, 121-6 at 9. Although Plaintiff's allegations focus on the October 15, 2018 flight to Canada, *see* Am. Compl. ¶ 334, this request asks for information from more than nine months before, and four months after, that flight. The request encompasses any destination to which the identified individuals may have traveled over 14 months.

3

The subpoenas also introduce a new concept: the "Tiger Squad *Individuals*," ECF Nos. 121-5 at 9, 121-6 at 6 (emphasis added). This is a different collection of individuals from the "Tiger Squad Defendants"[1] defined in the Amended Complaint. The Tiger Squad Defendants refer to seven named Defendants and eight John Doe Defendants allegedly involved in the purported plot to kill Plaintiff in October 2018 in Canada, and the term does not include Mr. Alasaker. Am. Compl. ¶¶ 111–24. The subpoenas define the "Tiger Squad *Individuals*" to include the seven Tiger Squad Defendants, but add Mr. Alasaker and Defendants Saad Alqahtani and Ahmed Alassiri, as well as Abdulaziz Alabdulkareem, an individual never identified in the Amended Complaint.

Although Plaintiff's subpoenas characterize Mr. Alasaker as a "Tiger Squad Individual," there are no factual allegations in the Amended Complaint linking Mr. Alasaker to the "Tiger Squad Defendants." *See* Alasaker Mot. to Dismiss 8–9, 35, ECF No. 94 ("no factual allegations showing that Mr. Alasaker agreed to be involved, or was involved, in the alleged attempted killing"); Pl.'s Opp'n 96, ECF No. 102 (not disputing that Mr. Alasaker did "not" "command[] . . . the Tiger Squad Defendants"). The Amended Complaint alleges (in conclusory fashion) that Mr. Alasaker recruited and directed other individuals to search for Plaintiff in the United States in 2017. Alasaker Mot. to Dismiss 6, 8–9, 11–16. The Amended Complaint does not allege that Mr. Alasaker ever traveled to Canada. It does not allege that he traveled on Air Canada or Lufthansa at any point to any location. The individuals that Mr. Alasaker supposedly recruited

---

[1] For ease of reference for the Court, Mr. Alasaker will use "Tiger Squad Defendants" and "Tiger Squad Individuals," but does not agree that such Defendants or individuals are part of any "Tiger Squad," that such a group exists or took any action against Plaintiff, or that any of the allegations in the motion and Amended Complaint are true.

are not subjects of the subpoenas. There are no factual allegations after the fall of 2017 connecting

Mr. Alasaker to the plot against Plaintiff, including the alleged trip to Canada in October 2018.

## ARGUMENT

### I.  PLAINTIFF MAY NOT SEEK DISCOVERY UNTIL THE COURT RESOLVES DEFENDANTS' MOTIONS TO DISMISS.

The Local Rules of this Court prohibit discovery until an answer is filed. *See* Local Rule

16.3(b). That rule applies with particular force in this case, where Defendants have raised

significant foreign sovereign immunity arguments in their pending motions to dismiss. Only after

the Court resolves those issues may discovery proceed. *See Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982) ("Until this threshold immunity question is resolved, discovery should not be

allowed."); *Loumiet v. United States*, 225 F. Supp. 3d 79, 82 (D.D.C. 2016) ("In accordance with

these principles, courts in this district have found it appropriate to stay discovery where qualified

immunity has been pleaded and threshold motions are pending.").[2]

That well-established principle applies to any and all discovery, whether or not the

discovery is sought from the defendant raising immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685

(2009) ("It is no answer to the[] concerns [of litigation from which immunity protects] to say that

discovery for [parties asserting immunity] can be deferred while pretrial proceedings continue for

other defendants."). The reason to preclude such discovery is straightforward: once discovery

begins it would be "quite likely that . . . it would prove necessary for [parties asserting immunity]

and their counsel to participate in the process to ensure the case does not develop in a misleading

