IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. SAAD ALJABRI,<br><br>        Plaintiff,<br><br>        v.<br><br>MOHAMMED BIN SALMAN BIN<br>ABDULAZIZ AL SAUD, *et al.*<br><br>        Defendants. | Civil Action No. 1:20-cv-02146-TJK |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE TWO THIRD-PARTY SUBPOENAS IN ORDER TO PREVENT DESTRUCTION OF EVIDENCE

Plaintiff Dr. Saad Aljabri ("Dr. Saad" or "Plaintiff") respectfully submits this reply memorandum in further support of his motion for leave to serve two third-party subpoenas on Air Canada and Deutsche Lufthansa AG ("Lufthansa") to prevent the destruction of documents concerning the Tiger Squad's travel.[1]

Dr. Saad filed this motion to ensure that evidence central to the allegations in his Amended Complaint is not destroyed. That evidence demonstrates that members of the Tiger Squad took the extraordinary step of boarding commercial flights to Canada for the purpose of murdering him. Some Defendants (though not all)[2] nonetheless claim that records relating to those flights are irrelevant. They are wrong. They ground their arguments on an artificially narrow reading of the

---

[1] All terms used herein have the same meanings as in Plaintiff's opening brief, and as in the Amended Complaint. Dkts. 66, 121-1.

[2] Dr. Saad submits this Reply to the oppositions of Defendant Bader Alasaker, Dkt. 125, and Defendants Alqahtani, Alassiri, Alsaleh, Alsayed, Algasem, Alhaqbani, Alhomid, Albawardi, and Bader Alqahtani, Dkt. 126. Defendants bin Salman, the MiSK Foundation, Alrajhi, Alhamed, Abuljadayel, and Fakri Hamed do not oppose Dr. Saad's motion.

Amended Complaint.  And they fail to genuinely grapple with how the subpoenas that Dr. Saad requests seek targeted information that goes to the heart of how the Tiger Squad carried out the acts set forth in the Amended Complaint.

There can be no doubt that these requests, if made during discovery, would be proper.  And while Dr. Saad must show "good cause" to serve these requests before ordinary discovery, he can readily do so.  Otherwise, important evidence may be permanently destroyed.  These narrow requests do not burden the objecting Defendants one whit, and their claims to immunity are irrelevant to whether Dr. Saad has met his burden.

The Defendants also request, in the alternative, entry of a protective order to drastically limit the public's access to these records.  They claim one is necessary because of their "privacy" interests.  But Defendants have not met their burden for entry of such an order, nor even asserted that good cause exists to enter one.  It is unclear why the flight records of Canadian and German airlines would qualify for confidential treatment under a Protective Order.  Such orders usually protect sensitive, non-public information like social security numbers or trade secrets.  They do not exist to guard against the consequences that would accompany public disclosure of one's cross-border travel to attempt an extrajudicial killing.  Accordingly, Defendants' alternative request should be denied.

**ARGUMENT**

**I.     Dr. Saad Has Shown Good Cause to Serve Two Subpoenas to Prevent Destruction of Relevant Documents.**

Dr. Saad has shown good cause for obtaining leave to serve the two subpoenas: The subpoenas seek a narrow set of records concerning allegations central to his case that may be destroyed absent court order, and place no burden on Defendants or the third-party airlines.  The good cause standard for early discovery is thus readily met.  *See Afghan & Iraqi Allies Under*

*Serious Threat Because of Their Faithful Serv. To the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404, at *2 (D.D.C. Jan. 30, 2019) (identifying breadth of discovery requests, purpose of requesting expedited discovery, burden on defendants to comply, and proximity to typical discovery, *inter alia*, as factors for assessing good cause, and granting leave to serve documents requests and deposition notices); *see also* Memorandum of Law in Support of Plaintiff's Motion For Leave to Serve Two Third-Party Subpoenas ("Mot."), Dkt. 121-1, at 6–10. Defendants' arguments to the contrary are meritless.