---

[2] *Harlow* and *Lumiet* arose in the qualified immunity context. The same principles apply to foreign sovereign immunity, as both are an entitlement to "*immunity from suit* rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (describing qualified immunity) (citation omitted); *see Broidy Capital Mgmt. LLC v. Muzin*, 12 F.4th 789, 792 (D.C. Cir. 2021) (explaining that a meritorious "claim of foreign sovereign immunity . . . provides protection from suit and not merely a defense to liability") (citation omitted).

or slanted way that causes prejudice to their position." *Id.* As a result, even if parties claiming immunity "are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery." *Id.* at 685–86; *see, e.g.*, *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12cv460-JM (MDD), 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying discovery from non-immune defendants and non-parties because "[t]he concerns expressed in *Iqbal* regarding potential prejudice to stayed defendants appear[] real in this case"); *Carmichael v. Riley*, No. 06-5542 RJB/KLS, 2007 WL 1991036, at *2 (W.D. Wash. July 3, 2007) (granting immune defendants' motion to stay all discovery and denying plaintiff's motion to depose two non-parties).

In a recent decision involving Mr. Alasaker and some of the other Defendants here, the United States District Court for the Southern District of Florida granted defendants' motion to stay discovery—including as to third parties—pending a ruling on motions to dismiss that raised foreign immunity and personal jurisdiction arguments. *See Oueiss v. Al Saud*, No. 1:20-cv-25022-KMM (S.D. Fla. Apr. 5, 2021), ECF No. 130. The District Court explained that because "the majority of the named Defendants assert at least one form of immunity and challenge personal jurisdiction," "[t]hose matters simply must be resolved before discovery can proceed." *Id.* at 6. The same holds true here.

## II.   PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE FOR EXPEDITED DISCOVERY.

Plaintiff cannot overcome the prohibition on discovery at this stage. "[E]xpedited discovery is not the norm, particularly where defendants have filed a motion to dismiss." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). Accordingly, prior to a Rule 26(f) conference, a party may seek discovery only if "authorized . . . by court order." Fed. R. Civ. P. 26(d)(1). This Court, as well as others within the District, permit such discovery only where "good

cause" exists. *See Malibu Media, LLC v. Doe*, No. 19-2025 (TJK), 2019 WL 3238636, at *1 (D.D.C. July 18, 2019) (Kelly, J.).[3]

It is Plaintiff's burden to establish good cause for his unusual request to serve two third-party subpoenas before discovery has commenced. *See Guttenberg*, 26 F. Supp. 3d at 98. Courts consider the following factors in evaluating "good cause" under the "reasonableness" standard: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 98 (citation omitted). When a motion to dismiss is pending, that is the "most important" factor weighing against a finding of reasonableness. *Id.* at 99. For the reasons below, Plaintiff cannot meet his burden.

**A.    The Good Cause Factors Do Not Support The Motion.**

Plaintiff concedes that the first factor does not support early discovery, as there is no preliminary injunction pending. Mem. 9. Likewise, Plaintiff does not dispute that the last factor cannot support issuing the subpoenas, as "the pendency of defendants' motion to dismiss" means that the "request for expedited discovery comes 'well in advance of typical discovery.'" *Guttenberg*, 26 F. Supp. 3d at 99 (quoting *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010));

---

[3] Because Plaintiff has failed to satisfy "good cause," the stricter *Notaro* test would lead to the same result. *See Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). In particular, Plaintiff has not established a probability of success on the merits, as Defendants' motions to dismiss demonstrate. *See* ECF Nos. 92–96. The D.C. Circuit has also observed that the 2015 Amendments to Federal Rule of Procedure 26 "delete[d] the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action" and "narrowed" Rule 26. *In re Clinton*, 973 F.3d 106, 114 n.2 (D.C. Cir. 2020) (citation omitted). In *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210 (D.C. Cir. 2020), the D.C. Circuit did not reconsider the standard for expedited discovery, but applied a relevance and proportionality analysis under Rule 26. Plaintiff's motion would fail under that narrower standard as well.