A. *The Narrow Subpoenas Are Highly Relevant to Dr. Saad's Amended Complaint.*

Defendants claim that the proposed subpoenas are irrelevant and overbroad for three reasons: (1) because they seek records for two flights not expressly identified in the Amended Complaint (in addition to records about a third, expressly identified flight); (2) because they seek records on participants in the attempted extrajudicial killing who were not alleged to have traveled in October 2018; and (3) because they seek information over a 14-month time frame.  Opp. of Bader Alasaker ("Alasaker Opp."), Dkt. 125, at 8; Opp. of Alqahtani, Alassiri, Alsaleh, Alsayed, Algasem, Alhaqbani, Alhomid, Albawardi, & Bader Alqahtani ("Tiger Squad Opp."), Dkt. 126, at 7–8.  All three arguments fail in light of the narrow scope of two subpoenas targeting custodians who are unwilling to preserve crucial information in the absence of a court order.  *See* Mot. at 7–8 (limited scope of requests weighs in favor of granting them).

First, Defendants argue that Dr. Saad cannot subpoena information that does not appear, verbatim, in the Amended Complaint—and thus if the Amended Complaint does not expressly identify a particular flight, Dr. Saad cannot obtain discovery about that flight.  That argument, however, badly misapprehends the law.  The relevance test here is the same as in ordinary discovery.  *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210 (D.C. Cir. 2020)

("[D]iscovery, whether before or after the parties have conferred," is governed by Rule 26); *Goodwin v. D.C.*, No. 21-CV-806 (BAH), 2021 WL 1978795, at *4 (D.D.C. May 18, 2021) (analyzing request for documents before the Rule 26(f) conference under the usual Rule 26 standard). "Relevancy in [the discovery] context is 'broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case.'" *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, No. MC 20-00008 (BAH), 2021 WL 1909777, at *5 (D.D.C. May 12, 2021). The Court, moreover, must consider the subpoena requests while "draw[ing] all reasonable inferences from [the complaint's] allegations in the plaintiff's favor," and "is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant." *Strike 3 Holdings*, 964 F.3d at 1210–11.

Here, Dr. Saad's subpoenas seek information highly relevant to his claims—namely, airline records related to Defendants' travel to kill Dr. Saad, including Defendants' coordination of and connection to that effort. It is immaterial that the subpoenas seek records about two flights not expressly identified in the Amended Complaint: Each of the flights is relevant to the claims in the Amended Complaint. *Contra* Alasaker Opp. at 9; Tiger Squad Opp. at 7–8. First, Dr. Saad seeks records about Air Canada flight AC839 to Ottawa on October 15, 2018, which is expressly identified in the Amended Complaint. AC ¶ 334. No defendant disputes the relevance of these records. Next, the subpoenas seek records about Lufthansa flight LH474, arriving in Montreal on October 15, 2018 or October 16, 2018. This travel is also explicitly referenced in the Amended Complaint: "just one day after the first team arrived in Ottawa—additional Tiger Squad members arrived in Montreal" on a separate flight. AC ¶ 349. After the Amended Complaint's filing, Dr. Saad's ongoing investigation into Defendants' elaborate targeting of Dr. Saad has revealed that this separate flight may have been Lufthansa flight LH474, arriving in Montreal on either October

4

15, 2018 or October 16, 2018. *See* Lufthansa Subpoena, Req. for Prod. No. 1, Ex. C to December 3, 2021 Declaration of Jason Hipp ("Hipp Decl."), Dkt. 121-5, at 12. Third, Dr. Saad seeks records about Air Canada flight AC875 in July 2018. Dr. Saad's claims are not limited solely to the events of October 2018, but rather allege a carefully coordinated global effort to hunt and kill Dr. Saad beginning by 2017 and including "travel[] to Canada to collect valuable information about Dr. Saad's location and pattern of movements in preparation for the kill team's mission." AC ¶ 370; *see also* AC ¶ 255 (alleging travel to Canada in July 2018 to "obtain further information about Dr. Saad's movements"). Consistent with those allegations, Dr. Saad has become aware of specific travel by Tiger Squad Defendants to Canada on other occasions, including in July 2018 on Air Canada flight AC875, making it essential that those records too are saved from destruction. *See* Air Canada Subpoena, Req. for Prod. No. 1, Ex. D to Hipp Decl., Dkt. 121-6, at 9.