*see Pinson v. U.S. Dep't of Justice*, No. 18-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) ("Most concerning is the existence of Defendants' outstanding motion to dismiss."). None of the remaining factors weigh in favor of early discovery.

   The Subpoenas Are Irrelevant And Overbroad.[4] In assessing a motion for expedited discovery, the D.C. Circuit has instructed that "courts must look carefully to the complaint's allegations to determine if the requested discovery is relevant and proportional to the needs of the case." *Strike 3 Holdings*, 964 F.3d at 1210. And it made clear that it would "not allow the plaintiff to abuse[] the discovery process by seeking irrelevant information." *Id.* at 1210–11 (citation omitted).[5]

   The Amended Complaint and Plaintiff's motion illustrate the irrelevance and overbreadth of the requested discovery. And as set forth below in Section B, *infra*, none of these airlines or flights have any connection to Mr. Alasaker.

   *First*, the subpoenas seek information over an irrelevant and overbroad timeframe of 14 months from January 1, 2018 through February 28, 2019. The Amended Complaint alleges only one flight related to the purported plot against Plaintiff—Air Canada flight AC839 on October 15, 2018. Am. Compl. ¶ 334. Yet the subpoenas seek records from over nine months before, and four months after, that flight. Nothing in the motion provides factual support for that expansive time period. *See Food Lion v. United Food & Com. Workers Union*, 103 F.3d 1007, 1012 (D.C. Cir.

---

[4] Because the subpoenas seek irrelevant information and are overbroad, Plaintiff would not suffer irreparable harm absent relief under the *Notaro* framework.

[5] Although *Strike 3* did not apply the good-cause test, its discussion of relevance is instructive as to that test as well. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995–96 (D.C. Cir. 2014) (court must "satisfy[] its Rule 26 obligation to ensure that the scope of discovery is limited to issues actually relevant to the litigation").

1997) ("[N]o one would suggest that discovery should be allowed of information that has no conceivable bearing on the case." (citation omitted)).

*Second*, the subpoenas ask for information of flights not mentioned in the Amended Complaint: an Air Canada flight from Frankfurt to Montreal on July 2, 2018 and a Lufthansa flight from Munich to Montreal on October 15 and 16, 2018. ECF Nos. 121-5 at 12, 121-6 at 9. The motion does not explain why the July 2 Air Canada flight is included in the subpoena. As to the Lufthansa flight, counsel asserts in the brief that Plaintiff has "reason to believe" that certain Defendants traveled on this flight. Mem. 4. That claim is not supported by a declaration or any evidence and should be rejected.

*Third*, the subpoenas ask for information from individuals who are not alleged to have traveled on the airlines. The Amended Complaint does not allege that any Defendant traveled on Lufthansa, but nonetheless would require that airline to search for records for ten Defendants. And Plaintiff concedes that the Air Canada subpoena seeks records of individuals who did not travel themselves but allegedly "supervised" others who did. *See* Mem. 4 (asserting that Air Canada subpoena seeks "records relating to eleven specific individuals Dr. Saad believes traveled to or supervised travel to Canada"). The motion does not explain how records of those who did not travel on Air Canada are relevant or targeted.

These deficiencies are exemplified by the subpoenas' request for the records of Abdulaziz Alabdulkareem. ECF Nos. 121-5 at 11, 121-6 at 8. Abdulaziz Alabdulkareem is not a defendant, is not mentioned in the Amended Complaint, and has not entered an appearance in this case. The motion does not proffer any facts explaining why Mr. Alabdulkareem is a subject of the subpoenas and he is also absent from the hold notices to Air Canada and Lufthansa. Thus, there is "little

reason to believe that the information sought [would] be relevant to the subject matter involved in the action." *Strike 3 Holdings*, 964 F.3d at 1210 (citation omitted).