Second, Defendants also object that the subpoenas cannot seek any information about *individuals* other than those expressly alleged to have traveled to Canada on Air Canada Flight AC839 on October 15, 2018. Alasaker Opp. at 9–10; Tiger Squad Opp. at 2–3. But that argument fails for the same basic reason: The Amended Complaint expressly alleges that the plot to kill Dr. Saad involved eight "John Does," and that some of the Tiger Squad members who flew to Canada, including on one of the October 2018 flights to Montreal, were "among John Does 1-8." AC ¶ 349. The subpoenas' request for information about who was on the October 2018 Lufthansa flights is designed to help Dr. Saad uncover the identity of these John Does. In addition, because Dr. Saad now believes that one of the John Does may be Abdulaziz Alabdulkareem, the proposed subpoenas

include requests for documents concerning Alabdulkareem's travel in order to preserve that evidence.[3]

Defendant Alasaker separately argues that the subpoenas should not seek information about him because the Amended Complaint does not allege that he was a passenger on the October 2018 flights with other Tiger Squad members.  Alasaker Opp. at 9.  But the Amended Complaint alleges that Defendant Alasaker has a well-worn pattern of personally recruiting and coordinating efforts for Defendant bin Salman, AC ¶¶ 15, 40-47, 79-81, 84-86, 225-228—including extrajudicial transnational killings and personally attempting to get Dr. Saad to board a private jet, AC ¶ 46, 177 & n. 163.  Dr. Saad's subpoenas seek certain categories of information consistent with Alasaker's role and not limited to the mere fact of travel.  For instance, Dr. Saad has requested "form of payment for carriage," which may reveal that funds traced to Defendant Alasaker were used to purchase flights for Defendants or others.  In the criminal scheme Defendant Alasaker coordinated to bribe employees of Twitter, which is discussed in the Amended Complaint, AC ¶¶ 45, 70, 132, 226, Defendant Alasaker personally paid "at least $200,000" to facilitate the scheme, and Defendant MiSK, which Alasaker controlled, financed a shell company to do the same.  *United States v. Abouammo*, No. 3:19-cr-00621-EMC (N.D. Cal. Dec. 2, 2021), ECF No. 53 (Superseding Indictment) ¶¶ 26(k); AC ¶ 226 (deploying agents to hunt Dr. Saad was a "similar playbook" to the Twitter infiltration scheme).  Similarly, Dr. Saad requests "reservation information," which would include records of, *e.g.*, passengers' emergency contacts as well as

---

[3] Despite Defendants' protestations that Alabdulkareem is not named in the Amended Complaint, *see* Alasaker Opp. at 9–10, they cite no authority requiring Dr. Saad to amend his Complaint to identify a potential John Doe before he can seek discovery on that individual's apparent participation in the plot.  Dr. Saad is diligently continuing efforts to identify the remaining John Does.  *See* Mot. at 8–9.  *See, e.g., Strike 3 Holdings*, 964 F.3d at 1207; *Malibu Media, LLC v. Doe*, No. CV 19-2025 (TJK), 2019 WL 3238636, at *1–2 (D.D.C. July 18, 2019) (discussing availability of third-party subpoenas to investigate the identity of John Does).

communications between Alasaker and the airlines about other individuals' travel.  Consistently, in the Twitter indictment, the United States alleges that Alasaker personally facilitated air travel for an individual fleeing the United States by airplane in December 2015 after Twitter suspended the individual for spying on behalf of a member of the Saudi Royal Family.  Appeal of Magistrate Judge's Ord. Re: Pre-Trial Conditions, *United States v. Abouammo*, No. 3:19-cr-00621-EMC (N.D. Cal. Dec. 2, 2021), ECF No. 204 at 5; Superseding Indictment, ECF No. 53 ¶¶ 26(s) & 26(t) (Alasaker participated in efforts "to coordinate Alzabarah's departure from the United States" one day before the defendant "flew to Saudi Arabia"); AC ¶ 45.  That individual is now subject to a criminal proceeding in the United States, and just weeks ago, the United States argued that electronic pretrial monitoring of a codefendant (who remains in the United States) remained necessary primarily because of ongoing concerns that Defendant Alasaker—described in the brief as "Foreign Official-1," *see* AC ¶¶ 41 n.16 & 45 n.21—might also assist this defendant to flee the country through air travel.  *Abouammo*, ECF No. 204 at 5-6.  Finally, Dr. Saad requests "Advance Passenger Information System" records, among other records transmitted to governmental border control agencies, which include full passport information and complete itineraries that may further reveal Alasaker's hand in directing travel to hunt Dr. Saad.