*Fourth*, the subpoenas seek information from destinations that are unrelated to Plaintiff's allegations. The subpoenas include no geographical limitations, asking for records from each of the hundreds of destinations served by both airlines if any of the eleven individuals (or their thousand of name combinations) happened to have traveled to such locations. *See* ECF Nos. 121-5 at 12, 121-6 at 9. This extraordinary request belies the motion's repeated characterization of the subpoenas as seeking records related to "travel to Canada." Mem. 1, 3–4.

The Subpoenas Do Not Serve A "Critical Purpose." Plaintiff has also failed to establish the purported "critical purpose" underlying his motion—that the requested information will be destroyed at the end of 2021. Mem. 8. That argument is not supported by Plaintiff's declaration or by the motion, which is couched in hypotheticals. *See id.* at 3 ("certain records . . . may be deleted"); *id.* at 8 (evidence "may otherwise be lost forever").

Plaintiff has not established that the documents will be destroyed. According to the declaration, "Air Canada initially advised that 'reservation data is kept for at least 5 years,' but later said that information is not kept for five years." ECF No. 122 ¶ 8. The declaration did not make clear if reservation data is maintained for longer or shorter than five years, saying only that "certain" unspecified "information" "sheds after a certain time." *Id.* The Air Canada representative stated "I don't know" when asked when 2018 records would be deleted. *Id.*. And Plaintiff's declaration does not state that Air Canada's records from 2019 will be deleted.

Plaintiff's declaration is silent on whether Lufthansa in fact has any records Plaintiff seeks in the subpoena. As with the Air Canada subpoena, there is no representation that 2019 records will be destroyed this year. Although a Lufthansa representative described a three-year deletion

policy for "certain records," the representative "was unable to clarify exactly which records sought by Dr. Saad would be subject to the three-year policy and which records might be maintained in the normal course for other durations of time." *Id.* ¶ 5. Some records, like "passenger manifests are kept for a period shorter than three years." *Id.* Plaintiff's assertion of imminent destruction of 2018 records falls flat when the declaration concedes that Lufthansa "could not identify when the specific information sought in the Legal Hold Notice would be deleted." *Id.*

Even if Plaintiff had a factual basis for fearing that documents would be destroyed, "[t]he risk that non-parties may destroy documents . . . is one of the usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery." *O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (citation omitted). Thus, *O'Sullivan* concluded that this "ordinary risk of litigation does not constitute sufficient prejudice to warrant denying a stay of discovery." *Id.* For the same reasons, any potential destruction of Air Canada or Lufthansa records is an ordinary risk of litigation that does not warrant expedited discovery. If courts in this jurisdiction permitted fears about the destruction of evidence to lead to the start of expedited discovery, Local Rule 16.3 would be hollow.

The Subpoenas Are Burdensome. Plaintiff is wrong that the subpoenas would not burden the Defendants. Mem. 9. As described in section I *supra*, Defendants' immunity defenses preclude even third-party discovery. Otherwise, that "protection from suit," *Broidy*, 12 F.4th at 792, would be compromised, *see Iqbal*, 556 U.S. at 685–86 (recognizing that third-party discovery would "would not [] free" a presumptively immune party "from the burdens of discovery").

Plaintiff also contends that the Court should grant his motion because the subpoenas would not burden Air Canada and Lufthansa. Mem. 9, 11–12. In *Dunlap v. Presidential Advisory*

*Committee*, the court acknowledged that it was "appropriate to consider the potential burden on" an individual in that case "whether or not he remains a Defendant." 319 F. Supp. 3d 70, 105 (D.D.C. 2018). Here, it is appropriate to consider the undue burden Plaintiff's subpoena would impose on Air Canada and Lufthansa under both the "reasonableness test" and Federal Rule of Civil Procedure 45(d)(1).