Additionally, the Amended Complaint includes factually supported allegations that Defendant Alasaker personally and repeatedly traveled in connection with the attempted extrajudicial killing of Dr. Saad, including at least three trips to the United States in 2017 when the hunt for Dr. Saad focused there.  AC ¶ 41.  These allegations make it more than prudent to act now to preserve travel records containing Defendant Alasaker's name—whether Alasaker is identified as a passenger or otherwise associated with the reservation data—before those documents may be forever destroyed.  If it is true that Alasaker was not involved in travel on "Air

Canada or Lufthansa at any point to any location," Alasaker Opp. at 4, then Defendant Alasaker has nothing to fear from the subpoenas.

Third, although Defendants claim the subpoenas' 14-month scope is too broad, *see, e.g.*, Alasaker Opp. at 8, that limited period—between January 1, 2018 and February 28, 2019—reflects the time period most relevant to Defendants' potential travel related to efforts to kill Dr. Saad. This is so for three reasons.  One, the 14-month period tracks the Amended Complaint's allegations.  Dr. Saad alleges in his Amended Complaint that many of the Tiger Squad Defendants boarded Air Canada flight AC839 on October 15, 2018 and traveled to Canada for the purpose of killing Dr. Saad.  *See* AC ¶ 334; Alasaker Opp. at 3; Tiger Squad Opp. at 2.  The Amended Complaint alleges substantial additional activity associated with the attempted extrajudicial killing over a much broader time period than the time period in the subpoenas.  For example, Dr. Saad alleges that the efforts to track him down and lure him back to Saudi Arabia began shortly after he fled from the Kingdom for his safety in September 2017, AC ¶ 179, while Defendants hunted Dr. Saad and sought to identify his pattern of movements leading up to October 2018.  *See, e.g.*, AC ¶¶ 237-246, 251-255.  Two, the subpoenas' request for information predating this flight also reflects the Amended Complaint's allegations, and the common sense reality, that coordinating travel arrangements occurs long before a flight and that a given flight's records (including reservation data) are not created only on the day of the flight.  For instance, the Tiger Squad Defendants acquired tourist visas to enter Canada for the October 2018 flight no later than May 2018, plausibly supporting the inference that reservations and coordination of the trip began long before.  AC ¶ 331. The time period is tailored to the plausible window of time leading up to the October 2018 flight when Defendants began to purchase and coordinate air travel.  And three, the subpoenas seek records postdating the flights because the airlines may possess records concerning

the significant law enforcement activity and investigation into the Tiger Squad's travel which occurred after the flights.  AC ¶¶ 344–52.

In short, the subpoenas are not "irrelevant and overbroad," Alasaker Opp. at 8; *see also* Tiger Squad Opp. at 7, but instead seek records concerning three specific flights that Dr. Saad has specific and credible reason to believe certain Defendants took, as well as travel records, within a narrow window of time, concerning those Defendants who allegedly traveled into Canada or were involved in or connected to that travel.  It is necessary to serve these subpoenas in order to preserve these records (before it is too late).  Accordingly, the limited breadth of the subpoenas strongly favors granting Dr. Saad leave to serve them.  *See, e.g.*, *Warner Bros. Recs. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) (granting Plaintiffs leave to serve a third-party subpoena where "the information [was] not only relevant but crucial to the prosecution of plaintiffs' claims").

*B.   The Subpoenas are Necessary And Are Not Premature.*

Defendants assert the subpoenas do not serve a "critical purpose" because Lufthansa and Air Canada did not *guarantee* that the records Dr. Saad seeks will be destroyed by the year's end. Alasaker Opp. at 10; Tiger Squad Opp. at 6–7.  But certainty is not the standard.  And tellingly, Defendants point to no cases holding as much.  Instead, courts have recognized that the *potential* risk of evidence spoliation can merit serving third-party subpoenas or document requests in advance of the Rule 26(f) conference.  *See, e.g.*, *Veeder-Root Fuelquest, LLC v. Wisdom*, No. 2:21-CV-00352-RAJ, 2021 WL 1209257, at *4 (W.D. Wash. Mar. 31, 2021) (holding that "[p]laintiff's request for expedited discovery is reasonable" given, *inter alia*, plaintiff's valid "concerns about the loss or destruction of" information); *United States v. Gachette*, No. 6:14-CV-1539-ORL-37, 2014 WL 5518669, at *1 (M.D. Fla. Sept. 26, 2014) (good cause to serve a subpoena exists "to preserve evidence that may be destroyed before it can be obtained by ordinary discovery"); *R & D*