Plaintiff has asked this Court to issue subpoenas that would require Air Canada and Lufthansa to search the records for over a million flights, which carried over two hundred million passengers to hundreds of destinations across the globe in a 14-month time period. Lufthansa carried nearly 150 million passengers on 1.2 million flights to over 300 destinations in 2018.[6] Air Canada carried over 50 million passengers on an average of 1,613 daily flights to 222 destinations in 2018.[7] Plaintiff also asks for records of all "subsidiaries" and "affiliates," ECF Nos. 121-5 at 8, 121-6 at 5. As a result, Air Canada must search the records of its regional carriers. The Lufthansa subpoena includes Deutsche Lufthansa AG—a corporate parent—and so Lufthansa must search records of subsidiary airlines like Austrian Airlines and SWISS, despite no assertion that any Defendant in this case flew on those airlines.[8]

In those voluminous records, Lufthansa and Air Canada must look for every possible name combination Plaintiff has listed for the eleven individuals. For some of these individuals, the

---

[6] *See* Lufthansa Group, 2018 Annual Report at 27, 41, 232 (Mar. 14, 2019), https://investor-relations.lufthansagroup.com/fileadmin/downloads/en/financial-reports/annual-reports/LH-AR-2018-e.pdf ("Lufthansa 2018 Annual Report").

[7] Air Canada, 2018 Annual Report at 17 (Mar. 1 2019), https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/annual-report/2018_ar.pdf. The Court may take judicial notice of annual reports. *See Commc'ns Satellite Corp. v. F.C.C.*, 611 F.2d 883, 902 n.31 (D.C. Cir. 1977) (taking judicial notice of annual report "and other similar documents of AT&T and COMSAT").

[8] Lufthansa 2018 Annual Report at 126, 179, 186, 194–201.

subpoenas provide more than 20 names to be searched, thus requiring the airlines to conduct thousands of searches for the possible name combinations. ECF Nos. 121-5 at 10, 121-6 at 7.[9] The airlines must also search across staggering types of information. *See* ECF Nos. 121-5 at 8–9, 121-6 at 5–6 (definition of "Documents" and "Communication").

The burden and expense of such discovery "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). There is no justification for the intensive search required by the subpoenas.

**B.     Plaintiff Has Not Shown Good Cause To Seek Mr. Alasaker's Travel Records.**

The defects described above explain why this Court should not deviate from Local Rule 16.3(b) and allow expedited discovery. The specifics (or the lack thereof) relating to Mr. Alasaker further demonstrate the absence of any justification for subpoenaing Air Canada and Lufthansa for his information from January 1, 2018, through February 28, 2019. Given the absence of support for seeking Mr. Alasaker's records there is no basis to permit discovery to proceed as to him while his motion to dismiss is pending.

*First*, there are no factual allegations connecting Mr. Alasaker to Plaintiff's claims after the fall of 2017. Thus, any information from Lufthansa or Air Canada about him from 2018 and 2019 is irrelevant. Indeed, the motion never mentions Mr. Alasaker by name and offers no specific support for seeking his travel records. Mr. Alasaker (and the Court) must speculate as to the basis of the request with respect to Mr. Alasaker.

*Second*, Plaintiff cannot justify his subpoenas on the basis that Mr. Alasaker was one of the individuals who "traveled" to Canada. Mem. 4. There are no allegations in the Amended

---

[9] This encyclopedic request raises the possibility that the airlines will match some combinations of these names and disclose the records of individuals that have no connection to this lawsuit.

Complaint or the motion that Mr. Alasaker traveled to Canada, or that he boarded an Air Canada or Lufthansa flight to Canada or any other location.

*Third*, the Court should not grant leave to issue the Air Canada subpoena on the basis that Plaintiff seeks information about individuals who purportedly "supervised" the travel of the Tiger Squad Defendants to Canada, *id.* (Plaintiff does not assert this basis for the Lufthansa subpoena, *see id.*). The motion does not state that Mr. Alasaker was one of those individuals. And there are no factual allegations in the Amended Complaint that Mr. Alasaker "supervised" the "Tiger Squad Defendants," much less that he supervised their travel to Canada.[10] On the contrary, the Amended Complaint alleges that the Tiger Squad Defendants were directed by other individuals. Am. Compl. ¶ 334 ("On or around October 15, 2018, a team consisting of some of the Tiger Squad Defendants, all Saudi nationals acting at the Direction of Defendants bin Salman, Alqahtani, and Alassiri traveled . . . on Air Canada flight AC839."); *id.* ¶ 343 (alleging that "this Tiger Squad team . . . was overseen by Defendants Alqahtani and Alassiri"). Plaintiff's own chart showing the alleged connections among the Defendants does not link Mr. Alasaker with the Tiger Squad Defendants. *Id.* ¶ 124.