*Film 1, LLC v. Does 85-133*, No. 2:12-CV-1113, 2012 WL 12887945, at *1 (S.D. Ohio Dec. 20, 2012) (observing that "[g]ood cause is often found in cases . . . where evidence may be lost or destroyed with time" and granting plaintiff leave to serve limited subpoenas).  Dr. Saad has shown that the highly relevant airline records he seeks face a real and imminent risk of destruction: Lufthansa has represented that these records may be destroyed by the end of the year, and both airlines have refused to preserve the records without a court order.  *See* Mot. at 3–4 (citing Hipp Decl.); Hipp Decl. ¶¶ 6, 9.  That is enough to grant the Motion.[4]

Defendants argue that the destruction of highly relevant evidence (here, related to an attempted extrajudicial killing) is an ordinary risk of litigation.  Alasaker Opp. at 11.  They rest this claim on a single, inapposite case.  *Id.* (citing *O'Sullivan v. Deutsche Bank AG*, 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018)).  For one, the Plaintiffs in *O'Sullivan* were seeking to proceed with all discovery (including party discovery), and thus the court applied a completely different standard—the standard applicable for staying *all* discovery.  *See* 2018 WL 1989585, at *4.  Here, Dr. Saad seeks only leave to serve two subpoenas.  For another, the discovery sought in *O'Sullivan* was sweepingly broad and burdensome: the plaintiff sought "discovery regarding over two thousand allegations in the complaint (covering 514 pages) . . . go[ing] back decades in time."  2018 WL 1989585, at *8.  The *O'Sullivan* court only held that risk of destruction *alone* could not justify beginning excessively *broad* ordinary discovery prior to the disposition of a motion to dismiss.  *O'Sullivan* thus has no bearing on the two subpoenas at issue

---

[4] The Tiger Squad Defendants also argue that because Lufthansa represented that *some* records *may* have already been destroyed, the subpoena is not warranted.  Tiger Sq. Opp. at 6. But Lufthansa clearly stated that names of passengers and flight information were in fact preserved according to the three-year policy and would be deleted by the end of the calendar year.  *See* Hipp Decl. ¶ 4.  Dr. Saad has sufficiently established a grave risk that relevant documents will be definitively destroyed imminently.

here, which contain only two requests each, and seek only records relevant to a handful of travel-related allegations within a 14-month window.[5]

C. *Defendants Are Not Burdened By The Subpoenas, And Defendants' Assertions of Immunity Do Not Change the Calculus.*

Defendants do not, and cannot, argue that the subpoenas burden them in any way—the subpoenas target third parties, not Defendants, and merely seek to have those third parties produce records in their possession that will otherwise be destroyed.[6]  Accordingly, a key factor for assessing whether good cause exists—namely, the burden on defendants to comply—strongly favors granting Dr. Saad leave to serve the two subpoenas.

Two subpoenas are sought in order to prevent the destruction of important evidence that, in the absence of subpoenas, the recipients will not agree to preserve.  The Court has broad and

---

[5] Defendants' "ordinary risk" arguments are especially meritless because of the reality that they are likely to resist discovery for *years*.  Through statements in other litigation, Defendants have made clear that they will argue that discovery should remain on hold pending *appeals* of motions to dismiss decided against them.  *See* Mot. to Stay Disc. & Pretrial Deadlines, *Oueiss v. Al Saud*, No. 1:20-CV-25022-KMM, at 3 n.1 (S.D. Fla. Mar. 9, 2021), ECF No. 89 (Defendant Alasaker arguing that "discovery must also be stayed pending any interlocutory appeal of the Court's resolution of the immunity issue" on his motion to dismiss).  Dr. Saad disagrees—but for present purposes, the key point is this: By the time Defendants believe discovery in this case should proceed, the relevant records will almost certainly be destroyed in the ordinary operation of the airlines' retention policies.

[6] Defendants also argue the subpoenas would overly burden Lufthansa and Air Canada, because the airlines provide service to millions of passengers and thus would apparently have difficulty conducting an electronic search of their records for eleven names.  Alasaker Opp. at 12.  The subpoenas, however, will not impose an undue burden on the third-party airlines because the requests are narrow and specific.  *See Dunlap*, 319 F. Supp. at 101.  The airlines need only search for records concerning one or two flights, respectively, in a 14-month time period, and for records pertaining to only eleven individuals.  Dr. Saad has enumerated all potential English transliterations of the individuals' Arabic names to lessen the airlines' burden, so they will not need to hire a translator to search for responsive records.  Hipp Decl. Exs. C, at ¶ 10 & D, at ¶ 10. Furthermore, the requests seek a circumscribed set of records that already exist and that are easily identifiable; indeed, Air Canada has already represented that certain of the records Dr. Saad seeks are in its possession "right now," Hipp Decl. ¶ 8.  Complying with the subpoenas requires only that the Airlines search for such records and produce a finite set of materials in the same format in which they are presently stored.

inherent case management authority to ensure that those records are not destroyed.  *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (2004) ("[C]ourts have . . . the inherent power to order that evidence be preserved.").