*Fourth*, Plaintiff has not established that Mr. Alasaker's information is necessary as to require expedited discovery. As described above, Mr. Alasaker is not alleged to have played any role in the alleged conspiracy from January 1, 2018 through February 28, 2019. Mr. Alasaker is not a "Tiger Squad Defendant," and has no connection to those Defendants, *see supra*. Thus, it is not necessary to obtain these records for "access to the travel records of the Tiger Squad

---

[10] The Amended Complaint contains two conclusory allegations that Mr. Alasaker provided unidentified "support" to the Tiger Squad. Am. Compl. ¶¶ 111, 114. As Mr. Alasaker explained in his motion to dismiss, there are no facts underlying those allegations. Alasaker Mot. to Dismiss 8–9, 35. In opposition, Plaintiff did not respond to that argument. *See* Pl.'s Opp'n 96.

14

Defendants." Mem. 8. In addition, seeking Mr. Alasaker's records would not help the other

purpose identified by Plaintiff—to "discover[] the identity of John Doe defendants." Mem. 9.

Given the absence of any justification for including Mr. Alasaker in these subpoenas, if the

Court grants Plaintiff's motion for leave to issue the two subpoenas, the Court should excise Mr.

Alasaker from the subpoena requests.

## III.   A PROTECTIVE ORDER IS NECESSARY IF PLAINTIFF'S MOTION IS GRANTED.

If the Court were to grant Plaintiff's extraordinary motion, a protective order would be

necessary. Multiple circumstances counsel in favor of a protective order, including that discovery

has not started, that the pending motions to dismiss raise significant immunity and personal

jurisdiction issues, the privacy interests of the individuals named in the subpoenas, and Plaintiff's

litigation of this case in the press.[11] At a minimum, the protective order must ensure that: (1) a

copy of the information produced by the airlines be provided to Defendants; (2) the information

produced by the airlines cannot be disclosed to anyone who is not a party or counsel to a party in

this case; (3) Plaintiff and his counsel may make use of the information produced only once (and

if) discovery starts; and (4) Plaintiff and his counsel may not use the information for any purpose

outside this litigation.

Accordingly, in the event Plaintiff's motion is granted and the parties are unable to

negotiate a protective order, Mr. Alasaker intends to move for one.

## CONCLUSION

The Court should deny Plaintiff's Motion for Leave to Serve Two Third-Party Subpoenas.

---

[11] *See Former Saudi intelligence official accuses Mohammed bin Salman of multiple murder plots, kidnapping and torture*, CBS News, https://www.cbsnews.com/video/mohammed-bin-salman-alleged-plot-saad-aljabri-60-minutes-video-2021-10-24/ (Oct. 24, 2021).

Respectfully submitted,


*/s/ Margarita K. O'Donnell*
By: William W. Taylor, III (D.C. Bar No. 84194)
Margarita K. O'Donnell (D.C. Bar No. 1005972)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: wtaylor@zuckerman.com
E-mail: modonnell@zuckerman.com
*Attorneys for Defendant Bader Alasaker*

**CERTIFICATE OF SERVICE**

I certify that on December 13, 2021, I electronically filed the foregoing Bader Alasaker's Opposition To Plaintiff's Motion For Leave To Serve Two Third-Party Subpoenas, using the ECF system, which sent notice of filing in this matter to all counsel of record.

*/s/ Margarita K. O'Donnell*

Margarita K. O'Donnell
*Attorney for Defendant Bader Alasaker*