Defendants' pending claims of foreign official immunity do not divest this Court of its authority to ensure that evidence is not destroyed.  *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020) ("[D]istrict courts have broad discretion over the structure, timing, and scope of discovery."); *Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) ("[D]istrict courts have 'broad discretion in structuring discovery.'").  *Contra* Alasaker Opp. at 5–6; Tiger Squad Opp. 3–4.  When faced with the destruction of evidence that can only be preserved through a third-party subpoena, the invocation of immunity in a motion to dismiss does not deprive this Court of the ability to ensure that evidence is not destroyed.

Defendant Alasaker relies on *M.G. v. Metro. Interpreters & Translators, Inc.*, which involved a motion for the commencement of discovery before resolution of motions to dismiss filed by other defendants on sovereign and qualified immunity grounds.  No. 12CV460-JM (MDD), 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013).  Dr. Saad is not asking this Court to order the commencement of discovery in this matter.  He is seeking leave to serve two subpoenas to document custodians who will not otherwise preserve evidence.  In reviewing the discovery request, the court in *M.G.* instructed that a stay of document requests was *not* "required in every case in which a defendant raises a claim of immunity.  Rather, the court should consider the nature of the case and the extent to which proceeding with discovery as to other parties likely would prejudice the stayed defendants . . . ."  *Id.*

The Defendants also argue that they will suffer prejudice if the subpoenas are granted because they will have to participate in third-party discovery, and if they do not, the case "could

develop in a misleading, or slanted way that causes prejudice to their position." *M.G.*, 2013 WL 690833, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009)). That argument has no merit. There is no risk that this case "could develop in a misleading, or slanted way," *id.*, because the only development likely to happen after service of these subpoenas is resolution of the pending motions to dismiss. Discovery on all other matters in the case—whether from parties or third parties—would remain suspended until the ordinary period for discovery begins. Defendants, moreover, would receive copies of any records produced and would retain all objections to the admissibility of the records produced. The only development that will follow from granting this motion is that crucial evidence will not be destroyed. *Cf. Beecham v. Socialist People's Libyan Arab Jamahiriya*, 245 F.R.D. 1, 3 (D.D.C. 2007) ("Bare assertions that discovery will be unduly burdensome are insufficient to justify the entry of an order staying discovery." (citation and internal alteration omitted)).[7]

Defendants' pending immunity claims do not override the Court's inherent authority to authorize two limited subpoenas necessary to preserve crucial evidence.[8]

_____

[7] Defendants also rely on *Oueiss v. Al Saud*, No. 1:20-CV-25022-KMM (S.D. Fla. Apr. 5, 2021), ECF No. 130, in which the plaintiff sought to begin full discovery from and against all defendants during the pendency of motions to dismiss. *See generally* Plaintiff's Omnibus Response in Opp. to Defs. Mots. to Stay Disc. & Pretrial Deadlines, No. 1:20-CV-25022-KMM, (S.D. Fla. Mar. 25, 2021), ECF No. 97. Here, Dr. Saad is not seeking to begin discovery.

[8] In any event, Defendants' immunity claims are meritless and thus could not justify denying Dr. Saad leave to serve the subpoenas. As explained in detail in Dr. Saad's opposition to the Defendants' motions to dismiss, the Defendants were not acting in any official capacity when they took the extraordinary step of dispatching a hit squad into a foreign country to murder a longstanding partner to the United States Intelligence Community. *See* Dr. Saad Aljabri's Mem. of Law in Opp. to Def.'s Mots. to Dismiss ("MTD Opp."), Dkt. 102, at 36–42. Defendant Alasaker leveraged private positions to cultivate and deploy a network of covert student agents in the United States, *id.* at 37–38, while the Tiger Squad Defendants traveled on commercial airlines under tourist visas, lying about their association with each other and their purpose, to unlawfully kill an individual in another country's territory, *id.* at 39–40.

## II.      Dr. Saad Also Prevails Under the *Notaro* Test.

Although the good cause test appears to govern in this District, Dr. Saad also prevails under the *Notaro* test, which requires him to show irreparable injury and some probability of success on the merits.  *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 102 (D.D.C. 2018) (citing *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)).   For the *Notaro* test, Defendants largely rely on arguments made in their motions to dismiss.   For the reasons stated in Dr. Saad's omnibus opposition, Dkt. 102, Defendants' motions are meritless; thus, Plaintiff is likely to succeed on the merits.   And Dr. Saad will obviously suffer irreparable injury if he is not granted leave to serve subpoenas on the airlines, because he will be permanently deprived of key evidence supporting his claims.   Under the *Notaro* test, leave should also be granted.  *See, e.g.*, *Am. Friends Serv. Comm. v. Webster*, 485 F. Supp. 222, 233 (D.D.C. 1980) (finding that the plaintiff "will suffer significant, irreparable injury if defendants' continuing destruction of FBI files [in accordance with its record destruction program] is not enjoined"); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 414 (E.D. Mo. 2008) (plaintiffs were entitled to inspect documents and land in advance of defendants filing an answer under both "good cause" and *Notaro* standards where they alleged the "potential for spoliation of evidence and resulting prejudice to plaintiffs and the connection between that prejudice and the discovery sought").

## III.      A Protective Order is Not Warranted.

Finally, and tellingly, Defendants argue that if Dr. Saad's motion is granted, "a protective order would be necessary."  Alasaker Opp. at 15; *see also* Tiger Squad Opp. at 9.   Although Dr. Saad does not object to a Protective Order in the abstract,[9] Defendants have not met the burden for

---

[9] It may be that certain information in the airlines' records include personally sensitive information not relevant to this case, such as credit card numbers.   If a protective order is necessary to

entry of such an order now, nor even asserted that good cause exists to enter one, as this Court's standing order, the Federal Rules, and this Court's precedent all require. *See* Standing Order, ¶ 11(c), Dkt. 5 ("All motions for protective order shall . . . explain why good cause exists to enter the proposed order." (citing Fed. R. Civ. P. 26; *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 19, 22–23 (D.D.C. 2007)). "The party seeking the protective order bears the burden of making the showing of good cause . . . [and] must articulate specific facts to support its request and cannot rely on speculative or conclusory statements." *Klayman*, 247 F.R.D. at 22–23. Instead, Defendant Alasaker simply notes—apparently confident that he will have standing—that he "intends to move for one." Alasaker Opp. at 15. Should he do so, Dr. Saad will respond at that time, including to ensure the Court balances the important "[F]irst [A]mendment interests at stake" in potentially concealing from the public knowledge of Defendants' heinous conduct. *Klayman*, 247 F.R.D. at 22.

For present purposes, the Court need not be concerned with a protective order. The flight records of Canadian and German airlines would not appear to qualify for confidential treatment under any Protective Order. Indeed, Defendants' request seems to betray their fear that the subpoenas will lead to disclosure of information that will greatly embarrass and further inculpate them. Protective orders, however, are not permitted to shield a party from public embarrassment or indictment.

## CONCLUSION

Dr. Saad's two subpoenas request a narrow set of documents within a limited time frame that would clearly be proper during normal discovery, and no Defendant argues otherwise. The

---

selectively redact that kind of information, it would be appropriate for the airlines to request one before producing these records, not for these Defendants to seek one without ever having seen the documents.

only question is whether these two subpoenas are proper now.  Because they undoubtedly are necessary to preserve evidence that may otherwise be lost forever, Dr. Saad respectfully requests that the Court grant him leave to serve two subpoenas on Lufthansa and Air Canada.

Dated: December 17, 2021

Respectfully submitted,

JENNER & BLOCK LLP

  /s/ David J. Pressman

David Pressman
D.C. Bar No. 1013431
Jason P. Hipp
DDC No. NY0397
Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Telephone:  (212) 891-1654
Fax: (212) 891-1699
dpressman@jenner.com
jhipp@jenner.com

Lindsay Harrison
D.C. Bar No. 977407
Zachary C. Schauf
D.C. Bar No. 1021638
Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
Telephone:  (202) 639-6865
Fax:  (202) 639-6066
lharrison@jenner.com
zschauf@jenner.com

*Counsel for Plaintiff*